FILED by _____ D.C.

SEP 13 2012

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | Case No 11-80205-CR-MARRA/HOPKINS |
| | § | |
| MITCHELL J. STEIN, | § | |
| | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION ON DEFENDANT'S OMNIBUS MOTIONS TO DISMISS AND STRIKE SURPLUSAGE (DEs 24-30, 32)

Defendant Mitchell Stein's motions to dismiss and strike surplusage (DEs 24-30, 32) are before this Court on an Order of Referral (DE 38). The Government has responded (DE 35) and the Defendant replied (DE 37). For the reasons set forth below, this Court RECOMMENDS that the motions be DENIED.

### I. MOTIONS TO DISMISS COUNTS ONE, EIGHT THROUGH TEN, AND FOURTEEN AS IMPERMISSIBLY VAGUE

Stein moves to dismiss Count One (DE 24), Counts Eight through Ten (DE 28), and Count Fourteen (DE 30), alleging each of the four counts is too vague.

An indictment is considered legally sufficient if it: "(1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense." *United States v. Jordan*, 582 F.3d 1239, 1245 (11th Cir. 2009) (citing *United States v. Woodruff*, 296 F.3d 1041, 1046 (11th Cir. 2002)). These factors ensure the provision of constitutional notice and due process. *United States v. Fern*, 155 F.3d 1318, 1325 (11th Cir. 1998); *see also Hamling v. United States*, 418

1

U.S. 87, 117 (holding that an indictment satisfies the constitutional requirement of informing the defendant of the charges against him and enabling him to plead double jeopardy by setting forth the essential elements of the crime). In determining whether an indictment is sufficient, it should be read as a whole and given a "common sense construction." *United States v. Gold,* 743 F.2d 800, 813 (11th Cir. 1984). The appropriate test is "not whether the indictment might have been drafted with more clarity, but whether it conforms to minimal constitutional standards." *United States v. McGarity,* 669 F.3d 1218, 1235-36 (11th Cir. 2012) (quoting *United States v. Varkonyi,* 645 F.2d 453, 456 (5th Cir. 1981)). Thus, "an indictment is sufficient if it tracks the more general language of the statute and provides a statement of facts that gives notice …. [T]he language of the statute alone, setting forth the factual elements of the offense, often provides the essential facts." *Id.* at 1273.

Stein's Motion to Dismiss Count One (DE 24) argues that the Indictment's allegations of a conspiracy to commit mail and wire fraud are impermissibly vague. Count One of the Indictment, which alleges a conspiracy to commit mail and wire fraud tracks the statutory language and includes a detailed overview of the conspiracy, the purpose thereof, and the specific manner and means employed to accomplish the conspiratorial objectives.

The Indictment contains an "Overview of the Fraudulent Scheme" that identifies four categories of conduct in which Stein and others engaged: (1) artificially inflating the price and demand for Heart Tronics stock; (2) concealing their ownership and trading of Heart Tronics stock; (3) misappropriating Heart Tronics's assets; and (4) testifying falsely to the SEC to conceal their conduct. (Indictment, ¶ 6.) The Indictment also provides further descriptions for each of these four categories of conduct. Regarding the allegation that Stein and his co-conspirators artificially inflated the price and demand for Heart Tronics stock, the Indictment

specifies that Stein and his co-conspirators "misrepresent[ed] Heart Tronics's operations and finances, including information regarding the sale of Heart Tronics products." (Indictment, ¶ 7.) The Indictment also describes how Stein and others misrepresented Heart Tronics's operations and finances, specifying eight different examples including creating false purchase orders, creating false change of address notices, issuing false press releases claiming Heart Tronics had received purchase orders, and submitting false SEC filings. (Indictment, ¶ 7(a-d).) The Indictment further describes that Stein and a co-conspirator "create[d] the false appearance of a shipment to an actual Heart Tronics customer" by shipping products to a third party for temporary storage and by obtaining a toll-free number to be falsely attributed to the third party. (Indictment, ¶ 7(e-h).)

