UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § | |
| Plaintiff, | § § | |
| v. | § § | Case No 11-80205-CR-MARRA/HOPKINS |
| MITCHELL J. STEIN, | § § | |
| Defendant. | § § | |
| _____/ | | |

**RESPONSE OF THE UNITED STATES IN OPPOSITION
TO MOTION FOR ADMISSION *PRO HAC VICE* OF JARED J. SCHARF**

Attorney Jared Scharf suffers from conflicts of such magnitude and number that this Court must deny his admission *pro hac vice* as counsel for the defendant, Mitchell Stein. Mr. Scharf's representation of the defendant would violate a number of Florida Rules of Professional Conduct ("Florida Rules"), and irrespective of any waivers or other remedies to those conflicts that Mr. Scharf or the defendant might proffer to the Court, Mr. Scharf's extensive prior involvement in matters directly related to this case must preclude his appearance as counsel for the defendant.

**I.  BACKGROUND**

On December 13, 2011, a duly empanelled grand jury sitting in the Southern District of Florida returned an indictment charging the defendant with various offenses arising out of his involvement with a company known as Signalife, Inc. or Heart Tronics, Inc. (collectively referred to hereinafter as "Signalife"). (Dkt. No. 3.) On December 20, 2011, the Securities and Exchange Commission ("SEC") sued the defendant and others, alleging among other things a number of violations of the securities laws arising out of many of the same events giving rise to the Indictment. *SEC v. Heart Tronics et al.*, No. 11-cv-1962 (C.D. Cal. December 20, 2011).

Mr. Scharf represented no fewer than five individuals in connection with the SEC's investigation, including the defendant.[1] He also purported to represent Signalife itself. Specifically, Mr. Scharf represented or represents former Signalife board member Jennifer Black, *see* Exhibit 1 at *2–*3; former Signalife co-Chief Executive Officer Willie Gault, *see* Exhibit 2 at 2–3, Exhibit 3 at 2; and Signalife board member and Chief Executive Officer Rowland Perkins, *see* Exhibit 4 at 2–3.[2]

In addition, and likely most fatally to his instant request to appear as defense counsel in this case, Mr. Scharf represented Martin Carter. He sent a Wells submission to the SEC on behalf of Mr. Carter and others, *see* Exhibit 5 at 6 (describing Mr. Carter as "a brilliant electronics wizard, but a simple man who is incapable of harboring devious plots"), and along with the defendant, he represented Mr. Carter during Mr. Carter's testimony before the SEC on February 25, 2010. See Exhibit 6 at 2–3. Mr. Carter's testimony was among the false testimony referenced in Count 14 of the Indictment (Dkt. No. 3 at ¶¶ 25–29), and was the false testimony Mr. Carter admitted giving and conspiring to give when pleading guilty to a federal crime in the District of Columbia. *See* Exhibit 7 at 3–4. Notably, and perhaps because of Mr. Scharf's first-hand knowledge of events related to Count 14, the defendant listed Mr. Scharf (along with several of Mr. Scharf's current and former clients) on the defendant's witness list. (Dkt. No. 62.)

---

[1] Mr. Scharf's prior representation of the defendant included, but was not limited to, appearing with the defendant when the defendant testified four separate times before the SEC.

[2] The United States believes that Mr. Scharf may currently represent or may previously have represented additional individuals employed by or otherwise associated with Signalife, including William Matthews and Jim Fiedler, both of whom, like Messrs. Gault and Perkins, Ms. Black, and Mr. Scharf himself, are included on the defendant's witness list. (Dkt. No. 62.)

Despite this panoply of actual and potential conflicts, Mr. Scharf now seeks this Court's permission to represent the defendant in this case. His request disregards a number of Florida Rules, and should be denied.

## II. ARGUMENT

While the Sixth Amendment guarantees a defendant in a criminal trial the right to counsel of his choice, "that right is not absolute." *United States v. Ross*, 33 F.3d 1507, 1522–23 (11th Cir. 1994). Moreover, when proposed defense counsel has an actual conflict of interest, "the client is denied effective assistance of counsel, and the attorney may be disqualified . . . . Indeed, even a potential conflict suffices for disqualification." *Id.* at 1523 (citing *United States v. Martinez*, 630 F.2d 361, 362 (5th Cir. 1980), *cert. denied*, 450 U.S. 922 (1981), and *Wheat v. United States*, 486 U.S. 153, 164 (1988)).[3] Thus,

> [i]n determining whether or not to disqualify defense counsel, the court must balance two Sixth Amendment rights: (1) the right to be represented by counsel of choice and (2) the right to a defense conducted by an attorney who is free of conflicts of interests . . . . The need for fair, efficient and orderly administration of justice overcomes the right to counsel of choice where an attorney has an actual conflict of interest, *such as when he has previously represented a person who will be called as a witness against a current client at a criminal trial*.

