```
 1                  UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF FLORIDA
 2
                    Case No. 11-80205-CR-MARRA
 3
    UNITED STATES OF AMERICA,      )
 4                                 )
         GOVERNMENT,               )
 5                                 )
         -v-                       )
 6                                 )
    MITCHELL J. STEIN,             )
 7                                 )
         DEFENDANT.                )    West Palm Beach, Florida
 8                                 )    May 16, 2013
    _____)
 9

10                 VOLUME 9, PAGES 1 - 183

11            TRANSCRIPT OF JURY TRIAL PROCEEDINGS

12         BEFORE THE HONORABLE KENNETH A. MARRA

13               UNITED STATES DISTRICT JUDGE

14

15   Appearances:

16   FOR THE GOVERNMENT         Albert Stieglitz, ESQ., and
                                Kevin Muhlendorf, ESQ.
17                              U.S. Department of Justice
                                Criminal Division
18                              1400 New York Avenue, Northwest
                                Washington, DC 20530
19
     FOR THE DEFENDANT          Mitchell J. Stein, Pro Se
20                              1551 North Flagler Drive, #1208
                                West Palm Beach, FL 33401
21   -and-
     (Standby Counsel)          Charles G. White, ESQ.
22                              1031 Ives Dairy Road, Suite 228
                                Miami, FL 33179
23
     Reporter                   Stephen W. Franklin, RMR, CRR, CPE
24   (561)514-3768              Official Court Reporter
                                701 Clematis Street
25                              West Palm Beach, Florida  33401
                                E-mail:  SFranklinUSDC@aol.com
```

```
 1          (Call to the order of the Court.)

 2          THE COURT:  Good morning, everyone.  Please be

 3   seated.

 4          MR. STIEGLITZ:  Good morning, Your Honor.

 5          THE COURT:  All right.  Mr.~Stein's present.

 6          We ready to proceed?

 7          MR. STEIN:  Yes, Your Honor.

 8          Last night deep into the evening, the parties have

 9   exchanged the list of e-mails, as the Court had indicated, and

10   we've reached a stipulation regarding those e-mails which is

11   in Mr. Stieglitz's handwriting, but I have agreed to it.  I

12   will read it into the record.  That's number one.

13          There's one minor argument regarding that, and that

14   is that the chart that we prepared on this side says exhibit

15   number.  The Government doesn't want that in because it

16   suggests that it was an exhibit and it might be a longer

17   document.

18          THE COURT:  I'm sorry?  Say that again?

19          MR. STEIN:  There's just reference in the

20   communication to an exhibit number, because we had previously

21   marked these as exhibits.  The Government doesn't want the

22   reference to an exhibit number.  I do.  That's the only issue

23   regarding the stipulation.

24          THE COURT:  Well, the problem is if you refer to as

25   an exhibit number, then the jury's going to think there's a
```

 1    document that goes with that exhibit number.

 2         MR. STEIN:  The stipulation is that there was a

 3    written communication.

 4         THE COURT:  Exactly.  That's just like Mr. Stieglitz

 5    read into the record, there was a stipulation about various

 6    things that he read.

 7              You're going to read this as a stipulation --

 8         MR. STEIN:  This is attached to the stipulation, and

 9    they don't want it to refer to the exhibit numbers of those

10    communications, and I do, and whatever the resolution the

11    Court wishes is fine with me.

12         THE COURT:  Okay.  I'm just saying it doesn't make

13    sense to have an exhibit number because it's going to confuse

14    the jury.  They're going to think that there's an exhibit that

15    goes with that stipulation, and there won't be an actual

16    physical document to match up with the number.  So it's going

17    to cause confusion if you refer to an exhibit number that's

18    not in evidence.

19         MR. STEIN:  So I would just be referring to the fact

20    that there were communications on this date.

21         THE COURT:  That's my understanding is what the

22    stipulation was.

23         MR. STEIN:  Then I would stipulate to the whole thing

24    with the Government.  We would redact the line of exhibit

25    numbers, and I would read it in the record right now.

```
 1              THE COURT:  Okay.

 2              MR. STEIN:  Your Honor, number two.  In the

 3    communications last night -- please correct me if I'm wrong.

 4    In the communications last night, I indicated that a Freedom

 5    of Information Act settlement agreement between ARC Finance

 6    Group and the Securities and Exchange Commission regarding

 7    communications with Batelle Memorial Institute was entered

 8    into.  It's been stipulated as authentic, but the Government

 9    does not believe it's relevant or admissible and I do.  I

10    would be moving -- it's exhibit 34, Defendant's exhibit 34.  I

11    would move that into evidence, and it's only three pages long.

12    And we would need a ruling on that.

13              And then I notified the Government last night that

14    the next witness in order would be Rowland Perkins, his Rule

15    15 deposition.  We've gone through the objections.  A lot of

16    them we've stipulated to do away with.  We're ready to play

17    that deposition.  However, if all this other evidence comes

18    in, I probably won't play his deposition and I'll probably

19    rest, with the exception of two things.  Number one is the

20    check that we mentioned yesterday, which I've now sent the

21    Government, along with the e-mail that came with it.

22              I'm going to be offering those on into evidence, the

23    check regarding the purchase orders, through Mr. Feidler or by

24    stipulation.  The Government said they may or may not

25    stipulate.  I don't know the answer to that.  It's two pages.
```

```
 1    If they stipulate, then that would come in.  If they don't, I
 2    would lay the foundation with Mr. Feidler and accept whatever
 3    the Court's ruling is.
 4              THE COURT:  Okay.  You kinda lost me a little bit
 5    there.
 6              You're going to read the stipulation --
 7              MR. STEIN:  Yes, Your Honor.
 8              THE COURT:  -- that you've agreed to.
 9              MR. STEIN:  Yes, Your Honor.
10              THE COURT:  What about the document with the
11    flowchart?
12              MR. STEIN:  You mean the document with the
13    communications?
14              THE COURT:  The flowchart on the summary, the summary
15    report, Dr.~Harmison's summary report, and the flowchart.
16              MR. STEIN:  You mean the board of directors.
17              THE COURT:  It was the organizational chart.
18              MR. STEIN:  Yes, the organizational chart.  We would
19    stipulate that into evidence, as well, the first and last
20    page.
21              MR. STIEGLITZ:  I think it's defense exhibit 14, if
22    I'm not mistaken, Your Honor.
23              THE COURT:  Okay.  All right.  So you're going to
24    move that into evidence.
25              MR. STEIN:  We would move that into evidence, we
```

```
 1    would publish it on the screen and move it into evidence.

 2            THE COURT:  Yeah.

 3            MR. STEIN:  And then, Your Honor --

 4            THE COURT:  Then you said you're going to -- you are

 5    or you're not going to present the deposition of Mr. Perkins?

 6            MR. STEIN:  Prior to presenting the deposition

 7    testimony, I'm going to move into evidence the check from

 8    Thomas Tribou that we were reviewing yesterday that the

 9    Government now has.  I don't know if they stipulate to it or

10    not because we didn't get there.

11            THE COURT:  Do you have a position on that check yet?

12            MR. STIEGLITZ:  We do, Your Honor.

13            You know, yesterday Mr.~Stein indicated this was

14    something he had received from Wachovia.  That's what he

15    indicated to the Court and to us.  That's not what it is, it's

16    a -- and that there was a cover letter.  What this is is a

17    hearsay e-mail from another individual purporting to forward

18    this check.  So we do have an objection.  If Mr.~Stein wants

19    to call the sender of this e-mail, who I believe is Norma

20    Provencio, or call Mr. Tribou, we don't have an objection to

21    that.  But in terms of him admitting this e-mail, which is

22    hearsay, we do have an objection, Your Honor.

23            MR. STEIN:  And, Your Honor, I predicted that

24    objection and dutifully am prepared, A, to mark it, and admit

25    it into evidence, authenticate it and admit it as an exception
```

1    to the hearsay rule through Mr. Feidler, and to the extent the

2    Court objects to it --

3            THE COURT:  I don't object to anything.  I just make

4    rulings.

5            MR. STEIN:  To the extent the Court deems that it's

6    not admissible and hearsay, the check and the sending of it, I

7    have identified Eleventh Circuit case law directly on point,

8    and I'm prepared to have that argument now or at any other

9    time.  That's only a two-page exhibit.

10           If all of that evidence comes in, the evidence we

11   just indicated plus the two pages, I'm not going to call

12   Mr. Perkins and I'm going to rest today.

13           THE COURT:  Okay.  That's a little unexpected,

14   because we don't have our jury instructions resolved yet.

15   Anyway, that's kind of why I wanted to get a feel for what

16   we're doing.

17           So you may or may not play Perkins' deposition

18   depending upon what I rule on some of these exhibits you want

19   to present?

20           MR. STEIN:  Just what you rule on the check and the

21   e-mail, two pages.

22           THE COURT:  If I sustain the objection, does that

23   mean you are going to play the deposition?

24           MR. STEIN:  Yes.

25           THE COURT:  But if I allow the documents to go into

```
 1   evidence you're not going to play the deposition?
 2           MR. STEIN:  That's correct, Your Honor.
 3           THE COURT:  Just out of curiosity, does the
 4   deposition deal with the check?
 5           MR. STEIN:  The deposition does not deal with the
 6   check.  The deposition deals with the purchase orders at
 7   issue.  There are questions about them and Mr. Perkins'
 8   knowledge about them.  Mr. Pasano took the deposition and
 9   cross-examined, but it does not deal with the check.
10           THE COURT:  And what was it about this other
11   document, something about a Freedom of Information Act
12   request?
13           MR. STEIN:  There was a Freedom of Information Act
14   lawsuit filed by ARC Finance Group against the Securities and
15   Exchange Commission.  There was a settlement agreement
16   reached.  It was signed by someone the DOJ knows by the name
17   of Kevin Sillonski (phonetic) for the SEC August 10th, 2012.
18           The settlement agreement is very simple.  It says
19   that the SEC has in their investigation of the company, has
20   not contacted the entity, Batelle Memorial Institute, and has
21   not received any records.  That's it.
22           THE COURT:  May I see this, please?
23           MR. STEIN:  Yes, Your Honor.
24           THE COURT:  Do I understand that the purpose for
25   admitting this settlement agreement is just for you to
```

 1    establish that the SEC never contacted Batelle Memorial

 2    Institute and had not received any records from Batelle

 3    Memorial Institute?  Is that the only reason you're admitting

 4    this or seeking to admit this?

 5            MR. STEIN:  That is the only reason I am seeking to

 6    admit the document, Your Honor.

 7            THE COURT:  All right.  What's the Government's

 8    position on it?

 9            MR. MUHLENDORF:  It's hearsay, Your Honor.  It's --

10    and it's not relevant at all.  What the SEC did or didn't do

11    has nothing to do with the facts of this case.

12            THE COURT:  What's the relevance?

13            MR. STEIN:  The relevance is that there's been

14    testimony there was a meeting with Batelle Memorial Institute

15    and Martin Carter at which revelations were made and at which

16    he was there as the nominal CTO or whatever Mr. Feidler

17    testified to.  This was also told to the SEC, it's in

18    filings --

19            THE COURT:  What was told to the SEC?

20            MR. STEIN:  That Batelle had fabricated this device

21    completely going back to 2004, and the fact that they never

22    contacted them, notwithstanding --

23            THE COURT:  I'm sorry, you're losing me.

24            MR. STEIN:  I'm sorry.

25            THE COURT:  That Batelle fabricated a device?

```
 1              MR. STEIN:  Yes, the fabrication is what happens

 2     after the FDA approval.  They go through their plant and they

 3     have to, under FDA law, they have to satisfy varied

 4     requirements.  This is in the filings.

 5              THE COURT:  But what evidence was presented about any

 6     of that?

 7              MR. STEIN:  It's in -- it's in the filings that are

 8     in evidence, and it's in certain filings.

 9              THE COURT:  What filings that are in evidence?

10              MR. STEIN:  10-Ks that are in evidence and

11     additional --

12              THE COURT:  In part of the 10-Ks there's information

13     about Batelle fabricating a device after -- at some point in

14     time?

15              MR. STEIN:  Absolutely.  And I will also be

16     requesting under the Federal Rules of Evidence 201 that the

17     Court judicially notice about two or three public filings

18     which we've printed out that have pages about Batelle.

19              THE COURT:  Okay.  I guess I'm kind of lost in trying

20     to understand how this ties into the case.

21              What difference does it make if Batelle fabricated

22     something related to this Fidelity 100 product?

23              MR. STEIN:  It's the meeting in 2010 with Martin

24     Carter and Batelle representative that's already been

25     testified to that they can elicit cross-examination on.  The
```

 1    fact that during a five-year investigation they never

 2    contacted Batelle is probative of the competency of the

 3    investigation, which is critical to my defense.  It may --

 4    it's something the jury may give no weight to, but it

 5    certainly is evidence about the propriety of the investigation

 6    or the outcome of the investigation which Mr. Clark has

 7    testified to, and he's sitting in the courtroom.

 8            And he can testify.  I'm going to re-call him for

 9    five minutes.  He can testify there's no need to contact

10    Batelle, I didn't care.

11            THE COURT:  I'm completely lost.

12            MR. MUHLENDORF:  Your Honor, even if any of that was

13    true, and I'm not sure that it is true or in evidence, what

14    the SEC did in its investigation is completely irrelevant to

15    what happens in this courtroom.

16            THE COURT:  I'm failing to see the relevance of

17    whether the SEC contacted Batelle Memorial Institute or

18    obtained records from Batelle Memorial Institute in the SEC's

19    investigation of Heart Tronics.  I'm trying -- I'm just not

20    understanding the relevance of those facts to this case.  I'm

21    lost.  And I'm sorry, Mr.~Stein, I'm trying to understand how

22    it relates, but I'm having a great deal of difficulty.

23            MR. STEIN:  Your Honor, standby counsel has case law

24    that, for purposes of an investigation, the SEC and the DOJ

25    are not walled off.  They are considered the United States of

```
1    America.  Whether or not they contacted the company that
2    fabricated the device and met with Martin Carter as the CTO in
3    2010 is relevant to -- there's a paragraph in the indictment
4    says he's a chauffeur.  So, I mean, it's relevant to that.  It
5    may not be viewed by the jury as significant or material, but
6    it's certainly relevant.  And Mr. White can identify that
7    case.
8         THE COURT:  How?  I'm trying -- assume the SEC and
9    the United States Department of Justice are one and the same
10   for purposes of this argument.  I'm still trying to understand
11   what difference it makes if they contacted Batelle or not.  I
12   don't understand what -- or got records from Batelle or not.
13   I don't understand --
14        MR. STEIN:  Well, had they contacted them and learned
15   Mr. Carter was actually performing services and working with
16   Batelle, that would contradict the testimony --
17        THE COURT:  But where's the evidence that Mr. Carter
18   was actually working with Batelle?  Where's the evidence of
19   that?  And that if they had contacted Batelle they would have
20   learned that?  Where's the evidence they would have learned of
21   that if they contacted Batelle?  I don't remember any evidence
22   that Mr. Carter worked with Batelle.
23        MR. STEIN:  There's the evidence so far, and I would
24   elicit more, is that Mr. Carter was at this critical meeting
25   in 2010 with Batelle, with Mr. Perkins.  Mr. Feidler testified
```

```
 1   to it yesterday.
 2           THE COURT:  Mr. Feidler said he didn't say a word at
 3   the meeting.
 4           MR. STEIN:  Correct.
 5           THE COURT:  Which is exactly what Mr. Carter said.
 6           MR. STEIN:  Correct.
 7           THE COURT:  So how does that prove that he was
 8   working with Batelle?
 9           MR. STEIN:  Mr. Carter also testified he was going to
10   travel back there to do a site visit of Batelle's
11   headquarters, which contradicts, and that's direct testimony,
12   that's my cross-examination, and that contradicts a direct
13   allegation in the indictment.
14           THE COURT:  I'm sorry.  I don't see the relevance.
15   I'm going to sustain the objection.
16           MR. STEIN:  Your Honor, the only remaining issue of
17   documents is the check and the e-mail which I have, which I
18   believe are admissible even without calling a witness.
19   There's two pages.
20           MR. MUHLENDORF:  Your Honor, before we get there, on
21   the Perkins deposition, we have worked a little bit this
22   morning on it.  We have dealt with some of the objections, but
23   mechanically, I'm not sure how this is going to work.
24           THE COURT:  I'm not sure Mr.~Stein's going to offer
25   it.
```

```
 1            MR. MUHLENDORF:  What I mean is there are laced

 2    throughout there 30 objections or so that we have not agreed

 3    upon.  So mechanically, I'm not sure how that's going to be

 4    played to the jury.  Moreover, there's exhibits that need to

 5    be admitted, and we haven't -- he hasn't addressed that.

 6            THE COURT:  Mr.~Stein hasn't even said he's going to

 7    offer it.

 8            MR. MUHLENDORF:  No, I understand that, Your Honor.

 9    I'm making the point if he does decide to do that, I don't

10    want the Court to be surprised when we have to deal with all

11    this.

12            THE COURT:  I don't anticipate it's going to just

13    happen instantaneously.  I'm trying to find out what we

14    actually need to do so we can give the jury some idea of how

15    long it's going to take before we bring them in here.

16            MR. MUHLENDORF:  Understood.

17            THE COURT:  Because they've been sitting in there now

18    for 20 minutes, and I'm still not sure what's next.

19            MR. MUHLENDORF:  I understand, Your Honor.

20            MR. STEIN:  Your Honor, the only thing that's left

21    are two pages, the check and the e-mail.  I'm prepared to hand

22    those to the Court, explain to the Court why they have to be

23    admitted, and if I have to call Mr. Feidler, admit them.  If

24    those two documents come into evidence, I am not going to call

25    Mr. Perkins and I'm going to rest.  So there is no other issue
```

 1    besides those two pages.

 2            THE COURT:  So the only remaining issue as far as

 3    you're concerned is whether those two pages come into

 4    evidence?

 5            MR. STEIN:  That's correct, Your Honor.

 6            THE COURT:  And if they come into evidence, your plan

 7    is to rest your case?

 8            MR. STEIN:  And proceed to the charging conference

 9    and the rest.  Yes, Your Honor.

10            THE COURT:  All right.  And what cases do you have

11    that you think supports the admission of those two documents

12    or those two pages?  And if I could see the two pages, please.

13            Can we tell the jury that we're going to be maybe

14    about another 15 or 20 minutes before we even are ready to

15    give them some idea of what we're doing?

16            MR. STEIN:  Of course.

17            THE COURT:  Why don't you tell the jurors we're going

18    to be at least 15 more minutes.

19            You have the cases?

20            MR. STEIN:  Oh, the cases?

21            THE COURT:  Well, and the document.  Let me see the

22    document, too, the two pages and the cases.

23            MR. STEIN:  Your Honor, I have the case citations,

24    and there are many cases and quotations from the cases.

25            THE COURT:  Just give me your best case.

1        Did you have the cite for me?

2        MR. STEIN:  Yes, Your Honor.  I have many cites.  If

3   I may approach?

4        THE COURT:  Let's just start with what you think the

5   best case that you got, and let me see if that helps me.

6        MR. STEIN:  The case, the first case is in the

7   Eleventh Circuit.  It's United States versus Siddiqui, which

8   is spelled S-i-d-d-i-q-u-i, 235 F.3d 1318, at 1322, Eleventh

9   Circuit, 2000.  Stands for the proposition and the holding was

10  the authenticity of e-mail evidence is generally governed by

11  Federal Rule of Evidence 901(a), which requires only, quote,

12  evidence sufficient to support a finding that the item is what

13  the proponent claims it is under Federal Rule of Evidence

14  901(b), contents, substance, internal patterns or other

15  distinctive characteristics of the item, taken together with

16  all of the circumstances.

17        The Court already has in evidence e-mails bearing

18  Signalife, e-mails from Tracy Jones, and this e-mail has those

19  characteristics.

20        Your Honor, the additional, there are additional

21  evidence rules of why these e-mails should come into evidence

22  without any testimony.

23        THE COURT:  Could I interrupt you for just a second?

24        MR. STEIN:  Of course.

25        THE COURT:  The rule you just cited deals with

 1    authenticating something.

 2              MR. STEIN:  Yes.

 3              THE COURT:  Not with whether it's admissible under

 4    the hearsay rule.

 5              MR. STEIN:  Yes.

 6              THE COURT:  That's two different issues.

 7              MR. STEIN:  If the Government stipulates with us its

 8    authenticity, I will then go into the hearsay rule.

 9              THE COURT:  So you're saying -- I'm trying to

10    understand.  You're saying that any e-mail is

11    self-authenticating?

12              MR. STEIN:  No, I'm not.  I have other cases and

13    other propositions dealing with authentication, particularly

14    that if an e-mail chain bears the mark of a company, which

15    this e-mail chain does, particularly the name of an

16    organization, particularly if it's on the e-mail address, and

17    tracyjones@signalife.com is on that e-mail, under evidence

18    code 9027, which provides for self-authentication of, quote,

19    trade inscriptions and the like, an inscription, sign, tag or

20    label purporting to have affixed in the course of business and

21    indicating origin, ownership or control is authentic,

22    self-authenticating.

23              The cases in that regard, and I can repeat these, I

24    know I'm going fast, super highway, which is emblematic if I'm

25    going fast, Consulting Inc. versus Tech Wave, Inc., 1999

1    United States District Lexis 17910 at 6 and 7, Illinois 99.

2    And then, Your Honor, if an e-mail bears a customary format of

3    an entity and the person sending it under a series of nine

4    cases, which I can cite, the evidence is self-authenticating.

5            If we go to the hearsay rule, there are additional --

6            THE COURT:  I think that's their objection, it's a

7    hearsay objection.  I don't think they're challenging that

8    this is an actual e-mail that was sent from Ann Provencio, to

9    J.M. Woodbury.  I don't think they're challenging that.  Maybe

10   they are.

11           MR. STIEGLITZ:  Correct, Your Honor.

12           THE COURT:  And I don't think they're challenging

13   that Tracy Jones sent an e-mail to Ann Provencio.  So I don't

14   think it's an authenticity issue; I think it's a hearsay

15   issue.

16           MR. STEIN:  Then, Your Honor, the e-mail then, Your

17   Honor, states things that the Court wants to know why there's

18   an exception to the hearsay rule, and what it states it's a

19   direction transmitting a check regarding one of the purchase

20   orders in evidence in this case.  And under DirecTV versus

21   Wyman Murray, 307 F.Supp. 2d 764, DDC 2004, the Court held

22   that e-mail records may be admitted under the business records

23   exception to the hearsay rule when they're kept in the normal

24   course of business and created at or near the time of the

25   matter set forth and deal with financial transactions.

1             Exhibit 411 is a check.  As the Court was indicating

2     yesterday, we can't take chatter in e-mails, but certainly I

3     can establish with Mr. Feidler that the receipt or payment of

4     money is something that's regularly maintained in the ordinary

5     course of business with every company, and this is a check

6     received by the company regarding one of the purchase orders,

7     and this is an e-mail simply transmitting it.

8             I'm not admitting it for the truth of the matter

9     asserted but for the fact that it was transmitted.

10            THE COURT:  May I see the case that -- do you have a

11    copy of it?

12            MR. STEIN:  I don't have a copy of that particular

13    case.  It was an Eleventh Circuit.

14            THE COURT:  I'm sorry, what was the cite again?

15            MR. STEIN:  The cite was 307 F.Supp. 2d 764, DDC

16    2004.

17        (Brief pause in proceedings.)

18            THE COURT:  All right.  I looked at the case,

19    Mr.~Stein, and I don't think the case stands for the

20    proposition that any e-mail is a business record.  The Court

21    went through a thorough analysis of a sworn affidavit where

22    every one of the requirements under Rule 803(6) were satisfied

23    by the attesting person.  So, again, the mere fact that it's

24    an e-mail, I don't think that case stands for the proposition

25    that any e-mail is a business record or falls under the

1    business record exception.  You need all the other

2    prerequisites to establish it's a business record.  So I think

3    you need to, again, have testimony that would lay the

4    foundation.

5            MR. STEIN:  I agree with the Court.  I would propose

6    to do that with Mr. Feidler.

7            THE COURT:  Okay.  Do you want to bring him in here

8    and see if you can do it?

9            MR. STEIN:  Yes, Your Honor.

10           THE COURT:  We don't need to do it in the presence of

11   the jury.

12           MR. STEIN:  No, Your Honor.

13           THE COURT:  Well, let's bring him in and see if you

14   can lay the foundation.

15           MR. STEIN:  Thank you, Your Honor.

16           THE COURT:  Here you go.

17           MR. STEIN:  Your Honor, these are exhibits 410 and

18   411 for identification.

19           THE COURT:  I thought that we're talking about one

20   exhibit.

21           MR. STEIN:  Oh, it can be one exhibit, 410, if the

22   Court would rather.

23           THE COURT:  So you're saying each page is a separate

24   exhibit?

25           MR. STEIN:  Well, yeah, because the check may come in

```
 1    and the other one may not.
 2              THE COURT:  Good morning, sir.
 3              THE WITNESS:  Good morning, Your Honor.
 4              THE COURT:  Thank you for coming back.  Sorry to keep
 5    you waiting.
 6              THE WITNESS:  My pleasure.
 7              THE COURT:  You're still under oath.  Have a seat.
 8    We're still going to do some preliminaries with the document
 9    issue, so if you wouldn't mind answering Mr.~Stein's
10    questions.
11              James N. Fiedler, Defendant's witness, sworn.
12                        Proffer Examination
13    BY MR. STEIN:
14    Q    Mr. Feidler, have you talked to anyone in the courtroom
15    since your testimony yesterday?
16    A    No.
17    Q    You recall your testimony regarding the custodianship over
18    Signalife's records and the maintenance of the database?
19    A    Yes.
20    Q    In connection with the maintenance of the database,
21    distinguishing e-mail chatter or communications from e-mails
22    dealing with payments, were the e-mails dealing with payments
23    in the database treated differently in any way?
24    A    No.
25    Q    Are you able to discern from looking at documents whether
```

```
 1    or not they were contained in the database as you've testified
 2    extensively to it yesterday?
 3    A   Yes.
 4             MR. STEIN:  May I approach?
 5             THE COURT:  Yes.
 6    BY MR. STEIN:
 7    Q   I'm going to show you what's been marked as defense
 8    exhibits 410 and 411 and ask you from your knowledge, those
 9    came from the database that you've testified to that was
10    established in 2009 and was before the SEC and the company
11    from Renew Data and from the DNL carrier paying for them?
12    A   I'm sorry.  I was reading them.  I didn't hear your
13    question.
14    Q   Are these documents contained in the Signalife database to
15    the best of your knowledge?
16    A   I can't tell.
17    Q   Is there anything -- any other documents that could
18    refresh your recollection regarding this surrounding documents
19    that might pertain to this?
20    A   The database is over three terabytes in volume, and I
21    haven't read every document that's in the database.  There
22    well could be, but I couldn't tell you offhand.
23    Q   So showing you additional documents from the database that
24    you would know, could that refresh your recollection about
25    this, or you're positive you have no recollection?
```

```
 1              And let's separate the two documents.  Let's first
 2    talk about 410 and then talk about 411.
 3    A    I don't have any recollection.
 4    Q    And with other documents, that wouldn't assist in
 5    recollection, past purchase orders or anything?
 6    A    I would have to go into the database.  I know -- there's a
 7    lot of documents in the database.  I'd have to go in and look
 8    at it.
 9    Q    I see.
10              So if I gave you a laptop computer and we put it on
11    the screen and you went through the database, then you could
12    tell me for certain whether these documents were maintained in
13    there, if you saw them in the database?
14    A    Well, I need someone to help me go into the database, but,
15    yes, it could be done that way.
16              MR. STEIN:  Your Honor, we'd like to do that
17    demonstration right now.  The database is available on the
18    Internet, and it's managed by him.  So he knows -- he's been
19    in there before.  He knows what it looks like.  We can go
20    right to the document.
21              MR. STIEGLITZ:  Your Honor, may I just ask two
22    questions of the witness that may put this to bed?
23              THE COURT:  Sure.
24              MR. STIEGLITZ:  May I do it from here?  Is that all
25    right?
```

```
 1              THE COURT:  Yes.
 2                     Voir Dire Examination
 3    BY MR. STIEGLITZ:
 4    Q   Mr. Feidler, good morning.  We've not spoken before,
 5    right?
 6    A   No.
 7    Q   Mr. Feidler, the date of the e-mail before you is -- let's
 8    just look at the very top one -- is October 24th, 2007; is
 9    that right?
10    A   That's correct.
11    Q   Okay.  And the date of the attachment to it is
12    September 28th, purports to be September 28th of 2007, that
13    check; is that correct?
14    A   Yes.
15    Q   And you didn't become affiliated with Signalife until I
16    think your testimony was 2009; is that right?
17    A   That's correct.
18    Q   So you have no personal knowledge of how this e-mail came
19    to be, assuming it even is in this database that Mr.~Stein's
20    referring to, you have no personal knowledge of how it came to
21    be there or anything like that, do you?
22    A   That's correct.
23              MR. STIEGLITZ:  Okay.  Thank you, Your Honor.
24                    Proffer Examination (Cont.'d)
25    BY MR. STEIN:
```

1  Q   The redirect is, you were involved in the process of

2  putting together the database; is that correct?

3  A   Yes.

4  Q   And were there -- did you witness with your eyes hard

5  drives being picked up by counsel for the company and put into

6  that database?

7  A   Yes.

8  Q   How many -- approximately how many hard drives were -- did

9  you see being picked up from the offices of the company and

10 put in the database?

11 A   Well, hard drives are picked up from a lot of places in

12 the country.  I saw hard drives going from the Laurel Canyon

13 address, but I don't recall how many there were.  There were

14 several.

15 Q   And who picked those hard drives up?  Was it counsel for

16 the company?

17 A   Yes.

18 Q   What was the name of that person?

19 A   Paul Bissett (phonetic).

20 Q   And then shortly thereafter, those documents, they came

21 from the corporate offices of the company; is that right?

22 A   That's correct.

23 Q   Were they then put in the database that you began to

24 manage?

25 A   That's correct.

```
 1              THE COURT:  Mr.~Stein, I don't mean to cut you off,
 2     but even assuming these two pieces of paper are in his
 3     database, you still haven't laid the predicate under the rule
 4     for it being -- either of them being business records.  So we
 5     are still getting past -- we haven't gotten past our whole
 6     discussion yesterday about what's required under the rule to
 7     make it a business record exception under the hearsay rule.
 8     The mere fact that it's an authentic document from the
 9     business' records doesn't make it a business record for
10     hearsay exception purposes.
11              So you're focusing on the wrong matters.
12          MR. STEIN:  I asked him yesterday about the documents
13     in general, whether they were kept in the ordinary course of
14     business and how he knows that.  I can ask him whether he's
15     aware that every document in the database was kept that way.
16              THE COURT:  It's not possible for every document in
17     his database to be a business record just because they are
18     kept by the business in the ordinary course of business.  We
19     keep all of our records.  That doesn't make it a hearsay
20     exception.  It doesn't make it a business record under 803(6)
21     just because they keep all their records.
22              MR. STEIN:  Payments to the company, Your Honor, are
23     different.
24              THE COURT:  So you need to focus on the requirements
25     of the exception.  That's what you need to focus on.  The mere
```

```
 1    fact that they keep all their records doesn't make it a
 2    business record, because that would mean every piece of paper
 3    in Signalife's database can come into evidence in a trial to
 4    prove the truth of what's asserted in those documents because
 5    they happen to keep every piece of paper in the course of
 6    their business, and it can't possibly be that every piece of
 7    paper in his database which he said was how big is a business
 8    record under 803(6).  It's just not possible.
 9             That's not why the rule is there, to make every piece
10    of paper that a business keeps admissible in court to prove
11    what's stated on the piece of paper.
12             MR. STEIN:  I'll attempt to lay the direct foundation
13    regarding payments, Your Honor.
14             THE COURT:  No, not payments.  Those two pieces of
15    paper.  Those two pieces of paper you have to prove are
16    business records.
17    BY MR. STEIN:
18    Q   Mr. Feidler, in the database, is it your testimony that
19    payments to the company were -- were documents that were
20    audited by outside companies and placed in filings?
21    A   Yes.
22    Q   And that payments to the company were therefore, because
23    they were audited, treated differently than e-mail chatter?
24    A   Yes.
25    Q   And those payments to the company, did you satisfy
```

1   yourself from talking -- have you ever talked to the outside

2   auditors for the company during the period in question?

3   A   No.

4   Q   Have you ever communicated with them by e-mail, Elliott

5   Davis?

6   A   No.

7   Q   Has Rowland --

8   A   Excuse me.  Yes, I have had e-mails with them.

9   Q   And are you aware that they have any objections to their

10  opinions that they've issued throughout the years that they

11  were auditors, and including 2007?

12  A   No, I'm not aware of it.

13  Q   And so their audits and records kept under their audits,

14  you would find those records to be more reliable if they

15  were -- if you saw them in the database; is that accurate?

16  A   Yes.

17  Q   More accurate than e-mail chatter or something?

18  A   Yes.

19  Q   And if Elliott Davis had audited them and they were in the

20  audited financial statements, which I will show you, you would

21  know that they were kept in the regular course of business?

22  A   Mandatorily, yes.

23  Q   You have no knowledge that Elliott Davis committed any

24  misconduct or negligence in their accounting practices?

25  A   No.

```
1    Q    And the regular conducted business of this entity for over

2    a decade was what?

3    A    Of Signalife?

4    Q    Yes.

5    A    Development, manufacture, and sale of the Heart Tronics

6    devices.

7    Q    So payments --

8    A    Fidelity 100.

9    Q    The Fidelity 100, the machine.

10            So payments to the entity that were audited by

11   Elliott Davis and are in the database were the records that

12   were regularly maintained regarding that activity of the

13   business?

14   A    Yes.

15   Q    And with Elliott Davis' audits -- which, you've read the

16   securities filings in general for those years, haven't you?

17   A    Some of them.

18   Q    Was it the regular practice of the business to deposit

19   checks and to record them?

20   A    That would be my assumption.

21   Q    Did you ever learn anything to the contrary from Elliott

22   Davis or anyone else?

23   A    No.

24   Q    There were not -- there were not many two and a half

25   million -- not many payments to the company over this time.
```

```
 1   It was a development stage company for many of the years, is

 2   that your testimony?

 3   A    That's my understanding.

 4   Q    When did it cease being a development stage company?

 5   A    I'm sorry?

 6   Q    When did Signalife cease being a development stage

 7   company?

 8   A    It's never really ceased being a development stage

 9   company.  Nominally somewhere, I'm estimating in the 2000 --

10   2004 to 2005 timeframe.

11   Q    After Batelle was done fabricating and clearing the

12   device?

13   A    Correct.

14   Q    Does the source of the information, i.e. being in the

15   database and your reliance on Elliott Davis, indicate to you

16   from your 45 years of experience, any lack of trustworthiness

17   regarding payments to the company for product sales?

18   A    No.

19            MR. STEIN:  Your Honor, I believe I've directly laid

20   the foundation for at least the check.

21            THE COURT:  May I see the check?

22            MR. STEIN:  Yes, Your Honor.  Just the check.

23            THE COURT:  May I see it, please?

24            MR. STEIN:  Yes.

25            THE COURT:  It doesn't -- there's no indication that
```

```
 1    it was deposited.

 2              MR. STEIN:  There is in the filings, Your Honor,

 3    there is --

 4              THE COURT:  Well, let's go back up one step.  Okay?

 5              803(6), correct?

 6              MR. STEIN:  Yes.

 7              THE COURT:  Regularly conducted business activity.

 8              MR. STEIN:  Yes.

 9              THE COURT:  Was this document created by someone at

10    Signalife?

11              MR. STEIN:  No, it was received by Signalife in the

12    ordinary course of business.

13              THE COURT:  There you go.  I mean, there you go.

14    It's got to be a record of Signalife that was created by

15    someone at Signalife in the regular course of Signalife's

16    business.  Just because some document was received by

17    Signalife doesn't make it a Signalife business record,

18    conducted and created by someone at Signalife who has personal

19    knowledge and someone at Signalife whose regular duty is to

20    create the record.

21              It was a document received, apparently, according to

22    you, and put in a file.  How does that make it a Signalife

23    business record?

24              MR. STEIN:  Because exhibit 410 is an e-mail from~--

25    the authenticity is not in question -- from Tracey Jones who's
```

```
 1    testified Norma Provencio, who has been testified about, and

 2    that message says:  "Attached is the 50,000 deposit on the

 3    purchase order."  So it doesn't say anything else.

 4              THE COURT:  Who says that?  Who said that?

 5              MR. STEIN:  Tracy Jones said in an e-mail dated

 6    October 24, 2007, Tracy Jones to Norma Provencio, "Tribou

 7    payment," and then above, Norma Provencio sent to John

 8    Woodbury and says:  "Attached is the 50,000 deposit on the

 9    9/14 purchase order."

10              THE COURT:  May I see that?

11              MR. STEIN:  Yes, Your Honor.

12              THE COURT:  Who is Provencio?

13              MR. STEIN:  She's already been spoken about in

14    evidence and is in the files.

15              THE COURT:  Who is she?

16              MR. STEIN:  She's one of the accounting consultants

17    to the company.

18              THE COURT:  Is she an employee of Signalife?

19              MR. STEIN:  She was a member of the board, and she

20    was, in addition to that, a CPA and worked for the company

21    during this period of time.  She's already been testified

22    about in this proceeding.

23              THE COURT:  I understand she was testified about, but

24    I want to know if she's an employee of Signalife.

25              MR. STEIN:  She was -- had a consulting agreement
```

```
 1    with Signalife and was on the board of directors of Signalife.

 2              THE COURT:  Anyway, what's your position?

 3              MR. STIEGLITZ:  Your Honor, the Government's position

 4    is that, again, if Mr. Stein wants to call Ms. -- well, our

 5    position is it's not a business record, so if that's the

 6    manner, the route that Mr.~Stein wants to take to get this in,

 7    we'd object.

 8              If Mr.~Stein wants to call Ms. Provencio or call

 9    Mr. Tribou and have them testify, you know, we can deal with

10    it that way and maybe he can establish a foundation through

11    them.  But as a business record it fails.

12              MR. STEIN:  Your Honor, I have no problem calling

13    Tracy Jones or John Woodbury, who -- directly on that, or

14    Ms. Provencio.  It would take a day to get them here, but I

15    have no problem doing that.

16              THE COURT:  Ms. Jones was here, wasn't she?  Didn't

17    Ms. Jones testify?

18              MR. STEIN:  Yes.  She testified for the Government.

19              THE COURT:  Didn't I ask you to do all of your direct

20    examination that you wanted to do with her while she was here?

21              MR. STEIN:  Your Honor, this document -- as

22    Mr. Feidler's indicated, the database is many terabytes.

23    There has been a denial of access to it, and this document was

24    recently discovered by me after Ms. Jones testified.

25              MR. STIEGLITZ:  Your Honor, I'd just, if I may, just
```

```
 1    briefly, I'd also add to Mr. Stein's point about did this

 2    money hit the books, Mr. Pickard was here.  Mr.~Stein had a

 3    chance to cross-examine him on.  I mean there have been a

 4    number of -- Mr. Woodbury, he had a chance to cross-examine

 5    him on this.  This is a bit late in the day for this.

 6             THE COURT:  I'm sustaining the objection.  I don't

 7    believe the proper predicate has been laid for this being a

 8    business record.  I'll sustain the objection.

 9             MR. STEIN:  Your Honor, may I make a further record

10    of what this is for purposes of appeal?

11             THE COURT:  Yes.

12             MR. STEIN:  This is an e-mail, purports to be an

13    e-mail chain from Norma Provencio to John Woodbury saying:

14    "Attached is the $50,000 deposit on the 9/14 purchase order."

15             And then before that, from Tracy Jones to Norma

16    Provencio saying:  "Tribou payment."

17             Attached to it is a $50,000 check which references on

18    the bottom left-hand quarter, purchase order number H2003001,

19    which is one of the purchase orders in this case that's been

20    admitted into evidence.

21             Your Honor, to the extent the Court is not allowing

22    either of these documents into evidence, I would like to have

23    the opportunity to subpoena either Mr. Woodbury or Ms. Jones

24    or to subpoena or attempt to get Ms. Provencio in the

25    courtroom.  She's in California -- by tomorrow morning to
```

```
 1    testify regarding this matter.
 2            THE COURT:  She's been on your witness list since day
 3    one, so I assumed that you wanted her here, you'd have her
 4    here.  We authorized subpoenas for you to, I think 16
 5    individuals.  I don't know if she was one of them.  She should
 6    be here if you want her to testify.  I'm not going to delay
 7    the trial for two or three days so you can bring somebody in
 8    that was on your witness list.
 9            Mr. White, was Ms. Provencio one of the ones that the
10    subpoena was authorized for?
11            MR. STEIN:  No, Your Honor, she was not.
12            THE COURT:  She was not because Judge Hopkins denied
13    it or because you withdrew your request for a subpoena for
14    her?  Because my understanding is you -- Judge Hopkins had a
15    hearing with you where he asked that you justify the need for
16    all of these subpoenas that you had requested, and you pared
17    down your request to, I thought it was 16.  Maybe I'm wrong
18    about the number, and he authorized the issuance of the
19    subpoena for every one of the people you requested.
20            MR. STEIN:  The Court's accurate in that regard.
21            THE COURT:  So she was not one of the ones you
22    actually requested a subpoena for?
23            MR. STEIN:  The Court is accurate when I pared --
24    exactly accurate.  When I pared down the list, she was not one
25    of the ones.
```

```
 1              THE COURT:  I'm not going to at this point in the

 2     middle of the trial, once you've already started your case,

 3     start issuing new subpoenas for people that's going to take

 4     days to get.  How can we possibly get a subpoena out to

 5     someone in California in a reasonable amount of time to be

 6     here to testify in this trial?  It's not feasible.

 7              MR. STEIN:  Judge Hopkins indicated that I was free

 8     and standby counsel was to contact witnesses.  I would attempt

 9     to contact her right now and see if she could be here tomorrow

10     morning.  I would not want to go through the subpoena process.

11     I agree with the Court.

12              Your Honor, this is -- the Court had instructed me to

13     concentrate on the purchase orders.  This is one of the

14     purchase orders.  This is a payment in Signalife's records.

15     The Court has indicated it's hearsay, and it's just a

16     direction to Mr. Woodbury that here's the check.  I've made

17     the record, and I'm asking the Court's indulgence given its

18     refusal -- its sustaining of the objection of the Government,

19     to call Ms. Provencio sometime early tomorrow.  And if the

20     Court is not inclined to do that, I've made a record of that,

21     as well.  So that's basically, I've made the complete record,

22     I believe.

23              THE COURT:  Okay.  Mr. Stieglitz?

24              MR. STIEGLITZ:  Just to complete the record, Your

25     Honor, I just note that the individual who would purportedly
```

 1  authenticate or lay the appropriate foundation for this is

 2  Mr. Tribou, and I would just note for the record Mr.~Stein

 3  doesn't appear to want to subpoena Mr. Tribou or contact

 4  Mr. Tribou.  And so I just want to put that point on the

 5  record because I suspect, based on the interview memorandum

 6  Mr.~Stein may have read, he knows what Mr. Tribou is going to

 7  say about this -- and so calling Ms. Provencio is not going to

 8  advance the ball here to just say, yes, that's my e-mail.

 9  That's not going to meaningfully advance the trial at all.  If

10  he wants to bring Mr. Tribou in . . .

11          MR. STEIN:  That's fine.  I would stipulate to bring

12  Mr. Tribou in.  If the Government is in touch with him and

13  he -- he's also fine to bring in for this check.

14          THE COURT:  Again, Mr.~Stein, this is your case now.

15  You're the one that has to provide the evidence, not the

16  Government.

17          MR. STEIN:  The Government is saying it has no

18  objection to me subpoenaing Mr. Tribou.  I'm just stating that

19  I would also accept him coming in, because he was -- he and --

20  he sent the check and he wrote apparently the purchase order

21  number that's in evidence on the check.

22          THE COURT:  When is Mr. Tribou going to get here?

23          MR. STEIN:  I have no idea what he's going to say

24  other than --

25          THE COURT:  No, not what he's going to say.  When is

```
 1    he going to get here?

 2              MR. STEIN:  Are you in touch with him?  Do you

 3    know -- can you get ahold of him?

 4              MR. STIEGLITZ:  Your Honor --

 5              THE COURT:  This is your burden.

 6              MR. STEIN:  Your Honor, with Mr. Tribou, I've only

 7    met him once or twice.  I would have to -- I don't even know

 8    what his address is, but I would -- if the Government didn't

 9    give it to me, I'd have to --

10              THE COURT:  He's on your witness list, isn't he, or

11    is he on the Government's witness list?  I'm sorry.  I

12    apologize.  He's not on your witness list; the Government's

13    witness list.

14              MR. STEIN:  He's on the Government's witness list,

15    Your Honor.

16              THE COURT:  All right.  Anyway, where are we now?

17    I'm sustaining the objection to the admission of 410, 411.

18              MR. STEIN:  It was 410 and 411.  That's correct, Your

19    Honor.

20              THE COURT:  So where are we as far as going forward

21    at this point?

22              MR. STEIN:  This is so critical to the case, that one

23    of the purchase orders was signed by a real person and may

24    have been signed by a real person, they may have paid for it,

25    that I have to -- I would have to consult.  I may now have to
```

```
 1    testify myself, because this is a critical, crucial piece of

 2    evidence.  So I'd request -- we don't have to break.  I'd

 3    request just talking to standby counsel.

 4              THE COURT:  Are you finished with Mr. Feidler as far

 5    as the jury is concerned?

 6              MR. STEIN:  Presuming that the stipulation that we

 7    talked about is read, then, yes, because the stipulation

 8    mentions what he would have testified to.  Yes.

 9              THE COURT:  So you don't need Mr. Feidler anymore?

10              MR. STEIN:  No.

11              THE COURT:  Thank you, Mr. Feidler.

12              THE WITNESS:  Thank you.

13              THE COURT:  All right.

14              You want to confer with Mr. White?

15              MR. STEIN:  Thank you, Your Honor.

16              THE COURT:  Let's take a 10-minute break.

17              I'm sorry, did you have any cross-examination?

18              MR. MUHLENDORF:  Your Honor, we're going to let that

19    go.

20              THE COURT:  Okay.  I'm sorry.

21              MR. MUHLENDORF:  That's okay.

22         (A recess was taken from 10:10 a.m. to 10:21 a.m., after

23    which the following proceedings were had:)

24              THE COURT:  Do you need more time to confer?

25              MR. STEIN:  No, Your Honor.  I'm sorry.
```

```
 1                THE COURT:  That's all right.

 2                MR. STEIN:  Your Honor, when Mr. Woodbury testified,

 3      as the Court may recall, we said we thought we were done, but

 4      we released him on 48 hours' callback.  The Court agreed to

 5      that.  The Government agreed to that.

 6                I represent to the Court and will establish if the

 7      Court wants to put me under oath, I found out about this

 8      payment -- I knew nothing about these transactions.  I found

 9      out about this payment within the last 48 hours after

10      Mr. Woodbury testified.  We reserved the right to call him

11      back, and we need to recall him because he is the person who

12      received this, and he wrote e-mails back about it.

13                So that -- we request that~-- the right to recall him

14      pursuant to the agreement reached when the Court released him,

15      the 48-hour notice agreement.

16                MR. STIEGLITZ:  May I proffer something to the Court,

17      Your Honor, on this very topic.

18                It's troubling, and I'm going to word this carefully,

19      that Mr.~Stein is representing to the Court that he knew

20      nothing about this payment.  And I'll tell you why that is.

21      In a memorandum of interviews, multiple memorandum of

22      interviews that Mr.~Stein's had in his possession for some

23      time, here's what Mr. Tribou, the individual on that check

24      would say, and I expect he would say this and this is why

25      Mr.~Stein is not asking the Court to bring him in.
```

1     Is that, in fact, that Cardiac Hospital Management

2     purchase order was something that Mr.~Stein, without any of

3     that Cardiac Hospital Management writing on, showed up in a

4     flurry of activity at the Sheraton Los Angeles Hotel, handed

5     to Mr. Tribou blank, said, hey, just go ahead and sign this as

6     Mr. Tribou was rushing off for a plane.

7         Mr. Tribou, then, who was interested in potentially

8     getting involved with Signalife, took off on his plane, gave

9     that form back to Mr.~Stein, did submit some sort of payment

10    to Signalife.  May or may not be this check.  Nothing ever

11    came of it.  Mr. Tribou never got any products from Signalife,

12    was beating on the door trying to, never was a reseller, and

13    he will deny unequivocally that he has anything to do with

14    Cardiac Hospital Management, that he's a company in Tokyo.

15        So I just have to -- I wanted to make sure the Court

16    had all the facts before it, as Mr.~Stein's suggesting, I had

17    no idea what this is all about, this is all a revelation to

18    me.  It's not.  It's been in plain text in the memorandum of

19    interview that we conducted with Mr. Tribou, and that's what

20    he would say, and I suspect that's why Mr.~Stein is not really

21    pushing to have him brought is.  So I just want to make the

22    record clear.

23        THE COURT:  I'm sorry.

24        So your understanding is that he did give a $50,000

25    payment and they did cash a $50,000 check of his?

```
 1              MR. STIEGLITZ:  That he had a $50,000 -- that a
 2   $50,000 payment was made by Mr. Tribou and got nothing for it.
 3              THE COURT:  But he did -- they did actually collect
 4   money, and that check did clear?
 5              MR. STIEGLITZ:  I'll assume so.  I don't know that I
 6   can go that far, but that he made a payment to Signalife,
 7   absolutely.
 8              THE COURT:  With that purchase order number on it?
 9              MR. STIEGLITZ:  With that blank -- I don't know.
10   See, that's -- what I don't know is whether he wrote that
11   purchase order number on there or who wrote that purchase
12   order number on there.
13              THE COURT:  All right.
14              MR. STEIN:  That is emblematic of why I have the
15   right to recall Mr. Woodbury, and I've asked that Mr. Tribou
16   be called, but the Court has said I didn't subpoena him
17   correctly, but Mr. Woodbury has already testified, he's on 48
18   hours' notice, and the Government is obviously and so far
19   correctly under the law, under the Court's viewpoint, keeping
20   out of evidence a document that now they say may have cleared
21   the bank.
22              And, Your Honor, the fact that they interviewed
23   Mr. Tribou and he said something, there are two SEC
24   transcripts of his interview, and I am well prepared to
25   cross-examine him on everything that was said.
```

```
1              THE COURT:  What is it that you think Mr. Woodbury is

2    going to be able to testify to that we should wait 48 hours

3    for him to get here?  I mean, when we told Mr. Woodbury that

4    he was subject to being recalled on 48 hours' notice, there

5    was kind of an assumption maybe on my part, maybe incorrectly,

6    that you would let him know while you were putting on your

7    other evidence and he would be here so that he could follow

8    other of your witnesses.  Not that we were going to stand down

9    for 48 hours and do nothing until he showed up.

10             MR. STEIN:  Your Honor --

11             THE COURT:  Is there something else you're going to

12   do between now and whenever Mr. Woodbury gets here?

13             MR. STEIN:  Your Honor, there is another witness

14   under subpoena, Mr. David Jones, from Batelle Memorial

15   Institute.  Counsel for Batelle is outside.  Batelle is a

16   $4 billion a year company.  I have been in touch with them for

17   them to fly down.  They have been delaying, but they're

18   representing that -- well, Mr. White just talked to them.  I

19   didn't talk to them.  But I would call that witness.

20             THE COURT:  But he's not here either.

21             MR. STEIN:  He's not here, although he was -- he

22   agreed to be here, but I got an e-mail yesterday, which, in

23   the flurry of activity I didn't see, and then I saw it at

24   11:00 o'clock, after I sent Mr. Stieglitz all of these

25   documents, and they then hired local counsel.  They hadn't
```

```
 1    hired local counsel.
 2            THE COURT:  I just want to understand what are we
 3    going to do between the time of -- we recess now or are we
 4    going to go forward with other evidence and the time that any
 5    of these witnesses show up, if they ever show up?  What are we
 6    going to do?
 7            MR. STEIN:  We could have a charging conference, and
 8    then we could call Mr. Woodbury, and then I would close the
 9    case.
10            THE COURT:  You're not planning on testifying?
11            MR. WHITE:  Pardon me, Your Honor.
12            THE COURT:  Yes.
13            MR. STEIN:  Right.  And, of course I would recall
14    Mr. Clark for five or 10 minutes, and then we could spend the
15    time having the charging conference, and then presumably
16    Mr. Woodbury would be here and he would testify, and I do not
17    plan on testifying if I have the right to recall Mr. Woodbury
18    who received and then sent e-mails out about this transaction.
19            THE COURT:  Well, what I don't want to have happen is
20    that we excuse the jury for two days until Mr. Woodbury and
21    Mr. Jones get here, and then after that, then you decide,
22    well, now I want to testify, and we've had two days where you
23    could have testified.
24            MR. STEIN:  No.
25            THE COURT:  You can testify now while we're waiting
```

```
 1    for Mr. Woodbury to get here or Mr. Jones to get here.  I'm

 2    concerned about taking a two-day break to let these witnesses

 3    get here, and then after that you say, well, after I've heard

 4    their testimony I've decided I think I need to testify.  I'm

 5    concerned about wasting that two days.

 6         MR. STEIN:  I agree with the Court.  I understand the

 7    Court's concern.  I'd just like to make a record on this.

 8         Obviously if Mr. Woodbury comes back, the Government

 9    has a right to talk to him.  He will take the stand.  He'll

10    testify to whatever he testifies to regarding these e-mails

11    and this check.  Notwithstanding that, if the Court allowed me

12    to recall Mr. Woodbury and to call Batelle tomorrow because --

13    did he say he would be here tomorrow?

14         MR. WHITE:  The question he posed to me was, when do

15    you want him.  And I can get in contact with him when you tell

16    me.

17         THE COURT:  Well, I mean, if we're going to re-call

18    Mr. Woodbury, he's not going to get here before Monday.  So we

19    might as well let Mr. Jones come on Monday, too, and not, you

20    know, have the jury here for just one witness tomorrow.  It

21    doesn't make any sense.

22         MR. STEIN:  And re-call George Clark on Monday, as

23    well, those three, and be done?

24         THE COURT:  I guess we could do Mr. Clark now and at

25    least have the jury get some benefit of giving up a day of
```

```
 1   their time already.
 2          MR. STEIN:  In the event the Court is allowing me to
 3   recall Mr. Woodbury, for Batelle to get here, who's been under
 4   subpoena, then I would waive my right to testify.
 5          THE COURT:  Again, I don't want to put you in a
 6   position of your making a decision about whether to testify or
 7   not based upon a scheduling issue.  I'm just explaining to you
 8   I have a concern about waiting two days.  If you know for
 9   certain that you have no plan on testifying, that's fine.  If
10   you have it in your mind that you know that you are going to
11   testify, then I'd like to do it now.  But I don't want to put
12   you in a position of making a decision whether to testify or
13   not based upon scheduling issues.
14          I don't want you to be essentially coerced by
15   scheduling issues as to giving up your right to testify if you
16   think that's what you want to do.  I'm just explaining to you
17   if you plan on testifying, let's do it while we have, you
18   know, the time now while we're waiting for these other
19   witnesses.
20          MR. STEIN:  Your Honor, as the Court may have seen
21   from these --
22          THE COURT:  Hold on one second.
23          Mr. Stieglitz?
24          MR. STIEGLITZ:  May I just point out very briefly,
25   Your Honor, with respect to Mr. Woodbury, I'd just point out
```

 1    that if the purpose for bringing Mr. Woodbury here is to

 2    testify about these documents that Mr.~Stein showed the Court,

 3    Mr. Woodbury is going to -- trying to bring those documents in

 4    through Mr. Woodbury is going to have the same problem that we

 5    had -- well, not the exact same problem, but a hearsay problem

 6    with Mr. Feidler in that Mr. Woodbury's not the author of

 7    this.  Now if Mr.~Stein wants to obviously ask him other

 8    questions, I don't have a problem.  I just wanted to flag that

 9    issue, if Mr. Woodbury is solely being brought back to testify

10    about this e-mail, I don't know that we're going to solve the

11    problem.

12         MR. STEIN:  Your Honor, exhibit 410 from

13    Ms. Provencio to Mr. Woodbury says:  "Attached is the $50,000

14    deposit on the 9/14 purchase order," one of the purchase

15    orders in this case.  So if Mr. Woodbury received that, that

16    would be -- and I represent to the Court that Mr. Woodbury

17    sent other e-mails himself which are not hearsay which he sent

18    regarding this.

19         So if the Court were doing those two things, I don't

20    feel I'm being coerced, so I can state that.  I do not intend

21    to testify.  It would be unlikely, highly unlikely that I

22    would testify, because Mr. Woodbury would be here, I would be

23    confronting him with evidence, he would either deny it, make

24    up a story, tell the truth.  I don't know.  I'm not on this

25    e-mail.  I don't know.  But I understand the Government gave

1    me the Jencks memo, they did, regarding Mr. Tribou, but what

2    Mr. Tribou said, as the Court noticed, is that he made a

3    $50,000 payment.  So that is evidence.

4           And so I -- and I also represent to the Court that as

5    far as back as Mr. Pasano, there are two deposition

6    transcripts before the SEC of Mr. Tribou.  I'm prepared to

7    cross-examine him.

8           So it's highly unlikely I would testify if the Court

9    allowed those two witnesses and if we used this time to do

10   whatever else the Court feels is appropriate, such as a

11   charging conferences, or what have you.

12          THE COURT:  So you are going to call Mr. Woodbury

13   back for the purpose of trying to establish that the company

14   received this $50,000 payment from Mr. Tribou, correct?  I

15   mean, that's the purpose of trying to bring him back.

16          MR. STEIN:  That's correct.

17          THE COURT:  Then that's the sole purpose.

18          MR. STEIN:  That's correct.

19          I mean, if he testifies he didn't, I may show him

20   other e-mails that he authored, but it's only that purpose.

21          THE COURT:  Well, let's just see if we can maybe see

22   if the Government will agree that they, in fact, received a

23   $50,000 payment from Mr. Tribou so we don't have to bring the

24   witness back and we can stipulate to that.

25          MR. STEIN:  If the Government agrees that they may --

1    that Signalife may have received a $50,000 payment, I would

2    stipulate to it.  I mean, the Government says we know about

3    the payment but we don't -- we're not sure, et cetera.  I

4    mean, I would indulge any stipulation that -- where the jury

5    could see that check, even if the stipulation was that the

6    check may not have been cashed, et cetera.

7            THE COURT:  I think there's a difference between

8    agreeing that a payment was received from Mr. Tribou for

9    $50,000 I guess in anticipation of receiving some product.

10   That's what the representation was.

11           MR. STEIN:  Yes.

12           THE COURT:  And they agree that he -- and my guess is

13   the Government would maybe agree to that without going any

14   further than that, but I don't know.

15           What's your position on whether we can avoid

16   Mr. Woodbury coming back for this?

17           MR. STIEGLITZ:  I think Your Honor's absolutely

18   right.  I think that if what Mr.~Stein would like to draft a

19   stipulation to the effect of is that Signalife received a

20   payment of $50,000 separate and apart from that exhibit, or

21   those exhibits that he showed the Court earlier, I think the

22   Government would be in a position to agree to that.

23           MR. STEIN:  From Mr. Tribou.

24           MR. STIEGLITZ:  Right, a payment from Mr. Tribou in

25   the amount of $50,000.  I think we could --

```
 1              MR. STEIN:  On the date indicated.

 2              MR. STIEGLITZ:  I think we could stipulate that on

 3    that date indicated, that Signalife received a payment from

 4    Thomas Tribou.  I can tell where Mr.~Stein's headed.  I think

 5    our division would be as to the actual document itself, as the

 6    Court might anticipate.  We would not be in a position to

 7    stipulate to the admissibility of that document.

 8              MR. STEIN:  Your Honor, all I want to stipulate to is

 9    what this document reflects, and it reflects the check, the

10    date, the check number, it reflects Wachovia Bank, Signalife,

11    a deposit slip made out, and it reflects a purchase order

12    number.  The stipulation --

13              THE COURT:  Well, let me just ask the Government.  I

14    assume you're in contact with Mr. Tribou.

15              MR. STIEGLITZ:  (Nods head.)

16              THE COURT:  Can you verify whether that's the check

17    he issued, if he put that purchase order number on there, and

18    if it's true, then why don't we just put it into evidence, and

19    if you want to call him to explain why or how, you can do

20    that.  I'm trying to avoid --

21              MR. STIEGLITZ:  I think we can -- I'm sorry, I didn't

22    mean to speak over Your Honor.

23              THE COURT:  -- avoid delaying for a couple of days

24    and bringing Mr. Woodbury back for it seems like a very minor,

25    and maybe completely unnecessary to bring him back for that.
```

```
 1   He may not even be able to accomplish what Mr.~Stein wants him
 2   to establish.  If you could just agree that that actually was
 3   received by Signalife, he filled it out, he put that purchase
 4   order on there, that's all true, Mr.~Stein will be happy, and
 5   then if you want to, by way of rebuttal, give an explanation
 6   of how and why it came about, you can do it.
 7           MR. STIEGLITZ:  I think we can try to get in touch
 8   with Mr. Tribou and ascertain that and see if that's -- but I
 9   can, as the Court has anticipated, I think that if we were to
10   go that route, it's all but certain that the Government would
11   want to put Mr. Tribou on.
12           THE COURT:  I understand.
13           MR. STIEGLITZ:  But, yes, in an effort to avoid
14   Mr. Woodbury, I think we could do that.
15           THE COURT:  Is that acceptable to you, Mr.~Stein, if
16   we can try and get them to agree that Mr. Tribou actually
17   issued that check with that purchase order number on it, and
18   it was cashed by Signalife?  That's what you want to
19   establish, and if they want to bring him back to testify as to
20   how, why, and the circumstances, then they have the right to
21   do that?
22           MR. STEIN:  Yes, Your Honor, all I want in the record
23   is the truth.  I would stipulate to that and rest.
24           THE COURT:  Why don't we see if you can verify that.
25           MR. STIEGLITZ:  We can do that --
```

```
 1              MR. STEIN:  Of course, I would recall Mr. Clark and
 2    then I would rest.
 3              THE COURT:  Yes.
 4              MR. STEIN:  Yeah, and there are -- well, when I'm --
 5              THE COURT:  And the other stipulations.
 6              MR. STEIN:  Yes, yes.  I'm sorry, Your Honor.
 7              THE COURT:  Okay.
 8              MR. STIEGLITZ:  And Your Honor, I mean, I guess the
 9    only other suggestion I'd have is that if we're going to be
10    calling Mr. Tribou anyway, we can reach out to Tribou right
11    now and get him here if Mr.~Stein wants to put him on in his
12    case, but . . .
13              THE COURT:  Well, I would rather let Mr.~Stein
14    establish what he wants to establish in his case, and you can
15    do whatever you want to do in response to it.
16              MR. STIEGLITZ:  Okay.  We'll --
17              THE COURT:  I mean, again, unless you wanted to --
18    unless you want to bring Mr. Tribou in in your case.
19              MR. STEIN:  No, Your Honor.  In furtherance of
20    judicial economy, it makes sense, if it's true, to just
21    stipulate to it.
22              THE COURT:  All right.  So can we -- I'm trying to
23    figure out what to do with the jurors.  Can we do this?  Can
24    we bring the jury in, have Mr. Clark get up again, if you want
25    to do the testimony with Mr. Clark, read the stipulations that
```

```
 1    you've agreed to into the record, excuse the jury until --
 2    well, you're not going to know until how long it will take for
 3    Mr. Tribou to get here or whether or not --
 4            MR. STIEGLITZ:  And we're also dealing with a time
 5    zone issue.  He's on the west coast, and he's represented.  So
 6    we'd be going through his attorney.  But we'll do it as
 7    quick -- I mean we'll start reaching out to him now.
 8            MR. STEIN:  And everybody's from the west coast.
 9    That's the problem.  Well, not everybody.
10            THE COURT:  Well, I guess what I could do is explain
11    to the jurors that we expect the case is going to wrap up much
12    more quickly, so they'll be happy about that, and we'll excuse
13    them until Monday, and then we can have all this stuff done by
14    Monday.  Everybody could be here who needs to be here.  We can
15    go through the jury instructions.
16            MR. STIEGLITZ:  I guess with respect to Monday, if,
17    for some reason, Mr. Tribou is able to get here sooner than
18    that, we could --
19            THE COURT:  But how are we going to know that now?
20            MR. STIEGLITZ:  I'm just saying if we're able to
21    determine that, would the Court give us, not a recess, I'm
22    just suggesting if we could make those inquiries, and then we
23    could get the jury scheduled?
24            THE COURT:  Why don't you go ahead and do that.
25    Let's get as much information as we can now before we decide
```

```
 1    what to do with the jury.

 2              MR. STIEGLITZ:  Will do, Your Honor.

 3              MR. STEIN:  Thank you, Your Honor.

 4              THE COURT:  Thank you.

 5        (A recess was taken from 10:40 a.m. to 10:54 a.m., after

 6    which the following proceedings were had:)

 7              THE COURT:  Please be seated.  Back on the record.

 8              Yes, Mr. Stieglitz.

 9              MR. STIEGLITZ:  Your Honor, we were able to reach

10    Mr. Tribou.  He interestingly is -- obviously was not able to

11    look at this document, but based on the characterization of

12    it, I'll just proffer to the Court, was to put it mildly,

13    skeptical that that could be his handwriting with this number

14    that Mr.~Stein is suggesting he wants in evidence.  So I don't

15    think, based on what Mr. Tribou said, that the Government's in

16    a position to stipulate to this document.

17              Mr. Tribou doesn't deny, again, without having seen

18    it, but doesn't deny having made a $50,000 payment, and nor do

19    we.

20              Unfortunately, he is not able to get on a plane he

21    said today, but he can fly out on Sunday and be here Monday,

22    if that's what we'd like.  So we're in the process of having

23    our travel folks put that together for us, and I think, I hope

24    that addresses what the Court wanted to know.

25              THE COURT:  All right.  Mr.~Stein?
```

1           MR. STEIN:  Your Honor, just emblematic of the reason

2     why I'm being so persistent is that this check says Dolores

3     Tribou, Thomas Tribou, and it's signed by Dolores Tribou.  So

4     when he says it's not his handwriting, it's signed by Dolores

5     Tribou, his wife, and she obviously wrote the check because

6     she signed it.

7           So any inference that this check is not authentic,

8     they can put on in their rebuttal case, and I'll show it to

9     Mr. Tribou, and he obviously has been married to this woman,

10    and he can testify about that.  But, Your Honor, I literally

11    was not copied on this e-mail and know nothing about it.

12          With regard to their interview memo that they sent

13    me, Your Honor, there were -- as the Court recalls, Mr. Pasano

14    was my counsel for a long time.  I took over his files.  There

15    are multiple SEC testimonies, and Mr. Tribou's testimony is,

16    at a minimum, extremely inconsistent and lastly --

17          I understand the Court's already essentially made the

18    decision about this, but I want to make this record.  In

19    evidence are multiple contracts signed by Mr. Tribou.  There's

20    not just one purchase order.  The Government admitted them.

21    So the fact -- and he is a real person.  So this idea of fake

22    people, this is one of the purchase orders, and this is why

23    I'm struggling so hard for my right to put in this evidence,

24    and I appreciate the Court trying to reach a stipulation and

25    then telling them they can re-call him.

1          THE COURT:  Could I just ask Mr. Stieglitz something?

2          Do you -- would you agree that that check, even

3    though the legend may not -- he's skeptical about the legend,

4    but that is the check that was submitted to Signalife and

5    that's the check that was cashed, that is the check that he

6    submitted for payment of goods?

7          MR. STIEGLITZ:  I'm sorry, with or without what's in

8    the memo line?

9          THE COURT:  Regardless.  Forget about the memo line.

10   Just, that is the check.

11         MR. STIEGLITZ:  I think -- I'm not trying to be

12   difficult, Your Honor.  I think we could; I just out of an

13   abundance of caution would want to actually have Mr. Tribou

14   say that.  We could do that today.  I mean, we'd need to send

15   it to him and just have him look at it.  But I don't -- so I'm

16   not trying to hold up the Court.

17         THE COURT:  I'm just wondering if you would agree

18   that that can come into evidence with the understanding that

19   you dispute that the legend was written by Mr. Tribou, and he

20   could -- and you can have Mr. Tribou refute it on Monday when

21   he comes here.

22         MR. STIEGLITZ:  Your Honor, I apologize.  I really am

23   not trying to be difficult.  I really think that admitting the

24   check without the person who can actually testify as to what

25   on it is true and false and is actually written by him versus

```
 1    somebody else, I can't agree to that.  I just . . .

 2              THE COURT:  Do you know if his wife -- did you ask

 3    him about whether his wife may have put that legend on there?

 4              MR. STIEGLITZ:  I did, and he indicated that he

 5    didn't know how she would, given that she wasn't aware of a

 6    purchase order, she wasn't there when a purchase order was

 7    signed.  Mr.~Stein didn't give them a copy of this purchase

 8    order, which he doesn't recall having a purchase order number

 9    in there.

10              It furthermore says Tribou & Associates.  Mr. Tribou

11    indicated on the phone he's not familiar with what that even

12    is.

13              And if I can just say one other thing, Your Honor,

14    because we've been accused -- or Mr.~Stein has suggested a

15    number of times that this is all a complete surprise to him.

16    He's been in possession of a memorandum of interview of

17    Mr. Tribou since September of 2012 saying that Mr. Tribou

18    provided Mr.~Stein and Dr.~Harmison a personal check of

19    $50,000.

20              So this is not something new that's coming up.  I

21    just have to sort of protect the -- I guess protect the record

22    on that front.  The Government's not ambushed Mr.~Stein or --

23    and there's not been some discovery revelation.

24              THE COURT:  Okay.  So they're willing to stipulate

25    that Mr. Tribou made a payment of $50,000 to Signalife for
```

```
 1   goods that he expected to receive in return; is that correct?

 2           MR. STIEGLITZ:  That's absolutely correct.

 3           THE COURT:  And is the date of that, is that the same

 4   date of that?

 5           MR. STIEGLITZ:  We would not push back on the date.

 6   We'd agree to the date.

 7           THE COURT:  Okay.  They're not willing to stipulate

 8   that that check, as prepared, was prepared by Mr. Tribou with

 9   the legend on it.

10           Again, as far as it being a business record of

11   Signalife, it wasn't prepared by Signalife, so it couldn't be

12   a business record of Signalife.  And so, you'd have to

13   establish the legend or the memo indication through some other

14   means.

15           So I guess my question to you is, I don't think I

16   could admit it over the Government's objection with the legend

17   on it as being authentic and true issued by Mr. Tribou.  So my

18   question to you is, in view of that, are you willing to accept

19   the stipulation that he made the $50,000 payment to Signalife

20   on or about that timeframe and --

21           MR. STEIN:  For goods.

22           THE COURT:  And then go from there in terms of, are

23   you going to need any other witnesses, are you planning to

24   rest, are you -- you still need Mr. Woodbury?  What would be

25   your -- in view of what the Government's agreed to stipulate
```

```
 1    to, and I believe my -- I can't admit that document over their
 2    objection in view of what I've said previously about I don't
 3    believe it's a business record under the hearsay exception,
 4    what is your plans as far as going forward?
 5              MR. STEIN:  My plans in that, Your Honor, is I would
 6    so stipulate.  If the Government decides to call Mr. Tribou in
 7    its rebuttal case, I will cross-examine him and ask him if he
 8    recognizes this signature.  I have one additional witness.
 9    The lawyer for that witness is in the courtroom.  They just
10    hired local counsel yesterday.  Mr. White's been interfacing
11    with him.  That witness, they've been talking about when he
12    would be here.  This is Batelle regarding the one meeting.
13              I don't even know if I'm going to call them.  It
14    depends on what Mr. Clark says.  But that would be it.  That
15    would be the only other witness I would have, and the
16    scheduling with Batelle in Ohio is Monday, or whatever it is.
17    I, again, don't feel coerced into saying I'm not going to
18    testify personally.  I believe it's highly unlikely, and I
19    would so stipulate with the Government.
20              THE COURT:  So you would then, as far as going
21    forward, you would want to call Mr. Clark in your case to go
22    over whatever it is you want to go over with him, you would
23    want to call Mr. Jones, as I understand his name, is
24    Mr. Jones -- whenever he can get here.
25              Mr. Goldberger is here, I understand, on his behalf,
```

```
 1    or the company's behalf.

 2           And then the Government would decide whether or not

 3    they want to call Mr. Tribou in rebuttal, or any other

 4    rebuttal that they might want to put on.

 5           MR. STEIN:  Right.  And the only other event is I

 6    would be reading the stipulation that we've reached to the

 7    jury.  There will be three public filings of Signalife at

 8    around this time that I will ask the Court to take judicial

 9    notice of because they're printed out and they're public

10    records under the Federal Rules of Evidence, and that's it.  I

11    have no other plans at all, and I don't need Mr. Woodbury here

12    if Mr. Tribou's going to be here.

13           THE COURT:  Well, again, we can't base the

14    decision -- your decision on what you're going to do on

15    whether or not the Government -- what the Government might do

16    in rebuttal.  So you have to decide whether you need

17    Mr. Woodbury here or not in view of the stipulation.  If you

18    need him here, even in view of the stipulation, then you need

19    to, you know, get him here.

20           MR. STEIN:  I'm sorry.

21           THE COURT:  If you don't need him here, then you have

22    to say I'm not intending to call him, I don't want to call

23    him, and what the Government does in rebuttal is up to the

24    Government.

25           MR. STEIN:  I'm sorry if I was unclear.
```

```
 1              Given the stipulation that the $50,000 payment was

 2     made, it was made on this date for goods expected to receive,

 3     I would then release Mr. Woodbury and would not want him here.

 4              THE COURT:  So let me speak to Mr. Goldberger.  You

 5     still want to call Mr. Jones; am I correct?

 6              MR. STEIN:  At the current time I do, but it depends

 7     on what Mr. Clark testifies to.  Yes.

 8              THE COURT:  Assuming that Mr.~Stein wants to call

 9     Mr. Jones, Mr. Goldberger, you're here on his behalf; is that

10     correct?

11              MR. GOLDBERGER:  Thank you, Your Honor.  Jack

12     Goldberger on behalf of David Jones and Batelle Memorial

13     Institute.

14              Your Honor, I am counsel for both Mr. Jones and the

15     entity.  We're obviously subject to the Court's schedule, but

16     in a perfect world, Mr. Jones would not be available until

17     Monday afternoon, Tuesday morning preferable, but if that

18     doesn't work we'll make other arrangements, but that really

19     would be the best for us.

20              THE COURT:  Okay.  Monday afternoon, I'm not planning

21     on being in session Monday afternoon.

22              MR. GOLDBERGER:  Certainly, Tuesday morning we are

23     ready and can have everyone here.  I don't know anything about

24     the trial.

25              THE COURT:  The problem is it sounds like we're not
```

1  going to have anything to do between now and whenever these

2  witnesses get here.  And so that's my concern is that we have

3  a jury that's going to have to sit around for three days.  But

4  we'll deal with that.

5          So Mr. Jones, Tuesday --

6          MR. GOLDBERGER:  I would have him down here Monday

7  afternoon and he would be ready first thing Tuesday morning.

8          THE COURT:  Thank you, sir.

9          It's possible we may not need him.

10         MR. GOLDBERGER:  We'll stand by.  Thank you, Judge.

11         THE COURT:  All right.  So can we then bring the jury

12  in, read the stipulations that you've agreed to, call

13  Mr. Clark, and then you can decide whether you're going to

14  call Mr. Jones or not, need Mr. Jones or not.  If you don't

15  need Mr. Jones, then I presume you're going to rest?

16         MR. STEIN:  If I don't need Mr. Jones after the

17  testimony of Mr. Clark, then -- and if the stipulation is read

18  in and along with the chart and the exhibits is read in,

19  redacted with the exhibit numbers, then I will rest.  That's

20  correct, Your Honor.

21         THE COURT:  Okay.  So then I guess it would be up to

22  the Government whether they're going to intend to call

23  rebuttal witnesses.  Do you know now, in view of the

24  stipulation you've agreed to regarding the payment by

25  Mr. Tribou, are you intending to call him or is it still

 1    uncertain?

 2             MR. STIEGLITZ:  I think it's unlikely, but if Your

 3    Honor would grant us just the indulgence to sort of mull it

 4    over for . . .

 5             THE COURT:  I'm just trying to know when to tell the

 6    jury to come back.

 7             MR. STIEGLITZ:  And I think the only rebuttal would

 8    probably be Mr. Tribou, if we wanted to call him.

 9             THE COURT:  So then it sounds like what we would need

10    to do is finish whatever we can today with the jury, excuse

11    them until Tuesday morning, because I don't see what else

12    we're going to be able to do as far as testimony's concerned.

13    Mr. Jones can be here, if he needs to, on Tuesday.  I guess it

14    depends on whether or not Mr.~Stein's going to call Mr. Jones.

15    If Mr. Jones is not going to be called, then I guess you can

16    get Mr. Tribou here by when?

17             MR. STIEGLITZ:  He can testify first thing Monday

18    morning.  We would obviously let the Court and Mr.~Stein know

19    beforehand.

20             THE COURT:  Then the issue is -- because I only have

21    a half a day on Monday -- whether it makes sense to just do

22    everything on Tuesday, finish up the evidence on Tuesday, do

23    closing on Tuesday and let the jury start deliberating on

24    Tuesday rather than trying to squeeze everything in on Monday

25    morning with a half a day.  We might have issues as far as

```
 1   timing and -- I mean, I'll be here Monday doing other things

 2   in the afternoon.  So if the jury's deliberating, I'll be

 3   here.

 4          I'll be here Tuesday all day.  The question is, are

 5   we going to be able to get everything to the jury in the

 6   morning, including if you're going to call Mr. Tribou.

 7          MR. STIEGLITZ:  If we were to call Mr. Tribou first

 8   thing Monday, I expect our direct examination of him would not

 9   be longer than an hour.  And so, you know, but I agree, given

10   all the other things we have to --

11          THE COURT:  That would not work then.

12          MR. STIEGLITZ:  Right.

13          THE COURT:  So then it would make sense to -- it

14   might make sense to finish up on Tuesday, but maybe not.

15          MR. STIEGLITZ:  And I apologize for thinking out

16   loud, Your Honor.  It doesn't -- I guess it doesn't make sense

17   to do jury instructions and to have our charging conference

18   like tomorrow or something?

19          THE COURT:  No, I think we should do that today or

20   tomorrow.  Absolutely.  We should do that while we have the

21   time.  So we won't have to do anything other than go right

22   into closing.  But if you're going to take an hour, with

23   cross-examination, it won't be -- we won't be able to finish

24   in the morning.

25          All right.  So are you ready to bring -- read the
```

```
 1    stipulations to the jury and then examine Mr. Clark?
 2            MR. STEIN:  Your Honor, just one matter before
 3    that -- that occurs, and that is the court taking judicial
 4    notice of various -- not lengthy, various SEC filings which
 5    we've marked as 413, 414, 415, and 416.
 6            THE COURT:  Have you shown them to the Government?
 7            MR. STEIN:  I'm going to do so right now.
 8            THE COURT:  All right.  So what numbers are they?
 9    You're going to agree to admit them, but you expect that
10    Mr.~Stein's going to produce the entire filing?
11            MR. STEIN:  Yeah, I think I have the entire one, but
12    it's . . .
13            THE COURT:  Well, you're going to need to get it at
14    some point.  You don't have to have it right now.
15            MR. STEIN:  Yes.
16            THE COURT:  So what numbers are they?
17            MR. STEIN:  They're exhibits 412, 413, 414, and 415,
18    all filed on the SEC public records.
19            MR. MUHLENDORF:  And, Your Honor, if we could just
20    make a record of what those are?
21            THE COURT:  Yes.
22            MR. MUHLENDORF:  412 purports to be a form SB2
23    filed -- as filed with the SEC on December 18th, 2007.  413
24    purports to be a notice of effectiveness for a form -- form
25    SB1.  It's a one-page document, and it purports to be
```

```
 1   effective January 12th, 2007.  414 purports to be a notice of
 2   effectiveness, effective date January 16th, 2008, on form SB2.
 3   Again, a one-page document.  And form 415, it says submission
 4   type POSAM, effective date July 21, 2008.  It's a one-page
 5   document.
 6            MR. STEIN:  That's correct.  That's what those are.
 7            THE COURT:  Are there any objections to those,
 8   assuming that the complete documents are provided?
 9            MR. MUHLENDORF:  No objection, Your Honor.
10            THE COURT:  They will be admitted without objection.
11       (Defendant's Exhibit No. 412, 413, 414, and 415 entered
12   into evidence.)
13            MR. STEIN:  Your Honor, the only other matter is we
14   haven't written out the stipulation regarding Tribou, which
15   would be read to the jury right now.
16            THE COURT:  Why don't you take a minute to do that.
17            MR. STEIN:  I'm sorry, we have written the
18   stipulation.  They're handing it to me.
19            This is fine, Your Honor.  It says 9/27/2007, 50,000.
20   It's exactly what they said they would do.
21            THE COURT:  All right.
22            MR. STEIN:  And the other stipulation.  If asked, Jim
23   Feidler would confirm that in the database of Signalife -- can
24   I say Signalife?
25            MR. STIEGLITZ:  Sure.
```

```
 1          MR. STEIN:  -- are communications between Dr. Lowell
 2    Harmison and Signalife executed, including John Woodbury and
 3    Kevin Pickard, between him and Mitchell Stein, and between him
 4    and other people at Signalife, including members of the
 5    Signalife board of directors.  Those communications are dated
 6    between March, 2005, and April 2008, and are identified on the
 7    attached chart.
 8          And then we will redact -- remove the thing and
 9    publish the chart for the jury and be done with that.
10          THE COURT:  You're just going to remove the exhibit
11    numbers.
12          MR. STEIN:  Correct.  We'll remove the exhibit
13    numbers.
14          And then I will read the Tribou, and then I will
15    examine Mr. Clark, and then I will be done, and we can proceed
16    to other matters.
17          THE COURT:  You're going to be done for today, or
18    you're going to decide whether you need Mr. Jones or not?
19          MR. STEIN:  Your Honor, I would be done today and
20    would also be in a position thereafter to tell the Court
21    whether or not Mr. -- I would want Mr. Jones.
22          THE COURT:  Okay.  And then assuming you decide you
23    don't want Mr. Jones, again, is it your intent to rest at that
24    time?
25          MR. STEIN:  That is correct, Your Honor.
```

```
 1              THE COURT:  And then if you decide you want
 2    Mr. Jones, the only -- he's the only additional witness that
 3    you intend to call; am I correct?
 4              MR. STEIN:  The Court is correct.  With the
 5    reservation that it's highly unlikely that I would want to
 6    testify, but right after calling Mr. Clark today, I would be
 7    able to tell the Court with certainty.
 8              THE COURT:  All right.  So can we bring the jury in,
 9    then, to complete what we can today?
10              MR. STEIN:  Yes.
11              THE COURT:  All right.
12              MR. STIEGLITZ:  Yes, Your Honor.
13              THE COURT:  All right.  Let's bring them in.
14              And I'm going to explain to them that this two-plus
15    hours was working towards shortening the trial so they'll be
16    happy to know that it's going to be finished much sooner than
17    we had anticipated, so they won't think that we were wasting
18    their time.
19              MR. STEIN:  Thank you, Your Honor.
20              MR. STIEGLITZ:  Your Honor, my always wiser colleague
21    has pointed out that perhaps if we opt not to call Mr. Tribou,
22    that we might be able to close Monday.  I don't know.  Just
23    something we could think about.
24              THE COURT:  Or tomorrow.
25         (The jury enters the courtroom, after which the following
```

```
 1   proceedings were had:)
 2         THE COURT:  Good morning.  It's still morning.  Good
 3   morning.  Please be seated, everyone.  Welcome back.
 4         First, let me apologize for keeping you so long
 5   waiting in the jury room.  I know you probably are frustrated
 6   wondering why we're taking so long in here.  And we've been
 7   attempting to shorten the length of time you're going to be
 8   needed as jurors, and we think we have narrowed down the
 9   amount of testimony that's going to be required, and we expect
10   the case is going to be finished much -- in a much shorter
11   period of time than we had said at the outset.
12         So although we took almost two and a half hours of
13   your time, we've saved days of your time in the process.  So
14   it was time well spent.  I think you'll be happy that we were
15   able to do those -- accomplish those things in the two and a
16   half hours that we've been working.  So thank you again for
17   your patience.
18         And Mr. Feidler, the parties finished with
19   Mr. Feidler who was on the stand yesterday, and he's been
20   excused.
21         So Mr. Stein, next.
22         MR. STEIN:  Yes, Your Honor.  I will read into the
23   record two stipulations reached between the United States of
24   America and Mitchell J. Stein, myself.
25         The first stipulation pertains to Mr. Feidler, and
```

```
 1    that is as follows:
 2             "If asked, James Feidler would confirm that in the
 3    database of Signalife are communications between Dr. Lowell
 4    Harmison and Signalife executives, including John Woodbury and
 5    Kevin Pickard, between Dr.~Harmison and Mitchell Stein, and
 6    between Dr.~Harmison and other people at Signalife, including
 7    members of the board of directors of Signalife.  Those
 8    communications were dated between March 2005 and April of 2008
 9    and are identified on the attached chart."
10             And we will publish the chart.
11             THE COURT:  We need to give a number to that chart.
12    What number are we going to give it?
13             MR. STEIN:  We'll give that chart, Your Honor,
14    exhibit --
15             THE COURT:  I mean, the entire stipulation plus the
16    chart.  Let's give it a number.
17             MR. STEIN:  The entire stipulation and the chart will
18    be exhibit 414.
19             THE COURT:  No, we already have 414.
20             MR. STEIN:  Excuse me, Your Honor.  Will be 417.
21             THE COURT:  Seventeen.
22             All right.  Any objection?
23             MR. STIEGLITZ:  No, Your Honor.
24             THE COURT:  All right.  417 is admitted as a
25    stipulation with the attachment.
```

```
 1          (Defendant's Exhibit No. 417 entered into evidence.)

 2          MR. STEIN:  This is the chart that will be in

 3     evidence that you will review and have access to in paper

 4     form; and she's going to go down the chart right now.

 5          Very well.  The next thing I'm going to do is read

 6     another stipulation entered into between the United States of

 7     America and Mitchell J. Stein, me, and that is that:

 8          "On or about September 27th, 2007, an individual

 9     named Thomas Tribou paid Signalife $50,000 for goods he

10     expected to receive."

11          And that will be marked as exhibit 417.

12          THE COURT:  The last one was 417.

13          MR. STEIN:  418, and will be the next in order and

14     you'll have access to in the jury room.

15          THE COURT:  All right.  418's admitted without

16     objection.

17        (Defendant's Exhibit No. 418 entered into evidence.)

18          MR. STEIN:  Next, we're going to call -- recall

19     Mr. George Clark.

20          THE COURT:  Inspector Clark, you're still under oath.

21          THE WITNESS:  Yes, I am.  Thank you.

22                    Direct Examination (Cont'd)

23     BY MR. STEIN:

24     Q   Good late morning, Mr. Clark.

25     A   Good morning.
```

```
 1    Q    You recall your testimony on direct about the

 2    investigation you undertook regarding Signalife and myself --

 3    A    I do.

 4    Q    -- in general?

 5              Do you recall your testimony regarding Securities and

 6    Exchange Commission filings?

 7    A    I do.

 8    Q    I'm going to show you a portion of a very lengthy document

 9    that's been admitted into evidence as exhibit 412 entitled

10    "Amendment 3 to Form SB2 of Signalife," dated December 18,

11    2007, and ask you if you've ever seen this before.

12              MR. STEIN:  May I approach, Your Honor?

13              THE COURT:  Yes.

14              THE WITNESS:  I don't remember reviewing this.

15    BY MR. STEIN:

16    Q    Do you want to look through it and see if anything

17    refreshes your recollection, or you just know you didn't

18    review it?

19    A    I'm almost positive I did not review SB2s.

20    Q    But you know what an SB2 is, right?

21    A    I have a vague understanding.

22    Q    What's your vague understanding of what an SB2 is?

23    A    It's a filing to the SEC.  You know, to be honest with

24    you, Mr.~Stein, I'm not in a position to answer that.

25    Q    Would it refresh your recollection if I told you that an
```

1    SB2 was a filing with the SEC regarding --

2              MR. STIEGLITZ:  Objection.

3              THE COURT:  Sustained.  You can't testify, Mr.~Stein.

4    BY MR. STEIN:

5    Q    Are you aware of whether an SB2 pertains to quarterly

6    filings, yearly filings or something else?

7    A    I'm not all that familiar with what an SB2 is.

8    Q    And you're not aware of the answer to my question, whether

9    it's quarterly filings, annual filings or something else?

10   A    I'm not aware of what -- all that aware of what an SB2 is.

11             MR. STEIN:  That document's in evidence.

12   BY MR. STEIN:

13   Q    I'm now going to show you what's been marked and admitted

14   into evidence as exhibit 413, 1-page document, and ask you if

15   you've ever seen this before.

16   A    I've never seen this before.

17   Q    It's in evidence.

18             Do you recall your testimony yesterday about your

19   viewpoint of whether the SEC approves or disapproves of public

20   filings?

21   A    I recall saying I have no idea whether they actively

22   approve or disapprove anything.

23   Q    Okay.  This document, exhibit 413, says United States

24   Securities and Exchange Commission "Notice of Effectiveness,"

25   dated January 12, 2007.

1          Does this refresh your recollection regarding whether

2     the United States Securities and Exchange Commission issues

3     notices of effectiveness regarding public filings?

4     A   No, it does not.  I don't -- I've never seen this

5     document.  I couldn't tell you what it is, so it doesn't

6     refresh my recollection.

7     Q   Do you have any reason now to doubt that the SEC actually

8     actively issues notices of effectiveness regarding public

9     filings of public companies?

10    A   I don't know what a notice of effectiveness is.

11    Q   I'm going to now show you what's been marked into evidence

12    as exhibit 414, which is another document that's in evidence

13    of the United States Securities and Exchange Commission

14    entitled "Notice of Effectiveness," dated January 16th, 2008

15    and ask you if you've ever seen this before.

16    A   I've never seen this notice of effectiveness either.

17    Q   To speed this up, exhibit 414 is another notice of

18    effectiveness.  What's the date on that?

19    A   July 21st, 2008, and again, I've never seen this notice of

20    effectiveness either.

21    Q   But January and July of 2008, those dates were dates you

22    were investigating, right?

23    A   They were dates where the conduct was under investigation,

24    yes.

25    Q   Does seeing these two documents, either one of them,

1   refresh your recollection regarding whether or not notices of

2   effectiveness and reviews by the SEC were done during the

3   period you were investigating?

4   A    Seeing these documents does absolutely nothing for me.  I

5   don't know what they are.

6   Q    Neither one?

7   A    Neither one.

8   Q    These are both in evidence.

9   A    Okay.

10          MR. STEIN:  Your witness.

11          MR. STIEGLITZ:  Thank you.

12          Your Honor, if we could approach on something very

13   quickly that may provide further time-saving for the jury.

14   May we do that?

15          THE COURT:  Yes.

16          MR. STIEGLITZ:  Thank you.

17      (The following proceedings were held at sidebar:)

18          MR. STIEGLITZ:  I believe that Inspector Clark is

19   competent to testify to a couple of questions about Tom Tribou

20   based on his investigation.  I will agree that it's beyond the

21   scope of his direct with Mr.~Stein, but if I'm given leave to

22   ask them, I think it would obviate the need to call Mr. Tribou

23   all together.

24          THE COURT:  What is it that you want to ask him?

25          MR. STIEGLITZ:  I'd simply ask him if based on his

```
 1   investigation, did Tom Tribou get any be products, based on
 2   his investigation is Tom Tribou associated in any way with a
 3   company called Cardiac Hospital Management, and I'd be done.
 4            MR. STEIN:  Your Honor, he's got to lay a foundation
 5   of what he did in his investigation --
 6            MR. STIEGLITZ:  Right.
 7            MR. STEIN:  -- or else it's conclusory and there's no
 8   foundation.  It's hearsay.
 9            MR. STIEGLITZ:  And I'd ask him based on his
10   investigation, is he aware of who Thomas Tribou is.
11            MR. STEIN:  This gets into, I think --
12            THE COURT:  I believe it would be hearsay for him to
13   respond to the questions you just asked.  He may be able to
14   say who he is, but I don't know how he would conclude -- what
15   were the two things you wanted to ask him, whether --
16            MR. STIEGLITZ:  Whether, based on his review of
17   records and documents and conduct of his investigation, he's
18   aware whether Tom Tribou ever received products from Signalife
19   and whether Tom Tribou is in any way associated with a company
20   called Cardiac Hospital Management.
21            THE COURT:  How would he come to those conclusions?
22            MR. STIEGLITZ:  I mean, admittedly in part through
23   interviews, which I agree is the Court's hearsay point, but I
24   suggest that through documents and review of records he'd know
25   that, as well.
```

```
 1                THE COURT:  Well, I guess you could ask him based
 2    upon his investigation whether he ever saw evidence, physical
 3    evidence that he received documents.
 4                MR. STIEGLITZ:  Received products.
 5                THE COURT:  Received products.  Physical evidence or
 6    any records of --
 7                MR. STIEGLITZ:  Okay.
 8                THE COURT:  But I don't know how he could testify
 9    that he never received any product.
10                MR. STIEGLITZ:  Fair enough.
11                THE COURT:  What was the other thing?
12                MR. STIEGLITZ:  Any physical evidence -- I could
13    frame it the same way, physical evidence or records indicating
14    that Thomas Tribou is in any way associated with a company
15    called Cardiac Hospital Management.
16                THE COURT:  I guess you could ask him those
17    questions, you know, again, but it has to be framed in a sense
18    of did he ever see any physical evidence or documents that
19    would indicate that he was affiliated with a company.  You
20    can't ask him --
21                MR. STIEGLITZ:  What he heard.
22                THE COURT:  What he heard from Mr. Tribou.
23                MR. STEIN:  And he can't testify to the ultimate
24    conclusion of whether or not --
25                THE COURT:  No.  That's the extent of what he can ask
```

```
 1   him.
 2           MR. WHITE:  May I talk with him?
 3           THE COURT:  Yes.
 4      (Brief pause in proceedings.)
 5           MR. STEIN:  Your Honor, if they elicit that
 6   testimony, I'm obviously on recross going to ask him if he's
 7   ever seen a check for $50,000 from Mr. Tribou, and he's going
 8   to -- I have a right to ask him, and he'll say yes or no.
 9           THE COURT:  I -- well, they've already stipulated
10   that he did provide a check.
11           MR. STEIN:  It was payment.  It didn't say a check.
12   Did he ever look at a check, evidence of a check.
13           THE COURT:  I mean, you could ask him what he saw.
14           Again, it will be redirect for you, not recross.
15           MR. STEIN:  Right.
16           THE COURT:  Do you have any problem with him asking
17   that question and in response to your questions?
18           MR. STEIN:  They're asking about evidence, so . . .
19           MR. STIEGLITZ:  I think he would probably be entitled
20   to ask that question.
21           THE COURT:  All right.
22           MR. STEIN:  That's fine.
23           THE COURT:  Okay.
24           MR. STIEGLITZ:  So I'll --
25           THE COURT:  But, I'm sorry, while we're up here, at
```

1    this point, do you, after hearing his direct testimony, do you

2    expect that you're going to be calling Mr. Jones or not, or

3    you do know the answer to that?

4          MR. STEIN:  If the Government were to not be asking

5    these two questions, I could tell you for certain I would not

6    be calling Mr. Jones.  If they ask these two questions, I'll

7    tell you afterwards.  But it's becoming less likely given his

8    direct testimony.

9          THE COURT:  Okay.  I'm not sure how Mr. Jones is

10   going to be able to address these other issues.

11         MR. STEIN:  Well, Batelle had a six-year -- at that

12   time a six-year relationship with the company, so . . .

13         THE COURT:  Okay.  All right.  So you're not -- at

14   this point you're not sure if you're going to call Mr. Jones

15   or not?

16         MR. STEIN:  No, it's less likely than before the

17   examination.

18         THE COURT:  Okay.  All right.  So after we're

19   finished with him, then you'll be able to tell me?

20         MR. STEIN:  That's correct.

21         MR. STIEGLITZ:  And I'm just going to clarify one

22   thing, Your Honor.  I'd suggest that if I only ask the first

23   of my two questions, any records indicating that Tom Tribou

24   received products from Signalife, I don't think that second

25   question comes in.

```
 1              MR. STEIN:  Judge, why don't you just ask --

 2              THE COURT:  I'm going to let him ask the question.

 3              MR. STIEGLITZ:  Okay.  Understood.

 4         (Sidebar conference concluded.)

 5                          Cross-examination

 6    BY MR. STIEGLITZ:

 7    Q   Inspector Clark, just one question.  You're not testifying

 8    as a securities expert of any kind, are you?

 9    A   I am not.

10              MR. STIEGLITZ:  Court's indulgence just a moment.

11              Nothing further, Your Honor.

12              THE COURT:  Thank you.

13              Any redirect?

14              MR. STEIN:  No, Your Honor.

15              THE COURT:  All right.  Thank you.

16              Thank you, sir.

17              All right.  Can I see the parties up here again?  I'm

18    sorry, ladies and gentlemen, we're trying to save you time.

19    We really are.  I need to talk to the lawyers about scheduling

20    issues and where we are as far as scheduling.

21         (The following proceedings were held at sidebar:)

22              THE COURT:  Where are we as far as --

23              MR. STEIN:  They didn't ask the question.  I didn't

24    ask the redirect.  I'm not calling David Jones.

25              THE COURT:  Okay.  So does that mean you plan to rest
```

```
 1    your case now?  Do you need some time to think about it?

 2              MR. STEIN:  I just need to look.  I mean, we can

 3    continue the sidebar.  I just need to walk back and look at my

 4    desk and see if there are any papers.

 5              THE COURT:  I'll excuse the jury.

 6              MR. STEIN:  No, I know the answer.  I'm 99 percent

 7    sure.

 8              THE COURT:  Well, but I do want to examine you out of

 9    the presence of the jury about your right to testify and make

10    sure you understand you have the right to testify if you're

11    going to waive that right.  I need to do that on the record so

12    that there's no issue about, again, I don't want you to feel

13    pressured in any way by the scheduling issues and witnesses

14    not being available in making your decision.  So I'm going to

15    need to excuse the jury anyway.

16              So why don't we excuse the jury, let me know that it

17    sounds like you're probably going to rest.  Then I don't know

18    if you're going to have any rebuttal.

19              MR. STIEGLITZ:  We'll evaluate.  I think it's

20    unlikely, but we'll know by the afternoon, I think, certainly.

21              When would you like to -- now, right?

22              THE COURT:  Once he makes a decision, I'd like you to

23    make a relatively quick decision, because I need to decide

24    whether we're going to keep the jury here past lunch or not.

25    So if we rest, then we can spend the afternoon on jury
```

```
 1    instructions and we can have the jury back here tomorrow to do
 2    closings.
 3         MR. STIEGLITZ:  Right.
 4         So, I'm sorry, just so that I understand what the
 5    Court is anticipating is giving Mr.~Stein a few minutes to
 6    discuss with counsel or not?
 7         THE COURT:  To make a decision whether he is going to
 8    rest or not.  And then if he decides to rest, then I want to
 9    make an inquiry about him, make sure he understands he has the
10    right to testify and makes a decision that he chooses not to
11    testify.  Then I would look to you as to whether you're going
12    to put on a rebuttal case.
13         MR. STIEGLITZ:  And we'll be prepared to answer that
14    question.
15         THE COURT:  And then we can tell the jury what to do.
16    Okay?
17         MR. STIEGLITZ:  Absolutely.
18         Thank you, Your Honor.
19         MR. STEIN:  Thank you, Your Honor.
20         THE COURT:  All right.
21     (Sidebar conference concluded.)
22         THE COURT:  Ladies and gentlemen, again, I'm not
23    trying to be difficult, and we're, again, trying to speed this
24    case up.  So we're going to ask you to step into the jury room
25    again.  We may need to keep you here a little bit past noon
```

```
 1   just, again, to figure out where we're going from here.  So if
 2   we're not back to you, you know, right around noon or so, you
 3   know, please bear with us.  But we're trying to . . .
 4        Okay.  We'll see you in a few minutes.  Don't discuss
 5   the case.
 6   (The jury exits the courtroom.)
 7        THE COURT:  All right.  Why don't you take a few
 8   minutes and look over your evidence, consult with your standby
 9   counsel and decide how you want to proceed, and we'll go from
10   there.  And we'll give you about five minutes.  You need five
11   minutes?
12        MR. STEIN:  Five minutes.
13        THE COURT:  Five minutes is good enough?
14        MR. STEIN:  Yes.
15   (A recess was taken from 11:41 a.m. to 11:53 a.m., after
16   which the following proceedings were had:)
17        THE COURT:  Please be seated, everyone.
18        We're back on the record.  Mr.~Stein's present.
19        All right.
20        MR. WHITE:  Your Honor, I wanted to ask on
21   Mr.~Stein's behalf, as standby counsel, I had filed a motion
22   on his behalf under the CJA to order transcripts of certain
23   witnesses.  Mr.~Stein indicated that he needed those
24   transcripts in order to properly prepare for closing argument,
25   and I bring it to the Court's attention.  I haven't checked to
```

```
 1    see if the Court has ruled on those motions or not.  I did

 2    attach a CJA-24 for each of the witnesses that he wanted in

 3    case the Court thought that, yes, no, yes, no, yes, no, it

 4    would be easier to do it that way.

 5         But as I reflected in my motion, you know, there was

 6    a lot of mixing here in terms of Mr.~Stein introducing

 7    evidence through Government's witnesses, and there's a lot of

 8    exhibits, and he really had expressed to me his need to have

 9    those transcripts.  And I don't know if the Court has ruled on

10    that motion yet.

11         THE COURT:  I had not yet ruled on it, but I guess I

12    was waiting to hear whether Mr.~Stein, you know, wanted to be

13    heard on it.  I don't think I've ever done it before, and I'm

14    not inclined to grant it.

15         I've had trials with -- go a lot longer than this

16    with a lot more witnesses than this, and I don't think I can

17    justify public expense for transcripts for basically it was

18    the entire Government's case.

19         MR. WHITE:  Well, that's why I included separate

20    CJA24s for each witness in the theory that perhaps -- and I

21    guess for purposes of determining the need, Mr.~Stein would

22    have to address that.  But I would just say that there might

23    be one witness that the Court might think, yes, that one and

24    not the other ones, and I think that might be --

25         THE COURT:  Well, maybe if I heard from Mr.~Stein as
```

 1   to if he thought there were one or two critical witnesses that

 2   he felt were essential, I might be more inclined to approve

 3   one or two witnesses as opposed to wholesale essentially the

 4   entire Government's case.

 5           MR. STEIN:  Your Honor, I've had the entire trial to

 6   think about that issue and talk to the court reporter

 7   regarding ordering those transcripts, and if I were to parse

 8   down what I really needed, I don't know if the Government's

 9   ordering any, but the opening statements, Carter, Your Honor,

10   I would merely need the opening statements.

11           THE COURT:  Yours and the Government's?

12           MR. STEIN:  Yes.

13           THE COURT:  Why would you need your opening

14   statement?

15           MR. STEIN:  Just to compare it to the Government's

16   and to have it.

17           Mr. Carter, Mr. Anand, and Mr. Pickard.  And, Your

18   Honor, if that was done, I would be able to rapidly prepare a

19   closing argument.

20           THE COURT:  Well, before we get to the transcripts,

21   what are we doing as far as your case is concerned?  Because

22   the transcripts haven't been prepared.  It's going to take

23   time to prepare them.  And if you say you need them before

24   your closing argument, when are we going to be doing closing

25   argument in this case?  Assuming there's no other evidence

```
 1    coming in.  I haven't heard from you yet as far as whether
 2    you're resting or not, but what is your plan as far as going
 3    forward with your case or resting?
 4         MR. STEIN:  Presuming I get -- I'm going to get the
 5    transcripts quickly, I don't want to wait either, I'm resting.
 6         THE COURT:  Well, I don't understand how getting the
 7    transcripts affects your decision whether you're going to put
 8    on additional evidence or not.  It seems like you need to
 9    decide whether you're putting on additional evidence or not.
10    It shouldn't make any difference whether you have transcripts.
11    How does transcripts affect what evidence you're going to put
12    on in your case?
13         MR. STEIN:  Your Honor, I'm in the unfortunate but
14    position that I chose to be collating all the evidence,
15    evaluating all the evidence, cross-examining witnesses and I'm
16    my own lawyer, and accordingly, last night I'll represent was
17    an all night affair.  This is not anybody's fault but mine.
18    I'm not saying that it's anyone's fault.  And it's impossible
19    for me, I took copious notes, to completely remember and
20    compare each witness' testimony.
21         THE COURT:  That has nothing to do with whether you
22    need transcripts.  You know, in terms of getting prepared for
23    closing argument and whether you need time to gather, you
24    know, yourself, we could figure out scheduling issues in terms
25    of when to schedule closing arguments.  My question is, are
```

1    you resting your case or not?  It shouldn't have anything to

2    do with whether you get transcripts.

3             MR. STEIN:  Presuming the Court just indicating that

4    we can schedule the closing to provide me with time to look at

5    my notes even if I didn't get transcripts, then I am resting.

6             THE COURT:  So if I said we're going to do closing

7    argument tomorrow, that means you're going to continue putting

8    evidence on?  I mean, I don't understand how one correlates

9    with the other.  Assuming I said we're going to do closing

10   argument tomorrow, well, in that case, Judge, I think I'm

11   going to call . . .

12            MR. STEIN:  Your Honor, it's not about calling

13   witnesses.  It's I'm not prepared to do closing argument

14   tomorrow.

15            THE COURT:  That's fine.  That's a separate issue.

16   The question is, are you going to close your case as far as

17   putting evidence in, not when we're going to do closing

18   argument.  The question is are you prepared to close your

19   case, or are you going to present additional evidence.  That's

20   the question.  Are you going to call in other witnesses, are

21   you going to testify yourself?

22            MR. STEIN:  The Court indicated that there was a

23   series of questions it needed to ask me about testifying

24   myself and I needed to make some sort of knowing waiver, and I

25   would hear those questions, answer them, but --

1           THE COURT:  Well, before we get to you, do you have
2     any other witnesses?
3           MR. STEIN:  No.
4           THE COURT:  Do you have any other evidence you want
5     to present?
6           MR. WHITE:  What about the other public filing?
7           THE COURT:  I thought you already put in the public
8     filings?
9           MR. STEIN:  No, Your Honor, I don't have any other
10    public filings.  Other than me as a witness, I'm prepared to
11    close the case.
12          THE COURT:  Okay.  So the only issue is whether
13    you're going to testify or not.
14          MR. STEIN:  That's correct.
15          THE COURT:  So you've had time.  You've asked for
16    some time to consult with your standby counsel and make a
17    decision as far as what you're going to do.
18          Have you made a decision?
19          MR. STEIN:  Yes, I've made a decision preliminary
20    subject to what the Court indicated, it was going to read me
21    some rights, but the decision I've made is I'm not going to
22    testify.  I'm going to utilize my constitutional right to not
23    testify.
24          THE COURT:  All right.  And rest your case then?
25          MR. STEIN:  That's correct.

```
 1              THE COURT:  All right.  So you understand you have

 2    the right to testify if you wish?

 3              MR. STEIN:  Yes, I do.

 4              THE COURT:  And you understand it's your decision

 5    whether to testify or not to testify?

 6              MR. STEIN:  Yes, I do.

 7              THE COURT:  And you understand if you don't testify,

 8    the United States cannot use that decision against you and

 9    they will not be permitted to argue or to suggest to the jury

10    that because you didn't testify, you're guilty of something or

11    you're hiding something, and they shouldn't draw any

12    inferences against you or draw inferences against you because

13    you chose not to testify?  You understand that?

14              MR. STEIN:  Yes, Your Honor.

15              THE COURT:  And you've had standby counsel available

16    to assist you during the course of the trial, correct?

17              MR. STEIN:  That's correct, Your Honor.

18              THE COURT:  And have you consulted with him about

19    this decision whether you should testify or not?

20              MR. STEIN:  Yes, Your Honor, significantly.

21              THE COURT:  And after consulting with your standby

22    counsel and you representing yourself and understanding your

23    right, you're telling me you've made the decision not to

24    testify; is that correct?

25              MR. STEIN:  Yes.
```

```
 1              May I inquire regarding the Court's indication about
 2     what the Government can say at closing and can't say?
 3              THE COURT:  They can't make any reference to the fact
 4     that you didn't testify.  They cannot draw -- suggest to the
 5     jury that because you did not testify there's some negative
 6     inference that should be drawn from that.
 7              MR. STEIN:  With regard to charging the jury, is
 8     there an instruction that they should not --
 9              THE COURT:  There's a pattern instruction that says:
10     The Defendant does not have to testify, and if the Defendant
11     chose not to testify, you cannot consider that in any way
12     while making your decision.
13              MR. STEIN:  Thank you, Your Honor.
14              With those things having been told to me, I have made
15     the decision not to testify.
16              THE COURT:  All right.
17              And then, again, and therefore you're resting your
18     case at this time?
19              MR. STEIN:  That's correct.
20              THE COURT:  Okay.  All right.  So the defense has
21     rested.
22              What's the Government's position?
23              MR. STIEGLITZ:  The Government does not intend to put
24     on any further evidence, Your Honor.
25              THE COURT:  All right.  So the evidence is closed.
```

```
 1    We now need to decide when we're going to do closing.  We have

 2    to go through jury instructions.  We can do that this

 3    afternoon and hopefully get the jury instructions resolved.

 4    Tomorrow is Friday.  Am I getting the impression from you,

 5    Mr.~Stein, that you don't think you're going to be ready to

 6    close tomorrow?  Is that my sense from your statements?

 7             MR. STEIN:  Yes, and I'd like those three

 8    transcripts.  Maybe the Government would like them, too, but

 9    I'm not going to be in a position to close tomorrow.

10             THE COURT:  And because you just don't feel you're

11    going to be prepared?

12             MR. STEIN:  I don't feel -- I was up all night last

13    night.  I don't feel I have the time or energy to prepare.

14             THE COURT:  All right.  And so let me ask the

15    Government.  How much time do you think it's going to take for

16    you to present your closing argument totally, total time?

17             MR. MUHLENDORF:  Your Honor, I've sketched something

18    out.  I think it's about an hour.

19             THE COURT:  How much time are you going to need to do

20    your closing argument?

21             MR. STEIN:  Again, I haven't evaluated it, as I've

22    indicated to the Court, but it should take an hour to an hour

23    and a half, understanding the Government has a rebuttal right.

24             THE COURT:  So if we said an hour and a half for each

25    side, we're talking about a total of three hours to do closing
```

```
 1   argument.
 2           MR. STEIN:  Yes, Your Honor.
 3           THE COURT:  At the most.
 4           MR. STIEGLITZ:  Sounds right, Your Honor.
 5           MR. STEIN:  That sounds right.
 6           THE COURT:  So then that's, figure about 45 minutes
 7   for me to read the instructions at the most.  So we're talking
 8   about four hours approximately to close the case.
 9           All right.  In order to try and be fair as I can to
10   Mr.~Stein, in recognizing he's representing himself and
11   he's -- I'll accede to your request to put off the closing
12   until Monday morning.  Okay?  So we're going to do the jury
13   instructions hopefully today, you'll have all day tomorrow and
14   the weekend to prepare your closing.
15           What I will do on your motion for transcripts, when
16   would you be able to get him the transcripts of not all of
17   them.  He's -- the most of what I would give is two.
18       (Brief pause in proceedings.)
19           THE COURT:  The earliest he's going to get them to
20   you is Sunday evening.  I can't justify putting the closing
21   off past Monday.
22           MR. STEIN:  Sunday evening means early in the
23   evening, eight, seven, nine.
24           THE COURT:  My reporter, as a favor to me, will get
25   you a rough copy of the transcripts probably by tomorrow, and
```

 1   then you'll get a actual official transcript by Monday

 2   morning, right?

 3           But a rough should be sufficient for you to prepare

 4   your testimony -- your closing argument.

 5           MR. STEIN:  That's correct, Your Honor.  That's

 6   extremely fair.

 7           Do these transcripts go into the jury room?

 8           THE COURT:  No, no.  They're just to help you refresh

 9   your recollection as to what the testimony was so you could

10   prepare your closing argument.

11           MR. STEIN:  The Government's going to get the same

12   transcripts?

13           THE COURT:  If they order a copy.

14           MR. STEIN:  I'm sorry?

15           THE COURT:  If they order a copy, I believe they'll

16   get a copy.  I don't know if they're going to order a copy.

17           But I'm going to approve two transcripts for you,

18   Mr. Carter and Mr. Anand, and those are the only two that I'm

19   going to approve.

20           MR. STEIN:  Can you approve my -- the openings?

21   They're very short.

22           THE COURT:  I don't see the need for you to have the

23   openings.

24           MR. STEIN:  Okay.

25           THE COURT:  Because the openings are not evidence,

94

and what was said in opening is just your and the Government's belief as to what the testimony was. The evidence is what the testimony was. So I'm not going to authorize the transcripts for the openings.

MR. STEIN: Does the court reporter have my e-mail address?

THE COURT: We could talk about that later.

MR. STEIN: Thank you, Your Honor.

THE COURT: So we'll close on Monday morning at 9:00 o'clock. We'll break for lunch. We'll come back and do the jury instructions after lunch hour. Okay? So I'm going to excuse the jurors until Monday.

MR. STEIN: Thank you, Your Honor.

THE COURT: All right. Let's bring the jury back in.

MR. WHITE: Your Honor, so we're going to be working on Monday then?

THE COURT:

MR. WHITE: Yes. Monday afternoon, you had originally told us you were going to take Monday afternoon off.

THE COURT: I'm figuring that we're going to finish the closings and I'm going to reschedule my sentencings on Monday to the afternoon, so I'm going to move my early afternoon sentencings to late afternoon so we can finish the closing, and I'll be here all day Tuesday, I'll be here

```
 1   Wednesday morning.
 2           MR. WHITE:  That's fine, Your Honor.  Just wanted
 3   to -- because I had some other things I need to reschedule.
 4   That's fine.
 5       (The jury enters the courtroom, after which the following
 6   proceedings were had:)
 7           THE COURT:  Welcome back, everyone.  Please be
 8   seated, ladies and gentlemen.
 9           Thank you again for your patience and your
10   cooperation, ladies and gentlemen.
11           I think we have some good news in terms as far as the
12   trial is concerned.
13           Mr. Stein, as far as your case is concerned at this
14   time?
15           MR. STEIN:  The defense rests, Your Honor.
16           THE COURT:  All right.  Thank you.
17           All right.  And, Government, any rebuttal evidence?
18           MR. STIEGLITZ:  No further evidence from the United
19   States, Your Honor.
20           THE COURT:  All right.  Ladies and gentlemen, the
21   evidence is now closed, so the only thing that remains is for
22   you to hear closing arguments from the attorneys and then for
23   me to instruct you on the law.
24           Now, the case kind of ended more quickly than we
25   expected, so we're not quite ready to go to closing argument.
```

```
 1    We have a lot of legal work, the attorneys and Mr. Stein and
 2    I, to do to prepare for closing argument.  And so we're going
 3    to recess for today, and because of, again, the preparation
 4    that's needed for closing argument, we're actually going to
 5    not be in session tomorrow.  We're going to come in on Monday,
 6    and Monday morning we'll start with the closing arguments,
 7    after which I'll read you the legal instructions, and then you
 8    can begin your deliberations on Monday.  Probably early
 9    afternoon you'll be able to start deliberating on the case.
10            All right.  So --
11            Yes.
12            A JUROR:  You said Monday was a half day?
13            THE COURT:  Well, it was a half day for me because I
14    had other things scheduled, but I'll be here, and you'll be
15    able to deliberate, and if you reach a verdict, I can stop
16    what I'm doing and we take the verdict, and I'll be here all
17    day Tuesday, and I'll be here Wednesday morning.  So
18    hopefully, there will be plenty of time for you to resolve the
19    case.  All right?
20            So, again, don't discuss the case, don't form any
21    opinions about the case, don't do any independent research,
22    leave everything at your seats, and, again, we will see you
23    Monday morning, have a nice long weekend, and thank you very
24    much for your cooperation.
25         (The jury exits the courtroom.)
```

```
 1          THE COURT:  All right.  Why don't we break for lunch
 2   and come back about 1:30.  Is that reasonable?  And we can
 3   start talking about the jury instructions.
 4          Are you prepared to discuss the jury instructions
 5   today?
 6          MR. STEIN:  I'm prepared.  Yes, Your Honor.
 7          THE COURT:  All right.  So we'll see you at 1:30.
 8          MR. STIEGLITZ:  May I ask one question, just a
 9   housekeeping question, Your Honor?  We have not destroyed
10   those additional copies of things that the jurors gave us.
11   We've not been looking at them or anything like that obviously
12   in case somebody put a stray note in there.  Our intention was
13   to shred, recycle, everything like that.  I just want to make
14   sure that's --
15          THE COURT:  I got the impression from the jurors that
16   they may want them back when they're deliberating.
17          MR. STIEGLITZ:  Oh, I'm very glad I asked.
18          THE COURT:  I got the impression they were making
19   comments about when will we get them back, or I thought I
20   heard someone say that.  So they may want, rather than have
21   one set in the jury room, they may want to have their own sets
22   to look at, so I think maybe we should keep them in case they
23   want -- we want to redistribute them back.
24          MR. STIEGLITZ:  And for the purposes of the record,
25   we've not altered them in any way from the form in which the
```

```
 1    court security officer handed them to us yesterday.  They've

 2    just been sitting in the courtroom the entire time.  We

 3    haven't and don't intend to review them.

 4            THE COURT:  Anything else then?

 5            MR. STIEGLITZ:  Not from the United States.

 6            MR. STEIN:  Not from the defense, Your Honor.

 7            THE COURT:  Okay.  We'll see you at 1:30.

 8      (A recess was taken from 12:15 p.m. to 1:59 p.m., after

 9    which the following proceedings were had:)

10            THE COURT:  Please be seated, everyone.

11            We're back on the record.  Mr.~Stein's present.

12            I've got proposed instructions from both the

13    Government and the defense.

14            MR. STEIN:  Your Honor, before we begin, when would

15    it be appropriate for me to make -- quickly make my Rule 29

16    motion?

17            THE COURT:  You can make it right now.

18            MR. STEIN:  Thank you, Your Honor.

19            Your Honor, in the defense's case in chief, in my

20    case in chief, called to the stand was a witness who

21    undisputedly has talked to me two or three times in her life,

22    undisputedly was the number three officer of the company

23    during two years of the indictment and undisputedly thought

24    that I was treating the company unfairly, but knew from the

25    day-to-day operations that I had nothing to do with the
```

1    operations of the company.

2            That evidence for 2005 and 2006 is unrebutted.

3    There's no reason to go through what I argued in my first Rule

4    29 motion, the Court making it clear that the Government

5    alleges the conspiracy started X, if there's overt acts in Y,

6    then that's not a basis for a Rule 29 motion.

7            However, now there is evidence that the Government's

8    claims regarding 2005 and 2006 are incorrect and are not only

9    not proven beyond a reasonable doubt but are proven to be

10   false beyond a reasonable doubt.

11           Paragraph 4 of the indictment, Mr. Carter being a

12   chauffeur, proven to be false as a reasonable doubt.  Whether

13   or not he spoke at a meeting with Davie Jones as the nominal

14   CTO, as Jim Feidler testified, he certainly was not there as a

15   chauffeur.  He had significant interactions with Mr. Perkins.

16   The Government had an opportunity to cross-examine Mr. Feidler

17   and didn't do so, and that testimony, too, is unrebutted.

18           The witnesses' testimony I'm not going to ask the

19   Court's indulgence, I'm talking about the witnesses being

20   Mr. Carter and Mr. Anand, I'm not going to ask the Court's

21   indulgence to go through my recollection of the testimony,

22   given that the Court has already authorized the transcripts to

23   come to me, and I can argue it to the jury.

24           However, to the extent the Court independently

25   recalls their testimony, the Court may or may not recall, and

1   if the Court does recall I would urge the Court to dismiss the

2   indictment, the numerous inconsistencies in their own

3   testimony which I would argue destroys their credibility and

4   certainly destroys any ability of what they say to be

5   introduced and believed by the Court to be possibly causing

6   there to be a beyond a reasonable doubt proof that I

7   manufactured various purchase orders or that I manufactured

8   various change orders.

9           There in fact was no testimony that I did that, but

10  that I instructed other people to do that, and they followed

11  those instructions.

12          There is now in the evidence, and particularly in the

13  last exhibits that I introduced, the SB2 dated January of

14  2008, undisputed evidence that this company had a board of

15  directors that contained people from the National Institute of

16  Health, it contained physicians, and the company had officers

17  that were extremely well respected and had fiduciary duties to

18  approve or disapprove transactions.  The Government called

19  none of these officers.

20          Granted, Lowell Harmison has died, and I'm not going

21  to argue whether or not it's strange that the Government never

22  contacted him, but there remained seven, eight, nine or ten

23  officers and directors that the Court has in its -- in the

24  filings that I filed this morning, one of the last five

25  exhibits, and the Government simply didn't call any of them.

```
1    It is not believable and the evidence can't be, even viewed in

2    the light most favorable to the Government, can't be viewed as

3    the company not approving these transactions.  These people

4    were consultants for the company.

5            On those grounds, Your Honor, I would argue on a Rule

6    29 the indictment should be dismissed.

7            With specific respect to Counts 8, 9, 10, 11, 12, and

8    13 and not any other counts, those counts talk about the sale

9    of shares of Signalife stock.  At most, the Government has

10   established, at most, and viewed in the light most favorable

11   to the Government, that regulations under form 4 were not

12   followed.

13           However, in evidence is the entire section 14 act,

14   and the Court knows the securities laws, and as a matter of

15   law, an affiliate is the one who has to file form 4s, and it's

16   undisputed that the blind trusts were not affiliates, and

17   non-affiliates do not file form 4s.

18           It's also undisputed that, now, that ARC Finance

19   Group never sold one share more than was approved by the

20   Securities and Exchange Commission.

21           So as to Counts 8, 9, 10, 11, 12, and 13, Your Honor,

22   while these may have been civil violations in a manner viewed

23   most favorable to the Government, they are not criminal

24   violations of any law, and to the extent the Government links

25   them back to false purchase orders, then I would ask the Court
```

```
 1    to simply insert its own recollection of Mr. Anand and

 2    Mr. Carter's testimony, and if the Court believes that

 3    testimony, to, in the light most favorable to the Government,

 4    create an issue of fact for the jury, then I understand the

 5    denial of the Rule 29 motion.

 6            If the Court does not, after this evidence has been

 7    put in and after consideration, then I'm ready to move

 8    forward, and I appreciate the Court's time in allowing me to

 9    make the motion.

10            THE COURT:  You have the right to make the motion, so

11    you don't need to thank me.

12            I believe that the evidence is conflicting and

13    creates a question of fact for the jury, and therefore I'm

14    going to deny the motion.

15            MR. STEIN:  Thank you, Your Honor.

16            THE COURT:  My suggestion is that we start with the

17    Government's packet of instructions and go through them and

18    see what is agreed to, what isn't, and then we can go to see

19    if there are any additional instructions that Mr.~Stein has

20    proposed that he would like presented, as well.

21            So let's start with the Government's packet of

22    instructions.

23            It seems to me that the first page of the standard

24    jury instructions is missing from the Government's packet, the

25    basic introduction, unless I'm missing something.
```

```
 1              MR. STIEGLITZ:  I apologize if that's the case, Your
 2    Honor.  I can . . .
 3              THE COURT:  We can add it easily enough.  I just want
 4    to know if there's any objection to the standard introductory
 5    page to the Eleventh Circuit pattern instructions being added
 6    to the packet.
 7              MR. STEIN:  How long is that, Your Honor?  How many
 8    lines is that?
 9              THE COURT:  It's about two short paragraphs.  It's an
10    introduction.  It says, "Members of the jury, it's my duty to
11    instruct you on the rules of law," et cetera.  It's just a
12    very short introduction.
13              Have you seen it, Mr.~Stein?  You don't have the
14    standard jury instructions?
15              MR. STEIN:  I have them.  I can pull them up.
16              THE COURT:  It's the very first instruction, basic
17    instruction number 1.
18              MR. STIEGLITZ:  No objection to that from the United
19    States, Your Honor.
20              I think, Your Honor, Mr.~Stein may have proposed that
21    instruction, as well.
22              MR. STEIN:  I'm only looking at the Government's,
23    Your Honor.
24              Yes, Your Honor, it's just referred to in the first
25    page, basic instruction one.  We have no objection to that.
```

```
 1          THE COURT:  So we will add that to the packet of

 2   instructions that I'll read to the jury, basic instruction

 3   number one from the Eleventh Circuit pattern.

 4          All right.  Let's move on to the second page of the

 5   Government's packet, which is standard except it has the

 6   bracketed language there, and we should include the bracketed

 7   portion that relates to the Defendant not testifying.

 8          MR. STEIN:  Your Honor, are you looking at document

 9   number 176-1?

10          THE COURT:  I don't have a docket entry on it.  I

11   just have a packet that was provided to me by my staff.  It's

12   not a document that was filed with the Court.

13          MR. STEIN:  The only thing I have from the Government

14   is document 176-1.

15          MR. STIEGLITZ:  May I just clarify, Your Honor?

16          THE COURT:  I can just at --

17          MR. STIEGLITZ:  We have a filed copy; if Your Honor

18   would like one we can just provide it to you.

19          THE COURT:  If you have an extra one.

20          MR. STIEGLITZ:  We do.

21          Your Honor, I think the confusion here is -- I was

22   going to ask the same question.  I think we had proposed, in

23   addition to the introductory basic instruction, the

24   preliminary instruction as well, some of or all of which the

25   Court may have given at the outset.
```

```
 1              THE COURT:  I did.  I just assumed everyone knew that
 2    we were passing those and we were moving on to the substantive
 3    instructions, not the preliminary instructions.
 4              So we're on page now of the Government's packet,
 5    docket entry 176-1.  We should be on page 11.
 6              MR. STIEGLITZ:  Your Honor, I'm sorry, before you get
 7    there, the only request the United States would have is with
 8    respect to that preliminary instruction which the Court did
 9    give at the outset of the case, the United States would
10    request that the Court consider giving the what is evidence
11    and what is not evidence portion of that again, in light of --
12    well, we would make that request, as well.  Just given that
13    Mr.~Stein is representing himself and has not chosen to
14    testify, and thus his statements are not evidence.
15              THE COURT:  Do you have any problem with that?
16              MR. STEIN:  Yes, Your Honor.  I mean, any inference,
17    from what I understood from the waiver of my right to testify,
18    any inference that my lack of testimony is to be read in any
19    way against me would -- from what I was explained, would
20    violate or infringe upon those rights.  So I would not have an
21    objection to crafting some very careful language, but I don't
22    want there to be any inference from the language that my
23    failure to testify, from what the Court told me, my failure to
24    testify should be in any way inferred against me.
25              So perhaps it should say that my --
```

```
 1              THE COURT:  Can I interrupt you for a second?
 2   They're not making that suggestion.  There are preliminary
 3   instructions that I've already read to the jury.
 4              MR. STEIN:  Yes, I see those.
 5              THE COURT:  Two of which say what is evidence and
 6   what is not evidence.  So that's what they're asking, that I
 7   reside those again.
 8              MR. STEIN:  Is this on the bottom of page 4 of 41 of
 9   that document?
10              THE COURT:  It starts on the middle of page 4, and it
11   goes to the top of page 5.  So they're asking me to reread
12   those two paragraphs, what is evidence and what is not
13   evidence.  That's what they're requesting.
14              MR. STEIN:  I'm not understanding why it says "and
15   the Defendant."  I mean, questions asked by -- the questions
16   asked by the parties' representatives, questions asked by the
17   parties.  I don't know why it says lawyers and the Defendant.
18              THE COURT:  I guess because you were representing
19   yourself.
20              MR. STEIN:  I understand, but that's a unique thing,
21   as the Court understands, and I don't know how else to
22   characterize it.
23              THE COURT:  Well, let's assume we just say statements
24   and arguments, period.  What is not evidence?  Statements and
25   arguments.
```

```
 1                MR. STEIN:  Period, and the rest of the thing is
 2     deleted?
 3                THE COURT:  Well, no, in that sentence.
 4                MR. STIEGLITZ:  No objection, Your Honor.
 5                MR. STEIN:  In that sentence it says statements and
 6     arguments of --
 7                THE COURT:  Statements and arguments are not
 8     evidence.
 9                MR. WHITE:  I think that's brilliant, Judge.  I have
10     to say I thought that was brilliant.  They should make that
11     the standard from now on.
12                MR. STEIN:  The statement and arguments are not
13     evidence?
14                THE COURT:  The prior paragraph says what is not
15     evidence.  Then it says "Certain things are not evidence and
16     must not be considered.  I will list them for you now.
17     Statements and arguments, period."
18                MR. STIEGLITZ:  Well --
19                MR. STEIN:  I understand.  That would be acceptable.
20                MR. STIEGLITZ:  I guess my only -- unless that causes
21     confusions with statements of a witness obviously.
22                THE COURT:  Well, it says -- all right, statements
23     and arguments, paren other than sworn testimony, which is in
24     there.
25                MR. STIEGLITZ:  Absolutely fine, Your Honor.
```

```
 1              THE COURT:  Statements and arguments, paren, other

 2   than sworn testimony, end paren.

 3              MR. STEIN:  Other than sworn testimony, closed paren,

 4   are not evidence.

 5              THE COURT:  Is that all right?

 6              MR. STEIN:  And then there's a period, and everything

 7   else in that -- not evidence, period, and then how does it go

 8   on after that?

 9              THE COURT:  Questions and objections, period.  The

10   questions asked by -- we could just put, the questions asked

11   are not evidence, only the witness' answers are evidence.  You

12   should not think that something is true just because the

13   question suggests that it is.

14              For instance, if a witness is asked, you saw the

15   defendant hit his sister, didn't you, the question is no

16   evidence whatsoever of what the witness saw or what the

17   witness did, unless the witness agrees with it.  We can take

18   out the references to lawyers and defendant and make it a very

19   neutral statement.

20              MR. STEIN:  I've made the changes.  I stipulate.

21              THE COURT:  So you have no objection if we kind of

22   take out lawyers and --

23              MR. STIEGLITZ:  No objection, Your Honor.

24              THE COURT:  -- and defendant.

25              MR. STEIN:  No objection.
```

```
 1                THE COURT:  To rereading those two paragraphs.

 2                MR. STEIN:  No objection.

 3                THE COURT:  Okay.  All right.  So I'll make those

 4     changes so we can neutralize the statement.

 5                And you'll be able to see beforehand.

 6                Anything else?

 7                MR. STEIN:  Well, the next paragraph after the bullet

 8     points that the Court just changed also has lawyer or the

 9     defendant throughout.

10                THE COURT:  I didn't think that they wanted the rest

11     of that read.  Did you want the rest?

12                MR. STIEGLITZ:  No, Your Honor.

13                MR. STEIN:  So I'm crossing out the last paragraph on

14     the bottom of page 5.

15                THE COURT:  Yes.

16                MR. STEIN:  Okay.  I'm on the top of page 6.

17                THE COURT:  All right.  Well, I think now we're going

18     back to the standard instructions, right?

19                MR. STIEGLITZ:  Correct, Your Honor.

20                THE COURT:  So I'll find a place to insert these two

21     paragraphs, what is evidence, what is not evidence, in the

22     packet somewhere.  I'm not necessarily going to open up with

23     that.

24                MR. STIEGLITZ:  No.  Thank you, Your Honor.

25                THE COURT:  We'll just find an appropriate place to
```

```
 1    put it in.
 2            So now we're -- let's go back to page 11 of the
 3    Government's packet.
 4            MR. STEIN:  Yes, Your Honor.
 5            THE COURT:  And I believe that what should be done is
 6    we should go to the last paragraph where they have the
 7    bracketed portion of that last paragraph, we strike the
 8    bracket, we strike, if the Defendant does not testify, include
 9    that next sentence and remove the bracket at the end of that
10    sentence, and we should be okay.
11            MR. STEIN:  Stipulated.
12            MR. STIEGLITZ:  No objection, Your Honor.
13            THE COURT:  So let's go to page 6 of the Government's
14    packet -- I'm sorry, page 12 of the Government's packet.
15            Any objection to that instruction?
16            MR. STEIN:  No objection.
17            THE COURT:  Any objection from the Government?
18            MR. STIEGLITZ:  No objection, Your Honor.
19            THE COURT:  Page 13 of the Government's packet.  Any
20    objection to that?
21            MR. STIEGLITZ:  Not from the Government, Your Honor.
22    I'll just note for the Court, as the Court I'm sure sees, that
23    there is that same issue if the Court's inclined to revise
24    things in a way that don't refer to the lawyers and defendant,
25    I'm sure we can agree on that.  Obviously, we're fine with it
```

 1   as written, though, too, given that we proposed it.

 2              THE COURT:  We could just say, anything that is not

 3   sworn testimony is not evidence.

 4              MR. STIEGLITZ:  No objection to, that Your Honor.

 5              MR. STEIN:  No objection.

 6              MR. STIEGLITZ:  As usual, Your Honor, my colleague is

 7   smarter than I am and reminds me that if we're going to

 8   suggest that only sworn testimony is evidence, there's

 9   obviously a number of documents in the case.

10              THE COURT:  Not sworn testimony and exhibits

11   admitted.  Doesn't the prior sentence say exhibits admitted?

12              MR. STIEGLITZ:  It does.

13              May I propose, Your Honor, that we reword that last

14   sentence in the first paragraph to read but, anything that is

15   not sworn testimony or admitted exhibits, is not evidence, and

16   isn't binding on you?

17              THE COURT:  Any objection to, that Mr.~Stein?

18              MR. STEIN:  No objection, Your Honor.

19              THE COURT:  Is there any other issue on that

20   instruction?

21              MR. STIEGLITZ:  Not for the United States, Your

22   Honor.

23              MR. STEIN:  No objection, Your Honor.

24              THE COURT:  All right.  With that change that we've

25   already discussed, I'll give that instruction.

```
 1              Now, on page 14 of the Government's packet, any
 2    objection to that instruction?
 3              MR. STIEGLITZ:  Not from the Government, Your Honor.
 4              MR. STEIN:  No objection, Your Honor.
 5              THE COURT:  Okay.  Page 15 of the Government's
 6    packet, we should eliminate the bottom paragraph, since
 7    Mr.~Stein did not testify.
 8              MR. STIEGLITZ:  There's no objection to that from the
 9    Government, and I'll confess to leaving an extra period at the
10    end of that last sentence preceding it, in case that bothers
11    the Court.
12              THE COURT:  I don't see it.
13              MR. STEIN:  I don't see it either.
14              MR. STIEGLITZ:  All right.  Good, I caught it before
15    the filed copy went.
16              MR. STEIN:  No objection to number 6 as modified.
17              THE COURT:  Okay.  Page 16, any objection?
18              MR. STIEGLITZ:  Not from the Government, Your Honor.
19              MR. STEIN:  No objection.
20              THE COURT:  I don't believe there's any need for
21    instruction number 8.
22              MR. STIEGLITZ:  I agree, Your Honor.
23              THE COURT:  Do you agree to eliminating instruction
24    number 8 on page 17, Mr.~Stein?
25              MR. STEIN:  I believe number 8 should be eliminated.
```

```
 1              THE COURT:  Okay.  Number 9.  Any objection to
 2    number 9?
 3              MR. STEIN:  No objection.
 4              MR. STIEGLITZ:  None from the Government, Your Honor.
 5              THE COURT:  Any objection to number 10?  Although I'm
 6    going to put it in a different location than it is in here.
 7    But is there any objection to it being in the packet?
 8              MR. STIEGLITZ:  No objection, Your Honor.
 9              MR. STEIN:  No objection.
10              THE COURT:  Okay.  I may move its location.
11              All right.  Now, getting to the substantive
12    instructions.  Page 20, any objection?
13              MR. STIEGLITZ:  None from the United States, Your
14    Honor.
15              MR. STEIN:  Your Honor, only one requested change in
16    the very last sentence of instruction 11.  It says, I will
17    explain the law governing each of those substantive offenses,
18    as well as the two conspiracies.  After the word two, I would
19    like to put alleged conspiracies.
20              THE COURT:  Why don't we just put alleged before
21    substantive?
22              MR. STIEGLITZ:  Oh, I'm sorry.  No objection to that,
23    Your Honor.  That's fine.
24              MR. STEIN:  So it will say, I will explain the law
25    governing each of those alleged substantive offenses, as well
```

1    as the two conspiracies.

2              THE COURT:  If you want to put alleged in both cases,

3    I guess I don't have a -- do you have any problem with that?

4              MR. STIEGLITZ:  No, Your Honor.

5              MR. STEIN:  So stipulated.

6              THE COURT:  How about putting the two alleged

7    conspiracies, putting alleged after the word "two."

8              MR. STEIN:  So stipulated.

9              THE COURT:  Any problem with that?

10             MR. STIEGLITZ:  No problem.

11             THE COURT:  All right.  The substantive conspiracy

12   instruction on page 21 and 22 of the Government's packet.  Any

13   objection to it?

14             MR. STIEGLITZ:  Not from the Government, Your Honor.

15             MR. STEIN:  Understanding that there's a separate

16   instruction regarding reasonable doubt, I have no objection to

17   this.

18             THE COURT:  Okay.

19             Let's go to the substantive mail fraud instruction,

20   pages 23 and 24 of the Government's packet.  Any objection?

21             MR. STIEGLITZ:  Not from the United States.

22             MR. STEIN:  What count is instruction number 13

23   relating to, Your Honor?

24             MR. STIEGLITZ:  Two, three, and four, Your Honor, the

25   mail fraud counts.

```
 1            MR. STEIN:  Your Honor, counts 2, 3, and 4

 2    incorporate paragraph 16, which is overt acts, and these

 3    instructions don't talk about overt acts at all.  And I hate

 4    to do this, but this also I think applies to the previous

 5    instruction.  Doesn't talk about overt acts.  I don't know

 6    whether the Court just wants to write a separate instruction

 7    and sentence regarding that or incorporate it into these.

 8            THE COURT:  I'm not sure what your complaint is.  I

 9    believe these are the standard instructions, the Eleventh

10    Circuit instructions for both the conspiracy count and the

11    mail fraud count.  What is it that you think is omitted?

12            MR. STEIN:  Both counts have a -- incorporate

13    paragraph 16 of the indictment entitled overt acts into them,

14    and these instructions don't say that it's a requirement, that

15    an overt act is a requirement, and in this case the Government

16    has pled it as a requirement as a part of its case.  So if the

17    word "overt acts" is either in a separate instruction or put

18    in these -- in one place I wouldn't have an objection.  It's

19    more a matter of the indictment and the way it's pled, not a

20    matter of the standard instruction.

21            MR. STIEGLITZ:  May I respond very briefly, Your

22    Honor?

23            THE COURT:  Yes.

24            MR. STIEGLITZ:  The purpose of jury instructions, as

25    the Court's well aware, is to set forth the elements of the
```

```
 1    offenses charged, and there is no overt act requirement to 18
 2    U.S.C., 1341, nor is there any overt act requirement as part
 3    of 18 U.S.C., 1349, and that's why there's no reference to
 4    overt acts in either the mail fraud or -- well, frankly, in
 5    any jury instruction in here, other than the 371 conspiracy at
 6    the end.
 7              MR. STEIN:  I don't understand why the count
 8    incorporates it by reference.  Then maybe the instruction
 9    should say to the contrary.  Although the Government alleges
10    overt acts in connection with these -- this wire fraud, you
11    need not find for this particular fraud that there are any
12    overt acts.  It's sort of both ways.  When they read the
13    indictment and compare this instruction, I, as a 28-year
14    lawyer is confused.  They're going to be even more confused.
15    And maybe Mr. Stieglitz is right, the confusion is resolved by
16    just not mentioning it.  Maybe I'm overthinking it.
17              THE COURT:  I'm looking at the annotations and
18    comments to the Eleventh Circuit pattern mail fraud
19    instruction, number 54 in the Eleventh Circuit book, and in
20    the annotations and comments, the drafters of the instruction
21    tell us that no overt act is required by section 1349, and
22    Congress' omission of that requirement, which is specifically
23    included in Section 371, 18 U.S.C., Section 371, has been held
24    by both the Supreme Court and the Eleventh Circuit to mean
25    that it has dispensed with such a requirement.
```

1          So if an overt act is not required to be proven in

2     order to convict someone of the crime, there's no reason to

3     mention it as a element of the offense.  So, again, the fact

4     that the Government may have said these are the overt acts

5     that they allege you engaged in, and it may be surplusage that

6     wasn't necessary, doesn't mean you add that to -- those words

7     to the elements of the offense in a jury instruction.

8          So it doesn't -- I don't see the fact that they've

9     said that you engage in overt acts means that we added to the

10    instruction, and it doesn't change the law that they maybe

11    added something that wasn't necessary or alleged something

12    that wasn't necessary in the indictment to prove the crime.

13         MR. STEIN:  Given that, I have no objection to

14    proposed 13 and 14, but in closing argument I may talk about

15    the indictment and the fact that it alleges overt acts and

16    they weren't proven.

17         THE COURT:  I think that's fair game.  If they've

18    chosen to allege something that they didn't have to prove,

19    then I think you can take advantage of that.

20         MR. STEIN:  May or may not, I just want --

21         You know . . .

22         THE COURT:  I don't see any problem with you doing

23    that if you choose to approach it that way.

24         MR. STEIN:  This is probably the part of being a

25    civil lawyer.  It's the way we read this.

```
 1              No objection to 13 and 14.

 2              THE COURT:  Okay.

 3         So as well as the 14, the wire fraud instruction, you

 4    have no objection to that one, as well?

 5              MR. STEIN:  No objection.

 6              THE COURT:  Okay.  All right.  How about instruction

 7    15 on pages 27 and 28 of the packet?

 8              MR. STEIN:  Your Honor, this instruction is

 9    problematic because of the very slight testimony in the record

10    from Mr. Nevdahl and Mr. Woodbury but not Mr. Clark regarding

11    form 4s.  And this instruction, the failure to file a form 4

12    may be a regulatory violation, but it's not a crime.

13              I would propose to, either in a separate instruction

14    or -- and I don't think the case law that's cited here in the

15    federal jury practice instructions or the statute contemplate

16    form 4s, but if there is reference to form 4s in any of them,

17    I would stand corrected.

18              In a separate instruction, I would propose to say

19    something like this.  And if the Court would like me to defer

20    this to a later time, with the understanding that I'm tying

21    this instruction to 15, and I'll come back to it later, I can

22    defer it so we can plow through these, or if the Court would

23    like me read this now, I'll read it now.

24              THE COURT:  Well, I'm not sure if it's something you

25    want incorporated into this instruction or you want a separate
```

```
 1    instruction.
 2         MR. STEIN:  I would defer to the Government.  I'm
 3    sure Mr. Stieglitz either will completely object to it or want
 4    to revise it.  Either way, I don't care if it's a part of the
 5    same instruction or separate instruction.
 6         THE COURT:  Why don't we then just deal with this
 7    instruction as a separate item, and if you have a -- another
 8    instruction you want to submit, then we can deal with it
 9    separately.
10         So what is the defect that you find in this
11    instruction?
12         MR. STEIN:  The defect is the one I just mentioned,
13    the difference between a regulatory civil violation and a
14    criminal violation, and this instruction doesn't -- it
15    actually infers the regulatory violation would be -- because
16    when it's the phrase in connection with any security, some
17    relationship connected to a security, and there is this tiny
18    bit of evidence from -- and I'm not saying I'm the master of
19    the evidence if Mr. Stieglitz remembers more or
20    Mr. Muhlendorf, but I think it was Mr. Nevdahl and
21    Mr. Woodbury regarding form 4s, and that evidence is
22    regulatory in nature.
23         THE COURT:  Can I interrupt you for a second?  I
24    don't understand the Government's case to be based upon a
25    violation of failure to file a form 4, so I'm not sure why the
```

```
 1   failure to file a form 4 is relevant.

 2            MR. STEIN:  Well, if that instruction were given

 3   somewhere, then let's go forward, then I would go on, but I

 4   wasn't asking for that instruction either.  I wasn't asking

 5   for an instruction that the failure to file form 4 is not a

 6   crime.  I just don't want it to be inferred that it is a

 7   crime.  I had an instruction that was crafted to --

 8            THE COURT:  I think the Government will agree that

 9   you're not going to in any way, during the course of your

10   closing argument, argue, infer or ask the jury to infer or

11   imply yourself that the failure to file a form 4 is the basis

12   for a -- Mr.~Stein's guilt under this section; am I correct?

13            MR. MUHLENDORF:  That's right, Your Honor.  In the

14   closing we'll be talking about the sale of securities that

15   Mr. Carter made.  That's the securities fraud claim.

16            THE COURT:  So with that understanding, Mr.~Stein,

17   that they're not in any way going to allude to, suggest, imply

18   or ask the jury to infer that anything having to do with the

19   failure to file a form 4 is part of the violation here, do we

20   need to even discuss it?

21            MR. STEIN:  So then I get up and say the two

22   witnesses testified about something regarding form 4s and

23   that's not a crime, in closing, is that fair game or not fair

24   game?

25            THE COURT:  I don't remember.  What was the testimony
```

```
 1   about form 4s?

 2         MR. STEIN:  It was -- I think the testimony from

 3   Mr. Woodbury and from Mr. Nevdahl was that there was -- that

 4   the failure to file form 4s was the reason -- what was done --

 5   excuse me, the creation of the blind trust was done to not

 6   file form 4s and to hide daily selling from the market,

 7   although Mr. Nevdahl testified that a form 4 would have less

 8   disclosure than a big public filing, and so it cut both ways.

 9   So it may cut in my favor, but there was some testimony

10   regarding that.

11         THE COURT:  I thought the form 4 had to do with so

12   there was some timeframe within which you had to file a

13   form 4, but then there was, the disclosure was in the 10-K

14   came later.

15         MR. MUHLENDORF:  May I try and clear it up, Your

16   Honor?  The talk about the form 4 and the blind trust, there's

17   an allegation in the indictment a couple places in the scheme

18   talking about hiding who was selling the shares.  That's what

19   that part of the evidence is about.  That's part of the

20   scheme.  I think it's part of the conspiracy that's alleged.

21         The securities fraud is the sale by Martin Carter.

22   So those are -- we may talk about the -- him instructing

23   Mr. Nevdahl not to file the form 4s because of the hiding into

24   the blind trust, but that's not part of the securities fraud

25   allegations.  Does that make -- does that clear things up?
```

1    That's why that evidence was there.

2         THE COURT:  Okay.  So -- but it's not going to be

3    argued that the failure to file a form 4 was a violation of

4    the law that you're trying to convict him on.  You're just

5    saying it's part of the --

6         MR. MUHLENDORF:  The overall --

7         THE COURT:  Overall scheme to hide the transactions.

8         MR. MUHLENDORF:  That's correct, Your Honor.  The

9    securities fraud will solely be the sale of shares.

10        MR. STEIN:  Your Honor, so the Court has said and the

11   Government agreed first that they're not going to argue the

12   failure to file form 4 is the basis for guilt.  Now the

13   Government says that they're going to argue that the failure

14   to file a form 4 was a part of the overall scheme.  And I

15   would propose something like this, which actually directly

16   hits the issue.  And that is, you heard testimony regarding

17   securities rules concerning certain persons' obligations to

18   file form 4s regarding stock sales and obligations of

19   approvals of the Securities and Exchange Commission for stock

20   sales.  I caution you that a violation of these civil

21   regulation rules or standard is not a crime.

22        Also, Mr.~Stein is not indicted here for any alleged

23   violation of the form 4 requirements.  This is not a civil

24   case.  The Defendants are not on trial for civil violations.

25   Even if you find stock sales of any person were not allowable

```
 1    under these civil rules, regulations or standard, a defendant

 2    cannot be convicted of a crime merely for breaching civil

 3    regulations, rules or standards.

 4              And I'm sure that's all going to be objected to, but

 5    let me read my final paragraph, which won't be objected to.

 6              However, securities rules, regulations, and standards

 7    may be relevant in determining whether the Defendant acted

 8    with criminal intent, that is knowingly, willfully, and with

 9    the intent to defraud as specifically alleged in the

10    Government's indictment in this case.  That is how you may

11    consider this evidence.

12              So I actually come out and say it.  I say it's not a

13    civil crime but it can be considered in connection with a

14    criminal crime, which it sounds to me is precisely what the

15    Government's alleging, and it would -- I wouldn't object to

16    this jury instruction, and this seems to cover what the

17    Government's -- and they can change the language.  I mean,

18    I've already changed it once, but they can change it, but I

19    think it's --

20              THE COURT:  So are you suggesting that I give an

21    instruction or somewhere let the jury know that the failure to

22    file a form 4 is not a crime, but the failure to file the

23    form 4 may be considered by you in determining whether the --

24    there was a scheme to defraud under the securities laws?

25              MR. STEIN:  That's -- yeah, and I may not have worded
```

```
 1    it artfully, but that's exactly what I think Mr. Muhlendorf
 2    was saying, and I would agree to that as a separate
 3    instruction or a part of this instruction.
 4              MR. MUHLENDORF:  No objection to that from the
 5    Government.
 6              THE COURT:  All right.  So do you want to add that
 7    somewhere in this instruction or do you want to make that a
 8    separate instruction?
 9              MR. STEIN:  I would add it to this instruction, since
10    the Court was able to do it with much less language that I
11    did.
12              THE COURT:  Can we just add that at the end of this?
13              MR. STEIN:  Yes.
14              MR. MUHLENDORF:  Your Honor, I would prefer it to be
15    a separate instruction.  This is the instruction for 1348, and
16    I think that would confuse things.  I mean it does bring in
17    other regulations to 1348 that aren't really there.
18              MR. STEIN:  Well, 13 --
19              THE COURT:  Hold on.
20              Well, if I was going to make it a separate
21    instruction, I would put it right after this instruction, so
22    it seems like that's the appropriate place to go, so why
23    wouldn't you just add it at the end of that?
24              MR. STIEGLITZ:  That's fine, Your Honor.
25              THE COURT:  All right.  So I'll figure out what I
```

 1    just said.  I think I can remember what I said and if not,

 2    Mr. Franklin can help me figure it out.  So we'll add that to

 3    the end of the instruction number 15.

 4            Form 4, is that the proper term, or is there a

 5    different term that we should use for purposes of the

 6    instruction?

 7            MR. MUHLENDORF:  I may bring out the securities law

 8    geek in me, probably ownership report.  Form 4 is what we

 9    talked about, so that's probably what the jury remembers and

10    that's probably fine.

11            THE COURT:  Does it have a different legal term?

12            MR. STEIN:  Mr. Muhlendorf is correct, the statement

13    of ownership form, but that could confuse the jury.  The

14    form 4 is what they heard.

15            THE COURT:  Could we say form 4, paren, statement of

16    ownership form, end paren?

17            MR. STEIN:  And then maybe double dash, as opposed to

18    other disclosures double dash.  I mean the securities laws

19    contain in section 16 numerous manner -- and I read them --

20    numerous manners -- they're in evidence, numerous manners to

21    disclose stock sales.  So all of those could be considered

22    regarding intention, as the Court indicated, but none of those

23    in and of themselves constitute a crime.  There's many

24    different laws in the securities that are in the Securities

25    Exchange Act.

```
 1              THE COURT:  Let's not go overboard with adding
 2    things.  You were concerned about the form 4 issue, so why
 3    don't we just limit it to form 4.
 4              MR. STEIN:  Very well.
 5              THE COURT:  Is it number 4 or the word four?
 6              MR. STEIN:  Number 4.
 7              MR. MUHLENDORF:  Number 4.
 8              THE COURT:  Statement of ownership, is that what it's
 9    called?
10              MR. MUHLENDORF:  I believe that's the title of it.
11    We could get you the exact title.
12              THE COURT:  We'll make it that for now, and if that's
13    not correct we can change it later.
14              Now we're up to the money laundering counts,
15    instruction number 16, on pages 29 and 30.  What's the
16    position on that, Government?
17              MR. STIEGLITZ:  No objection from the Government,
18    Your Honor.
19              MR. STEIN:  I have no objection to number 16, Your
20    Honor.
21              THE COURT:  All right.
22              MR. MUHLENDORF:  And, Your Honor, I can hand up the
23    form 4 that's in evidence that has the exact title on it if
24    that would help.
25              THE COURT:  Does it say something other than
```

```
 1    statement of ownership interest?

 2            MR. MUHLENDORF:  Statement of changes in beneficial

 3    ownership.

 4            THE COURT:  Statement of changes in beneficial

 5    ownership.

 6            MR. STEIN:  And then, Your Honor, the problem is

 7    there's form 3s and 5s that are -- that go along with form 4s.

 8            THE COURT:  But there was no testimony about that.

 9            MR. STEIN:  I know, but there's actually evidence in

10    the record regarding, in the 10-Ks, regarding form 5s, and

11    it's the same form.  These have to be filed later.

12            THE COURT:  The jury is not going to read these SEC

13    filings to try and figure out what other forms were not

14    properly filed.

15            MR. STEIN:  As long as it's stated it's not in itself

16    a crime but it can be an element of a crime, that's all fine.

17            MR. MUHLENDORF:  Well, not an element, though.

18            THE COURT:  What I was going to say is, the failure

19    to file a form 4 is not a crime, but the failure to file the

20    form 4 may be considered by you in determining whether there

21    was a scheme to defraud under the securities laws under

22    count -- what's the count?

23            MR. MUHLENDORF:  It's all the counts.  Count 1 is the

24    conspiracy, which it talks about the scheme, right?

25            Perhaps in the scheme to defraud alleged in the
```

```
 1   indictment.
 2           THE COURT:  Okay.  That makes sense.
 3           MR. STEIN:  So stipulated.
 4           THE COURT:  All right.  Let's get to the conspiracy
 5   to obstruct justice instruction, pages 31 through 33 of the
 6   Government's packet.  Any objection to it?
 7           MR. STIEGLITZ:  No objection from the United States,
 8   Your Honor.
 9           MR. STEIN:  I have no objection, Your Honor, to
10   proposed instruction 17.
11           THE COURT:  Okay.  Thank you.
12           How about 18, page 34, aiding and abetting?
13           MR. STIEGLITZ:  No objection from the Government.
14           MR. STEIN:  Your Honor, I have a requested change to
15   that in instruction 18, the fifth paragraph on the page,
16   line 2, on the left hand it says requires proof.  I would ask
17   that added there is, beyond a reasonable doubt.  And that's my
18   only requested change.
19           THE COURT:  I mean, it's in the very next sentence.
20           MR. STEIN:  But the way it's in the next sentence,
21   Your Honor, is -- seems to suggest the reasonable doubt has to
22   do with whether the person was a spectator or a participant
23   only, and I want it to be clear that this instruction as a
24   whole requires proof beyond a reasonable doubt.  The last
25   sentence is -- directly links reasonable doubt to willful
```

```
 1    participant versus knowing spectator, and that's -- that would
 2    be misleading to me as a lawyer.
 3            THE COURT:  Where is it you want that beyond a
 4    reasonable doubt?
 5            MR. STEIN:  In the immediately presiding paragraph on
 6    the left-hand side where it says, requires proof, I would just
 7    want after that, beyond a reasonable doubt.
 8            THE COURT:  Do you have any problem with adding it
 9    there?
10            MR. STIEGLITZ:  We'd object.  We'd propose to stick
11    with the pattern, but . . .
12            THE COURT:  I don't see any harm in putting in there.
13    All right.  We'll make that change.
14            How about 19?
15            MR. STIEGLITZ:  Your Honor, no objection to it from
16    the Government.  However, there are two typographical
17    corrections.  In the second paragraph, in the first line and
18    the third line, there is a reference to counts 2 through 13.
19    That should read 2 through 7, given that the conspiracy only
20    applies to~-- the 1349 conspiracy only applies to mail and
21    wire fraud.
22            MR. WHITE:  Your Honor, Mr. Stein just asked me if I
23    could address his objection to the Pinkerton instruction in
24    this case.  I don't know if he's had enough experience with
25    it.
```

1          I don't think it really applies in a case like this

2     where -- Pinkerton normally applies when you have a number of

3     different offenses committed by other coconspirators and

4     you're ascribing coconspirator liability.  I think in this

5     case it seems very clear that the Government's theory of the

6     case is that Mr.~Stein was directing the activities of

7     Mr. Carter, and that's the conspiracy, and whatever they did

8     together is what the jury's going to consider.

9          I think a Pinkerton instruction under those

10    circumstances is just confusing and redundant really because

11    you have the conspiracy instruction, you have the aiding and

12    abetting instruction, and Pinkerton doesn't add anything to

13    that except confusion.

14         MR. STIEGLITZ:  Your Honor, I take Mr. White's point,

15    but at the same time there is an allegation that Mr. Carter

16    and Mr.~Stein conspired together, and while Mr.~Stein, our

17    theory is and our argument will be, was the architect and was

18    directing Mr. Carter, there were events as well that

19    Mr. Carter undertook that may have gone beyond everything

20    that -- and I think he testified to some of these -- that may

21    have gone beyond the explicit direction of Mr.~Stein and more

22    have been in the nature of, I need you to create a letter.

23         Well, then Carter went and created -- Mr. Stein would

24    say, go on the Internet and pull off, you know, pull this

25    specific letter off, or something like that.  And so I think

```
 1    the coconspirator liability and instruction on that is

 2    appropriate here, because Mr. Carter and Mr. Stein weren't

 3    joined at the hip the entire time.

 4         MR. WHITE:  But there's then a substantive offense

 5    that addresses he went out and did a letter.  It's all part of

 6    the same conspiracy.  It's really an overt act of the same

 7    conspiracy, whatever conspiracy they're alleging.

 8         Adding a Pinkerton instruction on that, they're

 9    saying because of your guilt on this conspiracy you can infer

10    guilt on the substantive offense.  But they're already tied

11    together.

12         Normally, these Pinkerton instructions are more

13    appropriate in more multiple defendant cases where you have a

14    number of different conspirators and some of them are doing

15    this and some of them are doing that, but you can say that

16    this one is responsible for that substantive act of his

17    coconspirators because of his involvement in the conspiracy.

18    But in the conspiracy of two people, there's no need for a

19    Pinkerton instruction.

20         MR. STIEGLITZ:  We'll withdraw our proposed

21    instruction, Your Honor.

22         THE COURT:  All right.  What about number 20?

23         MR. STIEGLITZ:  No objection from the Government,

24    Your Honor.

25         MR. STEIN:  Your Honor, the Defendant has proffered a
```

 1    completely different instruction based on the Third Circuit

 2    model criminal jury instructions, Section 507, in the United

 3    States versus Gross.  This is a -- and that's on page -- on

 4    docket number 162, page 17.  That's particularly appropriate

 5    in this case, Your Honor, because of -- and I didn't know what

 6    this evidence was going to be, but the evidence that came in,

 7    as it came in, is undisputed that ARC Finance Group, who the

 8    Government claims incorrectly was my ex-wife and claims

 9    correctly that I was obviously involved with, they didn't call

10    my ex-wife, but the point is that it's undisputed that that

11    entity lost 19.6 million shares, and the good-faith defense

12    has to be much more carefully crafted in view of that

13    undisputed fact.

14           And I think the language in our 13 is very closely

15    aligned with 507 and should be considered carefully.

16           THE COURT:  What's 507?

17           MR. STEIN:  Third Circuit model criminal instruction,

18    Section 507.

19           THE COURT:  Have you seen his proposed good faith

20    defense instruction?

21           MR. STIEGLITZ:  Your Honor, I have, and I just --

22    if -- were there not a squarely on point good faith

23    instruction in the Eleventh Circuit, you know, it would be one

24    thing.  But I believe the pattern instruction which we've

25    quoted verbatim in the proposed instruction, or the

```
 1    instruction we proposed, you know, that would seem to make
 2    more sense here.  It doesn't in any way really deviate, it's
 3    just I think fewer words, frankly.
 4              MR. STEIN:  Your Honor --
 5              THE COURT:  Hold on.  Hold on.
 6              Did you modify the Third Circuit instruction in some
 7    way, Mr.~Stein?  Did the Third Circuit instruction have these
 8    parentheticals on the second page of your instruction?
 9              MR. STEIN:  No, they did not.  And that's why United
10    States versus Gross was added, and actually, Mr. Pasano and I
11    worked on these instructions together.  These instructions
12    were filed with the Court -- they may have been filed
13    previously, but I'll represent to the Court we worked on this
14    together, and the reason for the latter part of the
15    instruction is this -- is that the SEC investigation started
16    in 2008 --
17              THE COURT:  Could I interrupt?  I just want to
18    understand.  What is the Third Circuit pattern instruction and
19    what did you add to it?
20              MR. STEIN:  My recollection from when this was
21    originally crafted is -- and I can actually pull it up.  My
22    recollection is that we added the last -- we modified in the
23    last paragraph, the long paragraph, the language in the Third
24    Circuit.  I'm going to pull the instruction up right now if
25    the Court would give me a moment.
```

```
 1              THE COURT:  My guess is that this last paragraph is

 2   not in the Third Circuit instruction, it's something that you

 3   crafted yourself.  That's just my guess, from reading it.

 4              MR. STEIN:  That's my recollection is, it's from also

 5   United States versus Gross and need on a good-faith defense to

 6   craft an instruction around the possibilities of the evidence,

 7   but I'm pulling up the instruction now and be able to in a

 8   moment actually tell the Court specifically what was -- what

 9   is in the Third Circuit and what is not.

10              Your Honor, I have 507 in front of me, and 507 has in

11   and of itself various parentheticals.  Maybe Mr. Stieglitz

12   wants to look on the screen with me.  507 has various

13   parentheticals.  It's very lengthy.  Says --

14              THE COURT:  Well, let Mr. Stieglitz look at it.

15   Okay?

16              MR. STIEGLITZ:  Your Honor, there are a lot of

17   additions, kind of editorial additions I guess into what

18   appears to be the pattern instruction.  So, again, we'd

19   suggest the Eleventh Circuit pattern instruction is just being

20   a cleaner, more appropriate way of dealing with this, rather

21   than a sort of creative one.

22              MR. STEIN:  Your Honor, may I show the Court the

23   5.07?  Because the language, as the Court mentioned in the

24   last paragraph of what we've proposed, and there's significant

25   authority in the 5.07 instruction.  But the language in
```

```
 1    deciding comes directly from that instruction.  The

 2    instruction says, not our instruction, but the 5.07 says,

 3    quote, in deciding whether the Government proved that, and

 4    then it says paren name, end paren, and in ours we put the

 5    Defendant, acted, and then in the instruction says, describe

 6    the required mental state.  In ours we put with the intent to

 7    defraud.

 8            THE COURT:  That's not the part of the instruction

 9    I'm questioning.  It's the next --

10            MR. STEIN:  This may?

11            THE COURT:  This may include, yes.

12            MR. STEIN:  The 5.07 says:  In deciding whether the

13    Government proved that, and then paren, Defendant, acted with

14    criminal intent or instead whether Defendant acted in good

15    faith, you should consider all of the evidence presented in

16    the case that may bear on, and then Defendant's state of mind.

17            The part about, intentionally led the Defendant --

18            THE COURT:  Mr.~Stein, you're rushing ahead, and the

19    court reporter can't keep up with you.  My question is the

20    portion of your instruction that begins, this may include

21    evidence that others, paren, perhaps including the Government,

22    end paren, where did that come from?  Is that part of the

23    instruction, or is that something you added yourself?

24            MR. STEIN:  It's -- it comes from the instruction and

25    the comments, but then it was crafted differently in this
```

```
1    instruction.  From the instruction itself, it does not say

2    what is in this instruction.  It says, you should consider all

3    of the evidence presented in the case that may bear on the

4    person's state of mind if you find from the evidence that such

5    and such act in good faith, advise to find it, or if you find

6    for any other reason that the Government has not proved beyond

7    a reasonable doubt that the Defendant acted with the required

8    mental state, you must find the Defendant not guilty of the

9    offense.

10           And then there's a lengthy discussion of various

11   cases, Cheek versus United States.

12           THE COURT:  I'm not interested in the cases.  I'm

13   interested in what the standard instruction says, and my

14   question is, did you add, did you create, did you modify the

15   Third Circuit's standard instruction by adding this paragraph

16   that begins "this may include evidence that others,"

17   et cetera, et cetera, et cetera, did you add that yourself, or

18   was that taken from the Third Circuit pattern instruction?

19           MR. STEIN:  The word -- first of all, this wasn't me

20   that prepared it, but the word "others, perhaps the

21   Government" is not in the Third Circuit instruction.

22           THE COURT:  Is there "this evidence may include?"  Is

23   that in the instruction?

24           MR. STIEGLITZ:  Can I -- I'm looking at the same

25   thing Mr.~Stein is.  It's not, Your Honor.  As best I can
```

```
 1    tell, what's added to Mr.~Stein's instruction is the sentence,
 2    as you can actually tell from the missing period at the end of
 3    it, "this may include."  So that sentence that starts that
 4    way, and then ends two lines later with the word "that," but
 5    no period, just before "if you."
 6              MR. STEIN:  After the word that it should be --
 7              THE COURT:  One at a time, please.
 8              MR. STIEGLITZ:  It also appears, Your Honor, that
 9    Mr.~Stein or the defense altered the next sentence where it
10    says, if you find from.  The pattern instruction I believe on
11    my brief read on Mr.~Stein's screen, it says if you find from
12    the evidence as opposed to any or all of such evidence.  And
13    then I don't -- skipping ahead to the next page, that section,
14    because the burden of proof is on the Government, maybe that's
15    in a different part of the instruction that I don't see that I
16    can't see on Mr.~Stein's screen.
17              THE COURT:  Well, I'm sorry to kind of jump in here,
18    but I don't see any -- I feel that the instruction has been
19    modified by the Defendant in a pro defense way, and there's no
20    benefit to using the portion of the Third Circuit's
21    instruction that is standard as compared to the Eleventh
22    Circuit's standard instruction.  They're essentially
23    substantively the same.  And I'll just stick with the standard
24    Eleventh Circuit instruction.
25              So I'm going to deny the Defendant's request for his
```

```
 1    version of the good faith defense instruction and use the

 2    Eleventh Circuit pattern instruction, which is represented in

 3    the Government's number 20.

 4            MR. STEIN:  Your Honor, I respectfully request that

 5    at a minimum the fourth very short~-- the fourth two-sentence

 6    paragraph in the Defendant's proposed instruction 13, which

 7    does come directly from the third pattern instruction, be

 8    added.

 9            THE COURT:  Which is what?

10            MR. STEIN:  The Defendant does not have the burden of

11    proving good faith.  Good faith is a defense because it is

12    inconsistent with intent to defraud.  As I have told you, it

13    is the Government's burden to prove beyond a reasonable doubt

14    each element of the offense, including intent to defraud.

15            MR. STIEGLITZ:  Your Honor, I'd suggest that's

16    entirely duplicative of the first paragraph of the Eleventh

17    Circuit pattern instruction.

18            THE COURT:  Well, what's the difference between that

19    and the first paragraph of the pattern?

20            MR. STEIN:  The Third Circuit says good faith is a

21    defense because it is inconsistent with the requirement of the

22    offense as charged.

23            THE COURT:  And the Eleventh Circuit says, good faith

24    is a complete defense to a charge that requires intent to

25    defraud.  What's the difference?
```

```
 1            MR. STEIN:  The language inconsistent here is
 2   specifically important because of the 19 million shares, which
 3   is going to be argued about in the closing.  It's just that
 4   one sentence that is in the Third Circuit instruction
 5   verbatim.
 6            THE COURT:  How about, after the Eleventh Circuit
 7   pattern instruction sentence good faith is a complete defense
 8   to a charge that requires intent to defraud because it is
 9   inconsistent with the intent to defraud, how about if I add
10   that at the end of that first sentence?
11            MR. STEIN:  I'm writing it -- good faith is a
12   complete defense --
13            THE COURT:  So the sentence will read, good faith is
14   a complete defense to a charge that requires intent to defraud
15   because it is inconsistent with the intent to defraud.
16            MR. STEIN:  Your Honor, that's precisely what the
17   Third Circuit did, so I would stipulate to that.
18            THE COURT:  All right.  I'm going to add that clause
19   at the end of the first sentence.
20            All right.
21            MR. STEIN:  Thank you, Your Honor.
22            THE COURT:  You're welcome.
23            Let's move on to number 21 of the Government,
24   page 37, standard instruction.
25            MR. STIEGLITZ:  No objection from the Government,
```

```
 1    Your Honor.

 2            MR. STEIN:  No objection to number 21, Your Honor.

 3            THE COURT:  All right.  Twenty-two, standard

 4    instruction.

 5            MR. STIEGLITZ:  No objection from the Government,

 6    Your Honor.

 7            MR. WHITE:  May I consult with Mr.~Stein for a

 8    moment?

 9            THE COURT:  Yes.

10        (Brief pause in proceedings.)

11            MR. STEIN:  Your Honor, the problem with instruction

12    21 is that the last paragraph --

13            THE COURT:  I thought we already finished with 21.

14            MR. STEIN:  Standby counsel has caused me to go back

15    to it.

16            THE COURT:  Oh.

17            MR. STEIN:  The Eleventh Circuit instruction differs

18    from the last paragraph on 21.

19            THE COURT:  I'm sorry, the last paragraph of 21

20    differs from the standard?  Is that what you're saying?

21            MR. STEIN:  Yes.

22            I'm not saying -- there's two instruction 21s in the

23    Eleventh Circuit, 21A and 21B, and they both talk about

24    willful, and 21B talks about willfully in a manner that's not

25    included in 21.
```

1           MR. STIEGLITZ:  May I clarify, Your Honor?

2           THE COURT:  Hold on, let me find it.

3           MR. STEIN:  Your Honor, I'm going to withdraw my

4    objection to this after examining 9.1B of the pattern

5    instructions more carefully.

6           THE COURT:  All right.  So you agree to 21 then?

7           MR. STEIN:  Yes, Your Honor.

8           THE COURT:  Okay.  Thank you.

9           Then we're up to 22 of the Government's packet,

10   page 38.

11          MR. STEIN:  Your Honor, my only change in this one is

12   that the pattern instruction underlines the word "only" in

13   paragraph 2 and this instruction doesn't.

14          THE COURT:  All right.  We'll be happy to underline

15   "only" if that's your concern.

16          MR. STIEGLITZ:  No objection, Your Honor.

17          THE COURT:  Okay.  We will underline the word "only"

18   in the second paragraph, make that change.

19          MR. STEIN:  Thank you, Your Honor.

20          THE COURT:  Twenty-three.

21          MR. STIEGLITZ:  No objection from the Government,

22   Your Honor.

23          MR. STEIN:  Your Honor, this instruction number 23 is

24   precisely the other instruction.  I would stipulate to it.

25          THE COURT:  All right.  24.

```
 1                MR. STIEGLITZ:  No objection from the Government,

 2   Your Honor.

 3                MR. STEIN:  No objection.

 4                THE COURT:  All right.  Are there any other

 5   instructions from the Government that they're requesting?

 6                MR. STIEGLITZ:  Not from the United States, Your

 7   Honor, no.

 8                THE COURT:  All right.  Mr.~Stein, what other

 9   instructions do you want to be given to the jury other than

10   what we've already covered?

11                MR. STEIN:  Your Honor, our instructions are document

12   162.  I would first propose jury instruction number 1,

13   credibility of witnesses, inconsistent statements.

14                THE COURT:  Why isn't that already covered in what

15   we're already going to give the jury?

16                MR. STEIN:  I think the second paragraph is not

17   covered, if a person is shown to have knowingly testified

18   falsely concerning any important or material matter, you

19   obviously have a right to distrust the testimony of such an

20   individual concerning other matters.  You may reject all of

21   the testimony of that witness or give it such weight or

22   credibility as you may think it deserves.

23                And the Court may also want to add there, reference

24   to plea bargains.

25                If that paragraph were added to the Government's
```

```
 1     instruction number 7, then we would not need instruction
 2     number 1.
 3              THE COURT:  Well, but what about instruction
 4     number 6?
 5              MR. STEIN:  It doesn't have the language of the right
 6     to distrust the testimony of such individual concerning other
 7     matters.  They may reject all of the testimony of that witness
 8     or give it such weight or credibility as they may think it
 9     deserves.
10              THE COURT:  Mr.~Stein, I mean, of course it says
11     that.
12              I think that these pattern instructions, which, the
13     Government's instructions are more than adequate to tell the
14     jury that they don't have to believe anything any witness
15     says, and I don't see any reason to add additional redundant
16     language to the instructions.  I don't see any reason to add
17     more to what's already in there as far as credibility of
18     witnesses.
19              What else did you want to add?
20              MR. STEIN:  We've proposed the general conspiracy
21     charge under United States versus Chandler, Direct Sales
22     Company versus United States, it's a Supreme Court case,
23     United States versus Cotton, the links in the chain of the
24     evidence are very important here because it has to flow back
25     to the company.
```

```
 1              THE COURT:  Mr.~Stein, we just went through the
 2    Government's instruction, and we approved a conspiracy charge.
 3    Why are we going to add another conspiracy charge?
 4              MR. STEIN:  Your Honor, there's an allegation in the
 5    indictment of a conspiracy beginning in 2005, and I understand
 6    the Court may not feel it's relevant, but it is a part of the
 7    indictment, and it's a part of each charge.
 8              THE COURT:  I don't know why you say I didn't feel it
 9    was important.  I said it wasn't a basis for a dismissal or a
10    judgment of acquittal.
11              MR. STEIN:  I apologize, Your Honor.  I wasn't
12    criticizing the Court.  I was saying I understand the Court
13    doesn't think it's material to dismissing the indictment.
14    Given the numerous pleadings that -- in the indictment that
15    are outside of just the charges, which the Court is correct in
16    all of the wire fraud and mail fraud, the conspiracies
17    described, I think the jury should be charged on what is a
18    conspiracy as a separate matter, because frankly, it's what
19    the Government alleges in a separate matter.
20              THE COURT:  Did you look at the Government's
21    instruction number 12, which we've already approved, both
22    sides have approved?
23              MR. STEIN:  I'm sorry.  I don't know these
24    instructions as well as everyone else.
25              Instruction number 12 just says, conspiracy to commit
```

 1    mail and wire fraud, and --

 2           THE COURT:  I'm sorry.  I'm looking at pages 21 and

 3    22 of the Government's instruction, which you agreed to.

 4           MR. STEIN:  And I did agree to that instruction.  It

 5    deals with conspiracy to commit mail fraud and wire fraud.

 6    The Government's alleging a conspiracy beginning in 2005 in a

 7    very general sense, and the jury is going to be interested and

 8    confused if they're not -- because if they're not generally

 9    instructed on what a conspiracy is, because there's been a

10    conspiracy alleged that doesn't tie to any of these counts.

11           THE COURT:  The instruction specifically says what a

12    conspiracy is.  It defines conspiracy.

13           MR. STEIN:  It defines it in -- once in two

14    sentences.

15           THE COURT:  No, it doesn't.  It tells you what the

16    Government has to prove, it tells you what's -- I mean, it's a

17    two-page instruction.  What is in the instruction that you

18    have that's not in the instruction we've already approved?

19    What additional information do you believe is missing from the

20    instruction we've already approved that you feel needs to be

21    added to this instruction?

22           MR. STEIN:  Merely the last two paragraphs on page 6

23    of document 162.

24           THE COURT:  The last two paragraphs of your

25    instruction:  Of course, mere presence, is that --

1          MR. STEIN:  Yes, Your Honor.

2          THE COURT:  That's covered in the instruction on the

3    top of page 22 of the Government's instruction, but simply

4    being present at the scene of an event, et cetera, et cetera,

5    and a person who has no knowledge about a conspiracy but acts

6    in a way that advances a conspiracy doesn't become a

7    conspirator.  Those are in there.

8          MR. STEIN:  The language is:  Instead, there must be

9    proof beyond a reasonable doubt that the Defendant in question

10   and a coconspirator together both had, quote, knowledge of the

11   overall scheme, closed quote, and, quote, the essential nature

12   of the plan, period, closed quote.  That's the language that I

13   propose to add.

14         THE COURT:  Mr. Stieglitz, do you want to be heard on

15   that?

16         MR. STIEGLITZ:  Your Honor, this is the 1349

17   instruction that the Government has proposed is adapted, and

18   if memory serves, just as to sort of the end of it, from a

19   pattern instruction that clearly in the view of that committee

20   set forth the elements of that offense.  I think adding and

21   messing around with editorializing within it is not advisable

22   and I think just increases the chances that the jury's going

23   to get confused.  I think the pattern instruction is

24   appropriate, and I'm not the only one who thinks so, I guess,

25   given that it's a pattern instruction.

```
 1              THE COURT:  I don't see any reason to deviate from

 2     the pattern instruction.  I think it adequately covers

 3     everything that you've included in your proposed instruction.

 4     The jury's going to be told repeatedly that the Government

 5     must prove all of the elements beyond a reasonable doubt.  It

 6     says it in -- the general introductory instructions say they

 7     have to prove things beyond a reasonable doubt.  This

 8     instruction says it has to be proven beyond a reasonable

 9     doubt.

10              I don't know how many more times we have to say

11     beyond a reasonable doubt.  So I'm going to overrule the

12     request to add additional language to the pattern instruction.

13              MR. STEIN:  May I have literally one moment, Your

14     Honor?

15              THE COURT:  Yes.

16              MR. STEIN:  Your Honor, the pattern instruction of

17     the Eleventh Circuit stops at -- on page 22 of the

18     Government's instruction after the word "conspirator."

19     There's a period at the end of the pattern instruction, and

20     there's nothing else there.  So the last three paragraphs are

21     not in the pattern instruction whatsoever.

22              THE COURT:  Well, why didn't you bring that up when

23     we went through the instruction and you agreed to it?  I mean,

24     that would have been the time to say, you know what, Judge,

25     the Government added three paragraphs at the end.  They're not
```

1    in the pattern instruction, and I think they should be taken

2    out.  That would have been the nice thing to do when we went

3    over it.  Now, I mean, you certainly have the right to point

4    that out at this point, but maybe you should have pointed it

5    out earlier.

6         MR. STEIN:  Well, I thought we were -- and if I was

7    incorrect, I apologize.  I thought we were then going to go

8    through the Defendant's proposed instructions.

9         THE COURT:  We are.  That's exactly what we're doing.

10   But if you had an objection to their's because they added

11   something that you think shouldn't have been added, you should

12   have told me then.  Going~-- the fact that they added

13   something that you now tell me shouldn't have been in there

14   has nothing to do with you adding something that is in there.

15        MR. STEIN:  I just want to add something or have a

16   separate instruction to assure that the -- that my rights are

17   being protected regarding the law of conspiracy and the

18   language that's proposed, the two sentences that I've

19   indicated.  Whether they're in a separate instruction or

20   incorporated into this one, I still think there should be a

21   separate conspiracy instruction because they have, you know,

22   five or six different conspiracy instructions.

23        THE COURT:  We have a separate conspiracy

24   instruction, Mr.~Stein.  How many times do I have to say it?

25   This is it.  You approved it already.  We don't need a second

1    conspiracy instruction.  As a matter of fact, we have two

2    conspiracy instructions.  We have one on the wire and mail

3    fraud conspiracy and we have one on the obstruction --

4    conspiracy to obstruct justice, and I assume we have one on

5    the securities fraud, but it was a substantive offense.

6         MR. STIEGLITZ:  The security charge's not charged

7    in --

8         THE COURT:  So there are two conspiracy charges in

9    these instructions which you've already approved, one for the

10   mail and wire fraud conspiracy, one for the obstruction of

11   justice conspiracy, they define conspiracy, they cover all the

12   issues of the conspiracy.  I don't know why we need a third

13   one that covers the same issues, defines what a conspiracy, is

14   says what you have to prove to prove a conspiracy.  We don't

15   need three conspiracy instructions.

16        So, now, are you going back to the Government's

17   instruction number 12 and saying, oh, they've got something in

18   there that you think should be taken out?

19        MR. STEIN:  No.

20        THE COURT:  No.

21        All right.  So I'm not going to modify the conspiracy

22   instruction in number 12, the Government's packet, to add the

23   language that you've requested be added.  So let's move on to

24   your next proposed instruction if you have any that you want

25   to -- additional instructions that either haven't been given

1    or things that you want added to the existing instructions

2    because somehow they're deficient, even though you've already

3    approved them.

4          MR. STEIN:  The Defendant's proposed jury instruction

5    number 3, and given the Court's comments, I'll begin to just

6    pick the language that is not in the Government's instructions

7    as opposed to proposing new instructions.  The third

8    paragraph, I propose and believe should be added to the

9    instruction or be made a separate instruction under United

10   States versus Chandler and all the different authorities cited

11   therein.

12         Not all exaggerated representations are fraudulent.

13   Puffing or seller's talk, for example, that a company's

14   nationally known, the product is one of the finest in the

15   world will not constitute a material representation.  Also, a

16   scheme to defraud as contemplated by this law is not proved

17   where the representations made by the Defendant or about

18   something that investors should or could easily confirm if

19   they wished to do so from readily available public

20   information.

21         THE COURT:  I do not believe that that's the law in

22   the Eleventh Circuit.  Maybe it is somewhere else, but I don't

23   think the law is the scheme to defraud is not proved where the

24   representations should and could easily could be confirmed if

25   the investors wished to from public information.

```
 1              I am quite sure that that is not the law.  Where did
 2      you get that?
 3              MR. STEIN:  United States versus Brown, 79 F.3d 1550,
 4      Eleventh Circuit, 1996, regarding puffing.
 5              THE COURT:  I believe that case was overruled, but
 6      let me doublecheck.
 7              Big red flag here on U.S. versus Brown.
 8              MR. STEIN:  I'm sorry, Your Honor.  I'm inheriting
 9      work that was done a year ago.  If the case has been
10      overruled, I will withdraw the -- I'll simply go on to the
11      next instruction.
12              THE COURT:  Let me just quote the decision that
13      overruled it.  United States versus S-v-e-t-e, 556 F.3d 1157,
14      in 2009, before this case was indicted.
15              MR. STEIN:  I will send this down to Carlton Fields,
16      Your Honor.  Withdraw the . . .
17              THE COURT:  What the Eleventh Circuit said in United
18      States versus Svete:  Because Brown is inconsistent with both
19      the broadly worded text of the mail fraud statute and the
20      interpretation of that statute by the Supreme Court, we
21      overrule our holding in Brown that the offense of mail fraud
22      requires proof of a scheme calculated to deceive a person of
23      ordinary prudence.  When we decided Brown, we acknowledged
24      that our holding was contrary to the decisions of at least two
25      of our sister circuits, but our decision, in fact, was
```

 1   contrary to the interpretation of several circuits, including

 2   that of the former Fifth Circuit.

 3         Brown still stands alone.  It has been rejected by

 4   other circuits.  It has been distinguished on debatable

 5   grounds within our circuit.  It has been criticized in legal

 6   scholarship.  Our decision in Brown departed from a principle

 7   that most circuits had treated and continue to treat as

 8   settled.  The mail fraud statute does not differentiate

 9   between schemes that will ensnare the ordinary prudent

10   investor and those that attract only those with lesser mental

11   acuity; or about the negligence of the victim in failing to

12   discover a fraudulent scheme is not a defense to criminal

13   conduct.

14         So I think that sufficiently disposes of that portion

15   of the instruction that you wanted me to give.

16         MR. STEIN:  What page was that of the case, Your

17   Honor?

18         THE COURT:  1166 and 1167.  And this case doesn't

19   involve puffing, so I don't see any reason to define puffing

20   to the jury.

21         MR. STEIN:  There was only one reason I raise this,

22   there was one piece of evidence admitted regarding an e-mail

23   responsive to Silve Group's representations that mentioned

24   billions of dollars, and if that's mentioned to the jury,

25   that's even less than puffing.  That e-mail was authentic.  I

```
 1   didn't object to it, but it's --
 2            THE COURT:  I mean, this case involves allegations of
 3   outright fraud, not puffing, not saying, well, this is the
 4   best product in the world, when it's --
 5            MR. STEIN:  So we're not going to be talking about
 6   the product's efficacy in closing?
 7            THE COURT:  I don't know what you're going to be
 8   talking about, but I thought we told the jury that the case
 9   wasn't about the product.  Anyway, we'll see what happens in
10   closing.
11            Anyway, I'm going to deny your request to add that
12   paragraph to the instruction.
13            MR. STEIN:  Thank you, Your Honor.  I apologize for
14   not doing the shepherdization.
15            THE COURT:  I don't blame you, since apparently you
16   inherited that from your predecessor counsel.
17            MR. STEIN:  Your Honor, we now turn a few pages
18   later, page 11 of 24, reasonable doubt.
19            I know this is part of it already, but reasonable
20   doubt is so important, and this is government instruction
21   three.  And the difference between three and seven is seven
22   says, every fact, which is essential to prove an element, and
23   three doesn't.  But seven is the law.
24            THE COURT:  Are you saying three isn't?
25            MR. STEIN:  Three is -- they're both the law, and if
```

```
 1    that sentence were added, they would be complete.

 2              THE COURT:  It's not quite there.

 3              MR. STEIN:  That was inartfully said, Your Honor.

 4    The tank is a little bit low, but I'm still ready for another

 5    five hours.

 6              THE COURT:  What's your position about adding that

 7    sentence to the reasonable doubt instruction?

 8              MR. STIEGLITZ:  Your Honor, I just -- I don't see a

 9    need to add anything to the reasonable doubt instruction

10    that's the pattern instruction.  Given that then we start

11    distinguishing between facts and elements.  I mean, the point

12    is, as it's not only in pattern instruction number 3, but it's

13    in the -- I believe each of the substantive offense

14    instructions, it's made clear that every single element needs

15    to be found beyond a reasonable doubt.  So I think it's just

16    completely redundant and, you know, potentially even

17    confusing.

18              THE COURT:  I agree with that, Mr.~Stein.  I think

19    that it's clear throughout these instructions that the

20    Government has to prove every element of the offense beyond a

21    reasonable doubt.  This is redundant.

22              MR. STEIN:  Your Honor, would it be more time

23    effective if I went through the instructions over the course

24    of 30 or 60 seconds and figured out whether there was any of

25    them?
```

```
 1              THE COURT:  Yes, sure.  Let's take a five-minute
 2    recess.
 3              MR. STEIN:  I can just go through them right now.
 4              THE COURT:  Take five minutes and give the reporter a
 5    break.  And we'll come back and we can pick up.
 6        (A recess was taken from 3:55 p.m. to 4:05 p.m., after
 7    which the following proceedings were had:)
 8              THE COURT:  Please be seated.
 9              We're back on the record.
10              All right.  Mr.~Stein, have you had a chance to see
11    if there are any additional instructions that you think are
12    not covered by what we've already approved?
13              MR. STEIN:  Yes, I have, Your Honor.
14              THE COURT:  And?
15              MR. STEIN:  Your Honor, I don't have any other
16    changes to the instructions that were already approved and on
17    the record.  Nothing else to add.
18              THE COURT:  So you don't have any other additional
19    proposed instructions?
20              MR. STEIN:  That's correct, Your Honor.
21              THE COURT:  So let's talk about the verdict form.
22    Have you seen the Government's proposed verdict form?  Is
23    there any objection to it?
24              MR. STIEGLITZ:  Not from the United States, Your
25    Honor.
```

```
 1                MR. STEIN:  No.  I understand this was drafted by the

 2   Court, so I don't --

 3                THE COURT:  What was drafted by the Court?

 4                MR. STEIN:  The verdict form, or was given by Irene

 5   by e-mail.

 6                THE COURT:  Did she do her own?  Okay.

 7                MR. STEIN:  I'm not going to make the error of

 8   objecting to something Irene --

 9                THE COURT:  You can object if you don't think it's in

10   improper form or have a problem with it.  Tell me what your

11   objection is.

12                MR. STEIN:  No, I don't --

13                THE COURT:  That's just the standard form we use.

14                MR. STEIN:  Yes, I have no objection to it.

15                THE COURT:  Government have any objection?

16                MR. STIEGLITZ:  No, Your Honor.

17                THE COURT:  All right.  So we've got instructions,

18   we've got the verdict form.  I think we're ready to go.

19   Anything else we need to talk about?

20                MR. STEIN:  Yes.

21                Your Honor, there are three -- there are three

22   exhibits that there's a dispute, or may be a dispute, I'm not

23   sure, about whether they're in evidence, and I request that

24   the Court just clarify whether or not it believes they're in

25   evidence.  Defendant's exhibit 152 we believe is in evidence.
```

```
 1              THE COURT:  Yes.  I have it as in evidence.

 2              MR. STEIN:  Okay.  Your Honor, there was no dispute

 3      about that.  I apologize.

 4              And what do you have as exhibit 349?  Do you have

 5      this one?

 6              THE COURT:  I have 349 is in evidence.

 7              I actually have it in evidence twice.

 8              MR. STEIN:  Yes, can we do these as 349A and B,

 9      presuming the Government has no objections?

10              THE COURT:  I assume they already were admitted.  I

11      have them without objection, so maybe they just need to be

12      distinguished one from another.

13              MR. STIEGLITZ:  This is the issue of just us not

14      having a copy, Your Honor.  I think that's what the problem

15      was is we were not provided with a copy of it.

16              THE COURT:  But we should not call them both 349, so

17      once you've satisfied yourself that it's -- they're both in

18      evidence, then we can adjust the numbering.

19              MR. WHITE:  Judge, I don't know if we know which one

20      was admitted first.

21              THE COURT:  Well, I'm not sure it makes a difference,

22      as long as we assign --

23              MR. STEIN:  It doesn't make a difference.  Why don't

24      we say 349 is the one-page document, 349A, and 349B is the

25      two-page document.
```

```
 1              THE COURT:  I would rather you give more identifying

 2    information about what's the date, who is it do to and from so

 3    it will be clear which one is which.

 4              MR. STEIN:  Yes, Your Honor.  349 is e-mail from

 5    Tracy Jones to John Woodbury dated March 6, 2007.  That, I

 6    would propose be 349A.

 7              MR. STIEGLITZ:  Mr.~Stein, I'm sorry to interrupt

 8    you.  Can you just read if there's a Bates number on the

 9    bottom of it for me, please?

10              MR. STEIN:  There's a Bates on one and not the other.

11    And I propose that 349B be the e-mail from Rodney Hildebrand

12    to Tracy Jones dated February 17, 2006.

13              Mr. Stieglitz also correctly pointed out that 349A

14    bears a Bates stamp number of doc 3577.  Exhibit 349B which

15    I'm proposing, the copy I have does not bear a Bates stamp

16    number.

17              THE COURT:  But you said the second one, B, was a

18    two-page document.

19              MR. STEIN:  That's --

20              THE COURT:  Is it one e-mail with two pages?

21              MR. STEIN:  It's two very short e-mails, and the

22    second page just has an address.

23              THE COURT:  All right.  So has that clarified the

24    issue regarding those exhibits that you were talking about?

25    Mr.~Stein, you said you had an issue.
```

```
 1           MR. STEIN:  Yeah, those were the only documents, and
 2    I don't know if the Government has any issues with any
 3    documents.
 4           MR. STIEGLITZ:  We'd just like copies of them, and
 5    we're going to get together tomorrow and make sure that the
 6    exhibits are all squared away, Your Honor.
 7           THE COURT:  All right.  That might be a good thing to
 8    do tomorrow rather than after the closing argument, because
 9    lots of times, especially with this many documents, you know,
10    I need both sides to agree before the documents get sent back,
11    that they're all in order and everyone agrees that everything
12    is here.  So I don't want, with all of these documents, you
13    have to do that after closing argument, have the jury sitting
14    back there for an hour waiting for the documents to go
15    through.
16           So if you can try and get them organized tomorrow
17    before closing argument, that would be great.
18           MR. STIEGLITZ:  Yes, Your Honor.
19           MR. STEIN:  Yes, Your Honor, we'll do that.
20           THE COURT:  Okay.  What else do we need to discuss?
21           MR. STEIN:  Nothing from the defense, Your Honor.
22           MR. STIEGLITZ:  Your Honor, I'd just ask that -- I
23    guess I'll frame it as renewing our motion in limine regarding
24    argument.  I couldn't help but notice Mr.~Stein, I don't say
25    this as a criticism, but has a tendency to say things are
```

1    undisputed, or that there are facts in the record, that

2    certain things are evidence that plainly aren't.  And so I'd

3    ask the Court to I guess remind Mr.~Stein of the nature of the

4    closing argument.

5            The way we play ball, Your Honor, we don't like to

6    object during closing arguments, but if Mr.~Stein intends to

7    claim that a number of things are in evidence that aren't,

8    claim that things are undisputed, which are in dispute, claim

9    that people said things that they didn't say, we will have no

10   choice but to object and do so sort of early and often.  But

11   we -- again, we don't want to.  We don't intend to if we don't

12   have to.  I'd just ask the Court to maybe reiterate that to

13   Mr.~Stein before -- in advance of closing here.

14           THE COURT:  Okay.  You understand, Mr.~Stein, you

15   have to base your arguments on record evidence and not based

16   upon things that haven't been presented to the jury.  You

17   understand that?

18           MR. STEIN:  I understand that.  I don't recall being

19   objected to during the trial by saying something's undisputed,

20   objection.  I mean, we had sidebars during the trial on

21   hearsay evidence, but . . .

22           THE COURT:  Well, you did have a tendency during your

23   questioning to kind of include in your question statements to

24   the effect, well, this is undisputed, or that's undisputed.

25   You have -- sometimes in the nature of the questions you

```
 1    asked, you would include things that may be, I don't know, not
 2    intentionally, but in your mind that may have been undisputed
 3    but may not be from the Government's standpoint.
 4             So anyway, you're an attorney.  You understand what
 5    closing argument is.  You understand you have to base your
 6    argument on evidence in the record and not add things that --
 7    this is kind of the danger of someone representing themselves.
 8    You might tend to remember something that happened that wasn't
 9    actually testified to, and you've got to be careful not to use
10    something in closing argument that you might have remembered
11    happening but wasn't actually presented yet.  So you have to
12    be kind of careful about that.
13             MR. STEIN:  Your Honor, because my closing argument
14    is only once and the Government gets two shots, I don't want
15    my closing argument to be chopped up with objections
16    beforehand.  So I appreciate Mr. Stieglitz bringing it up.  I
17    do intend to have certain of the exhibits blown up or certain
18    other demonstrative evidence of what's already in evidence
19    blown up for the jury, and I want to make sure ahead of time
20    I'll provide the Government with what I'm doing far in
21    advance, but I want to make sure ahead of time that that is
22    not a problem with respect to the Court and the Court's
23    decorum.
24             THE COURT:  If it's in evidence you can blow it up
25    and show it to the jury.  There's no problem with that, as
```

```
 1    long as it's something in evidence.

 2          MR. STEIN:  And if there's a number of things in

 3    evidence and I place them side by side on some sort of

 4    demonstrable piece of exhibit and they're in evidence --

 5          THE COURT:  That's fine.

 6          MR. STEIN:  That's also fine in this courtroom?

 7          THE COURT:  Yes.

 8          MR. STEIN:  My intention will be to provide anything,

 9    if I'm going to do that, to Mr. Stieglitz in advance.  I

10    presume he'll have the same for me.  So I don't believe I'll

11    be outside of the evidence at all, Your Honor.

12          THE COURT:  I assume you will stay within the

13    evidence, and I'll give you the benefit of the doubt, but

14    they're just, I guess, alerting you to that.  They may have

15    some issues with what you're going to say, and we'll deal with

16    it if it comes up.

17          MR. STEIN:  Thank you, Your Honor.

18          THE COURT:  All right.  Anything else?

19          MR. STIEGLITZ:  Nothing from the United States, Your

20    Honor.

21          THE COURT:  Okay.  So we'll see you -- why don't we

22    try and get here maybe about 15 minutes early on Monday so

23    that we can make sure there are no last minute issues, we can

24    get this right to the jury as soon as possible and not have

25    them waiting around.  Okay?
```

```
 1              MR. STEIN:  Thank you, Your Honor.

 2              MR. STIEGLITZ:  Thank you, Your Honor.

 3              THE COURT:  Have a good weekend.  We'll see you on

 4    Monday morning.

 5          (The evening recess was taken at 4:19 p.m.)

 6                         *  *  *  *  *

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                         * * * * *

 2                        I N D E X

 3  Testimony of James N. Fiedler (Continued)

 4           Proffer by Mr. Stein                21

 5           Voir Dire by Mr. Stieglitz         24

 6           Proffer by Mr. Stein                24

 7           Direct by Mr. Stein (Cont.'d)      71

 8           Cross by Mr. Stieglitz             80

 9  Defendant Rests                              95

10  Charge Conference                            98

11                      * * * * *

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                        *  *  *  *  *

 2                    E X H I B I T S

 3   Defendant's Exhibits in Evidence:

 4          Defendant's 412 through 415          66

 5          Defendant's 417                      71

 6          Defendant's 418                      71

 7                        *  *  *  *  *

 8                    CERTIFICATE

 9       I, Stephen W. Franklin, Registered Merit Reporter, and

10   Certified Realtime Reporter, certify that the foregoing is a

11   correct transcript from the record of proceedings in the

12   above-entitled matter.

13       Dated this 10th day of JULY, 2013.

14

15       /s/Stephen W. Franklin
        _____
16       Stephen W. Franklin, RMR, CRR

17

18

19

20

21

22

23

24

25
```

**$**

**$4** [1]  43/16
**$4 billion** [1]  43/16
**$50,000** [21]  34/14 34/17 41/24 41/25 42/1
  42/2 47/13 48/3 48/14 48/23 49/1 49/9 49/20
  49/25 54/18 57/19 57/25 58/19 61/1 71/9
  78/7

**-**

**-and** [1]  1/21
**-v** [1]  1/5

**/**

**/s/Stephen** [1]  165/15

**1**

**1-page** [1]  73/14
**10** [4]  44/14 101/7 101/21 113/5
**10-K** [1]  121/13
**10-Ks** [3]  10/10 10/12 127/10
**10-minute** [1]  39/16
**100** [3]  10/22 29/8 29/9
**1031** [1]  1/22
**10:10** [1]  39/22
**10:21** [1]  39/22
**10:40** [1]  54/5
**10:54** [1]  54/5
**10th** [2]  8/17 165/13
**11** [6]  101/7 101/21 105/5 110/2 113/16
  153/18
**11-80205-CR-MARRA** [1]  1/2
**1157** [1]  151/13
**1166** [1]  152/18
**1167** [1]  152/18
**11:00 o'clock** [1]  43/24
**11:41** [1]  83/15
**11:53** [1]  83/15
**12** [8]  73/25 101/7 101/21 110/14 144/21
  144/25 149/17 149/22
**1208** [1]  1/20
**12:15** [1]  98/8
**12th** [1]  66/1
**13** [10]  101/8 101/21 110/19 114/22 117/14
  118/1 124/18 129/18 132/14 138/6
**1318** [1]  16/8
**1322** [1]  16/8
**1341** [1]  116/2
**1348** [2]  124/15 124/17
**1349** [4]  116/3 116/21 129/20 146/16
**14** [9]  5/21 32/9 34/14 47/14 101/13 112/1
  117/14 118/1 118/3
**1400** [1]  1/18
**15** [8]  4/15 15/14 15/18 112/5 118/7 118/21
  125/3 162/22
**152** [1]  156/25
**1550** [1]  151/3
**1551** [1]  1/20
**16** [9]  1/8 35/4 35/17 112/17 115/2 115/13
  125/19 126/15 126/19
**162** [3]  132/4 142/12 145/23
**16th** [2]  66/2 74/14
**17** [4]  112/24 128/10 132/4 158/12
**176-1** [2]  104/14 105/5
**17910** [1]  18/1
**18** [6]  72/10 116/1 116/3 116/23 128/12
  128/15
**183** [1]  1/10
**18th** [1]  65/23
**19** [1]  129/14

**19 million** [1]  139/2
**19.6 million** [1]  132/11
**1996** [1]  151/4
**1999** [1]  17/25
**1:30** [3]  97/2 97/7 98/7
**1:59** [1]  98/8

**2**

**20** [5]  14/18 15/14 113/12 131/22 138/3
**2000** [2]  16/9 30/9
**2004** [4]  9/21 18/21 19/16 30/10
**2005** [7]  30/10 67/6 70/8 99/2 99/8 144/5
  145/6
**2006** [3]  99/2 99/8 158/12
**2007** [11]  24/8 24/12 28/11 32/6 65/23 66/1
  66/19 71/8 72/11 73/25 158/5
**2008** [9]  66/2 66/4 67/6 70/8 74/14 74/19
  74/21 100/14 133/16
**2009** [3]  22/10 24/16 151/14
**201** [1]  10/16
**2010** [3]  10/23 12/3 12/25
**2012** [2]  8/17 57/17
**2013** [2]  1/8 165/13
**20530** [1]  1/18
**21** [12]  66/4 114/12 139/23 140/2 140/12
  140/13 140/18 140/19 140/25 141/6 145/2
  164/4
**21A** [1]  140/23
**21B** [2]  140/23 140/24
**21s** [1]  140/22
**21st** [1]  74/19
**22** [5]  114/12 141/9 145/3 146/3 147/17
**228** [1]  1/22
**23** [2]  114/20 141/23
**235** [1]  16/8
**24** [7]  32/6 84/2 114/20 141/25 153/18 164/5
  164/6
**24th** [1]  24/8
**27** [1]  118/7
**27th** [1]  71/8
**28** [1]  118/7
**28-year** [1]  116/13
**28th** [2]  24/12 24/12
**29** [6]  98/15 99/4 99/6 101/6 102/5 126/15
**2d** [2]  18/21 19/15

**3**

**30** [3]  14/2 126/15 154/24
**307** [2]  18/21 19/15
**31** [1]  128/5
**33** [1]  128/5
**33179** [1]  1/22
**33401** [2]  1/20 1/25
**34** [3]  4/10 4/10 128/12
**349** [5]  157/4 157/6 157/16 157/24 158/4
**349A** [4]  157/8 157/24 158/6 158/13
**349B** [3]  157/24 158/11 158/14
**3577** [1]  158/14
**37** [1]  139/24
**371** [3]  116/5 116/23 116/23
**3768** [1]  1/24
**38** [1]  141/10
**3:55** [1]  155/6
**3s** [1]  127/7

**4**

**41** [1]  106/8
**410** [8]  20/17 20/21 22/8 23/2 31/24 38/17
  38/18 47/12
**411** [6]  19/1 20/18 22/8 23/2 38/17 38/18

**412** [5]  65/17 65/22 66/11 72/9 165/4
**413** [6]  65/5 65/17 65/23 66/11 73/14 73/23
**414** [8]  65/5 65/17 66/1 66/11 70/18 70/19
  74/12 74/17
**415** [5]  65/5 65/17 66/3 66/11 165/4
**416** [1]  65/5
**417** [6]  70/20 70/24 71/1 71/11 71/12 165/5
**418** [3]  71/13 71/17 165/6
**418's** [1]  71/15
**45** [2]  30/16 92/6
**48** [6]  40/4 40/9 42/17 43/2 43/4 43/9
**48-hour** [1]  40/15
**4:05** [1]  155/6
**4:19** [1]  163/5
**4s** [13]  101/15 101/17 118/11 118/16 118/16
  119/21 120/22 121/1 121/4 121/6 121/23
  122/18 127/7

**5**

**5.07** [4]  134/23 134/25 135/2 135/12
**50,000** [3]  32/2 32/8 66/19
**507** [7]  132/2 132/15 132/16 132/18 134/10
  134/10 134/12
**514-3768** [1]  1/24
**54** [1]  116/19
**556** [1]  151/13
**561** [1]  1/24
**5s** [2]  127/7 127/10

**6**

**60** [1]  154/24
**66** [1]  165/4

**7**

**701** [1]  1/24
**71** [3]  164/7 165/5 165/6
**764** [2]  18/21 19/15
**79** [1]  151/3

**8**

**80** [1]  164/8
**803** [4]  19/22 26/20 27/8 31/5

**9**

**9.1B** [1]  141/4
**9/14** [3]  32/9 34/14 47/14
**9/27/2007** [1]  66/19
**901** [2]  16/11 16/14
**9027** [1]  17/18
**95** [1]  164/9
**98** [1]  164/10
**99** [1]  18/1
**99 percent** [1]  81/6
**9:00 o'clock** [1]  94/10

**A**

**a.m** [6]  39/22 39/22 54/5 54/5 83/15 83/15
**abetting** [2]  128/12 130/12
**ability** [1]  100/4
**able** [24]  21/25 43/2 51/1 53/17 53/20 54/9
  54/10 54/20 63/12 64/5 64/23 68/7 68/22
  69/15 76/13 79/10 79/19 85/18 92/16 96/9
  96/15 109/5 124/10 134/7
**above** [2]  32/7 165/12
**above-entitled** [1]  165/12
**absolutely** [8]  10/15 42/7 49/17 58/2 64/20
  75/4 82/17 107/25
**abundance** [1]  56/13
**accede** [1]  92/11
**accept** [3]  5/2 37/19 58/18

**A**

acceptable [2]  51/15 107/19
access [3]  33/23 71/3 71/14
accomplish [2]  51/1 69/15
according [1]  31/21
accordingly [1]  86/16
accounting [2]  28/24 32/16
accurate [5]  28/15 28/17 35/20 35/23 35/24
accused [1]  57/14
acknowledged [1]  151/23
acquittal [1]  144/10
act [13]  4/5 8/11 8/13 101/13 115/15 116/1
 116/2 116/21 117/1 125/25 131/6 131/16
 136/5
acted [5]  123/7 135/5 135/13 135/14 136/7
actively [2]  73/21 74/8
activities [1]  130/6
activity [4]  29/12 31/7 41/4 43/23
acts [13]  99/5 115/2 115/3 115/5 115/13
 115/17 116/4 116/10 116/12 117/4 117/9
 117/15 146/5
actual [4]  3/15 18/8 50/5 93/1
actually [23]  12/15 12/18 14/14 35/22 42/3
 51/2 51/16 56/13 56/24 56/25 74/7 96/4
 119/15 122/15 123/12 127/9 133/10 133/21
 134/8 137/2 157/7 161/9 161/11
acuity [1]  152/11
adapted [1]  146/17
add [28]  34/1 103/3 104/1 117/6 124/6 124/9
 124/12 124/23 125/2 130/12 133/19 136/14
 136/17 139/9 139/18 142/23 143/15 143/16
 143/19 144/3 146/13 147/12 148/15 149/22
 153/11 154/9 155/17 161/6
added [19]  103/5 117/9 117/11 128/17
 133/10 133/22 135/23 137/1 138/8 142/25
 145/21 147/25 148/10 148/11 148/12 149/23
 150/1 150/8 154/1
adding [7]  126/1 129/8 131/8 136/15 146/20
 148/14 154/6
addition [2]  32/20 104/23
additional [18]  10/11 16/20 16/20 18/5 22/23
 59/8 68/2 86/8 86/9 87/19 97/10 102/19
 143/15 145/19 147/12 149/25 155/11 155/18
additions [2]  134/17 134/17
address [8]  17/16 25/13 38/8 79/10 84/22
 94/6 129/23 158/22
addressed [1]  14/5
addresses [2]  54/24 131/5
adequate [1]  143/13
adequately [1]  147/2
adjust [1]  157/18
admissibility [1]  50/7
admissible [5]  4/9 7/6 13/18 17/3 27/10
admission [2]  15/11 38/17
admit [8]  6/24 6/25 9/4 9/6 14/23 58/16 59/1
 65/9
admitted [16]  14/5 14/23 18/22 34/20 55/20
 66/10 70/24 71/15 72/9 73/13 111/11 111/11
 111/15 152/22 157/10 157/20
admittedly [1]  76/22
admitting [5]  6/21 8/25 9/3 19/8 56/23
advance [5]  37/8 37/9 160/13 161/21 162/9
advances [1]  146/6
advantage [1]  117/19
advisable [1]  146/21
advise [1]  136/5
affair [1]  86/17
affect [1]  86/11
affects [1]  86/7

affidavit [1]  19/21
affiliate [1]  101/15
affiliated [2]  24/15 77/19
affiliates [2]  101/16 101/17
affixed [1]  17/20
after [37]  10/2 10/13 30/11 33/24 39/22 40/9
 43/24 44/21 45/3 45/3 54/5 62/16 68/6 68/25
 79/1 79/18 83/15 89/21 94/11 95/5 96/7 98/8
 102/6 102/7 108/8 109/7 113/18 114/7
 124/21 129/7 137/6 139/6 141/4 147/18
 155/6 159/8 159/13
afternoon [14]  61/17 61/20 61/21 62/7 64/2
 81/20 81/25 91/3 94/18 94/19 94/23 94/24
 94/24 96/9
afterwards [1]  79/7
again [36]  2/18 19/14 19/23 20/3 33/4 37/14
 46/5 52/17 52/24 54/17 58/10 59/17 60/13
 66/3 67/23 69/16 74/19 77/17 78/14 80/17
 81/12 82/22 82/23 83/5 90/17 91/21
 95/9 96/3 96/20 96/22 105/11 106/7 117/3
 134/18 160/11
against [6]  8/14 89/8 89/12 89/12 105/19
 105/24
ago [1]  151/9
agree [26]  20/5 36/11 45/6 48/22 49/12 49/13
 49/22 51/2 51/16 56/2 56/17 57/1 58/6 64/9
 65/9 75/20 76/23 110/25 112/22 112/23
 120/8 124/2 141/6 145/4 154/18 159/10
agreed [14]  2/11 5/8 14/2 40/4 40/5 43/22
 53/1 58/25 62/12 62/24 102/18 122/11 145/3
 147/23
agreeing [1]  49/8
agreement [7]  4/5 8/15 8/18 8/25 32/25
 40/14 40/15
agrees [3]  48/25 108/17 159/11
ahead [6]  41/5 53/24 135/18 137/13 161/19
 161/21
ahold [1]  38/3
aiding [2]  128/12 130/11
Albert [1]  1/16
alerting [1]  162/14
aligned [1]  132/15
allegation [4]  13/13 121/17 130/15 144/4
allegations [2]  121/25 153/2
allege [2]  117/5 117/18
alleged [12]  113/19 113/20 113/25 114/2
 114/6 114/7 117/11 121/20 122/22 123/9
 127/25 145/10
alleges [4]  99/5 116/9 117/15 144/19
alleging [3]  123/15 131/7 145/6
allow [1]  7/25
allowable [1]  122/25
allowed [2]  45/11 48/9
allowing [3]  34/21 46/2 102/8
allude [1]  120/17
almost [2]  69/12 72/19
alone [1]  152/3
along [3]  4/21 62/18 127/7
already [32]  24/16 17 32/13 32/21 36/2
 42/17 46/1 55/17 70/19 78/9 88/7 99/22
 106/3 111/25 123/18 131/10 140/13 142/10
 142/14 142/15 143/17 144/21 145/18 145/20
 148/25 149/9 150/2 153/19 155/12 155/16
 157/10 161/18
also [19]  9/17 10/15 13/9 34/1 37/13 37/19
 48/4 53/4 67/20 101/18 109/8 115/4 122/22
 134/4 137/8 142/23 150/15 158/13 162/6
altered [2]  97/25 137/9
although [5]  43/21 69/12 113/5 116/9 121/7
always [1]  68/20

am [15]  6/24 9/5 14/24 42/24 56/22 61/5
 61/14 68/3 71/21 80/9 87/5 91/4 111/7
 120/12 151/1
ambushed [1]  57/22
Amendment [2]  72/10
AMERICA [4]  1/3 12/1 69/24 71/7
amount [3]  36/5 49/25 69/9
analysis [1]  19/21
Anand [4]  85/17 93/18 99/20 102/1
Angeles [1]  41/4
Ann [2]  18/8 18/13
annotations [2]  116/17 116/20
annual [1]  73/9
another [10]  6/17 15/14 43/13 71/6 74/12
 74/17 119/7 144/3 154/4 157/12
answer [7]  4/25 72/24 73/8 79/3 81/6 82/13
 87/25
answering [1]  21/9
answers [1]  108/11
anticipate [2]  14/12 50/6
anticipated [2]  51/9 68/17
anticipating [1]  82/5
anticipation [1]  49/9
any [119]
anybody's [1]  86/17
anymore [1]  39/9
anyone [2]  21/14 29/22
anyone's [1]  86/18
anything [25]  7/3 22/17 23/5 24/21 29/21
 32/3 41/13 61/23 62/1 64/21 72/16 73/22
 87/1 97/11 98/4 109/6 111/2 111/14 120/18
 130/12 143/14 154/9 156/19 162/8 162/18
anyway [8]  7/15 33/2 38/16 52/10 81/15
 153/9 153/11 161/4
aol.com [1]  1/25
apart [1]  49/20
apologize [9]  38/12 56/22 64/15 69/4 103/1
 144/11 148/7 153/13 157/3
apparently [3]  31/21 37/20 153/15
appeal [1]  34/10
appear [1]  37/3
Appearances [1]  1/15
appears [2]  134/18 137/8
applies [5]  115/4 129/20 129/20 130/1 130/2
appreciate [3]  55/24 102/8 161/16
approach [5]  16/3 22/4 72/12 75/12 117/23
appropriate [10]  37/1 48/10 98/15 109/25
 124/22 131/2 131/13 132/4 134/20 146/24
approval [1]  10/2
approvals [1]  122/19
approve [6]  73/22 85/2 93/17 93/19 93/20
 100/18
approved [11]  101/19 144/2 144/21 144/22
 145/18 145/20 148/25 149/9 150/3 155/12
 155/16
approves [1]  73/19
approving [1]  101/3
approximately [2]  25/8 92/8
April [2]  67/6 70/8
April 2008 [1]  67/6
April of [1]  70/8
ARC [4]  4/5 8/14 101/18 132/7
architect [1]  130/17
aren't [3]  124/17 160/2 160/7
argue [8]  89/9 99/23 100/3 100/21 101/5
 120/10 122/11 122/13
argued [3]  99/3 122/3 139/3
argument [33]  2/13 7/8 12/10 83/24 85/19
 85/24 85/25 86/23 87/7 87/10 87/13 87/18
 91/16 91/20 92/1 93/4 93/10 95/25 96/2 96/4

**A**

argument... [13]  117/14 120/10 130/17 159/8
 159/13 159/17 159/24 160/4 161/5 161/6
 161/10 161/13 161/15
arguments [13]  86/25 95/22 96/6 106/24
 106/25 107/6 107/7 107/12 107/17 107/23
 108/1 160/6 160/15
around [6]  60/8 62/3 83/2 134/6 146/21
 162/25
arrangements [1]  61/18
artfully [1]  124/1
ascertain [1]  51/8
ascribing [1]  130/4
ask [47]  22/8 23/21 26/14 33/19 47/7 50/13
 56/1 57/2 59/7 60/8 72/11 73/14 74/15 75/22
 75/24 75/25 76/9 76/15 77/1 77/16 77/20
 77/25 78/6 78/8 78/13 78/20 79/6 79/22 80/1
 80/2 80/23 80/24 82/24 83/20 87/23 91/14
 97/8 99/18 99/20 101/25 104/22 120/10
 120/18 128/16 159/22 160/3 160/12
asked [16]  26/12 33/15 42/15 66/22 70/2
 76/13 88/15 97/17 106/15 106/16 106/16
 108/10 108/10 108/14 129/22 161/1
asking [9]  36/17 40/25 78/16 78/18 79/4
 106/6 106/11 120/4 120/4
asserted [2]  19/9 27/4
assign [1]  157/22
assist [2]  23/4 89/16
associated [3]  76/2 76/19 77/14
Associates [1]  57/10
assume [7]  12/8 42/5 50/14 106/23 149/4
 157/10 162/12
assumed [2]  35/3 105/1
assuming [7]  24/19 26/2 61/8 66/8 67/22
 85/25 87/9
assumption [2]  29/20 43/5
assure [1]  148/16
attach [1]  84/2
attached [8]  3/8 32/2 32/8 34/14 34/17 47/13
 67/7 70/9
attachment [2]  24/11 70/25
attempt [3]  27/12 34/24 36/8
attempting [1]  69/7
attention [1]  83/25
attesting [1]  19/23
attorney [2]  53/6 161/4
attorneys [2]  95/22 96/1
attract [1]  152/10
audited [5]  27/20 27/23 28/19 28/20 29/10
auditors [2]  28/2 28/11
audits [3]  28/13 28/13 29/15
August [1]  8/17
August 10th [1]  8/17
authentic [6]  4/8 17/21 26/8 55/7 58/17
 152/25
authenticate [2]  6/25 37/1
authenticating [4]  17/1 17/11 17/22 18/4
authentication [2]  17/13 17/18
authenticity [4]  16/10 17/8 18/14 31/25
author [1]  47/6
authored [1]  48/20
authorities [1]  150/10
authority [1]  134/25
authorize [1]  94/3
authorized [4]  35/4 35/10 35/18 99/22
available [5]  23/17 61/16 81/14 89/15 150/19
Avenue [1]  1/18
avoid [4]  49/15 50/20 50/23 51/13
aware [11]  26/15 28/9 28/12 57/5 73/5 73/8
 73/10 73/10 76/10 76/18 115/25
away [2]  4/16 159/6

**B**

back [44]  9/21 13/10 21/4 31/4 40/11 40/12
 41/9 45/8 47/9 48/5 48/13 48/15 48/24 49/16
 50/24 50/25 51/19 54/7 58/5 63/6 69/3 81/3
 82/1 83/2 83/18 94/10 94/14 95/7 97/2 97/16
 97/19 97/23 98/11 101/25 109/18 110/2
 118/21 140/14 143/24 149/16 155/5 155/9
 159/10 159/14
ball [2]  37/8 160/5
bank [2]  42/21 50/10
bargains [1]  142/24
base [3]  60/13 160/15 161/5
based [14]  37/5 46/7 46/13 54/11 54/15
 75/20 75/25 76/1 76/9 76/16 77/1 119/24
 132/1 160/15
basic [5]  102/25 103/16 103/25 104/2 104/23
basically [2]  36/21 84/17
basis [4]  99/6 120/11 122/12 144/9
Batelle [34]  4/7 8/20 9/1 9/2 9/14 9/20 9/25
 10/13 10/18 10/21 10/24 11/2 11/10 11/17
 11/18 12/11 12/12 12/16 12/18 12/19 12/21
 12/22 12/25 13/8 30/11 43/14 43/15 43/15
 45/12 46/3 59/12 59/16 61/12 79/11
Batelle's [1]  13/10
Bates [17]  13/18 158/8 158/14 158/15
Beach [3]  1/7 1/20 1/25
bear [4]  83/3 135/16 136/3 158/15
bearing [1]  16/17
bears [3]  17/14 18/2 158/14
beating [1]  41/12
because [66]
become [2]  24/15 146/6
becoming [1]  79/7
bed [1]  23/22
before [32]  1/12 13/20 14/15 15/14 22/10
 23/19 24/4 24/7 34/15 41/16 45/18 48/6
 53/25 65/2 72/11 73/15 73/16 74/15 79/16
 84/13 85/20 85/23 88/1 98/14 105/6 112/14
 113/20 137/5 151/14 159/10 159/17 160/13
beforehand [3]  63/19 109/5 161/16
began [1]  25/23
begin [3]  96/8 98/14 150/5
beginning [2]  19/25 145/6
begins [2]  135/20 136/16
behalf [6]  59/25 60/11 61/9 61/12 83/21 83/22
being [26]  25/5 25/9 26/4 26/4 30/4 30/6 30/8
 30/14 34/7 43/4 47/9 47/20 55/2 58/10 58/17
 61/21 81/14 99/11 99/19 103/5 113/7 117/24
 134/19 146/4 148/17 160/18
belief [1]  94/2
believable [1]  101/1
believe [28]  4/9 4/19 13/18 30/19 34/7 36/22
 59/1 59/3 59/18 75/18 76/12 93/15 102/12
 110/5 112/20 112/25 115/9 126/10 132/24
 137/10 143/14 145/19 150/8 150/21 151/5
 154/13 156/25 162/10
believed [1]  100/5
believes [2]  102/2 156/24
beneficial [2]  127/2 127/4
benefit [3]  45/25 137/20 162/13
besides [1]  15/1
best [6]  15/25 16/5 22/15 61/19 136/25 153/4
between [2]  4/5 43/12 44/3 49/7 62/1 67/1
 67/3 67/3 67/6 69/23 70/3 70/5 70/6 70/8
 71/6 119/13 138/18 152/9 153/21 154/11
beyond [19]  75/20 99/9 99/10 100/6 128/17
 128/24 129/3 129/7 130/19 130/21 136/6

base: 73/10 73/10 76/10 76/18 115/25

138/13 146/9 147/5 147/7 147/8 147/11
 154/15 154/20
big [3]  27/7 121/8 151/7
billion [1]  43/16
billions [1]  152/24
binding [1]  111/16
Bissett [1]  25/19
bit [6]  5/4 13/21 34/5 82/25 119/18 154/4
blame [1]  153/15
blank [2]  41/5 42/9
blind [4]  101/16 121/5 121/16 121/24
blow [1]  161/24
blown [2]  161/17 161/19
board [6]  5/16 32/19 33/1 67/5 70/7 100/14
book [1]  116/19
books [1]  34/2
both [17]  61/14 75/8 98/12 114/2 115/10
 115/12 116/12 116/24 121/8 140/23 144/21
 146/10 151/18 153/25 157/16 157/17 159/10
bothers [1]  112/10
bottom [5]  34/18 106/8 109/14 112/6 158/9
bracket [2]  110/8 110/9
bracketed [3]  104/6 104/6 110/7
breaching [1]  123/2
break [6]  39/2 39/16 45/2 94/10 97/1 155/5
brief [5]  19/17 78/4 92/18 137/11 140/10
briefly [3]  34/1 46/24 115/21
brilliant [2]  107/9 107/10
bring [24]  14/15 20/7 20/13 35/7 37/10 37/11
 37/13 40/25 47/3 48/15 48/23 50/25 51/19
 52/18 52/24 62/1 64/25 68/8 68/13 83/25
 94/14 124/16 125/7 147/22
bringing [3]  47/1 50/24 161/16
broadly [1]  151/19
brought [2]  41/21 47/9
Brown [7]  151/3 151/7 151/18 151/21 151/23
 152/3 152/6
bullet [1]  109/7
burden [4]  38/5 137/14 138/10 138/13
business [36]  17/20 18/22 18/24 19/5 19/20
 19/25 20/1 20/2 26/4 26/7 26/9 26/14 26/17
 26/18 26/18 26/20 27/2 27/6 27/7 27/10
 27/16 28/21 29/1 29/13 29/18 31/7 31/12
 31/16 31/17 31/23 33/5 33/11 34/8 58/10
 58/12 59/3
business' [1]  26/9

**C**

calculated [1]  151/22
California [2]  34/25 36/5
callback [1]  40/4
called [8]  42/16 63/15 76/3 76/20 77/15
 98/20 100/18 126/9
calling [9]  13/18 33/12 37/7 52/10 68/6 79/2
 79/6 80/24 87/12
came [10]  4/21 22/9 24/18 24/20 25/20 41/11
 51/6 121/14 132/6 132/7
can't [16]  19/2 22/16 27/6 57/1 59/1 60/13
 73/3 77/20 77/23 90/2 90/3 92/20 101/1
 101/2 135/19 137/16
cannot [4]  89/8 90/4 90/11 123/2
Canyon [1]  25/12
Cardiac [6]  41/1 41/3 41/14 76/3 76/20
 77/15
care [2]  11/10 119/4
careful [3]  105/21 161/9 161/12
carefully [4]  40/18 132/12 132/15 141/5
Carlton [1]  151/15
carrier [1]  22/11
Carter [22]  9/15 10/24 12/2 12/15 12/17

**C**

Carter... [17]  12/22 12/24 13/5 13/9 85/9
85/17 93/18 99/11 99/20 120/15 121/21
130/7 130/15 130/18 130/19 130/23 131/2
Carter's [1]  102/2
case [87]
cases [13]  15/10 15/19 15/20 15/22 15/24
15/24 17/12 17/23 18/4 114/2 131/13 136/11
136/12
cash [1]  41/25
cashed [3]  49/6 51/18 56/5
caught [1]  112/14
cause [1]  3/17
caused [1]  140/14
causes [1]  107/20
causing [1]  100/5
caution [2]  56/13 122/20
cease [2]  30/4 30/6
ceased [1]  30/8
certain [11]  10/8 23/12 46/9 51/10 79/5
83/22 107/15 122/17 160/2 161/17 161/17
certainly [8]  11/5 12/6 19/2 61/22 81/20
99/14 100/4 148/3
certainty [1]  68/7
CERTIFICATE [1]  165/8
Certified [1]  165/10
certify [1]  165/10
cetera [8]  49/3 49/6 103/11 136/17 136/17
136/17 146/4 146/4
chain [4]  17/14 17/15 34/13 143/23
challenging [3]  18/7 18/9 18/12
chance [3]  34/3 34/4 155/10
chances [1]  146/22
Chandler [2]  143/21 150/10
change [12]  100/8 111/24 113/15 117/10
123/17 123/18 126/13 128/14 128/18 129/13
141/11 141/18
changed [2]  109/8 123/18
changes [5]  108/20 109/4 127/2 127/4 155/16
characteristics [2]  16/15 16/19
characterization [1]  54/11
characterize [1]  106/22
charge [8]  138/24 139/8 139/14 143/21 144/2
144/3 144/7 164/10
charge's [1]  149/6
charged [4]  116/1 138/22 144/17 149/6
charges [2]  144/15 149/8
charging [6]  15/8 44/7 44/15 48/11 64/17
90/7
Charles [1]  1/21
chart [14]  2/14 5/17 5/18 62/18 67/7 67/9
70/9 70/10 70/11 70/13 70/16 70/17 71/2
71/4
chatter [4]  19/2 21/21 27/23 28/17
chauffeur [3]  12/4 99/12 99/15
check [52]  4/20 4/23 6/7 6/11 6/18 7/6 7/20
8/4 8/6 8/9 13/17 14/21 18/19 19/1 19/5
20/25 24/13 30/20 30/21 30/22 34/17 36/16
37/13 37/20 37/21 40/23 41/10 41/25 42/4
45/11 49/5 49/6 50/9 50/10 50/16 51/17 55/2
55/5 55/7 56/2 56/4 56/5 56/5 56/10 56/24
57/18 58/8 78/7 78/10 78/11 78/12 78/12
checked [1]  83/25
checks [1]  29/19
Cheek [1]  136/11
chief [2]  98/19 98/20
choice [1]  160/10
choose [1]  117/23
chooses [1]  82/10

chopped [1]  161/15
chose [3]  86/14 89/13 90/11
chosen [2]  105/13 117/18
circuit [38]  7/7 16/7 16/9 19/13 103/5 104/3
115/10 116/18 116/19 116/24 132/1 132/17
132/23 133/6 133/7 133/18 133/24 134/2
134/9 134/19 136/18 136/21 137/24 138/2
138/17 138/20 138/23 139/4 139/6 139/17
140/17 140/23 147/17 150/22 151/4 151/17
152/2 152/5
Circuit's [3]  136/15 137/20 137/22
circuits [4]  151/25 152/1 152/4 152/17
circumstances [3]  16/16 51/20 130/10
citations [1]  15/23
cite [4]  16/1 18/4 19/14 19/15
cited [3]  16/25 118/14 150/10
cites [1]  16/2
civil [9]  101/22 117/25 119/13 122/20 122/23
122/24 123/1 123/2 123/13
CJA [2]  83/22 84/2
CJA-24 [1]  84/2
CJA24s [1]  84/20
claim [4]  120/15 160/7 160/8 160/8
claims [4]  16/13 99/8 132/8 132/8
clarified [1]  158/23
clarify [4]  79/21 104/15 141/1 156/24
Clark [21]  11/6 44/14 45/22 45/24 52/1
52/24 52/25 59/14 59/21 61/7 62/13 62/17
65/1 67/15 68/6 71/19 71/20 71/24 75/18
80/7 118/10
clause [1]  139/18
cleaner [1]  122/18
clear [10]  41/22 42/4 99/4 121/15 121/25
128/23 130/5 154/14 154/19 158/3
cleared [1]  42/20
clearing [1]  30/11
clearly [1]  146/19
Clematis [1]  1/24
close [9]  44/8 68/22 87/16 87/18 88/11 91/6
91/9 92/8 94/9
closed [5]  90/25 92/5 108/3 146/11 146/12
closely [1]  132/14
closing [46]  63/23 64/22 83/24 85/19 85/24
85/24 86/23 86/25 87/4 87/6 87/9 87/13
87/17 90/2 91/1 91/6 91/20 91/25 92/11
92/14 92/20 93/4 93/10 94/25 95/22 95/25
96/2 96/4 96/6 117/14 120/10 120/14 120/23
139/3 153/6 153/10 159/13 159/15 159/17
160/4 160/6 160/13 161/5 161/10 161/13
161/15
closings [2]  82/2 94/22
coast [2]  53/5 53/8
coconspirator [3]  130/4 131/1 146/10
coconspirators [2]  130/3 131/17
code [17]  17/18
coerced [3]  46/14 47/20 59/17
collating [1]  86/14
colleague [2]  68/20 111/6
collect [1]  42/3
comes [8]  4/17 7/10 45/8 56/21 79/25 135/1
135/24 162/16
coming [5]  21/4 37/19 49/16 57/20 86/1
comments [5]  97/19 116/18 116/20 135/25
150/5
Commission [8]  4/6 8/15 72/6 73/24 74/2
74/13 101/20 122/19
commit [2]  144/25 145/5
committed [2]  28/23 130/3
committee [1]  146/19
communicated [1]  28/4

communication [2]  2/20 3/3
communications [11]  3/10 3/20 4/3 4/4 4/7
5/13 21/21 67/1 67/5 70/3 70/8
companies [2]  27/20 74/9
company [40]  8/19 12/1 17/14 19/5 19/6
22/10 25/5 25/9 25/16 25/21 26/22 27/19
27/22 27/25 28/2 29/25 30/1 30/4 30/7 30/9
30/17 32/17 32/20 41/14 43/16 48/13 76/3
76/19 77/14 77/19 79/12 98/22 98/24 99/1
100/14 100/16 101/3 101/4 143/22 143/25
company's [2]  60/1 150/13
compare [3]  85/15 86/20 116/13
compared [1]  137/21
competency [1]  11/2
competent [1]  75/19
complaint [1]  115/8
complete [5]  36/21 36/24 57/15 66/8 68/9
138/24 139/7 139/12 139/14 154/1
completely [8]  9/21 11/11 11/14 50/25 86/19
119/3 132/1 154/16
computer [1]  23/10
concentrate [1]  36/13
concern [4]  45/7 46/8 62/2 141/15
concerned [5]  15/3 39/5 45/2 45/5 63/12
85/21 95/12 95/13 126/2
concerning [4]  122/17 142/18 142/20 143/6
conclude [1]  76/14
concluded [2]  80/4 82/21
conclusion [1]  77/24
conclusions [1]  76/21
conclusory [1]  76/7
conduct [3]  74/23 76/17 152/13
conducted [4]  29/1 31/7 31/18 41/19
confer [2]  39/14 39/24
conference [7]  15/8 44/7 44/15 64/17 80/4
82/21 164/10
conferences [1]  48/11
confess [1]  112/9
confirm [3]  66/23 70/2 150/18
confirmed [1]  150/24
conflicting [1]  102/12
confronting [1]  47/23
confuse [3]  3/13 124/16 125/13
confused [4]  116/14 116/14 145/8 146/23
confusing [2]  130/10 154/17
confusion [4]  3/17 104/21 116/15 130/13
confusions [1]  107/21
Congress' [1]  116/22
connected [1]  119/17
connection [4]  21/20 116/10 119/16 123/13
consider [6]  90/11 105/10 123/11 130/8
135/15 136/2
consideration [1]  102/7
considered [7]  11/25 107/16 123/13 123/23
125/21 127/20 132/15
conspiracies [5]  113/18 113/19 114/1 114/7
144/16
conspiracy [48]  99/5 114/11 115/10 116/5
121/20 127/24 128/4 129/19 129/20 130/7
130/11 131/6 131/7 131/7 131/9 131/17
131/18 143/20 144/2 144/3 144/5 144/18
144/25 145/5 145/6 145/9 145/10 145/12
145/12 146/5 146/6 148/17 148/21 148/22
148/23 149/1 149/2 149/3 149/4 149/8
149/10 149/11 149/11 149/12 149/13 149/14
149/15 149/21
conspirator [2]  146/7 147/18
conspirators [1]  131/14
conspired [1]  130/16
constitute [2]  125/23 150/15

**C**

constitutional [1] 88/22
consult [4] 38/25 83/8 88/16 140/7
consultants [2] 32/16 101/4
consulted [1] 89/18
consulting [3] 17/25 32/25 89/21
Cont'd [1] 71/22
Cont.'d [2] 24/24 164/7
contact [6] 11/9 36/8 36/9 37/3 45/15 50/14
contacted [11] 8/20 9/1 9/22 11/2 11/17 12/1
12/11 12/14 12/19 12/21 100/22
contain [1] 125/19
contained [4] 22/1 22/14 100/15 100/16
contemplate [1] 118/15
contemplated [1] 150/16
contents [1] 16/14
continue [3] 81/3 87/7 152/7
Continued [1] 164/3
contracts [1] 55/19
contradict [1] 12/16
contradicts [2] 13/11 13/12
contrary [4] 29/21 116/9 151/24 152/1
control [1] 17/21
convict [2] 117/2 122/4
convicted [1] 123/2
cooperation [2] 95/10 96/24
copied [1] 55/11
copies [2] 97/10 159/4
copious [1] 86/19
copy [13] 19/11 19/12 57/7 92/25 93/13
93/15 93/16 93/16 104/17 112/15 157/14
157/15 158/15
corporate [1] 25/21
correct [45] 4/3 8/2 13/4 13/6 15/5 18/11
24/10 24/13 24/17 24/22 25/2 25/22 25/25
30/13 31/5 38/18 48/14 48/16 48/18 58/1
58/2 61/5 61/10 62/20 66/6 67/12 67/25 68/3
68/4 79/20 88/14 88/25 89/16 89/17 89/24
90/19 93/5 109/19 120/12 122/8 125/12
126/13 144/15 155/20 165/11
corrected [1] 118/17
corrections [1] 129/17
correctly [4] 42/17 42/19 132/9 158/13
correlates [1] 87/8
Cotton [1] 143/23
couldn't [4] 22/22 58/11 74/5 159/24
counsel [20] 1/21 11/23 25/5 25/15 36/8 39/3
43/15 43/25 44/1 55/14 59/10 61/14 82/6
83/9 83/21 88/16 89/15 89/22 140/14 153/16
count [7] 114/22 115/10 115/11 116/7 127/22
127/22 127/23
Count 1 [1] 127/23
country [1] 25/12
counts [11] 101/7 101/8 101/8 101/21 114/25
115/1 115/12 126/14 127/23 129/18 145/10
counts 2 [2] 115/1 129/18
Counts 8 [2] 101/7 101/21
couple [3] 50/23 75/19 121/17
course [18] 15/16 16/24 17/20 18/24 19/5
26/13 26/18 27/5 28/21 31/12 31/15 44/13
52/1 89/16 120/9 143/10 145/25 154/23
court [123]
Court's [18] 5/3 35/20 36/17 42/19 45/7
55/17 61/15 76/23 80/10 83/25 90/1 99/19
99/20 102/8 110/23 115/25 150/5 161/22
courtroom [11] 11/7 11/15 21/14 34/25 59/9
68/25 83/6 95/5 96/25 98/2 162/6
cover [3] 6/16 123/16 149/11
covered [5] 142/10 142/14 142/17 146/2

155/12
covers [2] 147/2 149/13
CPA [1] 32/20
CPE [1] 1/23
CR [1] 1/2
craft [1] 134/6
crafted [5] 120/7 132/12 133/21 134/3
135/25
crafting [1] 105/21
create [4] 31/20 102/4 130/22 136/14
created [5] 18/24 31/9 31/14 31/18 130/23
creates [1] 102/13
creation [1] 121/5
creative [1] 134/21
credibility [5] 100/3 142/13 142/22 143/8
143/17
crime [15] 117/2 117/12 118/12 120/6 120/7
120/23 122/21 123/2 123/13 123/14 123/22
125/23 127/16 127/16 127/19
criminal [9] 1/17 101/23 119/14 123/8
123/14 132/2 132/17 135/14 152/12
critical [5] 11/3 12/24 38/22 39/1 85/1
criticism [1] 159/25
criticized [1] 152/5
criticizing [1] 144/12
cross [14] 8/9 10/25 13/12 34/3 34/4 39/17
42/25 48/7 59/7 64/23 80/5 86/15 99/16
164/8
cross-examination [5] 10/25 13/12 39/17
64/23 80/5
cross-examine [6] 34/3 34/4 42/25 48/7 59/7
99/16
cross-examined [1] 8/9
cross-examining [1] 86/15
crossing [1] 109/13
CRR [2] 1/23 165/16
crucial [1] 39/1
CTO [3] 9/16 12/2 99/14
curiosity [1] 8/3
current [1] 61/6
custodianship [1] 21/17
customary [1] 18/2
cut [3] 26/1 121/8 121/9

**D**

daily [1] 121/6
Dairy [1] 1/22
danger [1] 161/7
dash [2] 125/17 125/18
Data [1] 22/11
database [32] 21/18 21/20 21/23 22/1 22/9
22/14 22/20 22/21 22/23 23/6 23/7 23/11
23/13 23/14 23/17 24/19 23/2 25/6 25/10
25/23 26/3 26/15 26/17 27/3 27/7 27/18
28/15 29/11 30/15 33/22 66/23 70/3
date [15] 3/20 24/7 24/11 50/1 50/3 50/10
58/3 58/4 58/5 58/6 61/2 66/2 66/4 74/18
158/2
dated [10] 32/5 67/5 70/8 72/10 73/25 74/14
100/13 158/5 158/12 165/13
dates [3] 74/21 74/21 74/23
David [3] 43/14 61/12 80/24
Davie [1] 99/13
Davis [6] 28/5 28/19 28/23 29/11 29/22 30/15
Davis' [1] 29/15
day-to-day [1] 98/25
days [9] 35/7 36/4 44/20 44/22 45/5 46/8
50/23 62/3 99/3
DC [1] 1/18
DDC [2] 18/21 19/15

deal [11] 8/4 8/5 8/9 11/22 14/10 18/25 33/9
62/4 119/6 119/8 162/15
dealing [5] 17/13 21/22 21/22 53/4 134/20
deals [3] 8/6 16/25 145/5
dealt [1] 13/22
debatable [1] 152/4
decade [1] 29/2
deceive [1] 151/22
December [2] 65/23 72/10
December 18th [1] 65/23
decide [13] 14/9 44/21 53/25 60/2 60/16
62/13 67/18 67/22 68/1 81/23 83/9 86/9 91/1
decided [2] 45/4 151/23
decides [2] 59/6 82/8
deciding [3] 135/1 135/3 135/12
decision [24] 46/6 46/12 55/18 60/14 60/14
81/14 81/22 81/23 82/7 82/10 86/7 88/17
88/18 88/19 88/21 89/4 89/8 89/19 89/23
90/12 90/15 151/12 151/25 152/6
decisions [1] 151/24
decorum [1] 161/23
deems [1] 7/5
deep [1] 2/8
defect [2] 119/10 119/12
defendant [28] 1/7 1/19 90/10 90/10 104/7
106/15 106/17 108/15 108/18 108/24 109/9
110/8 110/24 123/1 123/7 131/13 131/25
135/5 135/13 135/14 135/17 136/7 136/8
137/19 138/10 146/9 150/17 164/9
Defendant's [15] 4/10 11/21 66/11 71/1
71/17 135/16 137/25 138/6 148/8 150/4
156/25 165/3 165/4 165/5 165/6
Defendants [1] 122/24
defense [21] 5/21 11/3 22/7 90/20 95/15 98/6
98/13 132/11 132/20 134/5 137/9 137/19
138/1 138/11 138/21 138/24 139/7 139/12
139/14 152/12 159/21
defense's [1] 98/19
defer [3] 118/19 118/22 119/2
deficient [1] 150/2
define [2] 149/11 152/19
defines [3] 145/12 145/13 149/13
defraud [14] 123/9 123/24 127/21 127/25
135/7 138/12 138/14 138/25 139/8 139/9
139/14 139/15 150/16 150/23
delay [1] 35/6
delaying [2] 43/17 50/23
deleted [1] 107/2
deliberate [1] 96/15
deliberating [4] 63/23 64/2 96/9 97/16
deliberations [1] 96/8
demonstrable [1] 162/4
demonstration [1] 23/17
demonstrative [1] 161/18
denial [2] 33/23 102/5
denied [1] 35/12
deny [7] 41/13 47/23 54/17 54/18 102/14
137/25 153/11
departed [1] 152/6
Department [2] 1/17 12/9
depending [1] 7/18
depends [3] 59/1 61/6 63/14
deposit [6] 29/18 32/2 32/8 34/14 47/14
50/11
deposited [1] 31/1
deposition [14] 4/15 4/17 4/18 6/5 6/6 7/17
7/23 8/1 8/4 8/5 8/6 8/8 13/21 48/5
describe [1] 135/5
described [1] 144/17
deserves [2] 142/22 143/9

**D**

desk [1] 81/4
destroyed [1] 97/9
destroys [2] 100/3 100/4
determine [1] 53/21
determining [4] 84/21 123/7 123/23 127/20
development [5] 29/5 30/1 30/4 30/6 30/8
deviate [2] 133/2 147/1
device [5] 9/20 9/25 10/13 12/2 30/12
devices [1] 29/6
didn't [34] 6/10 9/10 11/10 13/2 22/12 24/15
  33/16 33/19 38/8 42/16 43/19 43/23 48/19
  50/21 57/5 57/7 72/17 78/11 80/23 80/23
  87/5 89/10 90/4 99/17 100/25 108/15 109/10
  117/18 132/5 132/9 144/8 147/22 153/1
  160/9
died [1] 100/20
difference [10]  10/21 12/11 49/7 86/10
  119/13 138/18 138/25 153/21 157/21 157/23
different [12]  17/6 26/23 113/6 125/5 125/11
  125/24 130/3 131/14 132/1 137/15 148/22
  150/10
differentiate [1] 152/8
differently [3]  21/23 27/23 135/25
differs [2]  140/17 140/20
difficult [3]  56/12 56/23 82/23
difficulty [1]  11/22
Dire [2]  24/2 164/5
direct [12]  13/11 13/12 27/12 33/19 64/8
  71/22 72/1 75/21 79/1 79/8 143/21 164/7
directing [2]  130/6 130/18
direction [3]  18/19 36/16 130/21
directly [7]  7/7 30/19 33/13 122/15 128/25
  135/1 138/7
directors [6]  5/16 33/1 67/5 70/7 100/15
  100/23
DirecTV [1]  18/20
disapprove [2]  73/22 100/18
disapproves [1]  73/19
discern [1]  21/25
disclose [1]  125/21
disclosure [2]  121/8 121/13
disclosures [1]  125/18
discover [1]  152/12
discovered [1]  33/24
discovery [1]  57/23
discuss [6]  82/6 83/4 96/20 97/4 120/20
  159/20
discussed [1]  111/25
discussion [2]  26/6 136/10
dismiss [1]  100/1
dismissal [1]  144/9
dismissed [1]  101/6
dismissing [1]  144/13
dispensed [1]  116/25
disposes [1]  152/14
dispute [5]  56/19 156/22 156/22 157/2 160/8
distinctive [1]  16/15
distinguished [2]  152/4 157/12
distinguishing [2]  21/21 154/11
DISTRICT [4]  1/1 1/1 1/13 18/1
distrust [1]  142/19 143/6
division [2]  1/17 50/5
DNL [1]  22/11
doc [1]  158/14
docket [3]  104/10 105/5 132/4
document [44]  2/17 3/1 3/16 5/10 5/12 8/11
  9/6 15/21 15/22 21/8 22/21 23/20 26/8 26/15
  26/16 31/9 31/16 31/21 33/21 33/23 42/20
  50/5 50/7 50/9 54/11 54/16 59/1 65/25 66/3
  66/5 72/8 73/14 73/23 74/5 74/12 104/8
  104/12 104/14 106/9 142/11 145/23 157/24
  157/25 158/18
document's [1]  73/11
documents [35]  7/25 13/17 14/24 15/11
  21/25 22/14 22/17 22/18 22/23 23/1 23/4
  23/7 23/12 25/20 26/12 27/4 27/19 34/22
  43/25 47/2 47/3 66/8 74/25 75/4 76/17 76/24
  77/3 77/18 111/9 159/1 159/3 159/9 159/10
  159/12 159/14
does [36]  4/9 7/22 8/3 8/5 8/9 10/21 13/7
  14/9 17/15 30/14 31/22 60/23 74/1 74/4
  74/25 75/4 80/8 86/11 90/10 90/23 94/5
  100/1 102/6 108/7 110/8 111/12 121/25
  121/25 124/16 125/11 126/25 136/1 138/7
  138/10 152/8 158/15
doesn't [36]  2/15 2/21 3/12 26/9 26/19 26/20
  27/1 30/25 31/17 32/3 37/3 45/21 54/17
  54/18 57/8 61/18 64/16 64/16 74/5 111/11
  115/5 117/16 117/10 119/14 130/12
  133/2 141/13 143/5 144/13 145/10 145/15
  146/6 152/18 153/23 157/23
doesn't -- I [1]  64/16
doing [14]  7/16 15/15 33/15 47/19 64/1
  85/21 85/24 96/16 117/22 131/14 131/15
  148/9 153/14 161/20
DOJ [2]  8/16 11/24
dollars [1]  152/24
Dolores [2]  55/2 55/3 55/4
don't [163]
done [17]  23/15 30/11 40/3 45/23 53/13 67/9
  67/15 67/17 67/19 75/2 76/3 84/13 85/18
  110/5 121/4 121/5 151/9
door [1]  41/12
double [2]  125/17 125/18
doublecheck [1]  151/6
doubt [26]  74/7 99/9 99/10 99/12 100/6
  114/16 128/17 128/21 128/24 128/25 129/4
  129/7 136/7 138/13 146/9 147/5 147/7 147/9
  147/11 153/18 153/20 154/7 154/9 154/15
  154/21 162/13
down [9]  35/17 35/24 43/8 43/17 62/6 69/8
  71/4 85/8 151/15
Dr [4]  5/15 57/18 70/5 70/6
Dr. [2]  67/1 70/3
Dr. Lowell [2]  67/1 70/3
draft [1]  49/18
drafted [2]  156/1 156/3
drafters [1]  116/20
draw [3]  89/11 89/12 90/4
drawn [1]  90/6
Drive [1]  1/20
drives [5]  25/5 25/8 25/11 25/12 25/15
duplicative [1]  138/16
during [11]  11/1 28/2 32/21 75/2 89/16 98/23
  120/9 160/6 160/19 160/20 160/22
duties [1]  100/17
dutifully [1]  141/9
duty [2]  31/19 103/10

**E**

e-mail [46]  1/25 4/21 6/17 6/19 6/21 7/21
  13/17 14/21 16/10 16/18 17/10 17/14 17/15
  17/16 17/17 18/2 18/8 18/13 18/16 18/22
  19/7 19/20 19/24 19/25 21/21 24/7 24/18
  27/23 28/4 28/17 31/24 32/5 34/12 34/13
  37/8 43/22 47/10 47/25 55/11 94/5 152/22
  152/25 156/5 158/4 158/11 158/20
e-mails [15]  2/9 2/10 16/17 16/18 16/21 19/2
  21/21 21/22 28/8 40/12 44/18 45/10 47/17
  48/20 158/21
each [10]  20/23 84/2 84/20 86/20 91/24
  113/17 113/25 138/14 144/7 154/13
earlier [2]  49/21 148/5
earliest [1]  92/19
early [6]  36/19 92/22 94/23 96/8 160/10
  162/22
easier [1]  84/4
easily [3]  103/3 150/18 150/24
economy [1]  52/20
editorial [1]  134/17
editorializing [1]  146/21
effect [2]  49/19 160/24
effective [4]  66/1 66/2 66/4 154/23
effectiveness [11]  65/24 66/2 73/24 74/3 74/8
  74/10 74/14 74/16 74/18 74/20 75/2
efficacy [1]  153/6
effort [1]  51/13
eight [2]  92/23 100/22
either [17]  26/4 34/22 34/23 43/20 47/23
  74/16 74/20 74/25 86/5 112/13 115/17 116/4
  118/13 119/3 119/4 120/4 149/25
element [7]  117/3 127/16 127/17 138/14
  153/22 154/14 154/20
elements [5]  115/25 117/7 146/20 147/5
  154/11
Eleventh [24]  7/7 16/7 16/8 19/13 103/5
  104/3 115/9 116/18 116/19 116/24 132/23
  134/19 137/21 137/24 138/2 138/16 138/23
  139/6 140/17 140/23 147/17 150/22 151/4
  151/17
elicit [3]  10/25 12/24 78/5
eliminate [1]  112/6
eliminated [1]  112/25
eliminating [1]  112/23
Elliott [7]  28/4 28/19 28/23 29/11 29/15
  29/21 30/15
else [21]  29/22 32/3 43/11 48/10 57/1 63/11
  73/6 73/9 76/7 98/4 106/21 108/7 109/6
  143/19 144/24 147/20 150/22 155/17 156/19
  159/20 162/18
emblematic [3]  17/24 42/14 55/1
employee [2]  32/18 32/24
end [16]  108/2 110/9 112/10 116/6 124/12
  124/23 125/3 125/16 135/4 135/22 137/2
  139/10 139/19 146/18 147/19 147/25
ended [1]  95/24
ends [1]  137/4
energy [1]  91/13
engage [1]  117/9
engaged [1]  117/5
enough [4]  77/10 83/13 103/3 129/24
ensnare [1]  152/9
entered [5]  4/7 66/11 71/1 71/6 71/17
enters [2]  68/25 95/5
entire [10]  65/10 65/11 70/15 70/17 84/18
  85/4 85/5 98/2 101/13 131/3
entirely [1]  138/16
entitled [5]  72/9 74/14 78/19 115/13 165/12
entity [6]  8/20 18/3 29/1 29/10 61/15 132/11
entry [2]  104/10 105/5
error [1]  156/7
especially [1]  159/9
ESQ [3]  1/16 1/16 1/21
essential [3]  85/2 146/11 153/22
essentially [4]  46/14 55/17 85/3 137/22
establish [11]  9/1 19/3 20/2 33/10 40/6 48/13
  51/2 51/19 52/14 52/14 58/13
established [2]  22/10 101/10

**E**

estimating [1] 30/9
et [8] 49/3 49/6 103/11 136/17 136/17 136/17 146/4 146/4
et cetera [7] 49/3 49/6 103/11 136/17 136/17 146/4 146/4
evaluate [1] 81/19
evaluated [1] 91/21
evaluating [1] 86/15
even [21] 11/12 13/18 14/6 15/14 24/19 26/2 38/7 49/5 51/1 56/2 57/11 59/13 60/18 87/5 101/1 116/14 120/20 122/25 150/2 152/25 154/16
evening [5] 2/8 92/20 92/22 92/23 163/5
event [3] 46/2 60/5 146/4
events [1] 130/18
ever [14] 28/1 28/4 29/21 41/10 44/5 72/11 73/15 74/15 76/18 77/2 77/18 78/7 78/12 84/13
every [13] 19/5 19/22 22/21 26/15 26/16 27/2 27/5 27/6 27/9 35/19 153/22 154/14 154/20
everybody [2] 53/9 53/14
everybody's [1] 53/8
everyone [9] 2/2 61/23 69/3 83/17 95/7 98/10 105/1 144/24 159/11
everything [10] 42/25 63/22 63/24 64/5 96/22 97/13 108/6 130/19 147/3 159/11
evidence [168]
evidence -- I [1] 77/12
ex [2] 132/8 132/10
ex-wife [2] 132/8 132/10
exact [3] 47/5 126/11 126/23
exactly [6] 3/4 13/5 35/24 66/20 124/1 148/9
exaggerated [1] 150/12
examination [12] 10/25 13/12 21/12 24/2 24/24 33/20 39/17 64/8 64/23 71/22 79/17 80/5
examine [9] 34/3 34/4 42/25 48/7 59/7 65/1 67/15 81/8 99/16
examined [1] 8/9
examining [2] 86/15 141/4
example [1] 150/13
except [2] 104/5 130/13
exception [10] 4/19 6/25 18/18 18/23 20/1 26/7 26/10 26/20 26/25 59/3
Exchange [9] 4/6 8/15 72/6 73/24 74/2 74/3 101/20 122/19 125/25
exchanged [1] 2/9
excuse [11] 28/8 44/20 53/1 53/12 63/10 70/20 81/5 81/15 81/16 94/12 121/5
excused [1] 69/20
executed [1] 67/2
executives [1] 70/4
exhibit [40] 2/14 2/16 2/20 2/22 2/25 3/1 3/9 3/13 3/14 3/17 3/24 4/10 4/10 5/21 7/9 19/1 20/20 20/21 20/24 31/24 47/12 49/20 62/19 66/11 67/10 67/12 70/14 70/18 71/1 71/11 71/17 72/9 73/14 73/23 74/12 74/17 156/25 157/4 158/14 162/4
exhibit 14 [1] 5/21
exhibit 152 [1] 156/25
exhibit 34 [2] 4/10 4/10
Exhibit 349B [1] 158/14
exhibit 410 [2] 31/24 47/12
Exhibit 411 [1] 19/1
exhibit 412 [1] 72/9
exhibit 413 [2] 73/14 73/23
exhibit 414 [3] 70/18 74/12 74/17
exhibit 417 [1] 71/11

exhibits [19] 2/21 7/18 14/4 20/17 22/8 49/21 62/18 65/17 84/8 100/13 100/25 111/10 111/11 111/15 156/22 158/24 159/6 161/17 165/3
exhibits 410 [2] 20/17 22/8
exhibits 412 [1] 65/17
existing [1] 150/1
exits [2] 83/6 96/25
expect [6] 40/24 53/11 64/8 65/9 69/9 79/2
expected [4] 58/1 61/2 71/10 95/25
expense [1] 84/17
experience [2] 30/16 129/24
expert [1] 80/8
explain [6] 14/22 50/19 53/10 68/14 113/17 113/24
explained [1] 105/19
explaining [2] 46/7 46/16
explanation [1] 51/5
explicit [1] 130/21
expressed [1] 84/8
extensively [1] 22/2
extent [6] 7/1 7/5 34/21 77/25 99/24 101/24
extra [2] 104/19 112/9
extremely [3] 55/16 93/6 100/17
eyes [1] 25/4

**F**

F.3d [3] 16/8 151/3 151/13
F.Supp [2] 18/21 19/15
fabricated [4] 9/20 9/25 10/21 12/2
fabricating [2] 10/13 30/11
fabrication [1] 10/1
fact [23] 3/19 9/21 11/1 19/9 19/23 26/8 27/1 41/1 42/22 48/22 55/21 90/3 100/9 102/4 102/13 117/3 117/18 117/15 132/13 148/12 149/1 151/25 153/22
facts [5] 9/11 11/20 41/16 154/11 160/1
failing [2] 11/16 152/11
fails [1] 33/11
failure [16] 105/23 105/23 118/11 119/25 120/1 120/5 120/11 120/19 121/4 122/3 122/12 122/13 123/21 123/22 127/18 127/19
fair [6] 77/10 92/9 93/6 117/17 120/23 120/23
faith [14] 132/11 132/19 132/22 134/5 135/15 136/5 138/1 138/11 138/11 138/20 138/23 139/7 139/11 139/13
fake [1] 55/21
falls [1] 19/25
false [4] 56/25 99/10 99/12 101/25
falsely [1] 142/18
familiar [2] 57/11 73/7
far [23] 12/23 15/2 38/20 39/4 42/6 42/18 48/5 58/10 59/4 59/20 63/12 63/25 80/20 80/22 85/21 86/1 86/2 87/16 88/17 95/11 95/13 143/17 161/20
fast [2] 17/24 17/25
fault [2] 86/17 86/18
favor [2] 92/24 121/9
favorable [4] 101/2 101/10 101/23 102/3
FDA [2] 10/2 10/3
feasible [1] 36/6
February [1] 158/12
February 17 [1] 158/9
federal [5] 10/16 16/11 16/13 60/10 118/15
feel [11] 7/15 47/20 59/17 81/12 91/10 91/12 91/13 137/18 144/6 144/8 145/20
feels [1] 48/10
Feidler [24] 4/23 5/2 7/1 9/16 12/25 13/2 14/23 19/3 20/6 21/14 24/4 24/7 27/18 39/4

39/9 39/11 47/6 66/23 69/18 69/19 69/25 70/2 99/14 99/16
Feidler's [1] 33/22
felt [1] 85/2
few [4] 82/5 83/4 83/7 153/17
fewer [1] 133/3
Fidelity [3] 10/22 29/8 29/9
fiduciary [1] 100/17
Fiedler [2] 21/11 164/3
Fields [1] 151/15
fifth [2] 128/15 152/2
figure [7] 52/23 83/1 86/24 92/6 124/25 125/2 127/13
figured [1] 154/24
figuring [1] 94/21
file [21] 31/22 101/15 101/17 118/11 119/25 120/1 120/5 120/11 120/19 121/4 121/6 121/12 121/23 122/3 122/12 122/14 122/18 123/22 123/22 127/19 127/19
filed [13] 8/14 65/18 65/23 65/23 83/21 100/24 104/12 104/17 112/15 127/11 127/14 133/12 133/12
files [2] 32/14 55/14
filing [5] 65/10 72/23 73/1 88/6 121/8
filings [23] 9/18 10/4 10/7 10/8 10/9 10/17 27/20 29/16 31/2 60/7 65/4 72/6 73/6 73/6 73/9 73/9 73/20 74/3 74/9 88/8 88/10 100/24 127/13
filled [1] 51/3
final [1] 123/5
Finance [4] 4/5 8/14 101/18 132/7
financial [2] 18/25 28/20
finding [1] 16/12
fine [17] 3/11 37/11 37/13 46/9 66/19 78/22 87/15 95/2 95/4 107/25 110/25 113/23 124/24 125/10 127/16 162/5 162/6
finest [1] 150/14
finish [6] 63/10 63/22 64/14 64/23 94/21 94/24
finished [6] 39/4 68/16 69/10 69/18 79/19 140/13
first [23] 5/19 16/6 23/1 62/7 63/17 64/7 69/4 69/25 79/22 99/3 102/23 103/16 103/24 111/14 122/11 129/17 136/19 138/16 138/19 139/10 139/19 142/12 157/20
five [12] 11/1 11/9 44/14 83/10 83/10 83/12 83/13 100/24 148/22 154/5 155/1 155/4
five-minute [1] 155/1
five-year [1] 11/1
FL [2] 1/20 1/22
flag [2] 47/8 151/7
Flagler [1] 1/20
FLORIDA [3] 1/1 1/7 1/25
flow [1] 143/24
flowchart [3] 5/11 5/14 5/15
flurry [2] 41/4 43/23
fly [2] 43/17 54/21
focus [2] 26/24 26/25
focusing [1] 26/11
folks [1] 54/23
follow [1] 43/7
followed [2] 100/10 101/12
following [9] 39/23 54/6 68/25 75/17 80/21 83/16 95/5 98/9 155/7
follows [1] 70/1
foregoing [1] 165/10
Forget [1] 56/9
form [60]
form 4 [26] 101/11 118/11 119/25 120/1 120/5 120/11 120/19 121/7 121/11 121/13

**F**

form 4... [16]  121/16 122/3 122/12 122/14
122/23 123/22 123/23 125/4 125/8 125/14
125/15 126/2 126/3 126/23 127/19 127/20
form 415 [1]  66/3
form 4s [11]  118/11 118/16 118/16 119/21
120/22 121/1 121/4 121/6 121/23 122/18
127/7
format [1]  18/2
former [1]  152/2
forms [1]  127/13
forth [3]  18/25 115/25 146/20
forward [8]  6/17 38/20 44/4 59/4 59/21 86/3
102/8 120/3
found [3]  40/7 40/8 154/15
foundation [9]  5/2 20/4 20/14 27/12 30/20
33/10 37/1 76/4 76/8
four [3]  92/8 114/24 126/5
fourth [2]  138/5 138/5
frame [2]  77/13 159/23
framed [1]  77/17
Franklin [5]  1/23 125/2 165/9 165/15 165/16
frankly [3]  116/4 133/3 144/18
fraud [25]  114/19 114/25 115/11 116/4
116/10 116/11 116/18 118/3 120/15 121/21
121/24 122/9 129/21 144/16 144/16 145/1
145/5 145/15 149/3 149/5 149/10 151/19
151/21 152/8 153/3
fraudulent [2]  150/12 152/12
free [1]  36/7
Freedom [3]  4/4 8/11 8/13
Friday [1]  91/4
front [2]  57/22 134/10
frustrated [1]  69/5
further [6]  34/9 49/14 75/13 80/11 90/24
95/18
furtherance [1]  52/19
furthermore [1]  57/10

**G**

game [3]  117/17 120/23 120/24
gather [1]  86/23
gave [4]  23/10 41/8 47/25 97/10
geek [1]  125/8
general [6]  26/13 29/16 72/4 143/20 145/7
147/6
generally [2]  16/10 145/8
gentlemen [5]  80/18 82/22 95/8 95/10 95/20
George [2]  45/22 71/19
gets [3]  43/12 76/11 161/14
getting [6]  26/5 41/8 86/6 86/22 91/4 113/11
give [26]  11/4 14/14 15/15 15/25 38/9 41/24
51/5 53/21 57/7 70/11 70/12 70/13 70/16
83/10 92/17 105/9 111/25 123/20 133/25
142/15 142/21 143/8 152/15 155/4 158/1
162/13
given [20]  36/17 57/5 61/1 64/9 75/21 79/7
99/22 104/25 105/12 111/1 117/13 120/2
129/19 142/9 144/14 146/25 149/25 150/5
154/10 156/4
giving [4]  45/25 46/15 82/5 105/10
glad [1]  97/17
goes [3]  3/1 3/15 106/11
going [204]
Goldberger [4]  59/25 61/4 61/9 61/12
gone [3]  4/15 130/19 130/21
good [28]  2/2 2/4 21/2 21/3 24/4 69/2 69/2
71/24 71/25 83/13 95/11 112/14 132/11
132/19 132/22 134/5 135/14 136/5 138/1

138/11 138/11 138/20 138/23 139/7 139/11
139/13 159/7 163/3
good-faith [2]  132/11 134/5
goods [5]  56/6 58/1 58/21 61/2 71/9
got [14]  12/12 16/5 31/14 41/11 42/2 43/22
76/4 97/15 97/18 98/12 149/17 156/17
156/18 161/9
gotten [1]  26/5
governed [1]  16/10
governing [2]  113/17 113/25
government [103]
Government's [55]  9/7 33/3 38/11 38/12
38/14 54/15 57/22 58/16 58/25 84/7 84/18
85/4 85/8 85/11 85/15 90/22 93/11 94/1 99/7
102/17 102/21 102/24 103/22 104/5 105/4
110/3 110/13 110/14 110/19 112/1 112/5
114/12 114/20 119/24 123/10 123/15 123/17
128/6 130/5 138/3 138/13 141/9 142/25
143/13 144/2 144/24 145/6 145/6 146/3
147/18 149/16 149/22 150/6 155/22 161/3
grant [2]  63/3 84/14
Granted [1]  100/20
great [2]  11/22 159/17
Gross [2]  132/3 133/10 134/5
grounds [2]  101/5 152/5
Group [4]  4/6 8/14 101/19 132/7
Group's [1]  152/23
guess [27]  10/19 45/24 49/9 49/12 52/8 53/10
53/16 57/21 58/15 62/21 63/13 63/15 64/16
77/1 77/16 84/11 84/21 106/18 107/20 114/3
134/1 134/3 134/17 146/24 159/23 160/3
162/14
guilt [4]  120/12 122/12 131/9 131/10
guilty [5]  89/10 136/8

**H**

H2003001 [1]  34/18
hadn't [1]  43/25
half [9]  29/24 63/21 63/25 69/12 69/16 91/23
91/24 92/12 96/13
hand [5]  14/21 34/18 126/22 128/16 129/6
handed [2]  41/4 98/1
handing [1]  86/18
handwriting [3]  2/11 54/13 55/4
happen [3]  14/13 27/5 44/19
happened [1]  161/8
happening [1]  161/11
happens [3]  10/1 11/15 153/9
happy [5]  51/4 53/12 68/16 69/14 141/14
hard [6]  25/4 25/8 25/11 25/12 25/15 55/23
harm [1]  129/12
Harmison [6]  57/18 67/2 70/4 70/5 70/6
100/20
Harmison's [1]  5/15
hasn't [2]  14/5 14/6
hate [1]  115/3
haven't [13]  14/5 22/21 26/3 26/5 29/16
66/14 83/25 85/22 86/1 91/21 98/3 149/25
160/16
having [9]  11/22 44/15 54/17 54/18 54/22
57/8 90/14 120/18 157/14
he'd [1]  76/24
he'll [3]  45/9 78/8 162/10
he's [32]  15/17 14/6 23/18 26/14 37/13
37/23 37/25 38/10 38/12 38/14 41/14 42/17
43/20 43/21 45/18 53/5 56/3 57/11
57/16 68/2 69/19 76/4 76/17 78/6 78/7 92/10
92/11 92/17 92/19 129/24
head [1]  50/15
headed [1]  50/4

headquarters [1]  13/11
Health [1]  100/16
hear [4]  22/12 84/12 87/25 95/22
heard [10]  45/3 77/21 77/22 84/13 84/25
86/1 97/20 122/16 125/14 146/14
hearing [2]  35/15 79/1
hearsay [23]  6/17 6/22 7/1 7/6 9/9 17/4 17/8
18/5 18/7 18/14 18/18 18/23 26/7 26/10
26/19 36/15 47/5 47/17 59/3 76/8 76/12
76/23 160/21
Heart [2]  11/19 29/5
held [4]  18/21 75/17 80/21 116/23
help [5]  23/14 93/8 125/2 126/24 159/24
helps [1]  16/5
here [87]
here's [2]  36/16 40/23
hey [1]  41/5
hide [2]  121/6 122/7
hiding [3]  89/11 121/18 121/23
highly [4]  47/21 48/8 59/18 68/5
highway [1]  17/24
Hildebrand [1]  158/11
himself [2]  47/17 92/10 105/13
hip [1]  131/3
hired [3]  43/25 44/1 59/10
hit [2]  34/2 108/15
hits [2]  122/16
hold [6]  46/22 56/16 124/19 133/5 133/5
141/2
holding [3]  16/9 151/21 151/24
honest [1]  72/23
Honor [270]
Honor's [1]  49/17
HONORABLE [1]  1/12
hope [1]  54/23
hopefully [3]  91/3 92/13 96/18
Hopkins [3]  35/12 35/14 36/7
Hospital [6]  41/1 41/3 41/14 76/3 76/20
77/15
Hotel [1]  41/4
hour [9]  40/15 64/9 64/22 91/18 91/22 91/22
91/24 94/11 159/14
hours [9]  40/9 43/2 43/9 68/15 69/12 69/16
91/25 92/8 154/5
hours' [3]  40/4 42/18 43/4
housekeeping [1]  97/9
However [6]  4/17 99/7 99/24 101/13 123/6
129/16

**I**

I'd [20]  23/7 33/25 34/1 38/9 39/2 39/2 45/7
46/11 46/25 52/9 75/25 76/3 76/9 79/22
81/22 91/7 138/15 159/22 160/2 160/12
I'll [38]  4/18 27/12 34/8 40/20 42/5 54/12
55/8 64/1 64/2 64/4 78/24 79/6 81/5 86/16
92/11 94/25 94/25 96/7 96/14 96/16 96/17
104/2 109/3 109/20 110/22 111/25 112/9
118/21 118/23 124/25 133/13 137/23 150/5
151/10 159/23 161/20 162/10 162/13
I'm [189]
I've [26]  4/20 30/19 36/16 36/20 36/21 38/6
42/15 45/3 45/4 59/2 73/16 74/4 74/16 74/19
84/13 84/15 85/5 88/19 88/21 91/7 91/21
92/12 106/3 108/20 123/18 148/18
i.e [1]  30/14
idea [6]  14/14 15/15 37/23 41/17 55/21 73/21
identification [1]  20/18
identified [2]  7/7 67/6 70/9
identify [1]  12/6
identifying [1]  158/1

**I**

Illinois [1]  18/1
immediately [1]  129/5
imply [2]  120/11 120/17
important [5]  139/2 142/18 143/24 144/9
  153/20
impossible [1]  86/18
impression [3]  91/4 97/15 97/18
improper [1]  156/10
inartfully [1]  154/3
Inc [2]  17/25 17/25
inclined [4]  36/20 84/14 85/2 110/23
include [9]  104/6 110/8 135/11 135/20
  136/16 136/22 137/3 160/23 161/1
included [4]  84/19 116/23 140/25 147/3
including [9]  28/11 64/6 67/2 67/4 70/4 70/6
  135/21 138/14 152/1
inconsistencies [1]  100/2
inconsistent [8]  55/16 138/12 138/21 139/1
  139/9 139/15 142/13 151/18
incorporate [3]  115/2 115/7 115/12
incorporated [2]  118/25 148/20
incorporates [1]  116/8
incorrect [2]  99/8 148/7
incorrectly [2]  43/5 132/8
increases [1]  146/22
independent [1]  96/21
independently [1]  99/24
indicate [2]  30/15 77/19
indicated [18]  2/9 4/4 6/13 6/15 7/11 33/22
  36/7 36/15 50/1 50/3 57/4 57/11 83/23 87/22
  88/20 91/22 125/22 148/19
indicating [5]  17/21 19/1 77/13 79/23 87/3
indication [3]  30/25 58/13 90/1
indicted [2]  122/22 151/14
indictment [18]  12/3 13/13 98/23 99/11
  100/2 101/6 115/13 115/19 116/13 117/12
  117/15 121/17 123/10 128/1 144/5 144/7
  144/13 144/14
individual [6]  6/17 36/25 40/23 71/8 142/20
  143/6
individuals [1]  35/5
indulge [1]  49/4
indulgence [5]  36/17 63/3 80/10 99/19 99/21
infer [4]  120/10 120/10 120/18 131/9
inference [5]  55/7 90/6 105/16 105/18 105/22
inferences [2]  89/12 89/12
inferred [2]  105/24 120/6
infers [1]  119/15
information [10]  4/5 8/11 8/13 10/12 30/14
  53/25 145/19 150/20 150/25 158/2
infringe [1]  105/20
inherited [1]  153/16
inheriting [1]  151/8
inquire [1]  90/1
inquiries [1]  53/22
inquiry [1]  82/9
inscription [1]  17/19
inscriptions [1]  17/19
insert [2]  102/1 109/20
Inspector [3]  71/20 75/18 80/7
instance [1]  108/14
instantaneously [1]  14/13
instead [2]  135/14 146/8
Institute [10]  4/7 8/20 9/2 9/3 9/14 11/17
  11/18 43/15 61/13 100/15
instruct [2]  95/23 103/11
instructed [3]  36/12 100/10 145/9
instructing [1]  121/22

instruction [186]
instructions [61]
intend [7]  47/20 62/22 68/3 90/23 98/3
  160/11 161/17
intending [2]  60/22 62/25
intends [1]  160/6
intent [12]  67/23 123/8 123/9 135/6 135/14
  138/12 138/14 138/24 139/8 139/9 139/14
  139/15
intention [3]  97/12 125/22 162/8
intentionally [2]  135/17 161/2
interactions [1]  99/15
interest [1]  127/1
interested [4]  41/7 136/12 136/13 145/7
interestingly [1]  54/10
interfacing [1]  59/10
internal [1]  16/14
Internet [2]  23/18 130/24
interpretation [2]  151/20 152/1
interrupt [5]  16/23 106/1 119/23 133/17
  158/7
interview [5]  37/5 41/19 42/24 55/12 57/16
interviewed [1]  42/22
interviews [3]  40/21 40/22 76/23
introduced [2]  100/5 100/13
introducing [1]  84/6
introduction [3]  102/25 103/10 103/12
introductory [3]  103/4 104/23 147/6
investigating [2]  74/22 75/3
investigation [18]  8/19 11/1 11/3 11/5 11/6
  11/14 11/19 11/24 72/2 74/23 75/20 76/1
  76/2 76/5 76/10 76/17 77/2 133/15
investor [1]  152/10
investors [2]  150/18 150/25
involve [1]  152/19
involved [3]  25/1 41/8 132/9
involvement [1]  131/17
involves [1]  153/2
Irene [2]  156/4 156/8
irrelevant [1]  11/14
isn't [5]  38/10 102/18 111/16 142/14 153/24
issuance [1]  35/18
issue [24]  2/22 8/7 13/16 14/25 15/2 18/14
  18/15 21/9 46/7 47/9 53/5 63/20 81/12 85/6
  87/15 88/12 102/4 110/23 111/19 122/16
  126/2 157/13 158/24 158/25
issued [4]  28/10 50/17 51/17 58/17
issues [15]  17/6 46/13 46/15 63/25 74/2 74/8
  79/10 80/20 81/13 86/24 149/12 149/13
  159/2 162/15 162/23
issuing [1]  36/3
it's [143]
item [3]  16/12 16/15 119/7
itself [4]  50/5 127/15 134/11 136/1
Ives [1]  1/22

**J**

J.M [1]  18/9
Jack [1]  61/11
James [3]  21/11 70/2 164/3
January [6]  66/1 66/2 73/25 74/14 74/21
  100/13
January 12 [1]  73/25
January 12th [1]  66/1
January 16th [2]  66/2 74/14
Jencks [1]  44/10
Jim [2]  66/22 99/14
John [6]  32/7 33/13 34/13 67/2 70/4 158/5
joined [1]  131/3
Jones [42]  16/18 18/13 31/25 32/5 32/6 33/13

33/16 33/17 33/24 34/15 34/23 43/14 44/21
  45/1 45/19 59/23 59/24 61/5 61/9 61/12
  61/14 61/16 62/5 62/14 62/14 62/15 62/16
  63/13 63/14 63/15 67/18 67/21 67/23 68/2
  79/2 79/6 79/9 79/14 80/24 99/13 158/5
  158/12
JUDGE [10]  1/13 35/12 35/14 36/7 62/10
  80/1 87/10 107/9 147/24 157/19
judgment [1]  144/10
judicial [3]  52/20 60/8 65/3
judicially [1]  10/17
July [4]  66/4 74/19 74/21 165/13
July 21 [1]  66/4
July 21st [1]  74/19
jump [1]  137/17
jurors [7]  15/17 52/23 53/11 69/8 94/12
  97/10 97/15
jury [94]
jury's [5]  2/25 64/2 130/8 146/22 147/4
just [150]
justice [5]  1/17 12/9 128/5 149/4 149/11
justify [3]  35/15 84/17 92/20

**K**

keep [9]  21/4 26/19 26/21 27/1 27/5 81/24
  82/25 97/22 135/19
keeping [2]  42/19 69/4
keeps [1]  27/10
KENNETH [1]  1/12
kept [6]  18/23 26/13 26/15 26/18 28/13 28/21
Kevin [4]  1/16 8/17 67/3 70/5
kind [11]  7/15 10/19 43/5 80/8 95/24 108/21
  134/17 137/17 160/23 161/7 161/12
kinda [1]  5/4
knew [4]  40/8 40/19 98/24 105/1
know [91]
knowing [2]  87/24 129/1
knowingly [2]  123/8 142/17
knowledge [9]  8/8 22/8 22/15 24/18 24/20
  28/23 31/19 146/5 146/10
known [1]  150/14
knows [6]  8/16 23/18 23/19 26/14 37/6
  101/14
Ks [3]  10/10 10/12 127/10

**L**

label [1]  17/20
laced [1]  14/1
lack [2]  30/16 105/18
ladies [5]  80/18 82/22 95/8 95/10 95/20
laid [3]  26/3 30/19 34/7
language [18]  104/6 105/21 105/22 123/17
  124/10 132/14 133/23 134/23 134/25 139/1
  143/5 143/16 146/8 146/12 147/12 148/18
  149/23 150/6
laptop [1]  23/10
last [29]  2/8 4/3 4/4 4/13 5/19 40/9 71/12
  86/16 91/12 100/13 100/24 109/13 110/6
  110/7 111/13 112/10 113/16 128/24 133/22
  133/23 134/1 134/24 140/12 140/18 140/19
  145/22 145/24 147/20 162/23
lastly [1]  55/16
late [3]  34/5 71/24 94/24
later [8]  94/7 118/20 118/21 121/14 126/13
  127/11 137/4 153/18
latter [1]  133/14
laundering [1]  126/14
Laurel [1]  25/12
law [21]  7/7 10/3 11/23 42/19 95/23 101/15
  101/24 103/11 113/17 113/24 117/10 118/14

## L

law... [9]  122/4 125/7 148/17 150/16 150/21 150/23 151/1 153/23 153/25
laws [5]  101/14 123/24 125/18 125/24 127/21
lawsuit [1]  8/14
lawyer [6]  59/9 86/16 109/8 116/14 117/25 129/2
lawyers [5]  80/19 106/17 108/18 108/22 110/24
lay [6]  5/2 20/3 20/14 27/12 37/1 76/4
learn [1]  29/21
learned [3]  12/14 12/20 12/20
least [4]  15/18 30/20 45/25 151/24
leave [2]  75/21 96/22
leaving [1]  112/9
led [1]  135/17
left [4]  14/20 34/18 128/16 129/6
left-hand [2]  34/18 129/6
legal [4]  96/1 96/7 125/11 152/5
legend [7]  56/3 56/3 56/19 57/3 58/9 58/13 58/16
length [1]  69/7
lengthy [4]  65/4 72/8 134/13 136/10
less [5]  79/7 79/16 121/7 124/10 152/25
lesser [1]  152/10
let [21]  15/21 16/5 39/18 43/6 45/2 45/19 50/13 52/13 61/4 63/18 63/23 69/4 80/2 81/16 91/14 123/5 123/21 134/14 141/2 151/6 151/12
let's [26]  16/4 20/13 23/1 23/1 24/7 31/4 39/16 46/17 48/21 53/25 68/13 70/16 94/14 102/21 104/4 106/23 110/2 110/13 114/19 120/3 126/1 128/4 139/23 149/23 155/1 155/21
letter [4]  6/16 130/22 130/25 131/5
Lexis [1]  18/1
liability [2]  130/4 131/1
life [1]  98/21
light [4]  101/2 101/10 102/3 105/11
likely [2]  79/7 79/16
limine [1]  159/23
limit [1]  126/3
line [6]  3/24 56/8 56/9 128/16 129/17 129/18
line 2 [1]  128/16
lines [2]  103/8 137/4
links [3]  101/24 128/25 143/23
list [10]  29/2 35/2 35/8 35/24 38/10 38/11 38/12 38/13 38/14 107/16
literally [2]  55/10 147/13
little [5]  5/4 7/13 13/21 82/25 154/4
local [3]  43/25 44/1 59/10
location [2]  113/6 113/10
long [12]  4/11 14/15 53/2 55/14 69/4 69/6 96/23 103/7 127/15 133/23 157/22 162/1
longer [3]  2/16 64/9 84/15
looked [1]  19/18
looking [7]  21/25 97/11 103/22 104/8 116/17 136/24 145/2
looks [1]  23/19
Los [1]  41/4
losing [1]  9/23
lost [5]  5/4 10/19 11/11 11/21 132/11
lot [9]  4/15 23/7 25/11 84/6 84/7 84/15 84/16 96/1 134/16
lots [1]  159/9
loud [1]  64/16
low [1]  154/4
Lowell [3]  67/1 70/3 100/20
lunch [4]  81/24 94/10 94/11 97/1

## M

machine [1]  29/9
mail [60]
mails [5]  2/9 2/10 16/17 16/18 16/21 19/2 21/21 21/22 28/8 40/12 44/18 45/10 47/17 48/20 158/21
maintained [3]  19/4 23/12 29/12
maintenance [2]  21/18 21/20
makes [7]  12/11 52/20 63/21 81/22 82/10 128/2 157/21
making [8]  4/9 46/6 46/12 81/14 90/12 97/18 99/4 106/2
manage [1]  25/24
managed [1]  23/18
Management [6]  41/1 41/3 41/14 76/3 76/20 77/15
Mandatorily [1]  28/22
manner [4]  33/6 101/22 125/19 140/24
manners [2]  125/20 125/20
manufacture [1]  29/5
manufactured [2]  100/7 100/7
March [3]  67/6 70/8 158/5
March 2005 [1]  70/8
March 6 [1]  158/5
mark [2]  6/24 17/14
marked [6]  2/21 22/7 65/5 71/11 73/13 74/11
market [1]  121/6
MARRA [2]  1/2 1/12
married [1]  55/9
Martin [4]  9/15 10/23 12/2 121/21
master [1]  119/18
match [1]  3/16
material [4]  12/5 142/18 144/13 150/15
matter [13]  18/25 19/8 35/1 65/2 66/13 101/14 115/19 115/20 142/18 144/18 144/19 149/1 165/12
matters [4]  26/11 67/16 142/20 143/7
maybe [25]  15/13 18/9 33/10 35/17 43/5 43/5 48/21 49/13 50/25 64/14 84/25 91/8 97/22 116/8 116/15 116/16 117/10 125/17 134/11 137/14 148/4 150/22 157/11 160/12 162/22
me [82]
mean [42]  5/12 5/16 7/23 12/4 14/1 26/1 27/2 31/13 34/3 43/3 45/17 48/15 48/19 49/2 49/4 50/22 52/8 52/17 53/7 56/14 64/1 70/15 76/22 78/13 80/25 81/2 87/8 105/16 106/15 116/24 117/6 123/17 124/16 125/18 128/19 143/10 145/16 147/23 148/3 153/2 154/11 160/20
meaningfully [1]  37/9
means [4]  58/14 87/7 92/22 117/9
mechanically [2]  13/23 14/3
meeting [6]  9/14 10/23 12/24 13/3 59/12 99/13
member [1]  32/19
members [3]  67/4 70/7 103/10
memo [5]  48/1 55/12 56/8 56/9 58/13
memorandum [5]  37/5 40/21 40/21 41/18 57/16
Memorial [9]  4/7 8/20 9/1 9/3 9/14 11/17 11/18 43/14 61/12
memory [1]  146/18
mental [3]  135/6 136/8 152/10
mention [1]  117/3
mentioned [5]  4/20 119/12 134/23 152/23 152/24
mentioning [1]  116/16
mentions [1]  39/8
mere [4]  19/23 26/8 26/25 145/25

merely [3]  85/10 123/2 145/22
Merit [1]  165/9
message [1]  32/2
messing [1]  146/21
met [2]  12/2 38/7
Miami [1]  1/22
middle [2]  36/2 106/10
might [16]  2/16 22/19 45/19 50/6 60/4 60/15 63/25 64/14 68/22 84/22 84/23 84/24 85/2 159/7 161/8 161/10
mildly [1]  54/12
million [3]  29/25 132/11 139/2
mind [5]  21/9 46/10 135/16 136/4 161/2
mine [1]  86/17
minimum [2]  55/16 138/5
minor [2]  2/13 50/24
minute [4]  39/16 66/16 155/1 162/23
minutes [15]  11/9 14/18 15/14 15/18 44/14 82/5 83/4 83/8 83/10 83/11 83/12 83/13 92/6 155/4 162/22
misconduct [1]  28/24
misleading [1]  129/2
missing [4]  102/24 102/25 137/2 145/19
mistaken [1]  5/22
MITCHELL [6]  1/6 1/19 67/3 69/24 70/5 71/7
mixing [1]  84/6
model [2]  132/2 132/17
modified [3]  112/16 133/22 137/19
modify [3]  133/6 136/14 149/21
moment [5]  80/10 133/25 134/8 140/8 147/13
Monday [35]  45/18 45/19 45/22 53/13 53/14 53/16 54/21 56/20 59/16 61/17 61/20 61/21 62/6 63/17 63/21 63/24 64/1 64/8 68/22 92/12 92/21 93/1 94/9 94/12 94/16 94/18 94/19 94/23 96/5 96/6 96/8 96/12 96/23 162/22 163/4
money [4]  19/4 34/2 42/4 126/14
Moreover [1]  14/4
morning [30]  2/2 2/4 13/22 21/2 21/3 24/4 34/25 36/10 61/17 61/22 62/7 63/11 63/18 63/25 64/6 64/24 69/2 69/2 69/3 71/24 71/25 92/12 93/2 94/9 95/1 96/6 96/17 96/23 100/24 163/4
most [10]  92/3 92/7 92/17 101/2 101/9 101/10 101/10 101/23 102/3 152/7
motion [12]  83/21 84/5 84/10 92/15 98/16 99/4 99/6 102/5 102/9 102/10 102/14 159/23
motions [1]  84/1
move [11]  4/11 5/24 5/25 6/1 6/7 94/23 102/7 104/4 113/10 139/23 149/23
moving [2]  4/10 105/2
Mr [98]
Mr. [242]
Mr. Anand [4]  85/17 93/18 99/20 102/1
Mr. Carter [16]  12/15 12/17 12/22 12/24 13/5 13/9 85/17 93/18 99/11 99/20 120/15 130/7 130/15 130/18 130/19 131/2
Mr. Carter's [1]  102/2
Mr. Clark [16]  11/6 44/14 45/24 52/1 52/24 52/25 59/14 59/21 61/7 62/13 62/17 65/1 67/15 68/6 71/24 118/10
Mr. David [1]  43/14
Mr. Feidler [21]  4/23 5/2 7/1 9/16 12/25 13/2 14/23 19/3 20/6 21/14 24/4 24/7 27/18 39/4 39/9 39/11 47/6 69/18 69/19 69/25 99/16
Mr. Feidler's [1]  33/22
Mr. Franklin [1]  125/2
Mr. George [1]  71/19

# M

Mr. Goldberger [3]  59/25 61/4 61/9
Mr. Jones [25]  44/21 45/1 45/19 59/23 59/24
61/5 61/9 61/14 61/16 62/5 62/14 62/14
62/15 62/16 63/13 63/14 63/15 67/18 67/21
67/23 68/2 79/2 79/6 79/9 79/14
Mr. Muhlendorf [3]  119/20 124/1 125/12
Mr. Nevdahl [5]  118/10 119/20 121/3 121/7
121/23
Mr. Pasano [4]  8/8 48/5 55/13 133/10
Mr. Perkins [5]  6/5 7/12 12/25 14/25 99/15
Mr. Perkins' [1]  8/7
Mr. Pickard [2]  34/2 85/17
Mr. Stein [6]  33/4 69/21 95/13 96/1 129/22
130/23
Mr. Stein's [1]  34/1
Mr. Stieglitz [15]  3/4 36/23 43/24 46/23 54/8
56/1 116/15 119/3 119/19 134/11 134/14
146/14 158/13 161/16 162/9
Mr. Stieglitz's [1]  2/11
Mr. Tribou [61]
Mr. Tribou's [2]  55/15 60/12
Mr. White [4]  12/6 35/9 39/14 43/18
Mr. White's [1]  59/10 130/14
Mr. Woodbury [39]  34/4 34/23 36/16 40/2
40/10 42/15 42/17 43/1 43/3 43/12 44/8
44/16 44/17 44/20 45/1 45/8 45/12 45/18
46/3 46/25 47/1 47/3 47/4 47/9 47/13 47/15
47/16 47/22 48/12 49/16 50/24 51/14 58/24
60/11 60/17 61/3 118/10 119/21 121/3
Mr. Woodbury's [1]  47/6
Ms [1]  33/4
Ms. [11]  33/8 33/14 33/16 33/17 33/24 34/23
34/24 35/9 36/19 37/7 47/13
Ms. Jones [4]  33/16 33/17 33/24 34/23
Ms. Provencio [7]  33/8 33/14 34/24 35/9
36/19 37/7 47/13
much [10]  53/11 53/25 68/16 69/10 69/10
91/15 91/19 96/24 124/10 132/12
Muhlendorf [4]  1/16 119/20 124/1 125/12
mull [1]  63/3
multiple [4]  40/21 55/15 55/19 131/13
Murray [1]  18/21
must [4]  107/16 136/8 146/8 147/5
my -- I [1]  59/1
myself [4]  39/1 69/24 72/2 87/24

# N

name [5]  8/16 17/15 25/18 59/23 135/4
named [1]  71/9
narrowed [1]  69/8
National [1]  100/15
nationally [1]  150/14
nature [5]  119/22 130/22 146/11 160/3
160/25
near [1]  18/24
necessarily [1]  109/22
necessary [3]  117/6 117/11 117/12
need [69]
needed [6]  69/8 83/23 85/8 87/23 87/24 96/4
needs [4]  53/14 63/13 145/20 154/14
negative [1]  90/5
negligence [2]  28/24 152/11
Neither [2]  75/6 75/7
neutral [1]  108/19
neutralize [1]  109/4
Nevdahl [5]  118/10 119/20 121/3 121/7
121/23
never [13]  9/1 9/21 11/1 30/8 41/11 41/12

73/16 74/4 74/16 74/19 77/9 100/21 101/19
new [4]  1/18 36/3 57/20 150/7
news [1]  95/11
next [15]  4/14 14/18 69/21 71/5 71/13 71/18
109/7 110/9 128/19 128/20 135/9 137/9
137/13 149/24 151/11
nice [2]  96/23 148/2
night [8]  2/8 4/3 4/4 4/13 86/16 86/17 91/12
91/13
nine [3]  18/3 92/23 100/22
no [134]
Nods [1]  50/15
nominal [2]  9/16 99/13
Nominally [1]  30/9
non [1]  101/17
non-affiliates [1]  101/17
none [4]  100/19 113/4 113/13 125/22
noon [2]  82/25 83/2
Norma [6]  6/19 32/1 32/6 32/7 34/13 34/15
normal [1]  18/23
normally [2]  130/2 131/12
North [1]  1/20
Northwest [1]  1/22
note [4]  36/25 37/2 97/12 110/22
notes [2]  86/19 87/5
nothing [59]  9/11 40/8 40/20 41/10 42/2 43/9
55/11 75/4 80/11 86/21 98/25 147/20 148/14
155/17 159/21 162/19
notice [15]  10/17 40/15 42/18 43/4 60/9 65/4
65/24 66/1 73/24 74/10 74/14 74/16 74/17
74/19 159/24
noticed [1]  48/2
notices [3]  74/3 74/8 75/1
notified [1]  4/13
notwithstanding [2]  9/22 45/11
number [71]
number 1 [3]  103/17 142/12 143/2
number 10 [1]  113/5
number 12 [4]  144/21 144/25 149/17 149/22
number 13 [1]  114/22
number 15 [1]  125/3
number 16 [2]  126/15 126/19
number 162 [1]  132/4
number 176-1 [1]  104/9
number 20 [2]  131/22 138/3
number 21 [2]  139/23 140/2
number 23 [1]  141/23
number 3 [2]  150/5 154/12
number 4 [3]  126/5 126/6 126/7
number 54 [1]  116/19
number 6 [2]  112/16 143/4
number 7 [1]  143/1
number 8 [3]  112/21 112/24 112/25
number 9 [2]  113/1 113/2
number one [1]  104/3
numbering [1]  157/18
numbers [7]  3/9 3/25 62/19 65/8 65/16 67/11
67/13
numerous [5]  100/2 125/19 125/20 125/20
144/14

# O

o'clock [2]  43/24 94/10
oath [3]  21/7 40/7 71/20
object [9]  7/3 33/7 119/3 123/15 129/10
153/1 156/9 160/6 160/10
objected [3]  123/4 123/5 160/19
objecting [1]  156/8
objection [87]
objections [8]  4/15 13/22 14/2 28/9 66/7

108/9 157/9 161/15
objects [1]  7/2
obligations [2]  122/17 122/18
obstruct [2]  128/5 149/4
obstruction [2]  149/3 149/10
obtained [1]  11/18
obviate [1]  75/22
obviously [15]  42/18 45/8 47/7 54/10 55/5
55/9 61/15 63/18 78/6 97/11 107/21 110/25
111/9 132/9 142/19
occurs [1]  65/3
October [2]  24/8 32/6
October 24 [1]  32/6
October 24th [1]  24/8
off [9]  11/25 26/1 41/6 41/8 92/11 92/21
94/20 130/24 130/25
offense [12]  117/3 117/7 131/4 131/10 136/9
138/14 138/22 146/20 149/5 151/21 154/13
154/20
offenses [4]  113/17 113/25 116/1 130/3
offer [2]  13/24 14/7
offering [1]  4/22
offhand [1]  22/22
officer [2]  98/1 98/22
officers [3]  100/16 100/19 100/23
offices [2]  25/9 25/21
official [2]  1/24 93/1
often [1]  160/10
oh [6]  15/20 20/21 97/17 113/22 140/16
149/17
Ohio [1]  59/16
okay [59]
omission [1]  116/22
omitted [1]  115/11
once [7]  36/2 38/7 81/22 123/18 145/13
157/17 161/14
one [86]
one-page [4]  65/25 66/3 66/4 157/24
ones [4]  35/9 35/21 35/25 84/24
only [45]  2/22 4/11 7/9 9/3 9/5 13/16 14/20
15/2 16/11 38/6 48/20 52/9 59/15 60/5 63/7
63/20 66/13 68/2 68/2 79/22 88/12 93/18
95/21 99/8 103/22 104/13 105/7 107/20
108/11 111/8 113/15 128/18 128/23 129/19
129/20 141/11 141/12 141/15 141/17 146/24
152/10 152/21 154/12 159/1 161/14
open [1]  109/22
opening [4]  85/9 85/10 85/13 94/1
openings [4]  93/20 93/23 93/25 94/4
operations [2]  98/25 99/1
opinions [2]  28/10 96/21
opportunity [2]  34/23 99/16
opposed [4]  85/3 125/17 137/12 150/7
opt [1]  68/21
order [30]  2/1 4/14 32/3 32/9 34/14 34/18
37/20 41/2 42/8 42/11 42/12 47/14 50/11
50/17 51/4 51/17 55/20 57/6 57/6 57/8 57/8
71/13 83/22 83/24 92/9 93/13 93/15 93/16
117/2 159/11
ordering [2]  85/7 85/9
orders [14]  4/23 8/6 18/20 19/6 23/5 34/19
36/13 36/14 38/23 47/15 55/22 100/7 100/8
101/25
ordinary [6]  19/4 26/13 26/18 31/12 151/23
152/9
organization [1]  17/16
organizational [2]  5/17 5/18
organized [1]  159/16
origin [1]  17/21
originally [2]  94/19 133/21

## O

others [3]  135/21 136/16 136/20
our [22]  7/14 26/5 26/19 33/4 50/5 54/23
  64/8 64/17 97/12 130/16 130/17 131/20
  132/14 135/2 142/11 151/21 151/24 151/25
  151/25 152/5 152/6 159/23
ours [2]  135/4 135/6
outcome [1]  11/6
outright [1]  153/3
outset [3]  69/11 104/25 105/9
outside [5]  27/20 28/1 43/15 144/15 162/11
over [14]  21/17 22/20 29/1 29/25 50/22 55/14
  58/16 59/1 59/22 59/22 63/4 83/8 148/3
  154/23
overall [4]  122/6 122/7 122/14 146/11
overboard [1]  126/1
overrule [2]  147/11 151/21
overruled [3]  151/5 151/10 151/13
overt [18]  99/5 115/2 115/3 115/5 115/13
  115/15 115/17 116/1 116/2 116/4 116/10
  116/12 116/21 117/1 117/4 117/9 117/15
  131/6
overthinking [1]  116/16
own [5]  86/16 97/21 100/2 102/1 156/6
ownership [8]  17/21 125/8 125/13 125/16
  126/8 127/1 127/3 127/5

## P

p.m [5]  98/8 98/8 155/6 155/6 163/5
packet [22]  102/17 102/21 102/24 103/6
  104/1 104/15 104/11 105/4 109/22 110/3
  110/14 110/14 110/19 112/1 112/6 113/7
  114/12 114/20 118/7 128/6 141/9 149/22
page [46]  5/20 7/9 20/23 65/25 66/3 66/4
  73/14 102/23 103/5 103/25 104/4 105/4
  105/5 106/8 106/10 106/11 109/14 109/16
  110/2 110/13 110/14 110/19 112/1 112/5
  112/17 112/24 113/12 114/12 128/12 128/15
  132/3 132/4 133/8 137/13 139/24 141/10
  145/17 145/22 146/3 147/17 152/16 153/18
  157/24 157/25 158/18 158/22
page 11 [3]  105/5 110/2 153/18
page 12 [1]  110/14
Page 13 [1]  110/19
page 14 [1]  112/1
Page 15 [1]  112/5
Page 16 [1]  112/17
page 17 [2]  112/24 132/4
Page 20 [1]  113/12
page 21 [1]  114/12
page 22 [2]  146/3 147/17
page 34 [1]  128/12
page 37 [1]  139/24
page 38 [1]  141/10
page 4 [2]  106/8 106/10
page 5 [2]  106/11 109/14
page 6 [3]  109/16 110/13 145/22
pages [20]  1/10 4/11 4/25 7/11 7/21 10/18
  13/19 14/21 15/1 15/3 15/12 15/12 15/22
  114/20 118/7 126/15 128/5 145/2 153/17
  158/20
pages 21 [1]  145/2
pages 23 [1]  114/20
pages 27 [1]  118/7
pages 29 [1]  126/15
pages 31 [1]  128/5
paid [2]  38/24 71/9
Palm [3]  1/7 1/20 1/25
paper [9]  26/2 27/2 27/5 27/7 27/10 27/11

27/15 27/15 71/3
papers [1]  81/4
paragraph [22]  12/3 99/11 107/14 109/7
  109/13 110/6 110/7 111/14 112/6 115/2
  115/13 123/5 128/15 129/5 129/17 133/23
  133/23 134/1 134/24 136/15 138/6 138/16
  138/19 140/12 140/18 140/19 141/13 141/18
  142/16 142/25 150/8 153/12
paragraph 16 [2]  115/2 115/13
paragraph 2 [1]  141/13
Paragraph 4 [1]  99/11
paragraphs [8]  103/9 106/12 109/1 109/21
  145/22 145/24 147/20 147/25
Pardon [1]  44/11
pared [3]  35/16 35/23 35/24
paren [11]  107/23 108/1 108/2 108/3 125/15
  125/16 135/4 135/8 135/13 135/21 135/22
parentheticals [3]  133/8 134/11 134/13
parse [1]  85/7
participant [2]  128/22 129/1
particular [2]  19/12 116/11
particularly [5]  17/13 17/15 17/16 100/12
  132/4
parties [4]  2/8 69/18 80/17 106/17
parties' [1]  106/16
Pasano [2]  8/8 48/5 55/13 133/10
passing [1]  105/2
past [6]  23/5 26/5 26/5 81/24 82/25 92/21
patience [2]  69/17 95/9
pattern [30]  90/9 103/5 104/3 116/18 129/11
  132/24 133/18 134/18 134/19 136/18 137/10
  138/2 138/7 138/11 138/19 139/7 141/4
  141/12 143/12 146/19 146/23 146/25 147/2
  147/12 147/16 147/19 147/21 148/1 154/10
  154/12
patterns [1]  16/14
Paul [1]  25/19
pause [4]  19/17 78/4 92/18 140/10
paying [1]  22/11
payment [27]  19/3 32/7 34/16 36/14 40/8
  40/9 40/20 41/9 41/25 42/2 42/6 48/3 48/14
  48/23 49/1 49/3 49/8 49/20 49/24 50/3 54/18
  56/6 57/25 58/19 61/1 62/24 78/11
payments [12]  21/22 21/22 26/22 27/13
  27/14 27/19 27/22 27/25 29/7 29/10 29/25
  30/17
people [10]  35/19 36/3 55/22 67/4 70/6
  100/10 100/15 101/3 131/18 160/9
percent [1]  81/6
perfect [1]  61/16
performing [1]  12/15
perhaps [6]  68/21 84/20 105/25 127/25
  135/21 136/20
period [15]  28/2 32/21 69/11 75/3 106/24
  107/1 107/17 108/6 108/7 108/9 112/9 137/2
  137/5 146/12 147/19
Perkins [7]  4/14 6/5 7/12 12/25 13/21 14/25
  99/15
Perkins' [2]  7/17 8/7
permitted [1]  89/9
persistent [1]  55/2
person [13]  18/3 19/23 25/18 38/23 38/24
  40/11 55/21 56/24 122/25 128/22 142/17
  146/5 151/22
person's [1]  136/4
personal [4]  24/18 24/20 31/18 57/18
personally [1]  59/18
persons' [1]  122/17
pertain [1]  22/19
pertains [2]  69/25 73/5

phone [1]  57/11
phonetic [2]  8/17 25/19
phrase [1]  119/16
physical [6]  3/16 77/2 77/5 77/12 77/13
  77/18
physicians [1]  100/16
pick [2]  150/6 155/5
Pickard [4]  34/2 67/3 70/5 85/17
picked [4]  25/5 25/9 25/11 25/15
piece [8]  27/2 27/5 27/6 27/9 27/11 39/1
  152/22 162/4
pieces [3]  26/2 27/14 27/15
Pinkerton [7]  129/23 130/2 130/9 130/12
  131/8 131/12 131/19
place [5]  109/20 109/25 115/18 124/22 162/3
placed [1]  27/20
places [2]  25/11 121/17
plain [1]  41/18
plainly [1]  160/2
plan [7]  15/6 44/17 46/9 46/17 80/25 86/2
  146/12
plane [3]  41/6 41/8 54/20
planning [3]  44/10 58/23 61/20
plans [3]  59/4 59/5 60/11
plant [1]  10/2
play [6]  4/16 4/18 7/17 7/23 8/1 160/5
played [1]  14/4
plea [1]  142/24
pleadings [1]  144/14
please [14]  2/2 4/3 8/22 15/12 30/23 54/7
  69/3 83/3 83/17 95/7 98/10 137/7 155/8
  158/9
pleasure [1]  21/6
pled [2]  115/16 115/19
plenty [1]  96/18
plow [1]  118/22
plus [3]  7/11 68/14 70/15
point [19]  7/7 10/13 14/9 34/1 36/1 37/4
  38/21 46/24 46/25 65/14 76/23 79/1 79/14
  130/14 132/10 132/22 148/3 148/4 154/11
pointed [3]  42/21 148/4 158/13
points [1]  109/8
portion [7]  72/8 104/7 105/11 110/7 135/20
  137/20 152/14
POSAM [1]  66/4
posed [1]  45/14
position [18]  6/11 9/8 33/2 33/3 33/5 46/6
  46/12 49/15 49/22 50/6 54/16 67/20 72/24
  86/14 90/22 91/9 126/16 154/6
positive [2]  22/25 72/19
possession [2]  40/22 57/16
possibilities [1]  134/6
possible [4]  26/16 27/8 62/9 162/24
possibly [3]  27/6 36/4 100/5
potentially [2]  41/7 154/16
practice [2]  29/18 118/15
practices [1]  28/24
preceding [1]  112/10
precisely [3]  123/14 139/16 141/24
predecessor [1]  153/16
predicate [2]  26/3 34/7
predicted [1]  6/23
prefer [1]  124/14
preferable [1]  61/17
preliminaries [1]  21/8
preliminary [5]  88/19 104/24 105/3 105/8
  106/2
preparation [1]  96/3
prepare [8]  83/24 85/18 85/23 91/13 92/14
  93/3 93/10 96/2

**P**

prepared [19]  2/14 6/24 7/8 14/21 42/24
48/6 58/8 58/8 58/11 82/13 85/22 86/22
87/13 87/18 88/10 91/11 97/4 97/6 136/20
prerequisites [1]  20/2
presence [3]  20/10 81/9 145/25
present [9]  2/5 6/5 7/19 83/18 87/19 88/5
91/16 98/11 146/4
presented [6]  10/5 102/20 135/15 136/3
160/16 161/11
presenting [1]  6/6
presiding [1]  129/5
pressured [1]  81/13
presumably [1]  44/15
presume [2]  62/15 162/10
presuming [4]  39/6 86/4 87/3 157/9
previous [1]  115/4
previously [3]  2/20 59/2 133/13
principle [1]  152/6
printed [2]  10/18 60/9
prior [3]  6/6 107/14 111/11
pro [2]  1/19 137/19
probably [12]  4/18 4/18 63/8 69/5 78/19
81/17 92/25 96/8 117/24 125/8 125/9 125/10
probative [1]  11/2
problem [23]  2/24 33/12 33/15 47/4 47/5
47/5 47/8 47/11 53/9 61/25 78/16 105/15
114/3 114/9 114/10 117/22 127/6 129/8
140/11 156/10 157/14 161/22 161/25
problematic [1]  118/9
proceed [4]  2/6 15/8 67/15 83/9
proceeding [1]  32/22
proceedings [15]  1/11 19/17 39/23 54/6 69/1
75/17 78/4 80/21 83/16 92/18 95/6 98/9
140/10 155/7 165/11
process [4]  25/1 36/10 54/22 69/13
produce [1]  65/10
product [7]  10/22 30/17 49/9 77/9 150/14
153/4 153/9
product's [1]  153/6
products [6]  41/11 76/1 76/18 77/4 77/5
79/24
proffer [6]  21/12 24/24 40/16 54/12 164/4
164/6
proffered [1]  131/25
proof [7]  100/6 128/16 128/24 129/6 137/14
146/9 151/22
proper [2]  34/7 125/4
properly [2]  83/24 127/14
proponent [1]  16/13
propose [1]  20/5 111/13 118/13 118/18
122/15 129/10 142/12 146/13 150/8 158/6
158/11
proposed [22]  98/12 102/20 103/20 104/22
111/1 117/14 128/10 131/20 132/19 132/25
133/1 134/24 138/6 143/20 146/17 147/3
148/8 148/18 149/24 150/4 155/19 155/22
proposing [2]  150/7 158/15
proposition [3]  16/9 19/20 19/24
propositions [1]  17/13
propriety [1]  11/5
protect [2]  57/21 57/21
protected [1]  148/17
prove [14]  13/7 27/4 27/10 27/15 117/12
117/18 138/13 145/16 147/5 147/7 149/14
149/14 153/22 154/20
proved [5]  135/3 135/13 136/6 150/16
150/23
proven [6]  99/9 99/9 99/12 117/1 117/16

147/8
Provencio [16]  6/20 18/8 18/13 32/1 32/6
32/7 32/12 33/8 33/14 34/13 34/16 34/24
35/9 36/19 37/7 47/13
provide [7]  37/15 75/13 78/10 87/4 104/18
161/20 162/8
provided [4]  57/18 66/8 104/11 157/15
provides [1]  17/18
proving [1]  138/11
prudence [1]  151/23
prudent [1]  152/9
public [15]  11/17 60/7 60/9 65/18 73/19 74/3
74/8 74/9 84/17 88/6 88/7 88/10 121/8
150/19 150/25
publish [3]  6/1 67/9 70/10
puffing [6]  150/13 151/4 152/19 152/19
152/25 153/3
pull [5]  103/15 130/24 130/24 133/21 133/24
pulling [1]  134/7
purchase [32]  4/23 8/6 18/19 19/6 23/5 32/3
32/9 34/14 34/18 34/19 36/13 36/14 37/20
38/23 41/2 42/8 42/11 42/11 47/14 47/14
50/11 50/17 51/3 51/17 55/20 55/22 57/6
57/6 57/7 57/8 100/7 101/25
purportedly [1]  36/25
purporting [2]  6/17 17/20
purports [6]  24/12 34/12 65/22 65/24 65/25
66/1
purpose [7]  8/24 47/1 48/13 48/15 48/17
48/20 115/24
purposes [7]  11/24 12/10 26/10 34/10 84/21
97/24 125/5
pursuant [1]  40/14
push [1]  58/5
pushing [1]  41/21
put [39]  23/10 23/22 25/5 25/10 25/23 31/22
37/4 40/7 46/5 46/11 50/17 50/18 51/3 51/11
52/11 54/12 54/23 55/8 55/23 57/3 60/4
82/12 86/7 86/11 88/7 90/23 92/11 97/12
102/7 108/10 110/1 113/6 113/19 113/20
114/2 115/17 124/21 135/4 135/6
putting [9]  25/2 43/6 86/9 87/7 87/17 92/20
114/6 114/7 129/12

**Q**

quarter [1]  34/18
quarterly [2]  73/5 73/9
question [29]  22/13 28/2 31/25 45/14 58/15
58/18 64/4 73/8 78/17 78/20 79/25 80/2 80/7
80/23 82/14 86/25 87/16 87/18 87/20 97/8
97/9 102/13 104/22 108/13 108/15 135/19
136/14 146/9 160/23
questioning [2]  135/9 160/23
questions [20]  8/7 21/10 23/22 47/8 75/19
76/13 77/17 78/17 79/5 79/6 79/23 87/7
87/25 106/15 106/15 106/16 108/9 108/10
108/10 160/25
quick [2]  53/7 81/23
quickly [5]  53/12 75/13 86/5 95/24 98/15
quite [3]  95/25 151/1 154/2
quotations [1]  15/24
quote [8]  16/11 17/18 135/3 146/10 146/11
146/11 146/12 151/12
quoted [1]  132/25

**R**

raise [1]  152/21
rapidly [1]  85/18
rather [7]  20/22 52/13 63/24 97/20 134/20
158/1 159/8

re [4]  11/8 45/17 45/22 55/25
re-call [4]  11/8 45/17 45/22 55/25
reach [4]  52/10 54/9 55/24 96/15
reached [5]  2/10 8/16 40/14 60/6 69/23
reaching [1]  53/7
read [38]  2/12 3/5 3/6 3/7 3/25 5/6 22/21
29/15 37/6 39/7 52/25 62/12 62/17 62/18
64/25 66/15 67/14 69/22 71/5 88/20 92/7
96/7 104/2 105/18 106/3 109/11 111/14
116/12 117/25 118/23 118/23 125/23 125/19
127/12 129/19 137/11 139/13 158/8
readily [1]  150/19
reading [3]  22/12 60/6 134/3
ready [11]  2/6 4/16 15/14 61/23 62/7 64/25
91/5 95/25 102/7 154/4 156/18
real [3]  38/23 38/24 55/21
really [13]  30/8 41/20 56/22 56/23 61/18
80/19 84/8 85/8 124/17 130/1 130/10 131/6
133/2
Realtime [1]  165/10
reason [15]  9/3 9/5 53/17 55/1 74/7 99/3
117/2 121/4 133/14 136/6 143/15 143/16
147/1 152/19 152/21
reasonable [26]  36/5 97/2 99/9 99/10 99/12
100/6 114/16 128/17 128/21 128/24 128/25
129/4 129/7 136/7 138/13 146/9 147/5 147/7
147/8 147/11 153/18 153/19 154/7 154/9
154/15 154/21
rebuttal [13]  51/5 55/8 59/7 60/3 60/4 60/16
60/23 62/23 63/7 81/18 82/12 91/23 95/17
recall [20]  21/17 25/13 40/3 40/11 40/13
42/15 44/13 44/17 45/12 46/3 52/1 57/8
71/18 72/1 72/5 73/18 73/21 99/25 100/1
160/18
recalled [1]  43/4
recalls [2]  55/13 99/25
receipt [1]  19/3
receive [3]  58/1 61/2 71/10
received [23]  6/14 8/21 9/2 19/6 31/11 31/16
31/21 40/12 44/18 47/15 48/14 48/22 49/1
49/8 49/19 50/3 51/3 76/18 77/3 77/4 77/5
77/9 79/24
receiving [1]  49/9
recently [1]  33/24
recess [10]  39/22 44/3 53/21 54/5 83/15 96/3
98/8 155/2 155/6 163/5
recognizes [1]  59/8
recognizing [1]  92/10
recollection [16]  22/18 22/24 22/25 23/3 23/5
72/17 72/25 74/1 74/6 75/1 93/9 99/21 102/1
133/20 133/22 134/4
record [52]  2/12 3/5 3/25 19/20 19/25 20/1
20/2 26/7 26/9 26/17 26/20 27/2 27/8 29/19
31/14 31/17 31/20 31/23 33/5 33/11 34/8
34/9 36/17 36/20 36/21 36/24 37/2 37/5
41/22 45/7 51/22 53/1 54/7 55/18 57/21
58/10 58/12 59/3 65/20 69/23 81/11 83/18
97/24 98/11 118/9 127/10 155/9 155/17
160/1 160/15 161/6 165/11
records [24]  8/21 9/2 11/18 12/12 18/22
18/22 21/18 26/4 26/9 26/19 26/21 27/1
27/16 28/13 28/14 29/11 36/14 60/10 65/18
76/17 76/24 77/6 77/13 79/23
recross [2]  78/6 78/14
recycle [1]  97/13
red [1]  151/7
redact [2]  3/24 67/8
redacted [1]  62/19
redirect [4]  25/1 78/14 80/13 80/24
redistribute [1]  97/23

**R**

redundant [4]  130/10 143/15 154/16 154/21
refer [4]  2/24 3/9 3/17 110/24
reference [8]  2/19 2/22 90/3 116/3 116/8
118/16 129/18 142/23
references [2]  34/17 108/18
referred [1]  103/24
referring [2]  3/19 24/20
reflected [1]  84/5
reflects [4]  50/9 50/9 50/10 50/11
refresh [7]  22/18 22/24 72/25 74/1 74/6 75/1
93/8
refreshes [1]  72/17
refusal [1]  36/18
refute [1]  56/20
regard [4]  17/23 35/20 55/12 90/7
regarding [45]  2/10 2/13 2/23 4/6 4/23 18/19
19/6 21/17 22/18 27/13 29/12 30/17 35/1
45/10 47/18 48/1 59/12 62/24 66/14 72/2
72/5 73/1 74/1 74/3 74/8 75/1 85/7 90/1 99/8
114/16 115/7 118/10 119/21 120/22 121/10
122/16 122/18 125/22 127/10 127/10 148/17
151/4 152/22 158/24 159/23
Regardless [1]  56/9
Registered [1]  165/9
regular [5]  28/21 29/1 29/18 31/15 31/19
regularly [3]  19/4 29/12 31/7
regulation [1]  122/21
regulations [5]  101/11 123/1 123/3 123/6
124/17
regulatory [4]  118/12 119/13 119/15 119/22
reiterate [1]  160/12
reject [2]  142/20 143/7
rejected [1]  152/3
related [1]  10/22
relates [2]  11/22 104/7
relating [1]  114/23
relationship [2]  79/12 119/17
relatively [1]  81/23
release [1]  61/3
released [2]  40/4 40/14
relevance [5]  9/12 9/13 11/16 11/20 13/14
relevant [8]  4/9 9/10 12/3 12/4 12/6 120/1
123/7 144/6
reliable [1]  28/14
reliance [1]  30/15
remained [1]  100/22
remaining [2]  13/16 15/2
remains [1]  95/21
remember [6]  12/21 72/14 86/19 120/25
125/1 161/8
remembered [1]  161/10
remembers [2]  119/19 125/9
remind [1]  160/3
reminds [1]  111/7
remove [4]  67/8 67/10 67/12 110/9
Renew [1]  22/11
renewing [1]  159/23
repeat [1]  17/23
repeatedly [1]  147/4
report [3]  5/15 5/15 125/8
reporter [9]  1/23 1/24 85/6 92/24 94/5
135/19 155/4 165/9 165/10
represent [5]  40/6 47/16 48/4 86/16 133/13
representation [2]  49/10 150/15
representations [4]  150/12 150/17 150/24
152/23
representative [1]  10/24
representatives [1]  106/16

represented [2]  53/5 138/2
representing [7]  40/19 43/18 89/22 92/10
105/13 106/18 161/7
request [15]  8/12 35/13 35/17 39/2 39/3
40/13 92/11 105/7 105/10 105/12 137/25
138/4 147/12 153/11 156/23
requested [7]  35/16 35/19 35/22 113/15
128/14 128/18 149/23
requesting [3]  10/16 106/13 142/5
required [6]  26/6 69/9 116/21 117/1 135/6
136/7
requirement [8]  115/14 115/15 115/16 116/1
116/2 116/22 116/25 138/21
requirements [4]  10/4 19/22 26/24 122/23
requires [8]  16/11 128/16 128/24 129/6
138/24 139/8 139/14 151/22
reread [1]  106/11
rereading [1]  109/1
reschedule [2]  94/22 95/3
research [1]  96/21
reseller [1]  41/12
reservation [1]  68/5
reserved [1]  40/10
reside [1]  106/7
resolution [1]  3/10
resolve [1]  96/18
resolved [3]  7/14 91/3 116/15
respect [5]  46/25 53/16 101/7 105/8 161/22
respected [1]  109/2
respectfully [1]  138/4
respond [2]  76/13 115/21
response [2]  52/15 78/17
responsible [1]  131/16
responsive [1]  152/23
rest [20]  4/19 7/12 14/25 15/7 15/9 51/23
52/2 58/24 62/15 62/19 67/23 80/25 81/17
81/25 82/8 82/8 88/24 107/1 109/10 109/11
rested [1]  90/21
resting [6]  86/2 86/3 86/5 87/1 87/5 90/17
rests [2]  95/15 164/9
return [1]  58/1
revelation [2]  41/17 57/23
revelations [1]  9/15
review [6]  71/3 72/18 72/19 76/16 76/24 98/3
reviewing [2]  6/8 72/14
reviews [1]  75/2
revise [2]  110/23 119/4
reword [1]  111/13
right [137]
rights [3]  88/21 105/20 148/16
RMR [2]  1/23 165/16
Road [1]  1/22
Rodney [1]  158/11
room [5]  69/5 71/14 82/24 93/7 97/21
rough [2]  92/25 93/3
route [2]  33/6 51/10
Rowland [2]  4/14 28/7
rule [22]  4/14 7/1 7/18 7/20 16/11 16/13
16/25 17/4 17/8 18/5 18/18 18/23 19/22 26/3
26/6 26/7 27/9 98/15 99/3 99/6 101/5 102/5
ruled [3]  84/1 84/9 84/11
rules [9]  10/16 16/21 60/10 103/11 122/17
122/21 123/1 123/3 123/6
ruling [2]  4/12 5/3
rulings [1]  7/4
rushing [2]  41/6 135/18

**S**

S-i-d-d-i-q-u-i [1]  16/8
S-v-e-t-e [1]  151/13

sale [5]  29/5 101/8 120/14 121/21 122/9
sales [6]  30/17 122/18 122/20 122/25 125/21
143/21
same [17]  12/9 47/4 47/5 58/3 77/13 93/11
104/22 110/23 119/5 127/11 130/15 131/6
131/6 136/24 137/23 149/13 162/10
satisfied [2]  19/22 157/17
satisfy [2]  10/3 27/25
save [1]  80/18
saved [1]  69/13
saving [1]  75/13
saw [8]  23/13 25/12 28/15 43/23 77/2 78/13
108/14 108/16
say [55]  2/18 13/2 32/3 37/7 37/8 37/23
37/25 40/24 40/24 41/20 42/20 45/3 45/13
56/14 57/13 60/22 66/24 76/14 78/8 78/11
84/22 85/23 90/2 90/2 97/20 100/4 105/25
106/5 106/23 107/10 111/2 111/11 113/24
115/14 116/9 118/18 120/21 123/12 123/12
125/15 126/25 127/18 130/24 131/15 136/1
144/8 147/6 147/10 147/24 148/24 157/24
159/24 159/25 160/9 162/15
saying [23]  3/12 17/9 17/10 20/23 34/13
34/16 37/17 53/20 57/17 59/17 73/21 86/18
119/18 122/5 124/2 131/9 140/20 140/22
144/12 149/17 153/3 153/24 160/19
says [47]  2/14 8/18 12/4 32/2 32/4 32/8 47/13
49/2 55/2 55/4 57/10 59/14 66/3 66/19 73/23
90/9 103/10 106/14 106/17 107/5 107/14
107/15 107/22 113/16 122/13 128/16 129/6
134/13 135/2 135/2 135/4 135/5 135/12
136/2 136/13 137/10 137/11 138/20 138/23
143/10 143/15 144/25 145/11 147/6 147/8
149/14 153/22
SB1 [1]  65/25
SB2 [10]  65/22 66/2 72/10 72/20 72/22 73/1
73/5 73/7 73/10 100/13
SB2s [1]  72/19
scene [1]  146/4
schedule [3]  61/15 86/25 87/4
scheduled [2]  53/23 96/14
scheduling [8]  46/7 46/13 46/15 59/16 80/19
80/20 81/13 86/24
scheme [13]  121/17 121/20 122/7 122/14
123/24 127/21 127/24 127/25 146/11 150/16
150/23 151/22 152/12
schemes [1]  152/9
scholarship [1]  152/6
scope [1]  75/21
screen [5]  6/1 23/11 134/12 137/11 137/16
Se [1]  1/19
seat [1]  21/7
seated [7]  2/3 54/7 69/3 83/17 95/8 98/10
155/8
seats [1]  96/22
SEC [24]  8/17 8/19 9/1 9/10 9/17 9/19 11/14
11/17 11/24 12/8 22/10 42/23 48/6 55/15
65/4 65/18 65/23 72/23 73/1 73/19 74/7 75/2
127/12 133/15
SEC's [1]  11/18
second [13]  16/23 46/22 79/24 104/4 106/1
119/23 129/17 133/8 141/18 142/16 148/25
158/17 158/22
seconds [1]  154/24
section [9]  101/13 116/21 116/23 116/23
120/12 125/19 132/2 132/18 137/13
Section 507 [2]  132/2 132/18
securities [25]  4/6 8/14 29/16 72/5 73/24
74/2 74/13 80/8 101/14 101/20 120/14
120/15 121/21 121/24 122/9 122/17 122/19

**S**

securities... [8]  123/6 123/24 125/7 125/18 125/24 125/24 127/21 149/5
security [4]  98/1 119/16 119/17 149/6
seeing [2]  74/25 75/4
seeking [2]  9/4 9/5
seem [1]  133/1
seems [7]  50/24 86/8 102/23 123/16 124/22 128/21 130/5
seen [13]  46/20 54/17 72/11 73/15 73/16 74/4 74/15 74/16 74/19 78/7 103/13 132/19 155/22
sees [1]  110/22
self [4]  17/11 17/18 17/22 18/4
self-authenticating [3]  17/11 17/22 18/4
self-authentication [1]  17/18
seller's [1]  150/13
selling [2]  121/6 121/18
send [2]  56/14 151/15
sender [1]  6/19
sending [2]  7/6 18/3
sense [12]  3/13 45/21 52/20 63/21 64/13 64/14 64/16 77/17 91/6 128/2 133/2 145/7
sent [11]  4/20 18/8 18/13 32/7 37/20 43/24 44/18 47/17 47/17 55/12 159/10
sentence [23]  107/3 107/5 110/9 110/10 111/11 111/14 112/10 113/16 115/7 128/19 128/20 128/25 137/1 137/3 137/9 138/5 139/4 139/7 139/10 139/13 139/19 154/1 154/7
sentences [2]  145/14 148/18
sentencings [2]  94/22 94/24
separate [24]  20/23 23/1 49/20 84/19 87/15 114/15 115/6 115/17 118/13 118/18 118/25 119/5 119/7 124/2 124/8 124/15 124/20 144/18 144/19 148/16 148/19 148/21 148/23 150/9
separately [1]  119/9
September [4]  24/12 24/12 57/17 71/8
September 27th [1]  71/8
September 28th [2]  24/12 24/12
series [2]  18/3 87/23
serves [1]  146/18
services [1]  12/15
session [2]  61/21 96/5
set [4]  18/25 97/21 115/25 146/20
sets [1]  97/21
settled [1]  152/8
settlement [4]  4/5 8/15 8/18 8/25
seven [5]  92/23 100/22 153/21 153/21 153/21
Seventeen [1]  70/21
several [2]  25/14 152/1
SFranklinUSDC [1]  1/25
share [1]  101/19
shares [5]  101/9 121/18 122/9 132/11 139/2
she's [7]  32/13 32/16 32/21 32/24 34/25 35/2 71/4
shepherdization [1]  153/14
Sheraton [1]  41/4
short [5]  93/21 103/9 103/12 138/5 158/21
shorten [1]  69/7
shortening [1]  68/15
shorter [1]  69/10
shortly [1]  25/20
shots [1]  161/14
should [40]  16/21 35/5 43/2 64/19 64/20 89/19 90/6 90/8 91/22 93/3 97/22 101/6 104/6 105/5 105/24 105/25 107/10 108/12 110/5 110/6 110/10 112/6 112/25 116/9

125/5 129/19 132/15 135/15 136/2 137/6 144/17 148/1 148/4 148/11 148/20 149/18 150/8 150/18 150/24 157/16
shouldn't [5]  86/10 87/1 89/11 148/11 148/13
show [11]  22/7 28/20 44/5 44/5 48/19 55/8 72/8 73/13 74/11 134/22 161/25
showed [4]  41/3 43/9 47/2 49/21
showing [1]  22/23
shown [2]  65/6 142/17
shred [1]  97/13
side [5]  2/14 91/25 129/6 162/3 162/3
sidebar [5]  75/17 80/4 80/21 81/3 82/21
sidebars [1]  160/20
sides [2]  144/22 159/10
sign [2]  17/19 41/5
Signalife [50]  16/18 22/14 24/15 29/3 30/6 31/10 31/11 31/14 31/15 31/17 31/17 31/18 31/19 31/22 32/18 32/24 33/1 33/1 41/8 41/10 41/11 42/6 49/1 49/19 50/3 50/10 51/3 51/18 56/4 57/25 58/11 58/11 58/12 58/19 60/7 66/23 66/24 67/2 67/4 67/5 70/3 70/4 70/6 70/7 71/9 72/2 72/10 76/18 79/24 101/9
Signalife's [4]  21/18 27/3 31/15 36/14
signalife.com [1]  17/17
signature [1]  59/8
signed [8]  8/16 38/23 38/24 55/3 55/4 55/6 55/19 57/7
significant [3]  12/5 99/15 134/24
significantly [1]  89/20
Sillonski [1]  8/17
Silve [1]  152/23
simple [1]  8/18
simply [6]  19/7 75/25 100/25 102/1 146/3 151/10
since [6]  21/15 35/2 57/17 112/6 124/9 153/15
single [1]  154/14
sir [3]  21/2 62/8 80/16
sister [2]  108/15 151/25
sit [1]  62/3
site [1]  13/10
sitting [1]  11/7 14/17 98/2 159/13
six [3]  79/11 79/12 148/22
six-year [2]  79/11 79/12
skeptical [2]  54/13 56/3
sketched [1]  91/17
skipping [1]  137/13
slight [1]  118/9
slip [1]  50/11
smarter [1]  111/7
sold [1]  101/19
sole [1]  48/17
solely [2]  47/9 122/9
solve [1]  47/10
somebody [3]  35/7 57/1 97/12
somehow [1]  150/2
someone [10]  8/16 23/14 31/9 31/15 31/18 31/19 36/5 97/20 117/2 161/7
something [44]  6/14 8/11 10/22 11/4 17/1 19/4 28/17 40/16 41/2 42/23 43/11 56/1 57/20 64/18 68/23 73/6 73/9 75/12 89/10 89/11 91/17 102/25 108/12 117/11 117/11 117/18 118/19 118/24 120/22 122/15 126/25 130/25 134/2 135/23 148/11 148/13 148/14 148/15 149/17 150/18 156/8 161/8 161/10 162/1
something's [1]  160/19
sometime [1]  36/19

sometimes [1]  160/25
somewhere [6]  30/9 109/22 120/3 123/21 124/7 150/22
soon [1]  162/24
sooner [2]  53/17 68/16
sorry [33]  2/18 9/23 9/24 11/21 13/14 19/14 21/4 22/12 30/5 38/11 39/17 39/20 39/25 41/23 50/21 52/6 56/7 60/20 60/25 66/17 78/25 80/18 82/4 93/14 105/6 110/14 113/22 137/17 140/19 144/23 145/2 151/8 158/7
sort [9]  41/9 57/21 63/3 87/24 116/12 134/21 146/18 160/10 162/3
sounds [6]  61/25 63/9 81/17 92/4 92/5 123/14
source [1]  30/14
SOUTHERN [1]  1/1
speak [2]  50/22 61/4
specific [2]  101/7 130/25
specifically [5]  116/22 123/9 134/8 139/2 145/11
spectator [2]  128/22 129/1
speed [2]  74/17 82/23
spelled [1]  16/8
spend [2]  44/14 81/25
spent [1]  69/14
spoke [1]  99/13
spoken [2]  24/4 32/13
squared [1]  159/6
squarely [1]  132/22
squeeze [1]  63/24
staff [1]  104/11
stage [4]  30/1 30/4 30/6 30/8
stamp [2]  158/14 158/15
stand [6]  43/8 45/9 62/10 69/19 98/20 118/17
standard [19]  102/23 103/4 103/14 104/5 107/11 109/18 115/9 115/20 122/21 123/1 136/13 136/15 137/21 137/22 137/23 139/24 140/3 140/20 156/13
standards [2]  123/3 123/6
standby [10]  1/21 11/23 36/8 39/3 83/8 83/21 88/16 89/15 89/21 140/14
standpoint [1]  161/3
stands [4]  16/9 19/19 19/24 152/3
start [10]  16/4 36/3 53/7 63/23 96/6 96/9 97/3 102/16 102/21 154/10
started [3]  36/2 99/5 133/15
starts [2]  106/10 137/3
state [5]  47/20 135/6 135/16 136/4 136/8
stated [2]  27/11 127/15
statement [10]  85/14 107/12 108/19 109/4 125/12 125/15 126/8 127/1 127/2 127/4
statements [15]  28/20 85/9 85/10 91/6 105/14 106/23 106/24 107/5 107/7 107/17 107/21 107/22 108/1 142/13 160/23
states [38]  1/1 1/3 1/13 11/25 12/9 16/7 18/1 18/17 18/18 69/23 71/6 73/23 74/2 74/13 89/8 95/19 98/5 103/19 105/7 105/9 111/21 113/13 114/21 128/7 132/3 133/10 134/5 136/11 142/6 143/21 143/22 143/23 150/10 151/3 151/13 151/18 155/24 162/19
stating [1]  37/15
statute [4]  118/15 151/19 151/20 152/8
stay [1]  162/12
STEIN [91]
Stein's [17]  2/5 13/24 21/9 24/19 34/1 40/22 41/16 50/4 63/14 65/10 83/18 83/21 98/11 120/12 137/1 137/11 137/16
step [2]  31/4 82/24
Stephen [4]  1/23 165/9 165/15 165/16
stick [2]  129/10 137/23

**S**

**Stieglitz [18]** 1/16 3/4 36/23 43/24 46/23
54/8 56/1 116/15 119/3 119/19 134/11
134/14 146/14 158/13 161/16 162/9 164/5
164/8
**Stieglitz's [1]** 2/11
**still [14]** 12/10 14/18 21/7 21/8 26/3 26/5
58/24 61/5 62/25 69/2 71/20 148/20 152/3
154/4
**stipulate [22]** 3/23 4/25 5/1 5/19 6/9 37/11
48/24 49/2 50/2 50/7 50/8 51/23 52/21 54/16
57/24 58/7 58/25 59/6 59/19 108/20 139/17
141/24
**stipulated [7]** 4/8 4/16 78/9 110/11 114/5
114/8 128/3
**stipulates [1]** 17/7
**stipulation [32]** 2/10 2/23 3/2 3/5 3/7 3/8
3/15 3/22 4/24 5/6 39/6 39/7 49/4 49/5 49/19
50/12 55/24 58/19 60/6 60/17 60/18 61/1
62/17 62/24 66/14 66/18 66/22 69/25 70/15
70/17 70/25 71/6
**stipulations [5]** 52/5 52/25 62/12 65/1 69/23
**stock [5]** 101/9 122/18 122/19 122/25 125/21
**stop [1]** 96/15
**stops [1]** 147/17
**story [1]** 47/24
**strange [1]** 100/21
**stray [1]** 97/12
**Street [1]** 1/23
**strike [2]** 110/7 110/8
**struggling [1]** 55/23
**stuff [1]** 53/13
**subject [3]** 43/4 61/15 88/20
**submission [1]** 66/3
**submit [2]** 41/9 119/8
**submitted [2]** 56/4 56/6
**subpoena [12]** 34/23 34/24 35/10 35/13
35/19 35/22 36/4 36/10 37/3 42/16 43/14
46/4
**subpoenaing [1]** 37/18
**subpoenas [3]** 35/4 35/16 36/3
**substance [1]** 16/14
**substantive [12]** 105/2 113/11 113/17 113/21
113/25 114/11 114/19 131/4 131/10 131/16
149/5 154/13
**substantively [1]** 137/23
**such [9]** 48/10 116/25 136/4 136/5 137/12
142/19 142/21 143/6 143/8
**sufficient [2]** 16/12 93/3
**sufficiently [1]** 152/14
**suggest [9]** 76/24 79/22 89/9 90/4 111/8
120/17 128/21 134/19 138/15
**suggested [1]** 57/14
**suggesting [4]** 41/16 53/22 54/14 123/20
**suggestion [3]** 52/9 102/16 106/2
**suggests [2]** 2/16 108/13
**Suite [1]** 1/22
**summary [3]** 5/14 5/14 5/15
**Sunday [3]** 54/21 92/20 92/22
**super [1]** 17/24
**support [1]** 16/12
**supports [1]** 15/11
**Supreme [3]** 116/24 143/22 151/20
**sure [30]** 11/13 13/23 13/24 14/3 14/18 23/23
41/15 49/3 66/25 79/9 79/14 81/7 81/10 82/9
97/14 110/22 110/25 115/8 118/24 119/3
119/25 123/4 151/1 155/1 156/23 157/21
159/5 161/19 161/21 162/23
**surplusage [1]** 117/5

**surprise [1]** 57/15
**surprised [1]** 14/10
**surrounding [1]** 22/18
**suspect [2]** 37/5 41/20
**sustain [3]** 7/22 13/15 34/8
**Sustained [1]** 73/3
**sustaining [3]** 34/6 36/18 38/17
**Svete [1]** 151/18
**sworn [9]** 19/21 21/11 107/23 108/2 108/3
111/3 111/8 111/10 111/15

**T**

**tag [1]** 17/19
**take [23]** 14/15 19/2 33/6 33/14 36/3 39/16
45/9 53/2 60/8 64/22 66/16 83/7 85/22 91/15
91/22 94/19 96/16 108/17 108/22 117/19
130/14 155/1 155/4
**taken [10]** 16/15 39/22 54/5 83/15 98/8
136/18 148/1 149/18 155/6 155/13 163/5
**taking [3]** 45/2 65/3 69/6
**talk [18]** 23/2 23/2 43/19 45/9 78/2 80/19
85/6 94/7 101/8 115/3 115/5 117/14 121/16
121/22 140/23 150/13 155/21 156/19
**talked [6]** 21/14 28/1 39/7 43/18 98/21 125/9
**talking [13]** 20/19 28/1 39/3 59/11 91/25
92/7 97/3 99/19 120/14 121/18 153/5 153/8
158/24
**talks [2]** 127/24 140/24
**tank [1]** 154/4
**Tech [1]** 17/25
**tell [24]** 15/13 15/17 22/16 22/22 23/12 40/20
45/15 47/24 50/4 63/5 67/20 68/7 74/5 79/5
79/7 79/19 82/15 116/21 134/8 137/1 137/2
143/13 148/13 156/10
**telling [2]** 55/25 89/23
**tells [2]** 145/15 145/16
**ten [1]** 100/22
**tend [1]** 161/8
**tendency [2]** 159/25 160/22
**terabytes [2]** 22/20 33/22
**term [2]** 125/4 125/5 125/11
**terms [6]** 6/21 58/22 84/6 86/22 86/24 95/11
**testified [24]** 9/17 10/25 11/7 12/25 13/9 22/1
22/9 32/1 32/1 32/21 32/23 33/18 33/24 39/8
40/2 40/10 42/17 44/23 99/14 120/22 121/7
130/20 142/17 161/9
**testifies [3]** 45/10 48/19 61/7
**testify [61]**
**testifying [7]** 44/10 44/17 46/9 46/17 80/7
87/23 104/7
**testimonies [1]** 55/15
**testimony [54]** 6/7 9/14 12/16 13/11 16/22
20/3 21/15 21/17 24/16 27/18 30/2 45/4
52/25 55/15 62/17 69/9 72/1 72/5 73/18 78/6
79/1 79/8 86/20 93/4 93/9 94/2 94/3 99/17
99/18 99/21 99/25 100/3 100/9 102/2 102/3
105/18 107/23 108/2 108/3 111/3 111/8
111/10 111/15 118/9 120/25 121/2 121/9
122/16 127/8 142/19 142/21 143/6 143/7
164/3
**testimony's [1]** 63/12
**text [2]** 41/18 151/19
**thank [39]** 20/15 21/4 24/23 39/11 39/12
39/15 54/3 54/4 61/11 62/8 62/10 68/19
69/16 71/21 75/11 75/16 80/12 80/15 80/16
82/18 82/19 90/13 94/8 94/13 95/9 95/16
96/23 98/18 102/11 102/15 109/24 128/11
139/21 141/8 141/19 153/13 162/17 163/1
163/2
**that -- I [1]** 159/22

**that's [147]**
**the -- I [2]** 57/21 154/13
**their's [1]** 148/10
**themselves [2]** 125/23 161/7
**theory [3]** 84/20 130/5 130/17
**there's [52]** 2/13 2/19 2/25 3/14 9/13 10/12
11/9 12/3 12/23 13/19 14/4 18/17 23/6 30/25
49/7 55/19 57/23 76/7 81/12 84/7 85/25 90/5
90/9 99/3 99/5 103/4 108/6 111/8 112/8
112/20 114/15 116/3 117/2 121/16 125/23
127/7 127/9 131/4 131/18 134/24 136/10
137/19 140/22 144/4 145/9 147/19 147/20
156/22 158/8 158/10 161/25 162/2
**thereafter [2]** 25/20 67/20
**therefore [3]** 27/22 90/17 102/13
**therein [1]** 150/11
**they'll [3]** 53/12 68/15 93/15
**they're [44]** 3/14 18/7 18/9 18/12 18/23
43/17 57/24 58/7 60/9 60/9 62/22 65/17
66/18 78/18 93/8 93/16 93/21 97/16 106/2
106/6 106/11 106/13 116/14 120/17 122/11
122/13 125/20 131/7 131/8 131/10 137/22
142/5 145/8 145/8 147/25 148/19 150/2
153/25 156/23 156/24 157/17 159/11 162/4
162/14
**they've [8]** 4/17 28/10 59/11 78/9 98/1
117/8 117/17 149/17
**thing [18]** 3/23 14/20 57/13 62/7 63/17 64/8
67/8 71/5 77/11 79/22 95/21 104/13 106/20
107/1 132/24 136/25 148/2 159/7
**things [28]** 3/6 4/19 18/17 47/19 64/1 64/10
69/15 76/15 90/14 95/3 96/14 97/10 107/15
110/24 121/25 124/16 126/2 147/7 150/1
159/25 160/2 160/7 160/8 160/9 160/16
161/1 161/6 162/2
**think [111]**
**thinking [1]** 64/15
**thinks [1]** 146/24
**third [19]** 129/18 132/1 132/17 133/6 133/7
133/18 133/23 134/2 134/9 136/15 136/18
136/21 137/20 138/7 138/20 139/4 139/17
149/12 150/7
**Thomas [6]** 6/8 50/4 55/3 71/9 76/10 77/14
**thorough [1]** 19/21
**those [67]**
**though [4]** 56/3 111/1 127/17 150/2
**thought [14]** 20/19 35/17 40/3 84/3 85/1 88/7
97/19 98/23 107/10 121/11 140/13 148/6
148/7 153/8
**three [23]** 4/11 10/17 22/20 35/7 45/23 60/7
62/3 91/7 91/25 98/21 98/22 114/24 141/20
147/20 147/25 149/15 153/21 153/21 153/23
153/24 153/25 156/21 156/21
**through [31]** 4/15 4/23 7/1 10/2 19/21 23/11
33/10 36/10 47/4 53/6 53/15 58/13 72/16
76/22 76/24 84/7 91/2 99/3 99/21 102/17
118/22 128/5 129/18 129/19 144/1 147/23
148/8 154/23 155/3 159/15 165/4
**throughout [4]** 14/2 28/10 109/9 154/19
**thus [1]** 105/14
**tie [1]** 145/10
**tied [1]** 131/10
**ties [1]** 10/20
**time-saving [1]** 75/13
**timeframe [3]** 30/10 58/20 121/12
**times [5]** 57/15 98/21 147/10 148/24 159/9
**timing [1]** 64/1
**tiny [1]** 119/17
**title [3]** 126/10 126/11 126/23
**today [12]** 7/12 54/21 56/14 63/10 64/19

**T**

today... [7]  67/17 67/19 68/6 68/9 92/13 96/3 97/5
together [11]  16/15 25/2 54/23 75/23 130/8 130/16 131/11 133/11 133/14 146/10 159/5
Tokyo [1]  41/14
told [11]  9/17 9/19 43/3 72/25 90/14 94/19 105/23 138/12 147/4 148/12 153/8
Tom [6]  75/19 76/1 76/2 76/18 76/19 79/23
tomorrow [22]  34/25 36/9 36/19 45/12 45/13 45/20 64/18 64/20 68/24 82/1 87/7 87/10 87/14 91/4 91/6 91/9 92/13 92/25 96/5 159/5 159/8 159/16
too [5]  15/22 45/19 91/8 99/17 111/1
took [5]  8/8 41/8 55/14 69/12 86/19
top [4]  24/8 106/11 109/16 146/3
topic [1]  40/17
total [2]  91/16 91/25
totally [1]  91/16
touch [4]  37/12 38/2 43/16 51/7
towards [1]  68/15
Tracey [1]  31/25
Tracy [8]  16/18 18/13 32/5 32/6 33/13 34/15 158/5 158/12
tracyjones [1]  17/17
trade [1]  17/19
transaction [1]  44/18
transactions [5]  18/25 40/8 100/18 101/3 122/7
transcript [3]  1/11 93/1 165/11
transcripts [25]  42/24 48/6 83/22 83/24 84/9 84/17 85/7 85/20 85/22 86/5 86/7 86/10 86/11 86/22 87/2 87/5 91/8 92/15 92/16 92/25 93/7 93/12 93/17 94/3 99/22
transmitted [1]  19/9
transmitting [2]  18/19 19/7
travel [2]  13/10 54/23
treat [1]  11/21
treated [3]  21/23 27/23 152/7
treating [1]  98/24
trial [14]  1/11 27/3 35/7 36/2 36/6 37/9 61/24 68/15 85/5 89/16 95/12 122/24 160/19 160/20
trials [1]  84/15
Tribou [82]
Tribou's [2]  55/15 60/12
Tronics [2]  11/19 29/5
troubling [1]  40/18
true [8]  11/13 11/13 50/18 51/4 52/20 56/25 58/17 108/12
trust [3]  121/15 121/16 121/24
trusts [1]  101/16
trustworthiness [1]  30/16
truth [4]  19/8 27/4 47/24 51/23
try [7]  51/7 51/16 92/9 121/15 127/13 159/16 162/22
trying [24]  10/19 11/19 11/21 12/8 12/10 14/13 17/9 41/12 47/3 48/13 48/15 50/20 52/22 55/24 56/11 56/16 56/23 63/5 63/24 80/18 82/23 82/23 83/3 122/4
Tuesday [14]  61/17 61/22 62/5 62/7 63/11 63/13 63/22 63/23 63/24 64/4 64/14 94/25 96/17
turn [1]  153/17
Twenty [2]  140/3 141/20
Twenty-three [1]  141/20
Twenty-two [1]  140/3
twice [2]  38/7 157/7
two [80]

two-day [1]  45/2
two-page [4]  7/9 145/17 157/25 158/18
two-plus [1]  68/14
two-sentence [1]  138/5
tying [1]  118/20
type [1]  66/4
typographical [1]  129/16

**U**

U.S [2]  1/17 151/7
U.S.C [3]  116/2 116/3 116/23
ultimate [1]  77/23
uncertain [1]  63/1
unclear [1]  60/25
under [36]  10/3 10/16 16/13 17/3 17/17 18/3 18/20 18/22 19/22 19/25 21/7 26/3 26/6 26/7 26/20 27/8 28/13 40/7 42/19 42/19 43/14 46/3 59/3 60/10 71/20 74/23 83/22 101/11 120/12 123/1 123/24 127/21 127/21 130/9 143/21 150/9
underline [2]  141/14 141/17
underlines [1]  141/12
understand [39]  8/24 10/20 11/21 12/10 12/12 12/13 14/8 14/19 17/10 32/23 44/2 45/6 47/25 51/12 55/17 59/23 59/25 81/10 82/4 86/6 87/8 89/1 89/4 89/7 89/13 102/4 106/20 107/19 116/7 119/24 133/18 144/5 144/12 156/1 160/14 160/17 160/18 161/4 161/5
understanding [14]  3/21 11/20 30/3 35/14 41/24 56/18 72/21 72/22 89/22 91/23 106/14 114/15 118/20 120/16
understands [2]  82/9 106/21
understood [3]  14/16 80/3 105/17
undertook [2]  72/2 130/19
undisputed [12]  100/14 101/16 101/18 132/7 132/10 132/13 160/1 160/8 160/19 160/24 160/24 161/2
undisputedly [3]  98/21 98/22 98/23
unequivocally [1]  41/13
unexpected [1]  7/13
unfairly [1]  98/24
unfortunate [1]  86/13
Unfortunately [1]  54/20
unique [1]  106/20
UNITED [36]  1/1 1/3 1/13 11/25 12/9 16/7 18/1 69/23 71/6 73/23 74/2 74/13 89/8 95/18 98/5 103/18 105/7 105/9 111/21 113/13 114/21 128/7 132/2 133/9 134/5 136/11 142/6 143/21 143/22 143/23 150/9 151/3 151/13 151/17 155/24 162/19
unless [5]  52/17 52/18 102/25 107/20 108/17
unlikely [7]  47/21 47/21 48/8 59/18 63/2 68/5 81/20
unnecessary [1]  50/25
unrebutted [2]  99/2 99/17
until [10]  24/15 43/9 44/20 53/1 53/2 53/13 61/16 63/11 92/12 94/12
upon [8]  7/18 14/3 46/7 46/13 77/2 105/20 119/24 160/16
urge [1]  100/1
us [12]  6/15 17/7 53/21 54/23 61/19 63/3 83/3 94/19 97/10 98/1 116/21 157/13
used [1]  48/9
using [1]  137/20
usual [1]  111/6
utilize [1]  88/22

**V**

vague [2]  72/21 72/22

varied [1]  10/3
various [8]  3/5 65/4 65/4 100/7 100/8 134/11 134/12 136/10
verbatim [2]  132/25 139/5
verdict [6]  96/15 96/16 155/21 155/22 156/4 156/18
verify [2]  50/16 51/24
version [1]  138/1
versus [17]  16/7 17/25 18/20 56/25 129/1 132/3 133/10 134/5 136/11 143/21 143/22 143/23 150/10 151/3 151/7 151/13 151/18
very [27]  8/18 24/8 40/17 46/24 50/24 71/5 72/8 75/12 93/21 96/23 97/17 103/12 103/16 105/21 108/18 113/16 115/21 118/9 126/4 128/19 130/5 132/14 134/13 138/5 143/24 145/7 158/21
victim [1]  152/11
view [8]  58/18 58/25 59/2 60/17 60/18 62/23 132/12 146/19
viewed [5]  12/5 101/1 101/2 101/10 101/22
viewpoint [2]  42/19 73/19
violate [1]  105/20
violation [9]  118/12 119/13 119/14 119/15 119/25 120/19 122/3 122/20 122/23
violations [3]  101/22 101/24 122/24
visit [1]  13/10
Voir [2]  24/2 164/5
volume [2]  1/10 22/20

**W**

Wachovia [2]  6/14 50/10
wait [2]  43/2 86/5
waiting [8]  21/5 44/25 46/8 46/18 69/5 84/12 159/14 162/25
waive [2]  46/4 81/11
waiver [2]  87/24 105/17
walk [1]  81/3
walled [1]  11/25
want [87]
wanted [15]  7/15 33/20 35/3 41/15 47/8 52/17 54/24 63/8 76/15 83/20 84/2 84/12 95/2 109/10 152/15
wants [15]  6/18 18/17 33/4 33/6 33/8 37/10 40/7 47/7 51/1 52/11 52/14 54/14 61/8 115/6 134/12
Washington [1]  1/18
wasn't [15]  33/16 57/5 57/6 58/11 117/6 117/11 117/12 120/4 120/4 136/19 144/9 144/11 153/9 161/8 161/11
wasting [2]  45/5 68/17
Wave [1]  17/25
ways [2]  116/12 121/8
we'd [10]  23/16 33/7 53/6 54/22 56/14 58/6 129/10 129/10 134/18 159/4
we'll [34]  52/16 53/6 53/7 53/12 61/18 62/4 62/10 67/12 70/13 81/19 81/20 82/13 83/4 83/9 83/10 94/9 94/10 94/10 96/6 97/7 98/7 109/25 120/14 125/2 126/12 129/13 131/20 141/14 153/9 155/5 159/19 162/15 162/21 163/3
we're [59]
we've [25]  2/10 4/15 4/16 10/18 24/4 44/22 57/14 60/6 65/5 69/6 69/13 69/16 97/11 97/25 111/24 132/24 134/24 142/10 143/20 144/21 145/18 145/20 155/12 156/17 156/18
Wednesday [2]  95/1 96/17
weekend [3]  92/14 96/23 163/3
weight [3]  11/4 142/21 143/8
welcome [3]  69/3 95/7 139/22
well [81]

# W

**went [9]**  19/21 23/11 112/15 130/23 131/5 144/1 147/23 148/2 154/23
**weren't [2]**  117/16 131/2
**west [5]**  1/7 1/20 1/25 53/5 53/8
**what's [26]**  9/7 9/12 14/18 22/7 26/6 27/4 27/11 33/2 49/15 56/7 72/22 73/13 74/11 74/18 90/22 126/15 127/22 132/16 137/1 138/18 138/25 143/17 145/16 154/6 158/2 161/18
**what's -- I [1]**  145/16
**whatever [11]**  3/10 5/2 9/16 45/10 48/10 52/15 59/16 59/22 63/10 130/7 131/7
**whatsoever [2]**  108/16 147/21
**whenever [3]**  43/12 59/24 62/1
**where [21]**  19/21 35/15 38/16 38/20 44/22 49/4 50/4 74/23 80/20 80/22 83/1 110/6 129/3 129/6 130/2 131/13 135/22 137/9 150/17 150/23 151/1
**where's [3]**  12/17 12/18 12/20
**whether [64]**
**while [10]**  33/20 43/6 44/25 46/17 46/18 64/20 78/25 90/12 101/22 130/16
**White [5]**  1/21 12/6 35/9 39/14 43/18
**White's [2]**  59/10 130/14
**who's [2]**  31/25 46/3
**whole [3]**  3/23 26/5 128/24
**wholesale [1]**  85/3
**whose [1]**  31/19
**why [44]**  7/15 14/22 15/17 16/21 18/17 27/9 40/20 40/24 41/20 42/14 50/18 50/19 51/6 51/20 51/24 53/24 55/2 55/22 66/16 69/6 80/1 81/16 83/7 84/19 85/13 97/1 106/14 106/17 113/20 116/3 116/7 119/6 119/25 122/1 124/22 126/2 133/9 142/14 144/3 144/8 147/22 149/12 157/23 162/21
**wife [5]**  55/5 57/2 57/3 132/8 132/10
**willful [2]**  128/25 140/24
**willfully [2]**  123/8 140/24
**willing [3]**  57/24 58/7 58/18
**wire [8]**  116/10 118/3 129/21 144/16 145/1 145/5 149/2 149/10
**wiser [1]**  68/20
**wish [1]**  89/2
**wished [2]**  150/19 150/25
**wishes [1]**  3/11
**withdraw [4]**  131/20 141/3 151/10 151/16
**withdrew [1]**  35/13
**within [5]**  40/9 121/12 146/21 152/5 162/12
**without [10]**  13/18 16/22 41/2 49/13 54/17 56/7 56/24 66/10 71/15 157/11
**witness [34]**  4/14 13/18 21/11 23/22 25/4 35/2 35/8 38/10 38/11 38/12 38/13 38/14 43/13 43/19 45/20 48/24 59/8 59/9 59/11 59/15 68/2 75/10 84/20 84/23 88/10 98/20 107/21 108/14 108/16 108/17 108/17 142/21 143/7 143/14
**witness' [2]**  86/20 108/11
**witnesses [24]**  36/8 43/8 44/5 45/2 46/19 48/9 58/23 62/2 62/23 81/13 83/23 84/2 84/7 84/16 85/1 85/3 86/15 87/13 87/20 88/2 99/19 120/22 142/13 143/18
**witnesses' [1]**  99/18
**woman [1]**  55/9
**won't [7]**  3/15 4/18 64/21 64/23 64/23 68/17 123/5
**wondering [2]**  56/17 69/6
**Woodbury [46]**  18/9 32/8 33/13 34/4 34/13 34/23 36/16 40/2 40/10 42/15 42/17 43/1

43/3 43/12 44/8 44/16 44/17 44/20 45/1 45/8 45/12 45/18 46/3 46/25 47/1 47/3 47/4 47/9 47/13 47/15 47/16 47/22 48/12 49/16 50/24 51/14 58/24 60/11 60/17 61/3 67/2 70/4 118/10 119/21 121/3 158/5
**Woodbury's [1]**  47/6
**worded [2]**  123/25 151/19
**words [2]**  117/6 133/3
**work [5]**  13/23 61/18 64/11 96/1 151/9
**worked [5]**  12/22 13/21 32/20 133/11 133/13
**working [6]**  12/15 12/18 13/8 68/15 69/16 94/15
**world [3]**  61/16 150/15 153/4
**wouldn't [5]**  21/9 23/4 115/18 123/15 124/23
**wrap [1]**  53/11
**writing [2]**  41/3 139/11
**written [6]**  3/3 56/19 56/25 66/14 66/17 111/1
**wrong [3]**  4/3 26/11 35/17
**wrote [5]**  37/20 40/12 42/10 42/11 55/5
**Wyman [1]**  18/21

# Y

**yeah [6]**  6/2 20/25 52/4 65/11 123/25 159/1
**year [6]**  11/1 43/16 79/11 79/12 116/13 151/9
**yearly [1]**  73/6
**years [5]**  28/10 29/16 30/1 30/16 98/23
**yes [99]**
**yesterday [14]**  4/20 6/8 6/13 13/1 19/2 21/15 22/2 26/6 26/12 43/22 59/10 69/19 73/18 98/1
**yet [6]**  6/11 7/14 84/10 84/11 86/1 161/11
**York [1]**  1/18
**you'd [2]**  35/3 58/12
**you'll [8]**  69/14 71/14 79/19 92/13 93/1 96/9 96/14 109/5
**you're [66]**
**you've [21]**  5/8 22/1 22/9 29/15 36/2 53/1 62/12 62/24 72/11 73/15 74/15 88/15 88/15 89/15 89/23 147/3 149/9 149/23 150/2 157/17 161/9
**Yours [1]**  85/11
**yourself [10]**  28/1 86/24 87/21 89/22 106/19 120/11 134/3 135/23 136/17 157/17

# Z

**zone [1]**  53/5