# EXHIBIT 10



# INVOICE

| FROM: | **THE SILVE GROUP, INC**<br>29 HATHAWAY<br>IRVINE, CA 92620 | BILL TO: | **SIGNALIFE, INC.**<br>531 S MAIN ST. STE 301<br>GREENVILLE, SC 29601<br>(864) 233-2300 |
|---|---|---|---|

| DATE | DESCRIPTION OF SERVICES | | AMOUNT |
|---|---|---|---|
| 1/18/07 | INTERNATIONAL DISTRIBUTION INITIATIVE | FEE | 126,853 |
| 1/31/07 | INTERNATIONAL DISTRIBUTION INITIATIVE | FEE | 100,000 |
| 2/12/07 | INTERNATIONAL DISTRIBUTION INITIATIVE | FEE | 190,000 |
| 2/13/07 | INTERNATIONAL DISTRIBUTION INITIATIVE | FEE | 40,000 |
| 2/14/07 | INTERNATIONAL DISTRIBUTION INITIATIVE | FEE | 60,000 |
| 2/22/07 | INTERNATIONAL DISTRIBUTION INITIATIVE | FEE | 55,000 |
| 2/22/07 | INTERNATIONAL DISTRIBUTION INITIATIVE | FEE | 50,000 |
| 2/26/07 | INTERNATIONAL DISTRIBUTION INITIATIVE | FEE | 30,000 |
| 2/28/07 | INTERNATIONAL DISTRIBUTION INITIATIVE | FEE | 80,000 |
| 3/02/07 | INTERNATIONAL DISTRIBUTION INITIATIVE | FEE | 25,000 |
| 3/06/07 | INTERNATIONAL DISTRIBUTION INITIATIVE | FEE | 20,000 |
| 3/06/07 | INTERNATIONAL DISTRIBUTION INITIATIVE | FEE | 65,000 |
| 3/09/07 | INTERNATIONAL DISTRIBUTION INITIATIVE | FEE | 30,000 |
| 3/14/07 | INTERNATIONAL DISTRIBUTION INITIATIVE | FEE | 60,000 |
| 3/20/07 | INTERNATIONAL DISTRIBUTION INITIATIVE | FEE | 75,000 |

TOTAL     1,006,853

*THANK YOU FOR YOUR BUSINESS*



GOVERNMENT
EXHIBIT
49
CARDEIS 800-783-0399

F.O.I.A. Confidential Treatment Requested on Behalf
of Pamela Bunes by Greenberg Traurig LLP, 300 W
6th St., Ste. 2050, Austin, Texas 78701, (512) 320-7200

Bunes 025083

Signalife, Inc. | Clear Data. Trusted Results.



Signalife, Inc.
4705 Laurel Canyon Bl. – Suite 203
Studio City, CA 91607
T 864.233.2300
F 864.233.2100
http://www.signalife.com
info@signalife.com

## PRESS RELEASE
Thursday September 20, 9:03 am ET

### Signalife Achieves $1.98 Million Sales Orders Thus Far

**LOS ANGELES, Sep. 20 /PRNewswire-FirstCall/** -- Signalife announced today that it has received orders for the sale of nearly $2,000,000 (two million dollars) of Fidelity 100 units thus far in its initial sales push being led by new management. Signalife, which anticipates additional sales orders resulting from its current efforts, shall announce such sales as and when they are completed.

**About Signalife**
Signalife, Inc. is a life sciences company focused on the monitoring and detection of disease through continuous biomedical signal monitoring. Signalife uses its patented signal technology to design and develop medical devices that simplify and reduce the costs of diagnostic testing and patient monitoring in an ambulatory setting.

Signalife is publicly traded on the American Stock Exchange under the symbol SGN. The website for the company is http://www.Signalife.com. Clear Data. Trusted Results.

**Caution Regarding Forward-Looking Statements**
Statements in this release that are not strictly historical are "forward- looking" statements. Forward-looking statements involve known and unknown risks, which may cause Signalife's actual results in the future to differ materially from expected results. Factors which could cause or contribute to such differences include, but are not limited to, failure to complete the development and introduction of heart monitoring and other biomedical devices incorporating Signalife's technology, failure to obtain federal or state regulatory approvals governing heart monitoring and other biomedical devices incorporating Signalife's technology, inability to obtain physician, patient or insurance acceptance of for heart monitoring and other biomedical incorporating Signalife's technology, and the unavailability of financing to complete management's plans and objectives, including the development of heart monitoring and other biomedical incorporating Signalife's technology. These risks are qualified in their entirety by cautionary language and risk factors set forth and to be further described in Signalife's filings with the Securities and Exchange Commission.



