## THS'S BLIND TRUST AGREEMENT

**THS'S BLIND TRUST AGREEMENT** ("Trust Agreement" or "Agreement") is made by and between the Settlor and its affiliates and beneficial owners, as defined in the signature page below, and the Trustee, as defined in the signature page below.

**WHEREAS**, the Settlor owns stock in a publicly traded company, may have access to other assets and wishes – until termination of this Agreement by Settlor at any time Settlor may choose, within Settlor's sole discretion – to put aside and divest the Settlor's stock and certain assets into this Trust Agreement for exclusive and confidential management by Trustee, secretive from the Settlor directly or indirectly, in order to avoid the possibility of a conflict of interest or allegations of insider trading should the Settlor come into possession of inside information while the said stock is being liquidated or should any other facts arise that could infer a conflict of interest or other controversy of law or fact in terms of the Settlor's activities;

**WHEREAS**, the Settlor owns the assets listed on the attached Schedule "A" and wishes to transfer them to the Trustee to be managed upon the trusts, terms and conditions hereafter set forth;

**NOW THEREFORE THIS AGREEMENT WITNESSES** that in consideration of the premises and of the mutual covenants and agreements herein contained, the Settlor hereby sets over, transfers and assigns to the Trustee the assets listed on the attached Schedule "A" to be managed and administered by the Trustee (together with such other trust assets as may be supplemented by the Settlor, at Settlor's discretion, by this Agreement and in the manner specified below) as a Trust Estate upon the following terms and conditions:

(1) The Trustee shall immediately be possessed of the assets listed on Schedule "A" and all the equity therein from and after the date of this Trust Agreement.

(2) The Settlor may at any time and from time to time while this Agreement is in effect assign, transfer or convey to the Trustee such further property as the Settlor may desire, within the Settlor's sole and absolute discretion.

(3) The assets referred to in this Agreement, together with accretions to trust assets from time to time, shall hereafter collectively be referred to as "Trust Estate."

(4) The Settlor may, at any time during the term of this Trust Agreement, appoint another person or corporation to act as Trustee in substitution for the existing Trustee. Such appointment shall not take effect until after such time as the existing Trustee has provided an accounting satisfactory to the continuing Trustee(s) in respect of the assets of the Trust Estate from the time of his designation as Trustee until the date of such new appointment.

(5) The Trustee may retire from the Trust by giving notice in writing to the Settlor 30 days before the retirement is to take effect, and the retiring Trustee shall execute all transfers and do all acts or things necessary for vesting the Trust Estate in the continuing Trustee. If no continuing Trustee is appointed in the manner set forth herein, the Trustee shall cause such executions and transfers to be done for the benefit of the Settlor and the Trustee shall assume the Settlor has elected to terminate this Trust Agreement.

1

GOVERNMENT EXHIBIT 8
CARDELS 800-783-0399

(6) If the Trustee resigns (in whole or part of his responsibilities), becomes incapacitated or dies during the term of this Trust, a new Trustee who is an affiliate, approved by the parties, shall become appointed (as sole, supervisory, co or other Trustee at the discretion of the Trustee) providing continuity to the Trust Estate. Nothing, herein, shall preclude or prevent the Settlor from appointing a replacement Trustee or precluding or preventing the Settlor from taking hold of the Trust Estate and terminating this Trust.

(7) The Settlor, prior hereto, has delivered to the Trustee all certificates and other documents evidencing title to the assets listed in Schedule "A" and will execute and endorse such forms, transfers, assignments, powers of attorney and other assurances as may be required by the Trustee to perfect the transfer to the Trustee full and unqualified legal title in and to the Trust Estate or any of them.

(8) The Trustee will assure compliance with all State and Federal laws, including, but not limited to, the securities and tax laws, regarding the Trustee's management of the Trust Estate, and the Trustee shall file all necessary securities filings and tax returns with respect to the Trust Estate and the profits and losses therefrom.

