UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| § | |
| Plaintiff, § | |
| v. § | Case No 11-80205-CR-MARRA/HOPKINS |
| § | |
| MITCHELL J. STEIN, § | |
| § | |
| Defendant. § | |
| _____/ | |

**RESPONSE OF THE UNITED STATES
TO DEFENDANT MITCHELL J. STEIN'S MOTION OF MAY 20, 2016**

In his latest repetition of claims that have long since been shown to be incorrect, Defendant Mitchell J. Stein asserts that because of (1) certain language in the United States' brief in opposition to his appeal of his conviction, and (2) his speculation regarding what may be in the files of the Securities and Exchange Commission ("SEC"), he is entitled to a number of remedies, including but not limited to either dismissal of the indictment against him or, in the alternative, a new trial. As he has so many times before, he does so with a litany of conclusory and wholly unfounded accusations that he is only able to hold together by virtue of completely mischaracterizing relevant facts. While Stein correctly notes that this Court could not *grant* his motion during the pendency of his appeal, Federal Rule of Criminal Procedure 37 empowers this Court to *deny* Stein's motion during the pendency of his appeal, and the United States respectfully requests that it do so, as Stein offers the Court nothing which would justify a different outcome.

**I.   BACKGROUND**

Since his May 2013 conviction, Stein has filed hundreds of pages of briefing and exhibits demanding a new trial and other relief, as previously detailed in the United States' pleadings of

January 30, 2014 (Dkt. No. 318 at 2–3) and May 16, 2014 (Dkt. No. 336 at 2).  Among other things, Stein's filings repeatedly have alleged the same claims he makes in his latest motion, namely, (1) that false evidence or argument regarding Thomas Tribou was put before the jury, and (2) that the SEC was part of the prosecution team in this case, triggering a variety of discovery obligations for the United States which Stein asserts were violated.  (*See, e.g.*, Dkt. Nos. 260 and 264 at 11–13, 17–27, 43–46; Dkt. No. 279 at 15–17, 47–50; Dkt. No. 281 at 3–4; Dkt. No. 312 at 3–9, 24–25, 28–29.)  Just as repeatedly, those claims have been rejected by this Court, including in an Order dated November 25, 2014, in which the Court observed that despite the voluminous pleadings filed by Stein, "there has been no showing that counsel for the United States had any reason to believe that anything that was presented to the jury was not true."  (Dkt. No. 388.)

Stein now argues that statements in the United States' brief to the Eleventh Circuit Court of Appeals in opposition to Stein's appeal[1] are "admissions . . . which wholly contradict some of [the United States'] prior positions and prove its knowledge of the falsity of the evidence it presented at trial."  (Dkt. No. 479 at 2.)  But as has so often been the case with respect to inflammatory allegations by Stein, these latest allegations are nothing more than conclusory speculation, devoid of any support beyond the factual misstatements Stein deploys alongside them.

## II.    ARGUMENT

Though couched in terms that suggest they are revelatory and shocking, Stein's allegations are nothing more than recitations of non-controversial statements from the United States' appeal brief that fall far short of establishing the facts Stein suggests.

---

[1] Stein's appeal is scheduled for argument on July 12, 2016.

### A. The Legal Standard: Rule 37 Permits Denial of Stein's Motion

Setting aside the glaring factual and legal infirmities of Stein's motion, a further impediment (and indeed, one Stein acknowledges) to the relief he demands is imposed by Federal Rule of Criminal Procedure 33, which precludes the Court from granting a motion for a new trial while a defendant's appeal is pending. Fed. R. Crim. P. 33(b)(1). Importantly, however, the Court is not required to refrain entirely from acting on a defendant's new trial motion during the pendency of his appeal, as a related Federal Rule of Criminal Procedure permits a Court to, among other things, deny such a motion despite the pendency of an appeal. Fed. R. Crim. P. 37(a)(2). This is precisely the appropriate disposition of Stein's motion, as the motion is nothing more than another in a line of inflammatory but entirely unfounded motions that can be readily and summarily denied based on facts well known to the Court.[2]