The Indictment provides explanation and examples of the other categories of conduct identified in the "Overview" in which Stein and others engaged. Regarding the allegation that the conspirators concealed their ownership and trading of stock, the Indictment explains that Stein and others placed shares of stock in other people's accounts, subsequently directed the sale of stock from these accounts, and transferred the proceeds back to Stein. (Indictment, ¶ 8.) In addition, the Indictment alleges that Stein deposited shares in trusts of which he claimed to have little if any knowledge or control but from which, in actuality, Stein was directing sales of stock. (Indictment, ¶ 9.) The Indictment provides an example of stock sold from trusts connected to an entity called ARC Finance, and specifies the amount of stock sold from those trusts. (Indictment, ¶ 9.)

Regarding the third category of conduct set forth in the "Overview," the misappropriation of company assets, the Indictment describes how Stein did so by "orchestrating sham consulting agreements" and gives an example of one such agreement through which a co-conspirator

3

received "$680,000 in cash and several million shares of Heart Tronics stock, purportedly for various consulting services regarding Heart Tronics products" even though no such services were performed. (Indictment, ¶ 10.)

Regarding the fourth specified category of conduct, the Indictment alleges that Stein and others testified falsely to the SEC in order to conceal their prior acts, and it lists specific topics about which the conspirators falsely testified. (Indictment, ¶ 12.)

The Indictment identifies the purpose of the conspiracy and lists six manner and means used to accomplish it. (Indictment, ¶¶ 4-15.) The Indictment also provides three examples of overt acts committed in furtherance of the conspiracy (Indictment, ¶ 17(a-c)), even though overt acts are not an essential element of the offense. See 18 U.S.C. § 1349 (listing no requirement of an overt act); *United States v. Shabani*, 513 U.S. 10, 12 (1994); *United States v. Pistone*, 177 F.3d 957, 959-60 (11th Cir. 1999).

Thus the Indictment exceeds the "bare statements of facts" which "provide[] adequate notice..." *United States v. McGarity*, 669 F.3d 1218, 1273 (11th Cir. 2012).

In footnote 1 of his motion to dismiss (DE 24) the Defendant invited alternative relief in the form of a Bill of Particulars, but failed to specify what particulars were sought, what prejudice would result from denial, and how Defendant would be surprised at trial. In his reply at page 4-5 (DE 37) Defendant again refers to alternative relief in the form of a bill of particulars but provides no further justification for the relief. Since the Indictment adequately notifies the Defendant of the charges to be defended against he has not demonstrated a sufficient basis for a bill of particulars. *See United States v. Colson*, 662 F.2d 1389, 1391 (11th Cir. 1981) (motion for a bill of particulars requesting identities of unnamed coconspirators, dates and locations of

conspiratorial acts, and other detailed information properly denied because defendant failed to show prejudice and actual surprise at trial).

The Indictment adequately sets forth the crime charged in Count I and his Motion to Dismiss it should be denied.

In his Motion to Dismiss Counts Eight through Ten (DE 28), Stein contends that the securities fraud counts are impermissibly vague because they "fail to say anything about why the sales were somehow fraudulent." (DE 28 at 2) However, the Indictment describes how the sales of stock were connected to the fraudulent scheme. The Indictment alleges that Stein and his co-conspirators sold shares of Heart Tronics stock at artificially inflated prices, concealed their ownership and trading of stock through nominee accounts, and transferred the proceeds to bank accounts in their own names. (Indictment, ¶¶ 7-9, 15.) The Indictment incorporates those and other factual allegations into the securities fraud counts. (Indictment, ¶ 22.)

The Defendant alleges that "no false pretense, promise, or representation is identified" in Counts Eight through Ten (DE 28 at 2). However, the Indictment contains specific allegations of false representations, including: false purchase orders, false change of address notices, false press releases, false SEC filings, false practices such as nominee accounts and purportedly blind trusts, and sham agreements. (Indictment, ¶¶ 8(a-d), 9-12.)

Stein also contends that the Indictment is inadequate because it fails to identify sufficient facts regarding the stock sales underlying Counts Eight through Ten. However, the Indictment includes many details about those stock sales, including the account involved, the date of the sale, the amount of shares sold, and the amount of proceeds. Moreover, the Government responded that the discovery provided to Stein allows him to identify the name of the accountholder based on the information in the Indictment.