*Ross*, 133 F.3d at 1523 (citing *Wheat*, 486 U.S. at 163, and *United States v. Casiano*, 929 F.2d 1046, 1052 (5th Cir. 1991)) (emphasis added).[4]

Despite being a member of the New York State Bar, Mr. Scharf would be bound by the Florida Rules were he to be admitted to practice before this Court. *See* Local Rule 11.1(c).[5]

---

[3] In *Bonner v. City of Prichard*, the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981. 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

[4] While *Ross* and other cases cited herein address the Court's ability to disqualify counsel found to be laboring under a conflict, the analysis for denying counsel's motion to appear *pro hac vice* should be no different, as the latter is simply a preliminary procedural step before the former would be necessary.

3

And as discussed in detail below, the Florida Rules would not permit him to represent the defendant in this case. Accordingly, the Court's "independent interest in ensuring that the integrity of the judicial system is preserved and that trials are conducted within the ethical standards to which we all adhere," *United States v. Perez*, 694 F. Supp. 854, 857 (S.D. Fla. 1988), should preclude Mr. Scharf from appearing in this case on behalf of the defendant.

### A. Mr. Scharf's Representation of Multiple Potential Witnesses Creates a Conflict

Under the Florida Rules, a lawyer shall not represent a client if the representation of one client will be directly adverse to another of the lawyer's clients, or if there is a substantial risk that the lawyer's representation of that client will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer. Florida Rule 4-1.7(a).

Similarly, "[a] lawyer who has *formerly* represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client." Florida Rule 4-1.9(a) (emphasis added). The only exception to this prohibition is if the former client "gives informed consent." *Id*. And outside of certain limited circumstances or where such information "has become generally known," an attorney shall not "use information relating to the representation [of the former client] to the disadvantage of the former client." Florida Rule 4-1.9(b).

---

[5] Furthermore, the Florida Rules at issue here are similar, if not identical, to those applicable to members of the New York State Bar. *Compare., e.g.*, Florida Rule 4-1.7 *with* New York State Rule of Professional Conduct ("New York Rule") 1.9; Florida Rule 4-1.9 *with* New York Rule 1.9; *and* Florida Rule 4-3.7 *with* New York Rule 3.7.

The Eleventh Circuit has repeatedly upheld disqualifications where an attorney's competence may be compromised because of duties owed to other clients, noting, for example, that:

> If the conflict *could* cause the defense attorney improperly to use privileged communications in cross-examination, then disqualification is appropriate. Indeed, it is also true that disqualification is equally appropriate if the conflict *could* deter the defense attorney from intense probing of the witness on cross-examination to protect privileged communications with the former client or to advance the attorney's own personal interest.

*Ross*, 33 F.3d at 1523 (emphases added); *see also Freund v. Butterworth*, 165 F.3d 839, 859 (11th Cir. 1999) ("The rule of law in this circuit is (and will continue to be) that 'once the former client [petitioner] proves that the subject matters of the present and prior representations are 'substantially related,' the court will irrebuttably presume that relevant confidential information was disclosed during the former period of representation'") (internal citations omitted); *United States v. Jones*, 52 F.3d 924, 926 (11th Cir. 1995) ("This Court has stated that the harm from representing conflicting interests lies not just in what the attorney does but also in what the advocate finds himself compelled to refrain from doing") (internal citations omitted). The concern that an attorney might improperly deploy his former client's confidential information to that former client's disadvantage in the course of representing his current client is particularly acute where the former client has not waived the conflict. *See, e.g., United States v. Campbell*, 491 F.3d 1306, 1312 (11th Cir. 2007) (noting that such situations "present[] a stronger justification for disqualification").[6]

---

[6] Even if Mr. Scharf were to suggest that one or more of his current or former clients waived the conflicts described above, this would not remedy the problem. Not only is this Court not obligated to accept a waiver, *see Ross*, 33 F.3d at 1524 (citing *Wheat*, 486 U.S. at 162), but it would strain credulity for Mr. Scharf to suggest that generally worded waivers his clients may have signed at some point in the past should be considered knowing, intelligent, and voluntary waivers of, or informed consent to, the glaring conflict inherent in, for example, allowing Mr.

Here, Mr. Scharf has represented not just one, but several potential trial witnesses. Most problematic is his prior representation of Martin Carter, whose testimony is likely to figure prominently in the United States' case given his extensive involvement in the defendant's fraud scheme. Allowing Mr. Scharf to represent the defendant, after Mr. Scharf not only represented Mr. Carter in the substantially related SEC investigation (in which Mr. Carter testified falsely) would considerably diminish the likelihood that the integrity of the judicial system could be preserved or that trial in this matter would be conducted within ethical standards. *Ross*, 33 F.3d at 1523.