GOVERNMENT
EXHIBIT
69
CARDELS 800-783-0319

```
From:               Kevin Pickard
Sent:               Wednesday, November 14, 2007 08:13 PM
To:                 lowell@harmison.org; lharmiso@concentric.net; Mitchell Stein
CC:                 'Norma Provencio'; 'Tracy Jones'; nprovencio@provencioadvisory.com
Subject:            Cash balance
```

I wanted to give everyone an update on our cash balance.  At the end of the week our cash balance will drop below $600,000.  See below.


Current cash balance        857,318

Checks to be paid this week     (93,470)

Fund AFL Loan          (75,000)

M & C Electric wire        (90,000)

        598,848


Kevin Pickard, CPA
Pickard & Green, CPAs
28382 Constellation Road
Valencia, CA  91355
(661) 294-8300 (Phone)
(661) 257-1290 (Fax)
(661) 373-8383 (Cell)
kevin@pgcpas.com

Any U.S. tax advice contained in the body of this e-mail was not intended or written to be used, and cannot be used, by the recipient for the purpose of avoiding penalties that may be imposed under the Internal Revenue Code or applicable state or local tax law provisions.

The information contained in this message may be privileged and confidential and protected from disclosure.  If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer.


No virus found in this incoming message.
Checked by AVG Free Edition.
Version: 7.5.503 / Virus Database: 269.15.31/1130 - Release Date: 11/14/2007 9:27 AM



GOVERNMENT
EXHIBIT
84

Confidential Treatment Requested by Haynsworth Sinkler Boyd, P.A.          HARMISON_00205846

10KSB 1 signalifeform10ksbforfiscal2.htm 04/03/2008">

# SECURITIES AND EXCHANGE COMMISSION
## WASHINGTON, D.C. 20549

## FORM 10–KSB

☒  Annual Report Under Section 13 or 15(d) of the Securities Exchange Act of 1934
For the fiscal year ended December 31, 2007

☐  Transition Report Under Section 13 or 15(d) of the Securities Exchange Act of 1934
For the transition period from _____ to _____
Commission file number: _____

## SIGNALIFE, INC.
(Name of small business issuer in its charter)

| Delaware | 87-0441351 |
|---|---|
| (State or other jurisdiction of incorporation or organization) | (I.R.S. Employer Identification No.) |

531 South Main Street, Suite 301
Greenville, South Carolina 29601
(864) 233-2300
(Address of principal executive offices) (Zip code)
(Issuer's telephone number)

Securities registered pursuant to Section 12(b) of the Exchange Act:

| Common Stock, Par Value $0.001 | American Stock Exchange |
|---|---|
| (Title of each class) | (Name of each exchange on which registered) |

Securities registered pursuant to Section 12(g) of the Exchange Act: None

Check whether the issuer is not required to file reports pursuant to Section 13 or 15(g) of the Exchange Act:  ☐

Check whether the issuer (1) filed all reports required to be filed by Section 13 or 15(d) of the Exchange Act during the past 12 months (or for such shorter period that the registrant was required to file such reports) and (2) has been subject to such filing requirements for the past 90 days:  Yes  ☒  No  ☐

Check if there is no disclosure of delinquent filers pursuant to Item 405 of Regulation S-B is not contained in this form, and no disclosure will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-KSB or any amendment to this Form 10-KSB:  ☐

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act):  ☐

The issuer's revenues for its most recent fiscal year (fiscal 2007) were $0.

GOVERNMENT
EXHIBIT
93
CARDELS 800-783-8398

SECURITIES AND EXCHANGE COMMISSION

SIGNALIFE, INC.
Balance Sheet
December 31, 2007

### ASSETS

| | | |
|---|---|---:|
| **Current assets:** | | |
| Cash and cash equivalents | $ | 154,290 |
| Note receivable | | 75,000 |
| Inventory | | 163,856 |
| Prepaid sales commissions | | 256,000 |
| Prepaid expenses and other current assets | | 22,757 |
| Total current assets | | 671,903 |
| Advance on sales commissions, net of current portion. | | 2,592,251 |
| Property and equipment, net of accumulated depreciation of $359,045. | | 198,976 |
| Intangible – patents, including related party amounts, net of accumulated amortization of $55,731 | | 585,806 |
| **TOTAL ASSETS** | $ | 4,048,936 |

### LIABILITIES AND STOCKHOLDERS' EQUITY

| | | |
|---|---|---:|
| **Current liabilities:** | | |
| Accounts payable and accrued expenses | $ | 685,504 |
| Due to former director | | 200,000 |
| Line of credit | | 209,285 |
| Total current liabilities | | 1,094,789 |
| Commitments and contingencies | | — |
| **Stockholders' equity:** | | |
| Series 'A' convertible preferred stock, $.001 par value; 10,000,000 shares authorized; 14,574 shares issued and outstanding | | 14 |
| Series 'A' convertible preferred stock to be issued for accrued dividends, 41,861 shares | | 42 |
| Common stock, $0.001 par value; 100,000,000 shares authorized; 53,807,524 shares issued and outstanding | | 53,808 |
| Additional paid-in capital | | 51,592,562 |
| Accumulated deficit | | (48,692,279) |
| Total stockholders' equity | | 2,954,147 |
| **TOTAL LIABILITIES AND STOCKHOLDERS' EQUITY** | $ | 4,048,936 |

The accompanying notes are an integral part of these financial statements

2



Signalife, Inc.