(9) The equitable interest in the assets listed in Schedule "A" shall be deemed for the purposes of this Trust Agreement to have been set over, transferred and assigned to and to reside in the Trustee from the date of this Agreement and the Settlor will not take any action, give any direction or make any disposition in respect of the assets except as shall be required to give effect to this Trust Agreement. The Beneficiary, if any, of this Trust Agreement shall be identified by the Settlor on the signature line below, and such Beneficiary shall not be entitled to beneficial ownership of any assets of the Trust Estate unless and until the assets of the Trust Estate -- due to some disposition chosen by the Trustee -- have changed their form from the constituency they first occupied upon being transferred to the Trustee to another form or constituency (e.g. stock in one company to stock in another; stock to cash; real estate to stock, etc).

(10) Subject to the limitations set out elsewhere in this Agreement, the Trustee may at the Trustee's sole and absolute discretion:

    (a) hold, retain, sell, convert, pledge, hypothecate or otherwise without restriction deal in and with the Trust Estate or any part of it, although this provision 10a shall be inapplicable if it would cause the protection afforded under Nevada law for spendthrift trusts to be void, voidable or unenforceable; and

    (b) deal in the same manner with the proceeds of any disposition, conversion, transfer or sale of the Trust Estate or any portion of it as if the Trustee's chosen Beneficiary was the beneficial owner of the Trust Estate at the time and as a result of such dealings, although this provision 10a shall be inapplicable or if it would cause the protection afforded under Nevada law for spendthrift trusts to be void, voidable or unenforceable; and provided however

    (c) that at all times the Trustee shall be the fiduciary of the Beneficiary, and of the Settlor, pursuant to the terms and conditions of this Trust Agreement.

690

SEC-Nevdahl-E-0002548

redeliver the Trust Estate to the Settlor as contemplated by this Section's net income and capital distribution...

(11) The Trustee shall have the powers set out in this paragraph from and after the date of this Trust Agreement and at least for as long as the Settlor's pleasure is to maintain the Trustee and/or to maintain this Trust Agreement.

(12) The Trustee shall not be responsible in any way for any loss or diminution that may occur in connection with the Trustee's management of the Trust Estate so long as the Trustee acts in good faith and exercises reasonable judgment.

(13) The Trustee is limited to invest only in publicly-traded securities, in shares or units in a mutual fund, in futures and forward contracts, in exchange contracts or in certificates of deposit, deposit receipts or other evidence of indebtedness given by a bank, trust company, credit union or treasury branch in consideration of a deposit made with the bank, trust company, credit union or treasury branch.

(14) It is expressly understood and agreed that – unless and until the Settlor terminates the Trustee or this Trust Agreement – the entire authority and responsibility for control, management and investment of the Trust Estate shall rest with the Trustee. The Trustee shall be entitled to deduct a reasonable fee for the services rendered hereby, and the Trustee shall further be entitled to hire professionals to assure accurate, timely and appropriate filings and operations to be effectuated with respect to the management of the Trust Estate. This is further set forth below.

(15) During the currency of this Trust Agreement, the Trustee is the sole arbiter of the direction, management or control of the Trust Estate in whatever form it may be. The Trustee shall not, in any way, seek, directly or indirectly, any advice, direction or instruction from the Settlor in connection with the Trust Estate or the management, disposition or investment of it and shall not act upon any advice, direction or instruction that might be given by the Settlor or by anyone on behalf of the Settlor.

(16) Except as specifically provided herein, no statements shall be rendered by the Trustee to the Settlor.

(17) Nothing in this Agreement shall prevent a Trustee from making such disclosure with respect to the Trust Estate as may be directly or indirectly required in order to comply with any applicable statute, regulation, court order or other lawful authority.

(18) The Trustee shall not disclose to the Settlor nor to anyone on the Settlor's behalf the nature or composition of the Trust Estate, nor any particulars thereof, except as provided by this Trust Agreement.