### B. Stein Fails to Identify Any "Newly Discovered" Evidence as to Thomas Tribou, Much Less Any That Would Show Prior Evidence or Argument Was False

#### i. The SEC's Complaint Against Stein Is Not "Newly Discovered Evidence," Nor Is It An "Admission of Knowledge" By The United States

The first "new evidence" Stein proffers to the Court in support of his request for dismissal or a new trial is what he claims to be a "new theory" adopted by the United States on appeal, namely, "that it was only 'when Signalife could not ship any product to [Thomas] Tribou, [that] Stein 'orchestrated an elaborate scheme.'" (Dkt. No. 479 at 7.) Stein claims this

---

[2] Federal Rule of Criminal Procedure 37 also permits the Court to "defer considering the motion" or to "state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed. R. Crim. P. 37(a)(1), (3). For the reasons set forth herein, the United States believes outright denial of Stein's motion to be amply warranted, but should the Court be inclined to avail itself of another of the Rule's provisions, the United States respectfully requests that the Court defer ruling on Stein's motion during the pendency of Stein's appeal, and request briefing thereafter on any issues the Court believes are not resolved by this and previous briefing on Stein's allegations.

3

line in the United States' appeal brief "renders [government witness and Stein co-conspirator Martin] Carter's trial testimony that the [Cardiac Hospital Management] purchase order was all made up by Stein . . . wholly incredible," and that Stein therefore should receive a new trial or a dismissal of the indictment against him. (*Id*. at 7–8.)

Stein's argument is simply a repackaging of his previous unsuccessful attempts to convince the Court that the Cardiac Hospital Management purchase order, and the misrepresentations Stein caused Signalife to make about it, were not false. And just as those previous attempts failed to survive this Court's scrutiny, so too should Stein's latest reiteration of them, for the same reasons set forth in the United States' responses to certain of Stein's previous motions for a new trial. (*See, e.g.*, Dkt. Nos. 318 at 8–14 and 292 at 27–28.) There and elsewhere the United States reiterated what it argued in its summation to the jury, namely, "that irrespective of the fact that Tom Tribou paid Signalife $50,000, the Cardiac Hospital Management purchase order was still fake," and that "regardless of any initial connection" between Signalife and Tribou, "the ultimate document was not a real one." (Dkt. No. 292 at 28 (emphasis omitted).) At least twice before, and having had the benefit of extensive briefing on them, the Court has rejected the very arguments Stein makes again here, noting among other things that "[a]ny representations made by counsel for the United States during the trial were made based on the record evidence developed, and there has been no showing that counsel for the United States had any reason to believe that anything that was presented to the jury was not true." (Dkt. No. 388 at 2.) The Court even went further, describing Stein's arguments in his previous motions for a new trial as "not only baseless, but also offensive." (Dkt. No. 340 at 1.)

Stein offers nothing in his latest filing that should change the Court's previous view of his allegations. The "admission" to which Stein points in his latest motion as a basis for the

4

relief he seeks is not even an "admission," much less one that would conflict with any prior position taken by the United States in this case.  Indeed, Stein's excerpting of the United States' appeal brief is incomplete and completely misleading, as it characterizes as an "admission" by the United States what is plainly nothing more than the United States' description of the SEC's complaint against Stein, as review of a more complete excerpt makes clear:

> Although Stein is correct that the SEC complaint alleged that Signalife contracted to sell 180 units of the Fidelity 100 to Tribou and that Tribou sent Signalife a check for $50,000 as a deposit, Stein neglects to state that the complaint also alleged that Tribou contracted to purchase the units in his personal capacity and that the purchase order that was returned to Tribou identified the customer as [Cardiac Hospital Management], "a fictitious entity that was not known to [Tribou]."  *The complaint further alleged that when Signalife could not ship any product to Tribou, Stein "orchestrated an elaborate scheme,"* including creating or causing the creation of change of address and confirmation letters purportedly sent from [Cardiac Hospital Management], and instructing Carter to travel to Tokyo and mail a letter back to Signalife "to mislead [Signalife's] officers, its auditors, and the public about the sale's continued viability."