The Defendant also complains that Count Ten confusingly charges a fraudulent scheme to sell 118,100 shares of Signallife stock from April 18-22, 2008. (DE 28). The Government explained in its response (DE 35 at 8) that the sales of stock occurred in three of the five days in that period with two of the days in the middle of the period being weekend days. Stein's claim is without merit.

The securities fraud offenses charged in Counts Eight through Ten are properly and sufficiently pled, and Stein's Motion to Dismiss should be denied.

Stein also asserts that Count 14 is impermissibly vague. (DE 30) That count charges Stein with conspiring to obstruct justice,. It presents the essential elements of the crime by tracking the statutory language, alleges the facts and circumstances of the conspiracy, and states that the purpose of the conspiracy was to "perpetuate and prevent detection of the scheme and artifice described above." It also provides the specific topics about which Stein and his co-conspirators agreed to provide false testimony to the SEC: "purported sales and shipment of Heart Tronics products, the sham consulting agreement between Co-Conspirator 1 and Heart Tronics, and the placement of Heart Tronics stock in nominee accounts." (Indictment, ¶¶ 28-29.) It alleges multiple overt acts, including how Stein "and Co-Conspirator 1 met at a restaurant in Boca Raton, Florida and discussed the false testimony that Co-Conspirator 1 would provide to the SEC." (Indictment, ¶ 30(b).)

Stein asserts that Count 14 is impermissibly vague because it fails to identify a false statement. (DE 30 at 2). However, Count 14 alleges a conspiracy to obstruct justice. The act of making a false statement is not an essential element of the offense. The essential elements are: (1) an agreement to try to accomplish an unlawful plan; (2) that defendant willfully joined the agreement knowing its unlawful plan; (3) an overt act committed by a conspirator during the

6

conspiracy; and (4) that the overt act was intended to further the object of the agreement. Eleventh Cir. Pattern Instruct. § 13.1 (2010 ed.). The Defendant need not have succeeded in carrying out the plan. *Id.* The Defendant could thus be guilty of Count 14 even if no one ever made a false statement.

The Indictment exceeds the minimum pleading requirements, identifying specific topics the conspirators discussed and about which they agreed to provide false testimony. (Indictment, ¶ 29(a).)

The Defendant also contends that Count Fourteen "creates a variance problem" because the evidence at trial may vary from that presented to the grand jury. (DE 30 at 5). Variance occurs when "the evidence at trial establishes facts materially different from those alleged in the indictment" *United States v. Lander*, 668 F.3d 1289, 1295 (11th Cir. 2012) (emphasis added) (internal citations omitted). A claim of variance therefore is properly raised as a challenge to the sufficiency of the evidence presented at trial, not to the sufficiency of the indictment. *See United States v. Jenkins*, 779. F.2d 606, 616 (11th Cir. 1986). Accordingly, Stein's challenge on this basis is premature.

The Indictment adequately sets forth the crime charged in Count 14 and his Motion to Dismiss it should be denied.

**II. <u>MOTIONS TO DISMISS COUNTS TWO THROUGH SEVEN FOR FAILURE TO STATE OFFENSES</u>**

Stein moves to dismiss Counts Two through Four for failure to state an offense. (DE 25) Counts Two through Four of the Indictment allege mail fraud based on three mailings of stock certificates from Draper, Utah to Boca Raton, Florida. Stein asserts that "the indictment does not allege anything false or misleading involving the sending of the stock certificates." (DE 25 at 2) The Supreme Court has stated, "'innocent mailings'—ones that contain no false information—

may supply the mailing element." *Schmuck v. United States*, 489 U.S. 705, 715, (1989) (quoting *United States v. Parr*, 363 U.S. 370 (1960)). Mail fraud can even be based on "routine" mailings. *Id.* (citing *Carpenter v. United States*, 484 U.S. 19, 28 (1987)). *See also United States v. Waymer*, 55 F.3d 564, 569 (11th Cir. 1995) ("*Schmuck* . . . expressly rejected the claim that a routine or innocent mailing cannot supply the mailing element of the mail fraud offense.")