### B.  A "Pinch-Hitter" Would Not Remedy Mr. Scharf's Many Conflicts

Should Mr. Scharf propose remedying his multiple glaring conflicts by enlisting an "independent" attorney to cross-examine his former clients, this Court should reject that proposal as wholly inadequate to cure Mr. Scharf's conflicts. It is unlikely in the extreme that an effective "Chinese wall" could or would be erected between Mr. Scharf and the rest of the defense team as they prepare to cross-examine Mr. Carter or Mr. Scharf's other current or former clients, if only because of the sheer number of those current or former clients that are potential witnesses. Any suggestion that Mr. Scharf was being effectively "walled off" from his former clients would demand considerable skepticism, and it is for these reasons that courts in this District and elsewhere have disfavored the "pinch-hitter" solution. *See, e.g., Perez,* 694 F. Supp. at 857–58 ("further conflict and impropriety will undoubtedly occur when the government's star witness . . . is subjected to cross examination from his former attorney . . . . The suggested alternative of

---

Scharf or his co-counsel to cross-examine those clients. *See Ross*, 33 F.3d at 1524. *See also* Florida Rule 4-1.7 (requiring "informed consent, confirmed in writing or clearly stated on the record at a hearing" to a waiver of a conflict between interests of current clients); Cmt. to Florida Rule 4-1.9 (making waiver of conflicts between interests of current and former clients only available where "the former client gives informed consent").

6

obtaining a pinch hitter to cross-examine [defense counsel's former client] is uninviting.  The strictures of the Code of Professional Responsibility does [*sic*] not support such an alternative[, and w]hile Defendant maintains that his defense is not directed to an attack on [the former client], it is clear that the [former client] is the lynch pin of the government's case against [him]."); *see also, e.g., United States v. Tinsley,* 166 F.3d 336, at *8 (4th Cir. 1998) (per curiam); *United States v. Campbell*, 2005 WL 6436177 (N.D. Ga. March 9, 2005); *United States v. Miranda*, 936 F. Supp. 945, 951–52 (S.D. Fla. 1996).

### C.  Mr. Scharf is a Potential Witness in This Case

The Florida Rules unequivocally forbid a lawyer from serving as counsel at a trial "in which the lawyer is likely to be a necessary witness on behalf of the client," except in four limited circumstances: (1) where his testimony would relate to an uncontested issue; (2) where his testimony would relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony; (3) where his testimony relates to the nature and value of legal services rendered in the case; or (4) where disqualification of the lawyer would work substantial hardship on the client.  Florida Rule 4-3.7(a).  "A purpose of the rule is to prevent the evils that arise when a lawyer dons the hats of both an advocate and witness for his or her own client.  Such a dual role can prejudice the opposing side or create a conflict of interest."  *Scott v. State*, 717 So.2d 908, 910 (Fla. 1998) (per curiam) (internal citations omitted).

As noted above, Mr. Scharf was one of two non-SEC witnesses to what occurred in and around Mr. Carter's false testimony to the SEC, with the other witness being the defendant.  Presumably this is why the defendant himself listed Mr. Scharf as a potential trial witness.  (Dkt. No. 62.)  Accordingly, this Court need look no further than the defendant's own predictions as to

whether Mr. Scharf might be a witness to see that his participation as counsel would be in contravention of the Florida Rules, and allowing him to represent the defendant would invite precisely the "evils" of which the Florida Supreme Court has warned.

### III.  CONCLUSION

None of the principles and restrictions embodied in the Florida Rules and cases cited herein can be unknown or surprising to Mr. Scharf or the defendant.  At the outset of nearly every one of his clients' testimony before the SEC, one or more SEC attorneys explicitly informed Mr. Scharf (in the presence of the defendant) of the perils of purporting to represent multiple subjects of an investigation.  *See, e.g.*, Exhibit 4 at 3 ("Counsel, we understand that you represent multiple witnesses in this investigation.  Under the Canons of Ethics, it is your responsibility to the witness to determine whether you have a conflict of interest").  Mr. Scharf repeatedly acknowledged those admonitions.  *See, e.g.,* Exhibit 8 at 2–3 ("I don't need to be reminded but thank you"); Exhibit 1 at *5 ("it should be taken for granted that we know the rules that bind our professional behavior.  We don't have to be reminded of that.")

Mr. Scharf's effort to insert himself into this case is profoundly troubling.  It is also consistent with the defendant's previous dilatory gambits.[7]  Allowing Mr. Scharf to appear in this case on the defendant's behalf would impair the integrity of the judicial system and prevent this Court from ensuring that trial in this matter is conducted within ethical standards, and the motion seeking his admission *pro hac vice* should be denied.

---

[7] Even at this late date, there is in the instant motion a reference to another attorney becoming involved if that attorney and the defendant "can complete arrangements in this regard."  (Dkt. No. 86 at ¶ 2.)  This promise is reminiscent of those the defendant repeatedly made (and broke) to this Court following the continuation of his October 2012 trial date.

                                                          Respectfully submitted,

                                                          DENIS J. McINERNEY
                                                          Chief
                                                          Fraud Section

DATED:      February 13, 2013      By:         /s/
                                                          ALBERT B. STIEGLITZ, JR.
                                                          Assistant Chief
                                                          KEVIN B. MUHLENDORF
                                                          Trial Attorney
                                                          United States Department of Justice
                                                          1400 New York Avenue, NW
                                                          Washington, DC 20530
                                                          Phone: (202) 514-4313 (Stieglitz)
                                                          Fax:   (202)514-0152

## **CERTIFICATE OF SERVICE**

      I hereby certify that on February 13, 2013, a true and correct copy of the foregoing document has been delivered to counsel of record via the Court's Electronic Filing System.

                                                                         /s/
                                                      Albert B. Stieglitz, Jr.