INCORPORATED UNDER THE LAWS OF THE STATE OF DELAWARE

NOT VALID UNLESS COUNTERSIGNED BY TRANSFER AGENT

AUTHORIZED STOCK 50,000,000 COMMON SHARES
$.001 PAR VALUE

CUSIP 82869P 10 4

*247,000*

5798

This Certifies that EVIE MUSCILLO

registered holder of TWO HUNDRED FORTY SEVEN THOUSAND

Signalife, Inc.

transferable on the books of the Corporation by the holder hereof in
person or by attorney upon surrender of this Certificate properly endorsed.

In Witness Whereof, the said Corporation has caused this Certificate to be signed
by its duly authorized officers and its Corporate Seal to be hereunto affixed.

Dated  FEBRUARY 12, 2008

President

COUNTERSIGNED AND REGISTERED

BY

AUTHORIZED SIGNATURE

Secretary

Transfer Agent and Register:
Standard Registrar & Transfer Co.
12528 South 1840 East
Draper, UT 84020

GOVERNMENT
EXHIBIT
108

SC00035393

**To:**      lowell@harmison.org[lowell@harmison.org];
**Subject:**    RE: Important Action
**Sent:**       Wed 3/26/2008 1:57:44 PM
**From:**      Tracy Jones

Hi.

The wire is in.  The amount is $175,250.00.  I will get the $180K wire to MC Electrical out this morning.  After the invoices we paid, the incoming wire, the outgoing wire of today and the check to David Walker, my records show that we will have a cash balance of about $82K.  We will have about $30K in payroll taxes, etc. in a few days which will leave us a cash balance of about $50-$52K.  I will also have to make another credit card payment shortly (once you approve) to keep some credit open for your travel needs and on top of that, I will need to do another check run for payables next week if approved.  I will check with Kevin to verify that my total's are accurate and that he did not send out anything I am not aware of.

Working on the stock certs.  Will overnight to you as requested, along with David's check.

T.

---

**From:** Dr. Lowell Harmison [mailto:lharmiso@concentric.net]
**Sent:** Wednesday, March 26, 2008 7:30 AM
**To:** tjones@signalife.com
**Cc:** mitchell@dobieco.org
**Subject:** Important Action

Tracy;  Please make wire transfer ASAP, Check in bound wire transfer this morning , It is to be in early today from YA( 185K minus their fees)

    wire transfer to: mc electrical services ; amount $180,000.

           Routing # 067006432

           account number 101 017 0145541

           Wachovia

  Per Mitch's instruction.

  Dr andH

GOVERNMENT
EXHIBIT
CARMELS 800-783-0399
_132_

No virus found in this outgoing message.

**Confidential Treatment Requested**
**by Haynsworth Sinkler Boyd, P.A.**

HARMISON_00014724

Checked by AVG.
Version: 7.5.519 / Virus Database: 269.22.0/1342 - Release Date: 3/25/2008 10:26 AM


No virus found in this incoming message.
Checked by AVG.
Version: 7.5.519 / Virus Database: 269.22.0/1342 - Release Date: 3/25/2008 10:26 AM

Confidential Treatment Requested
by Haynsworth Sinkler Boyd, P.A.

HARMISON_00014725

10-Q 1 signalife10qfor33120088.htm 05/15/2008">

# SECURITIES AND EXCHANGE COMMISSION
## WASHINGTON, D.C. 20549

---

# FORM 10–Q

---

(Mark One)

☒      Quarterly Report Under Section 13 Or 15(d) Of The Securities Exchange Act Of 1934
     For The Quarterly Period Ended March 31, 2008

☐      Transition Report Under Section 13 Or 15(d) Of The Securities Exchange Act Of 1934
     For The Transition Period From _____ To _____
     Commission File No. _____

# SIGNALIFE, INC.

**(Exact name of small business issuer as specified in its charter)**

| **Delaware** | **87-0441351** |
|---|---|
| (State or other jurisdiction of incorporation or organization) | (I.R.S. Employer Identification No.) |

**531 South Main Street, Suite 301**
**Greenville, South Carolina 29601**
**(864) 233-2300**

(Address Of Principal Executive Offices)
(Issuer's Telephone Number)

Check whether the issuer (1) filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days: YES ☒ NO ☐

Indicate by check mark whether the registrant is a large accelerated file, an accelerated filer, a non-accelerated file, or a smaller reporting company.