(19) The Settlor acknowledges that so long as this Trust Agreement is in effect (and except as this Agreement provides) the Settlor may not lawfully require the Trustee to reassign, retransfer or redeliver the Trust Estate or any part thereof to the Settlor nor otherwise violate the terms and conditions of this Trust Agreement. Nothing herein shall preclude the Settlor, or prevent the Settlor, from terminating either the Trustee or this Trust Agreement, and nothing herein shall preclude the Settlor from modifying the Beneficiary of this Trust Agreement, however, this provision shall be blue penciled from this Trust Agreement if it is held unenforceable by a court of competent jurisdiction.

3

SEC-Nevdahl-E-0002549

c. The beneficiary shall have no power or capacity to make any disposition whatever of any of the income by his order, voluntary or involuntary, and whether made upon the order or direction of any court or courts, whether of bankruptcy or otherwise; nor shall the interest of the beneficiary be subject to any process of attachment issued against the beneficiary, or to be taken in execution under any form of legal process directed against the beneficiary or against the trustee, or the trust estate, or any part of the income thereof, but the whole of the trust estate and the income of the trust estate shall go to and be applied by the trustee solely for the benefit of the beneficiary, free, clear, and discharged of and from any and all obligations of the beneficiary whatsoever and of all responsibility therefore.

d. The Trustee is required to disregard and defeat every assignment or other act, voluntary or involuntary, that is attempted contrary to the provisions of this Trust or that is attempted contrary to the provisions of Nevada Law.

(28) Any reference herein to gender, number or person shall apply to a person or persons as either gender or to any firm or corporation, as the case may require, and singular shall include the plural where the context so requires.

(29) This Agreement is intended to be and is hereby declared to be irrevocable. This Agreement shall be binding upon the parties hereto, their heirs, executors, administrators, successors and assigns.

(30) The Trustee may hold the Trust Estate in the name of the Settlor, in the name of Trust or in the name of the Beneficiary -- or in the name of their lawful agents or assigns -- within the Trustee's sole discretion.

(31) This Trust Agreement shall be deemed to be created and all matters relating thereto shall be determined under the laws of the State of Nevada; any action or proceeding relating to this Trust Agreement shall be litigated and tried only in State Court in the Los Angeles Superior Court, 111 North Hill Street, Los Angeles, California.

**IN WITNESS WHEREOF** the Settlor and the Trustee hereunto set their respective hands hereto SIGNED AND DELIVERED on this _1_ day of _August_, 2005.

Settlor:                                   Trustee:

_[signature]_                              _____

Settlor's Beneficiary:

Mitchell J. Stein

_[signature]_
Settlor's Signature of Approval

5

692

SEC-Nevdahl-E-0002550

Exhibit "A"

Five hundred thousand shares (500,000), fully registered, of Recom Managed Systems, Inc. (AMEX: RSY). Trustee agrees to comply with federal securities laws with respect to any maintenance or distribution of such shares, including, but not limited to, the prospectus and plan of distribution appertaining to the 500,000 shares as set forth in the SB-2 Registration Statement approved by the Securities and Exchange Commission.

SEC-Nevdahl-E-0002551

11-29-2005   04:25pm   From-THE UPS STORE 4590          7028962826          T-136   P.001/001   F-409

## SUBSTITUTION OF TRUSTEE

This confirms, by blind trustor, that the trustee of the attached blind trust – the THS Blind Trust – shall and hereby is changed to the following two co-trustees who have signed their names below. Mr. Nevdahl shall handle all trading matters, if any, with regard to trading decisions for the THS Blind Trust, and Mr. Wilk shall work with predecessor trustee Mr. Hockensmith with respect to any investment decisions appertaining to any realty or cash assets contained in the blind trust from time to time.

All provisions of the THS Blind Trust shall remain unchanged and shall continue in full force and effect.