(Brief of the United States, *United States v. Mitchell Stein*, No. 14-15621, at 43 (11th Cir. September 28, 2015) (internal citations omitted).)  Clearly, this characterization of the SEC's complaint is hardly an "admission" of any kind, as it simply states what is in the SEC's complaint.  And for this and other reasons set forth in the United States' prior responses to Stein's demands for a new trial, it certainly does not provide a basis for any of the relief Stein requests.

### ii.     The Existence Of a Well-Known Fact That Could Have Been Used in Cross-Examination Is Not Proof of Perjured Testimony

Equally absurd is Stein's assertion that by pointing out in its appeal brief that "the jury was aware that some back-up had been received for one of the purchase orders," the United States has admitted to knowingly presenting false testimony to the jury. (Dkt. No. 479 at 8–9.) Here again, Stein is simply repackaging his previous failed attempts to convince the Court that

5

government witnesses John Woodbury and/or Tracy Jones testified falsely, something he has repeatedly claimed, yet just as repeatedly has failed to substantiate. (*See, e.g.*, Dkt. Nos. 260 and 264 at 11–13; Dkt. No. 279 at 15–17; Dkt. No. 281 at 3–4; Dkt. No. 312 at 28–29.) This argument should fail again here for the reasons set forth in the United States' responses to certain of Stein's previous motions for a new trial. (*See, e.g.*, Dkt. No. 292 at 12–14.) There and elsewhere the United States has pointed out that the issue of "back-up ha[ving] been received for one of the purchase orders" was well known to Stein in advance of trial (and thus could not have been "newly discovered evidence"), and moreover that "the evidence was overwhelming that Stein was behind the dissemination of the false purchase orders and the other documents accompanying them. Martin Carter, Ajay Anand, and other corroborated what John Woodbury and Tracy Jones said at trial." (Dkt. No. 292 at 13.)

The "new evidence" Stein identifies in support of these familiar claims is that the United States in its appeal brief pointed out the fact that in Signalife's third quarter 2007 report filed with the SEC, there is reference to payment by a "hospital/medical group" of a deposit on the Cardiac Hospital Management purchase order. This is of course not an "admission" by the United States, nor is it otherwise "new evidence;" at most, it is a fact that was available to Stein for use in cross-examining either Woodbury or Jones. Its existence in no way compels the conclusion that either witness intentionally testified falsely, much less that the United States knowingly presented intentionally false testimony from those witnesses. Stein thus is left to rely upon nothing more than innuendo fed by conclusory and speculative statements,[3] none of which

---

[3] Emblematic of such statements is Stein's dramatic, if wholly unsubstantiated declaration that "the Government now concedes for the first time that, at trial, it knew that these two witnesses were not telling the jury the truth," something Stein subsequently refers to as, among other things the United States' "recent admissions of knowledge," its knowledge "of the falsities presented," and the witnesses' "false testimony." (Dkt. No. 479 at 9, 11, 23.) Of course, no such "concession" was made by the United States in its appeal brief, nor would one be at all consistent

6

shows that "counsel for the United States had any reason to believe that anything that was presented to the jury was not true," (Dkt. No. 388 at 2), or otherwise provides a basis for the relief Stein seeks.