Stein asserts that otherwise truthful documents required by law to be mailed cannot be the basis for a mail fraud count, citing *United States v. Lake*, 472 F.3d 1247, 1256 (10th Cir. 2007). (DE 25 at 2-3). In *Lake*, the wirings were federally mandated SEC filings, whereas the mailings charged here were not required by law to be mailed. Stein and his co-conspirators made a voluntary decision to issue the shares as a part of their fraudulent scheme, unlike in *Lake*, where "the reports were filed because they had to be, not because of any unlawful scheme." *Lake* at 1255-56.

Stein also complains that the United States has failed to "allege any nexus between the stock certificates and any scheme to defraud." (DE 25 at 2). The mailing or wiring must "constitute part of the execution of the fraud," that is it must be "incident to an essential part of the scheme or a step in [the] plot." *See United States v. Hill*, 643 F.3d 807 (11th Cir. 2011) (quoting *United States v. Evans*, 473 F.3d 1115, 1118-19 (11th Cir. 2006) and *Schmuck*, 489 U.S. at 710-11). Here the Indictment alleges in the "Overview of the Fraudulent Scheme" that Stein and his co-conspirators placed shares in brokerage accounts held in the names of other individuals but which were in fact controlled by Stein and his co-conspirators, that Stein and his co-conspirators directed the sale of Signalife stock from these nominee accounts, and that Co-conspirator 1 maintained a brokerage account from which he sold more than $1 million worth of Signalife stock. (Indictment, ¶ 8.) The mailings of share certificates from Utah to Boca Raton,

where Co-conspirator 1 is located (as set out in Paragraph 4 of the Indictment), constitute "a step in the plot" and furthered the fraudulent scheme because that is how the conspirators obtained the shares of Signalife stock to be sold at artificially inflated prices, the express purpose of the alleged scheme. (Indictment, ¶ 14.)

Counts Two through Four adequately allege mail fraud against Stein. His Motion to Dismiss Counts Two through Four should therefore be denied.

Stein also moves to dismiss Counts Five through Seven for failure to state an offense, using largely the same arguments he uses in support of his Motion to Dismiss Counts Two through Four. (DE 26) Counts Five through Seven allege wire fraud related to three separate facsimiles of "purported purchase order" confirmation[s] or cancellations "from Boca Raton, Florida to Calgary, Canada." (Indictment, ¶ 20.) Stein claims that the faxes themselves are "not alleged to be false or misleading," and that therefore, the faxes cannot be the basis for a wire fraud charge. The Eleventh Circuit noted that "the Supreme Court, however, has rejected an identical argument in the mail fraud context," and that "the wire fraud statute is subject to the same analysis." *United States v. Ross*, 131 F. 3d 970, 985 (*citing Schmuck*, 489 U.S. at 715, and *Carpenter*, 484 U.S. at 25 n.6). In *Ross*, the court stated that "the fact that the facsimile memorandum may have been correct . . . did not prevent the jury from concluding that . . . [it] furthered the fraudulent scheme." *Id.*

Mail and wire fraud are subject to the same analysis, *Carpenter,* 484 U.S. at 25 n.19. The same reasons that the motion to dismiss the mail fraud counts should be denied apply to the motion to dismiss the wire fraud counts. Faxing the "purported purchase order" confirmations and cancellations, was in furtherance of the alleged scheme to defraud; the purpose of sending them to the company was so that they would be evidence of the existence of those sales.

Accordingly, Stein's Motion to Dismiss Counts Five through Seven should be denied.

### III. MOTIONS TO DISMISS FOR MULTIPLICITY

Stein asserts that counts of the Indictment are multiplicitous. (DEs 24, 27, 29). However, there is no multiplicity where each offense requires proof of different facts. *Blockburger v. United States*, 284 U.S. 299, 304 (1932).

In his Motion to Dismiss Count Six For Multiplicity (DE 27), Stein alleges that Counts Five and Six of the Indictment charge the same conduct, and that therefore Count Six should be dismissed as multiplicitous.