     Large Accelerated Filer: ☐      Accelerated Filer: ☐
     Non-Accelerated Filer: ☐      Smaller Reporting Company: ☒
     (Do not check if a smaller reporting company)

Indicate by check mark whether the registrant is a shell company (as defined in rule 12b-2 of the Securities Exchange Act of 1934): YES ☐ NO ☒

---

GOVERNMENT
EXHIBIT

136

SECURITIES AND EXCHANGE COMMISSION

**SIGNALIFE, INC.**

Balance Sheets

| | March 31, 2008 (Unaudited) | December 31, 2007 |
|---|---|---|
| **ASSETS** | | |
| Current assets: | | |
| Cash and cash equivalents | $ 134,759 | $ 154,290 |
| Note receivable | 75,000 | 75,000 |
| Inventory | 144,426 | 163,856 |
| Prepaid sales commissions | 256,000 | 256,000 |
| Prepaid expenses and other current assets | 46,940 | 22,757 |
| Total current assets | 657,125 | 671,903 |
| Advance on sales commissions, net of current portion. | 2,592,251 | 2,592,251 |
| Property and equipment, net of accumulated depreciation of $384,443 and $359,045. | 236,414 | 198,976 |
| Investment in leased property | 17,500 | — |
| Intangible – patents, including related party amounts, net of accumulated amortization of $58,517 and $55,731 | 583,020 | 585,806 |
| TOTAL ASSETS | $ 4,086,310 | $ 4,048,936 |
| **LIABILITIES AND STOCKHOLDERS' EQUITY** | | |
| Current liabilities: | | |
| Accounts payable and accrued expenses | $ 1,170,879 | $ 685,504 |
| Due to former director | 200,000 | 200,000 |
| Line of credit | 212,947 | 209,285 |
| Total current liabilities | $ 1,583,826 | $ 1,094,789 |
| Commitments and contingencies | $ — | $ — |
| Stockholders' equity: | | |
| Series 'A' convertible preferred stock, $.001 par value; 10,000,000 shares authorized; 14,574 shares issued and outstanding | $ 14 | 14 |
| Series 'A' convertible preferred stock to be issued for accrued dividends, 42,979 and 41,861 shares, respectively | 43 | 42 |
| Common stock, $0.001 par value; 100,000,000 shares authorized, 57,608,919 and 53,807,524 shares issued and outstanding, respectively | 57,609 | 53,808 |
| Additional paid-in capital | 54,264,752 | 51,592,562 |
| Accumulated deficit | (51,819,934) | (48,692,279) |
| Total stockholders' equity | 2,502,484 | 2,954,147 |
| TOTAL LIABILITIES AND STOCKHOLDERS' EQUITY | $ 4,086,310 | $ 4,048,936 |

The accompanying notes are an integral part of these financial statements

1

| | |
|---|---|
| **From:** | Tracy Jones |
| **Sent:** | Friday, April 04, 2008 05:01 PM |
| **To:** | lowell@lharmiso.cnc.net; 'Mitchell Stein' |
| **Subject:** | WIRE COMPLETED |

Just checked again and the wire is now COMPLETE.


-----Original Message-----
From: lowell@lharmiso.cnc.net [mailto:lowell@lharmiso.cnc.net]
Sent: Friday, April 04, 2008 12:52 PM
To: Tracy Jones
Subject: Re: IMPORTANT - REGARDING WIRE
Tracey, I authorized the preparation of the invoice which will be replaced
with the actual invoice when I return to my hotel.  Good work.  Lowell.
Sent via BlackBerry by AT&T
-----Original Message-----
From: "Tracy Jones" <tjones@signalife.com>
Date: Fri, 4 Apr 2008 12:35:00
To:<lowell@harmison.org>,"'Mitchell Stein'" <mitchell@dobieco.org>
Subject: RE: IMPORTANT - REGARDING WIRE



I did the wire for $200,000.00 as that is our daily limit.  As mentioned to
Mitch when he answered your phone, I will do the other $28,000.00 tomorrow
and they should receive it Monday.  I tried to do a separate $28,000.00 as
well but the system would not allow.
Also, I have made the M & C invoice as Mitch instructed me to do and I will
submit to Kevin.
The wire is still processing but should be completed shortly.
Tracy


-----Original Message-----
From: Tracy Jones [mailto:tjones@signalife.com]
Sent: Friday, April 04, 2008 11:56 AM
To: 'lowell@lharmiso.cnc.net'
Subject: RE: IMPORTANT - REGARDING WIRE
You got it.  I am already working on it.  Will update you with progress.
T.