_____
Blind Trustor, ARC Finance Group, LLC
By: Tracey Hampton-Stein, Manager

The foregoing trust duties are accepted:

_____
Mark Nevdahl, Co-Trustee

_____
Richard Wilk, Co-Trustee

694

SEC-Nevdahl-E-0002552

**ARC Finance Group, LLC**

Boca Raton, FL

February 6, 2006

VIA FACSIMILE (509) 747-4166

Mark Nevdahl
Regal Securities
421 W. Riverside Ave., Suite #614
Spokane, WA 99201

RE:   THS Blind Trust

Dear Mark,

This will clarify my intentions as Settlor under the referenced Blind Trust. Because this is a Blind Trust, I often do not learn facts regarding the disposition of the Blind Trust for a significant time after events occur.

As you know, I have the unfettered right to terminate the referenced Blind Trust at any time, within my sole discretion. This confirms, however, that I do NOT wish to exercise this right and wish the referenced Blind Trust to continue.

Rather, I desire that my intentions are followed with regard to the document entitled Substitution of Trustee that was signed by me, as Blind Trustor, and also signed by co-Trustees Mark Nevdahl and Richard Wilk. An unsigned copy of this document is appended hereto for your convenience. Under that document, it was my intention that Mr. Wilk be responsible for decisions regarding handling of Blind Trust monies that are forwarded to him by you. On the other hand, it has always been my intention, Mark, that you be responsible for all trading matters and the disposition of any monies in the Blind Trust's brokerage account prior to your decision to send them to Mr. Wilk for his disposition of such funds. (It is for this reason that Regal Securities is the only brokerage account I have used with regard to my business affairs in these matters.)

I have recently learned from you that (a) tax withholdings are being accumulated in the Regal Securities brokerage account and (b) Mr. Wilk has become a signatory to the Regal Securities brokerage account. I do not know when these events occurred. I agree that tax planning is a good idea, but it is unnecessary and inappropriate for Mr. Wilk to be a signatory to the brokerage account that Mr. Nevdahl supervises at Regal Securities. Indeed, my understanding is that Mr. Wilk manages his own Blind Trust bank account (not brokerage account) outside of Regal Securities and the referenced Substitution of Trustee document (appended hereto) was contemplated by me to clarify that Mr. Wilk could and would manage his own Blind Trust account, and realty on behalf of the blind trust, if any. I had no expectation that he would be a co-signatory at Regal Securities on behalf of the Blind Trust and I hereby respectfully request that all accounts of this Blind Trust at Regal Securities contain only the signatory power of co-Trustee Mark Nevdahl.

Mr. Wilk's responsibilities under the referenced Blind Trust are expected to be triggered upon Mr. Nevdahl sending funds to be supervised by Mr. Wilk in accordance with the terms of the Blind Trust.

Sincerely,

Tracey Hampton-Stein, Manager
ARC Finance Group, LLC

THS/

SEC-Nevdahl-E-0002554

11-28-2005  04:25pm  From-THE UPS STORE 4590          7028962828      T-136  P.001/001  F-806

## SUBSTITUTION OF TRUSTEE

This confirms, by blind trustor, that the trustee of the attached blind trust – the THS Blind Trust – shall and hereby is changed to the following two co-trustees who have signed their names below. Mr. Nevdahl shall handle all trading matters, if any, with regard to trading decisions for the THS Blind Trust, and Mr. Wilk shall work with predecessor trustee Mr. Hockensmith with respect to any investment decisions appertaining to any realty or cash assets contained in the blind trust from time to time.

All provisions of the THS Blind Trust shall remain unchanged and shall continue in full force and effect.

Blind Trustor: AAC Finance Group, LLC
By: Tracey Hampton-Stein, Manager

The foregoing trust duties are accepted:

Mark Nevdahl, Co-Trustee

Richard Wilk, Co-Trustee

697

SEC-Nevdahl-E-0002555