### C. Stein Again Fails to Show That The SEC Is Part of The Prosecution Team, Or That Any "Suppression" Occurred

Most of the remainder of Stein's motion[4] is largely devoted to yet another familiar assertion: that the SEC and the United States were all part of the same prosecution team. Simultaneously complaining about the withholding of yet purporting to know exactly what is among documents that were withheld by the SEC in response to his Freedom of Information Act claim (which is of course not an issue before this Court) Stein claims that there has been a "wholesale suppression of the universe of documents held by the prosecution team," and even an "intentional suppression of millions of relevant files." (Dkt. No. 479 at 19, 24.) As before and as elsewhere in his motion, Stein falls well short of establishing his sensationally framed claims.[5]

---

with the facts of Stein's case or the events at his trial. Yet characteristically holding nothing back as he builds his motion to its crescendo, Stein nevertheless refers to "the prosecutors['] efforts] to consistently dupe this Court," and suggests that his arguments as to the Cardiac Hospital Management purchase order may "completely exonerate" him. By virtue of the passion with which he makes these statements, Stein may engender curiosity as to their veracity, but it takes only the most cursory review of the underpinnings of his assertions to realize that, as before, they are predicated on nothing more than conclusory statements accompanied by egregious factual mischaracterizations. As explained further below, his now-familiar tactics not only fail (again) to entitle him to the relief he seeks, they also obviate the need for any evidentiary hearing or argument before the Court reaches that conclusion.

[4] Subsequent parts of Stein's motion have a familiar ring, for example: Stein simply takes as fact the "false testimony" and "suppression" he has totally failed to prove, and blithely moves on to assert that "cumulative analysis" of that "suppression" and "false testimony" merits the relief he demands, as it creates a situation "akin to structural error." (Dkt. No. 22.) Of course, his utter failure to prove any "suppression" or "false testimony" means that no such relief is remotely warranted, and accordingly, the United States will refrain from responding at any further length to Stein's "cumulative analysis" and "structural error" claims.

[5] Oddly, given his insistence that the SEC and Department of Justice were part of the same prosecution team, engaged in "inter-agency collaboration," and "combined" their investigations,

7

The Court no doubt will recall Stein's many previous attempts to persuade it that the SEC was part of the prosecution team in his criminal case. (*See, e.g.*, Dkt. Nos. 260 and 264 at 17–27; Dkt. No. 279 at 21–30; Dkt. No. 281 at 4; Dkt. No. 308 at 11–15, 17–23; Dkt. No. 355 at 6–8; Dkt. No. 363 at 3–11.) Likewise, the Court no doubt will recall the many reasons for which such a claim is completely without foundation. (*See, e.g.*, Dkt. No. 362 at 6–7.) Accordingly, the United States will refrain from reiterating those arguments here, and will instead simply point out that Stein offers nothing in his latest filing that should alter the Court's previous analyses of this issue or persuade the Court to grant Stein the relief he requests, as Stein plainly is relying on differently worded, but identically unsubstantiated versions of the conclusory and speculative claims he has litigated and lost in the past.

### D. No Evidentiary Hearing is Necessary

As he has before, Stein requests an evidentiary hearing on his latest motion for a new trial. (Dkt. No. 479 at 25.) His requests to this effect consistently have been denied by this Court, and for good reason: as the United States pointed out in response to Stein's prior post-conviction motions, a motion for a new trial may be ruled upon without a hearing, especially where the court hearing the motion oversaw the litigation giving rise to it as well. *United States v. Slocum*, 708 F.2d 587, 600 (11th Cir. 1983); *see also United States v. Schlei*, 122 F.3d 944, 994 (11th Cir. 1997) ("we are persuaded that 'the acumen gained by a trial judge over the course of the proceedings [makes [it]] well qualified to rule on the basis of affidavits without a hearing"). Nothing Stein offers in his latest filing suggests that a hearing would in any way aid this Court in its evaluation of Stein's latest demands. Indeed, such a hearing would most likely do nothing more than provide a forum for more of the same wholly unsubstantiated attacks and

---

Stein also insists that each agency "prosecuted this case based on inconsistent theories and proof." (Dkt. No. 479 at 17, 20.)

8

efforts to confuse the Court that continue to be the hallmark of Stein's litigation strategy. This Court is extremely familiar with the record in this case, the existing evidence in the record of Stein's guilt is overwhelming, and the factual infirmities of his claims are sufficiently glaring that a hearing is completely unnecessary and in all likelihood would be counterproductive.