According to the Indictment, Stein and his co-conspirators created and sent more than one fake purchase order to various people and places as part of the fraudulent scheme. Counts Five and Six charge wire fraud based on two faxes transmitted on the same day, March 25, 2008. (Indictment, ¶ 16(b).)

The Government related that on January 30, 2012, it provided the defense with discovery "hot documents" that contained the two separate faxes underlying Counts Five and Six. In that production, the faxes were among approximately 20 documents identified as evidence supporting the Indictment, and bore the March 25, 2008 date. Thus the counts are not multiplicitous.

In his Motion to Dismiss Money Laundering Counts 11 Through 13 (DE 29), Stein argues that those counts ("the money laundering counts") "impermissibly merge" with the securities fraud charges in Counts Eight through Ten ("the securities fraud counts").

In the money laundering counts, Stein is charged with violating Title 18, United States Code, Section 1957, (Indictment, ¶ 24), that is, knowingly engaging in a monetary transaction in criminally derived property that is of a value greater than $10,000 and is derived from specified unlawful activity. 18 U.S.C. § 1957. "Money laundering is an offense to be punished separately

10

from an underlying criminal offense." *United States v. Christo*, 129 F.3d 578, 579 (11th Cir. 1997) (citing *United States v. Edgmon*, 952 F.2d 1206, 1213 (10th Cir. 1991)). A court must determine "when the predicate crime becomes a 'completed offense' after which money laundering can occur." *Christo*, 129 F.3d at 579 (citing *United States v. Kennedy*, 64 F.3d 1465, 1477–78 (10th Cir. 1995).

Stein asserts that the securities fraud offenses were not completed by the time the wire transfers identified in the money laundering counts occurred. However, as the language of the securities fraud counts indicates, the crimes charged therein were completed with the sale of the Signalife shares. *See, e.g., United States v. Motz*, 652 F. Supp. 2d 284, 294 (E.D.N.Y. 2009) ("each time [the defendant] executed an allegedly fraudulent trade, the requisite elements of securities fraud [under 18 U.S.C. § 1348] were satisfied"). Following the sale of those shares, the funds obtained from those sales were deposited into the accounts listed as the origin accounts in the money laundering counts. It was only after these violations of 18 U.S.C. § 1348 had occurred that the wire transfers alleged in the money laundering counts moved the money from those accounts to Stein's Manufacturer's Bank account.

The Eleventh Circuit has rejected similar claims. In *United States v. Gregg*, the Eleventh Circuit rejected with "no trouble" a defendant's claim that he could not be charged with both bank fraud based on a scheme to get funds into his account, and money laundering for his withdrawal of those funds from the account. 179 F.3d 1312, 1315 (11th Cir. 1999). Similarly, in *United States v. Nolan*, the Eleventh Circuit rejected a defendant's claim that his withdrawal of fraudulently obtained funds from an account he controlled was not a separate transaction punishable under 18 U.S.C. § 1957. 223 F.3d 1311, 1315–16 (11th Cir. 2000). And in *United States v. Johnson*, the Eleventh Circuit upheld Title 15 securities fraud convictions alongside 18

11

U.S.C. § 1957 convictions based on the funds obtained through those Title 15 securities fraud violations. 440 F.3d 1286, 1289–90 (11th Cir. 2006).

The offenses charged in the securities fraud counts were complete prior to the wire transfers that are the bases for the money laundering counts, and therefore the securities fraud counts do not "merge" with the money laundering counts. Accordingly, Stein's Motion to Dismiss Counts Eleven through Thirteen should be denied.

Stein's Motion to Dismiss Count One for vagueness, discussed above, contends that Count One "seems to raise a multiplicity issue" regarding Count 14. (DE 24 at 5) The two counts, however, clearly charge separate offenses. They charge separate conspiracies: Count One charges a conspiracy to commit mail and wire fraud, whereas Count Fourteen charges a conspiracy to obstruct justice. They charge different statutes: 18 U.S.C. § 1349 versus 18 U.S.C. § 371. They alleged different purposes: artificially inflating then selling Signalife stock (Indictment, ¶ 14) versus obstructing the SEC's investigation to prevent detection of the fraudulent scheme (Indictment, ¶ 27). While the fact of Stein's and others' false testimony to the SEC is alleged to have been part of the scheme set forth in Count One, (Indictment, ¶ 6.), Count 14 charges the agreement, the *conspiracy* to provide such false testimony, not the actual giving of that false testimony. Thus, despite this apparent overlap between the two conspiracies, Counts One and Fourteen clearly involve separate elements and separate facts, and therefore they are not multiplicitous.