-----Original Message-----
From: lowell@lharmiso.cnc.net [mailto:lowell@lharmiso.cnc.net]
Sent: Friday, April 04, 2008 11:52 AM
To: Tracy Jones
Subject: Re: IMPORTANT - REGARDING WIRE
I will contact M C regarding the prior one but please get this one done as
it is important to the fidelity 1000.
Sent via BlackBerry by AT&T
-----Original Message-----
From: "Tracy Jones" <tjones@signalife.com>
Date: Fri, 4 Apr 2008 11:33:03
To:<lowell@harmison.org>
Subject: IMPORTANT - REGARDING WIRE


Dr. H.



GOVERNMENT
EXHIBIT
137
CANDELS 800-783-0399

HARMISON_00000448

Confidential Treatment Requested by Haynsworth Sinkler Boyd, P.A.

I spoke with Kevin and he agrees that we should should have enough $ for perform the $228,000 wire transfer to M&C Electrical wire.  He stated that one of the weaknesses noted regarding SOX that we need to take corrective action with immediately is lack of support for some transactions.  He wants me to have an invoice in my hands before I do the wire transfer to insure we are complying.  He also still needs one for the last wire we sent to M&C Electrical in the amount of $180,000.  Can this be sent to me quickly so I can get the wire out within the next couple of hours?
T.

No virus found in this incoming message.
Checked by AVG.
Version: 7.5.519 / Virus Database: 269.22.6/1360 - Release Date: 4/4/2008 6:02 PM

Confidential Treatment Requested by Haynsworth Sinkler Boyd, P.A.

HARMISON_00000449

**From:** Callcentric [mailto:supportdept1@callcentric.com]
**Sent:** Wednesday, June 11, 2008 12:47 AM
**To:** John Woodbury
**Subject:** Callcentric - IT Healthcare Order Cancellation

Dear John Woodbury,

You have received a new fax from 15618832479 which is attached.


To contact support please visit this page: http://www.callcentric.com/contact

Callcentric support
www.callcentric.com



JMW_0000271



**JT HEATHCARE**

**NETANYA ISRAEL**

June 11, 2008

Mr. John Woodbury

(818) 337-2602/Fax

**Dear Mr. Woodbury,**

**It is obvious that Signalife is going to be unable to place our order.**

**We have returned the items, and are forced to go on with another plan. We are sorry about the delays by you, and wish we would have been able to have our calls returned regarding the hospital marketing program.**

**Very truly yours**

**Yossie H. Keret**

IT HEALTHCARE LOADING 812-491RT25

SECURITIES AND EXCHANGE COMMISSION                                          Page 1 of 45

10-Q 1 signalife10qfor63020087fored.htm

## SECURITIES AND EXCHANGE COMMISSION
### WASHINGTON, D.C. 20549

_____

## FORM 10–Q

_____

(Mark One)

- ☒  Quarterly Report Under Section 13 Or 15(d) Of The Securities Exchange Act Of 1934
  For The Quarterly Period Ended June 30, 2008
- ☐  Transition Report Under Section 13 Or 15(d) Of The Securities Exchange Act Of 1934
  For The Transition Period From _____ To _____ .
  Commission File No. _____

# SIGNALIFE, INC.

(Exact name of small business issuer as specified in its charter)

**Delaware**                                                            **87-0441351**

(State or other jurisdiction of                                    (I.R.S. Employer
incorporation or organization)                                   Identification No.)

**4705 Laurel Canyon Blvd., Suite 203**
**Studio City, California 91607**
**(864) 233-2300**

(Address Of Principal Executive Offices)
(Issuer's Telephone Number)

Check whether the issuer (1) filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days:   YES ☒  NO ☐

Indicate by check mark whether the registrant is a large accelerated file, an accelerated filer, a non-accelerated file, or a smaller reporting company.

Large Accelerated Filer: ☐              Accelerated Filer: ☐
Non-Accelerated Filer: ☐              Smaller Reporting Company: ☒
(Do not check if a smaller reporting company)

Indicate by check mark whether the registrant is a shell company (as defined in rule 12b-2 of the Securities Exchange Act of 1934):   YES ☐  NO ☒

_____

GOVERNMENT
EXHIBIT
159
CARDELL 800-783-0389

SECURITIES AND EXCHANGE COMMISSION

SIGNALIFE, INC.
Notes To Interim Financial Statements
For The Six-month Periods Ended June 30, 2008 And 2007
(Unaudited)
(Continued)

### 6. PATENTS AND TECHNOLOGY, INCLUDING RELATED PARTY AMOUNTS

On September 19, 2002, we acquired certain know how, trade secrets and other proprietary intellectual property rights relating to the development of a human biomedical signal amplification equipment and technology from ARC Finance Group, in exchange for 23,400,000 common shares (7,800,000 shares pre-split). As a result of this transaction, ARC Finance acquired approximately 85% of the company's outstanding shares at that time. We valued the technology and the common stock issued at $78,023, reflecting ARC Finance Group's historical cost basis for the patents.