### E. No More Than Summary Denial of Stein's Motions is Required

Stein concludes his motion with the suggestion that the Court should "issue a reasoned decision," implying that the Court's previous rulings on Stein's motions have been something other than "reasoned." (Dkt. No. 479 at 25.) As he has before, Stein implicitly threatens the Court with the specter of Eleventh Circuit disapproval, citing various cases in which the Eleventh Circuit has turned back district courts' summary denials. Yet inexplicably, Stein again ignores the language in one of the very cases he cites, which makes clear that summary denial can be entirely appropriate:

> District courts are responsible for rendering reasoned decisions, and this Court has remanded where a one-sentence summary denial denied the opportunity to conduct meaningful appellate review . . . . *But this Court has also said that not every summary denial needs more explanation*[.]

*Bailey v. United States*, 307 F. App'x. 401, 402–03 (11th Cir. 2009) (emphasis added). More importantly for present purposes, the Eleventh Circuit went on to explain that some motions "may be clearly without merit," and therefore would require nothing more than summary denial. *Id*. at 403.[6]

---

[6] As the United States explained in a previous response to Stein's criticism of the manner in which this Court denied his demand for a new trial, (Dkt. No. 362 at 13–14), the Eleventh Circuit in its *Bailey* opinion cited to *Broadwater v. United States* as an example of a situation in which something more than summary denial was required in order to allow "meaningful appellate review." But the significant distinctions between *Broadwater* and this case are instructive here: in *Broadwater*, the district court summarily decided a motion despite there being no "answer or other pleading from the United States Attorney which might have directed the district court to the relevant parts of the record." 292 F.3d 1302, 1303 (11th Cir. 2002). Therefore, "even a complete reading of the record on appellate review would not reveal upon what portions of the

9

A motion "clearly without merit" is precisely what the Court has before it in Stein's latest demand for a new trial and other relief. The law requires nothing more from the Court than what it has already provided in terms of detail and explanation of its rationale for denying Stein's previous motions, and the Court should ignore Stein's efforts to goad it into providing an opinion or order of any particular length.

## III.   CONCLUSION

Stein's latest allegations are not new, and they certainly do not rely on newly discovered evidence. They are instead the very same allegations Stein has made over and over in the three years since his conviction, wrapped in slightly different, but still characteristically inflammatory and misleading terms. Stein continues to offer nothing upon which the relief he demands could be based, and an evidentiary hearing would not in any way enhance his ability to do so or otherwise aid the Court. Federal Rule of Criminal Procedure 37 empowers the Court to deny Stein's motion despite the pendency of his appeal, and for the same reasons the Court has rejected Stein's previous attempts to distract from or otherwise confuse the Court regarding his responsibility for the massive fraud scheme upon which his convictions are based, the Court should avail itself of that authority to do so again here.

---

record the district court relied." *Id*. Such circumstances are of course not present here, where Stein's extensive briefing of his allegations has been addressed at length by the United States, and thus the Eleventh Circuit would have a sizeable record from which it would be able to analyze the relevant facts and arguments, irrespective of the length or detail of this Court's opinion or order on Stein's motion.

10

WHEREFORE, for the reasons stated herein and in the United States' responses to Stein's virtually identical arguments in prior motions, the United States respectfully requests that the Court deny Stein's latest motion in its entirety.

Respectfully submitted,

ANDREW WEISSMANN
Chief
Fraud Section

DATED: June 6, 2016          By:          /s/
ALBERT B. STIEGLITZ, JR.
Assistant Chief
United States Department of Justice
1400 New York Avenue, NW
Washington, DC 20530
Phone: (202) 514-4313
Fax:    (202)514-0152
Email: Albert.Stieglitz@usdoj.gov

## **CERTIFICATE OF SERVICE**

      I hereby certify that on June 6, 2016, a true and correct copy of the foregoing document has been delivered to counsel of record via the Court's Electronic Filing System.

                                                                    /s/_____
                                                         Albert B. Stieglitz, Jr.