## IV. MOTION TO STRIKE PREJUDICIAL SURPLUSAGE FROM THE INDICTMENT

In his Motion to Strike Prejudicial Surplusage From The Indictment (DE 32), Stein identifies four types of material that he asserts should be removed from the Indictment to protect him from being unfairly prejudiced.

The power to strike surplusage from an indictment is committed to the discretion of this Court. Fed. R. Crim. P. 7(d). However, "[a] motion to strike surplusage from an indictment should not be granted unless it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial . . . . [T]his is a most exacting standard." *United States v. Awan*, 966 F.2d 1415, 1426 (11th Cir. 1992) (internal citations and quotation marks omitted); *see also, e.g., United States v. Bullock*, 451 F.2d 884, 888 (11th Cir. 1971) (noting also that the standard is "exacting").

Stein identifies four types of material he believes should be stricken. He complains of the Indictment's characterization of Co-Conspirator 1 as a "handyman" and Stein's "chauffeur," suggesting that these terms "make Mr. Stein appear unsympathetic and privileged" and will "smear" Mr. Stein. (DE 32 at 3.) However, the descriptions are hardly inflammatory or prejudicial to Stein. Moreover, the descriptions are relevant because they show the nature of the relationship between Stein and Co-Conspirator 1, thereby illustrating their respective degrees of association, knowledge, responsibility, and control regarding the scheme and the conspiracy.

Next, Stein takes issue with a largely boilerplate description of the Securities and Exchange Commission (SEC), asserting that it improperly "lauds the SEC and extols its virtues, ultimately inviting the jury to decide Mr. Stein's case on an improper basis," and that it "improperly invites the jury to 'send a message' by convicting Mr. Stein." (Dkt. No. 32 at 4.) Again, the description is hardly inflammatory and prejudicial. Moreover, the SEC's role and purpose is relevant as an explanation of why the SEC plays a role in this case and why the SEC would have been asking Stein for information. As such, this language is not surplusage and should not be stricken

13

Third, Stein objects to the references in paragraph 15(f) of the Indictment to the false testimony before the SEC. (DE 32 at 5–6) Stein appears to argue that the language is not relevant because the false testimony occurred after the latest alleged overt act and therefore falls outside the duration of the conspiracy. (DE 32 at 5) However, Count One alleges that the conspiracy extended from in or about July 2005 through in or about July 2010, which is after the false testimony of December 17, 2009. (Indictment, ¶¶ 6, 13.) Accordingly, the false testimony falls within the duration of the conspiracy alleged in Count One and cannot be said to be irrelevant or improperly included therein.

Finally, Stein objects to the Indictment's description of consulting agreements as "shams." (DE 32 at 6) However, the term "sham" is relevant, because it conveys that the consulting agreements were fraudulent and used to misappropriate assets from Signalife by funneling payments to the fake consultants back to the Defendant. (Indictment, ¶ 10.) Stein's Motion to Strike should therefore be denied.

### CONCLUSION

For the foregoing reasons, this Court RECOMMENDS that Stein's motions to dismiss and strike (DEs 24 through 30, and 32) be DENIED.

### NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Senior United States District Judge Kenneth A. Marra within fourteen (14) days after being served with a copy. See 28 U.S.C. § 636(b)(1)(C). Failure to file timely objections may limit the scope of appellate review of factual findings contained herein. See *United States v. Warren*, 687 F.2d 347, 348 (11th Cir.1982), *cert. denied*, 460 U.S. 1087 (1983).

DONE AND SUBMITTED in Chambers this 13 day of September, 2012, at West Palm Beach in the Southern District of Florida.

*James M. Hopkins*

JAMES M. HOPKINS

United States Magistrate Judge