When we acquired the patent, we inherited a licensing agreement and therefore consider the patent to have been placed in service. We are amortizing our initial patent, valued at $78,023, over an estimated useful life of 7 years. The aggregate amortization expense will be approximately $22,000 over the next two years, with an expense of approximately $11,000 annually. The remaining balance in the intangible account consists of additional costs relating to our amplification technology, principally patent application costs. We have one patent and five patent applications concerning our initial ambulatory patient modules and overall heart monitor systems. We have recorded the value of our original patent and the additional costs relating to our amplification technology and overall heart monitor systems at the historical cost of $641,537, with accumulated amortization of $61,304 as of June 30, 2008. Amortization expense amounted to $5,573 for each of the six-month periods ended June 30, 2008 and 2007.

### 7. CONTINGENT SETTLEMENT PAYABLE

In conjunction with our engagement of Dr. Budimir Drakulic we reached an agreement-in-principle with Dr. Drakulic to offer to sell common shares to certain individuals in order to protect our rights to the Signal Technologies. As part of that agreement, we agreed that should we raise more than $2 million in certain offerings, we would pay 4% of the proceeds of those offerings greater than $2 million to those individuals up to a maximum amount of $480,350. During 2004, we reached settlements with a number of these individuals and the remaining liability related to the agreement as of June 30, 2008 is $21,113, which is included in accounts payable and accrued expenses.

### 8. PENDING PURCHASE ORDERS

On September 14, 2007, Signalife received a purchase order from a hospital/medical group purchasing organization for a finance lease for *Fidelity 100* units. The gross proceeds to Signalife, (assuming exercise of the right to purchase the units at their residual value of $180,000), are expected to be $1,980,000. Under the terms of the purchase order, the hospital/medical group paid a $50,000 deposit (included in accounts payable), and will prospectively pay $1,750,000 in 24 monthly lease payments (amortized on a per unit basis) commencing upon delivery of the units,

15

SECURITIES AND EXCHANGE COMMISSION                                    Page 22 of 45

SIGNALIFE, INC.
Notes To Interim Financial Statements
For The Six-month Periods Ended June 30, 2008 And 2007
(Unaudited)
(Continued)

plus an additional $180,000 to purchase the units at the end of the lease (amortized on a per unit basis subject to certain minimums). Before shipping under this order, Signalife is requiring confirmation of the ability and intention of the lessee to pay. Signalife has not recognized any revenues from this purchase order to date.

On September 24, 2007 and October 4, 2007, Signalife received purchase orders from a second hospital/medical group purchasing organization for a finance lease for *Fidelity 100* units. The gross proceeds to Signalife under the purchase orders (assuming exercise of the right to purchase the units at their residual value) were expected to be $3,300,000 and $564,000, respectively. Signalife commenced shipments on the September 24, 2007 order, however, they were returned by the lessee on the basis that too much time had passed since the purchase order was given. Signalife is currently evaluating this matter and recourse available to the company. Signalife has not recognized any revenues from these purchase orders to date.

## 9. PREFERRED STOCK

Our series 'A' preferred shares carry a liquidation value equal to $3 per share, are senior to all other shares of capital stock now existing or hereinafter created by our company as to dividend and liquidation rights, and have voting rights as if converted into common shares.

Our series 'A' preferred shares are required to pay dividends of 8% annually to be paid quarterly either in cash or in the form of additional preferred shares at the discretion of Signalife. Any series 'A' preferred shares issued as a dividend will be valued at $3 per share.

During the six-month periods ended June 30, 2008 and 2007, we accrued dividends on our series 'A' preferred shares in the amount of $6,779 and $11,209, respectively.

To date we have elected to pay these dividends in kind through the issuance of additional series 'A' preferred shares. During the six-month period ended June 30, 2008, we committed to issue a total of 2,259 series 'A' preferred shares, valued at $6,779 in satisfaction of the accrued dividends. During the six-month period ended June 30, 2007, we committed to issue a total of 3,737 series 'A' preferred shares valued at $11,209 in satisfaction of the accrued dividends.

Each series 'A' preferred shareholder has the option at any time to convert all or any portion of his or her shares into common shares on a one-for-one basis. We also have the right to force conversion of the series 'A' preferred shares into common shares in the event (1) we list our common shares on a national exchange (NASDAQ, AMEX or NYSE); (2) the common shares underlying the preferred shares are covered by an effective registration statement; (3) the closing bid price for common shares is at least $7.50 for 30 consecutive trading days; and (4) the average trading volume of the common shares during such 30 consecutive trading day period equals or exceeds 30,000 shares per day.

16

## UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## GREENVILLE DIVISION

| | |
|---|---|
| ROBERT A. LATHAM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>BILL MATTHEWS, PAMELA M. BUNES, ROBERT C. SCHERNE, KEVIN F. PICKARD, LOWELL T. HARMISON, MARVIN H. FINK, and SIGNALIFE, INC.,<br><br>Defendants. | C/A No. 6:08-cv-2995-RBH |
| DARRYL K. ROTH, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>WILLIAM R. MATTHEWS, PAMELA M. BUNES, ROBERT C. SCHERNE, KEVIN F. PICKARD, LOWELL T. HARMISON, MARVIN H. FINK, and SIGNALIFE, INC.,<br><br>Defendants | C/A No. 6:08-cv-3183-RBH |

MARTIN B. CARTER, under penalty of perjury, states as follows:

1.      I have personal knowledge of the following facts. I am an officer of Signalife, Inc. ("*Signalife*"). I have been employed by Signalife as an engineer and technology advisor since 2005. I was hired initially by Pamela Bunes when she was chief executive officer of Signalife and, after her departure in 2007, I was kept as an engineer and assistant chief technology officer by the new CEO, Lowell Harmison. After Mr. Harmison's departure in 2008, I was kept on as an engineer and technology advisor by Signalife's new CEOs, Rowland Perkins and Willie Gault. I have been an owner of an



GOVERNMENT EXHIBIT 221

CARDES DOJ-783-0399

DOJ-CARTER_000768

electronics company for many years, and I am extremely adept at micro-technology and engineering. I am fully familiar with the technology of the Fidelity 100 heart monitoring device.

2.    In 2007 and 2008, I was in frequent contact with Lowell Harmison. Among other duties, Dr. Harmison asked me to test Signalife's products, including its Fidelity 100 heart monitoring device. Dr. Harmison stated he could not understand why the device was operable in certain situations, such as when it was used by the charity Athletes for Life to test people, but not in other situations, such as certain sales demonstrations and after it was shipped to customers. Dr. Harmison stated that he suspected some sort of foul play by Budimir Drakulic, my predecessor as chief technology officer of Signalife.

3.    In recent weeks, I opened a Fidelity 100 heart monitor that was one of several that had been returned by a customer due to inoperability. The opening of such a device is an extremely time-consuming and exacting task, as the device is complex and can be damaged if it is opened by persons not familiar with the codes. Furthermore, other technological experts who are under contract with Signalife also opened the device. When we opened heart monitors that had been shipped to customers in 2006 we detected indications that the device had been tampered to render it inoperable or inferior to the identically engineered device that had been approved by the FDA.

4.    In December, 2009, I attended a demonstration in Fort Lauderdale, Florida, of the Fidelity 100 at the office of a potential customer, Advantage Medical. I was accompanied by Willie Gault, the co-CEO of Signalife and the head of Athletes for Life, and by Budimir Drakulic. Dr. Drakulic performed the demonstration of the Fidelity 100 for the benefit of executives from Advantage Medical. I have personal knowledge that that heart monitor was operable before the demonstration. When Dr. Drakulic performed the demonstration, that device did not operate properly. I noticed that Dr. Drakulic turned his back on Mr. Gault and me and attempted to conceal the fact that he

2

was using a cable that would not transmit a clear signal from the patient to the monitor. I discussed this later with Mr. Gault, and he stated that he had made the same observation.

5.      I believe that Dr. Drakulic intentionally used the wrong cable in the demonstration for Advantage Medical in order to sabotage the sale of the device.

6.      Mr. Gault has used the device on behalf of Athletes for Life and has saved the lives of patients who recently had tested negative for heart disease using the heart monitoring devices of other manufacturers. Upon testing such patients using the Fidelity 100, Mr. Gault detected   heart disease, a fact that was later verified by the patients' physicians, notwithstanding their recent negative results based on tests with other heart monitors. Mr. Gault is familiar with the operation of the device. He stated that he, too, believes that Dr. Drakulic used the wrong cables intentionally in order to sabotage sales.

7.      I believe that the Fidelity 100 heart monitoring device is operable and useful in the detection of heart disease and that it can perform successfully in the detection of heart disease in situations where no other heart monitoring device can perform successfully. I believe that all problems regarding sales of the device are attributable to deliberate sabotage by Dr. Drakulic.

8.      I am prepared to demonstrate to the court the portions of the Fidelity 100 that have been trade secrets since 2004 and that Dr. Drakulic is not aware of and the portions of the Fidelity 100 that were tampered by someone, whom we believe to be Dr. Drakulic.

9.      All devices that were sold by Signalife were shipped from Signalife's manufacturing facility, Ventrex, a medical device company located in Ventura, California. The pre-packaging of all such devices was under the supervision and hands-on responsibility of Dr. Drakulic. I conclude from my observations at Advantage Medical and from the returns of the devices shipped from Ventrex that Dr. Drakulic pre-packaged improper cables with the devices that we shipped and that he otherwise sabotaged the

3

DOJ-CARTER_000773

product so that the product would be returned by our customers and so that sales would not be recorded.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 18 day of October, 2010.

_____

MARTIN B. CARTER

4

DOJ-CARTER_000774

GOVERNMENT
EXHIBIT
257



# November 13-16, 2007

$196,100

Martin Carter
Wachovia
#5541


$194,800

Five Investments
Partnership
Regal  Securities
#1013

GOVERNMENT EXHIBIT
258

# Martin Carter
## Assets Received from Signalife
### November 2007 – September 2008

| Description | Amount |
|---|---|
| Shares of SGN | 6,035,000 (Value = $1,473,900) |
| Cash | $682,100 |
| TOTAL: | $2,156,000 |
| Money Carter gave to Stein or spent for Stein | $1,823,283 (85%) |

GOVERNMENT
EXHIBIT
259

# Funds to Mitchell Stein
## From Selected Entities and Individuals
### 2005-2010

| Source | Amount |
|---|---|
| Martin Carter | $1,823,283 |
| Ajay Anand (and associated companies) | $478,600 |
| Signalife (direct cash transfers) | $160,680 |
| THS Blind Trust (brokerage account selling SGN shares) | $1,395,302 |
| TOTAL: | $3,857,865 |

| MARTIN CARTER | | | |
|---|---|---|---|
| SIGNALIFE, INC. ("SGN") | | | |
| STOCK ISSUANCE AND VALUATION | | | |
| JANUARY 2008 THROUGH SEPTEMBER 2008 | | | |
| Date | Number of Shares | Closing Price on Day of Issuance | Value on Day of Issuance |
| 1/11/2008 | 25,000 | $0.6100 | $ 15,250.00 |
| 1/30/2008 | 20,000 | $0.5400 | $ 10,800.00 |
| 2/1/2008 | 500,000 | $0.6000 | $ 300,000.00 |
| 3/19/2008 | 300,000 | $0.9800 | $ 294,000.00 |
| 4/11/2008 | 200,000 | $1.3400 | $ 268,000.00 |
| 4/24/2008 | 200,000 | $0.6300 | $ 126,000.00 |
| 6/12/2008 | 390,000 | $0.4600 | $ 179,400.00 |
| 7/14/2008 | 300,000 | $0.1499 | $ 44,970.00 |
| 8/4/2008 | 200,000 | $0.1500 | $ 30,000.00 |
| 8/20/2008 | 500,000 | $0.0600 | $ 30,000.00 |
| 8/22/2008 | 400,000 | $0.1150 | $ 46,000.00 |
| 8/25/2008 | 250,000 | $0.0800 | $ 20,000.00 |
| 8/26/2008 | 300,000 | $0.0700 | $ 21,000.00 |
| 9/2/2008 | 200,000 | $0.0599 | $ 11,980.00 |
| 9/5/2008 | 700,000 | $0.0400 | $ 28,000.00 |
| 9/8/2008 | 250,000 | $0.0220 | $ 5,500.00 |
| 9/12/2008 | 400,000 | $0.0400 | $ 16,000.00 |
| 9/15/2008 | 300,000 | $0.0300 | $ 9,000.00 |
| 9/16/2008 | 600,000 | $0.0300 | $ 18,000.00 |
| **TOTAL:** | **6,035,000** | | **$ 1,473,900.00** |



Source: Bloomberg Finance, L.P., TD Ameritrade,
Standard Registrar and Transfer

**From:** Dr. Lowell Harmison <lharmiso@concentric.net>
**Sent:** Monday, February 11, 2008 11:28 PM
**To:** 'Tracy Jones'; 'Kevin Pickard'
**Cc:** Lowell@harmison.org
**Subject:** RE: Cash Balance
**Attachments:** image001.gif

Tracy: What is absolutely critical over rest of Feb & March.
Not one penny goes out with my approval.
Dr H

---

**From:** Tracy Jones [mailto:tjones@signalife.com]
**Sent:** Monday, February 11, 2008 2:24 PM
**To:** lowell@harmison.org
**Subject:** Cash Balance

Hi Dr. H.

Our current cash balance is $185,000.00.

**Tracy Jones**
**Director of Greenville Operations**
tjones@signalife.com



Signalife
Clear Data. Trusted Results.

Signalife, Inc.
531 South Main St. ~ Suite 301      T 864.233.2300
Greenville, SC 29601                F 864.233.2100
www.signalife.com                   C 864.505.6273

No virus found in this incoming message.
Checked by AVG Free Edition.
Version: 7.5.516 / Virus Database: 269.20.2/1272 - Release Date: 2/11/2008 5:28 PM

No virus found in this outgoing message.
Checked by AVG Free Edition.
Version: 7.5.516 / Virus Database: 269.20.2/1272 - Release Date: 2/11/2008 5:28 PM