UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE No.: 11-80205-CR-MARRA

UNITED STATES OF AMERICA,

vs.

MITCHELL J. STEIN,
    Defendant.
_____/

## REPLY TO OPPOSITION TO DISCOVERY MOTION

Mitchell J. Stein, by and through the undersigned counsel ("Stein" or "Defense"), hereby respectfully replies to the Government's opposition to Stein's discovery motion, and states:

### Preliminary Statement

The Government does not deny that *Brady* is a continuing prosecutorial obligation which is not terminated by a conviction, but extends through the sentencing proceedings. *See, e.g., Imbler v. Pachtman*, 424 U.S. 409, 427, n. 25 (1976); *Cone v. Bell*, 556 U.S. 449, 472 (2009); *see* DE 510:2-3. The Government also does not deny that its discovery obligations extend to information in the possession of cooperating agencies.[1] And the prerequisites required to find that the SEC and DOJ were part of the same prosecution team in this case clearly exist. Though it maintains that it is not in violation of its discovery obligations, the Government also cannot deny that it

---

[1] Stein repeatedly cited extensive authorities unambiguously setting forth a prosecutor's duty to learn of and produce information in the possession of a cooperating agency, *see, e.g.*, DE 510:4-5; *see also United States v. Stein*, 2015 WL 3442393, at iv, 34 (Appellant's Initial Brief) (11th Cir. No. 14-15621) (May 27, 2015); *United States v. Stein*, 2016 WL 1295327, at 20-21 (Appellant's Reply Brief) (11th Cir. No. 14-15621) (Jan. 4, 2016), and to this date, the Government has failed to cite any authority stating otherwise. *See, e.g.*, DE 511; DE 479-1:48-153.

1

never bothered to look into the universe of documents even though it previously accessed those very files in obtaining what it termed "a very small subset" in prosecuting Stein. Instead, the Government argues that the Court should "look no further" than its September 26, 2012 disposition of Stein's first discovery motion when in fact the terms of the order do not support the Government's position and in any event the order was based on a completely different record devoid of subsequent admissions made by the Government which are now before this Court. Particularly in light of the complexity of the sentencing issues, the gravity of the prison sentence the Government seeks, and its history of presenting a "thin" or "conflicting" record (which already led to the remand order by the reviewing court), the foregoing facts cannot be ignored irrespective of any prior dispositions.

## ARGUMENT

### I.     The Government's "Prior Disposition" Argument Is Without Merit

The Court's prior findings and the disposition of the Eleventh Circuit Court of Appeals ("Eleventh Circuit" or "panel") do not preclude the Court from entering the appropriate discovery order: Indeed, as the Government is well aware, neither order relieved the Government of its *Brady* obligations at the resentencing proceeding or otherwise, because *Brady* is a self-executing constitutional duty which cannot be curtailed by court order. *See United States v. Garrett,* 238 F.3d 293, 302 (5th Cir. 2000) (Fish, J., concurring) (*Brady* is "self-executing"); *United States v. W. R. Grace*, 401 F.Supp.2d 1069, 1080 (D. Mont. 2005) ("prosecution's constitutional duty under *Brady* is self-executing, and cannot be enlarged or curtailed by court order"). *See also infra* at 5 (citing authorities addressing exceptions to alleged waiver of claim in first appeal and law-of-the-case doctrine).

Notwithstanding these incontrovertible authorities, the Government's opposition is primarily focused on its argument that all of the Defense's discovery claims have allegedly already been rejected. Though the foregoing caselaw precludes such an argument from having merit, the argument is baseless for an additional and more fundamental reason. By arguing that "[t]he Court need look no further than its prior disposition of these arguments to reject them" (DE 511:6) and "need look no further than its response to the defendant's first attempt (of many) to persuade the Court that the SEC was part of the prosecution team" (DE 511:8), the Government urges the Court to ignore important government admissions about the universe of documents and agency cooperation, which were disclosed to the Court *after* the Court's disposition of Stein's first discovery motion (DE 63). *See, e.g*., DE 305-1:4 (DOJ thanking the SEC for its "substantial assistance" in prosecuting Stein); DE 146:41, 44 (the DOJ-produced 2-million-file database is only a "very small subset" of the universe of documents, which, as the Court then acknowledged, the Government "never bothered to look into").

Stein's requests for information concerning recent government admissions about the Cardiac Hospital Management ("CHM") purchase order transaction, involving Thomas Tribou, could clearly not have been previously considered by this Court, as the Government falsely states at DE 511:10, 11 ("defendant's specific discovery demands are no different from his prior ill-founded demands"). For example, as the Court is well aware, the Government's new theory that it was when "Signalife could not ship any product to Tribou, Stein 'orchestrated an elaborate scheme'" (DE 479-1:106) could never have been evaluated by the Court because the Government withheld this theory until its respondent's brief on appeal. Indeed, at trial, the Government advanced the polar opposite case by claiming the CHM purchase order "never happened" to begin

3

with (DE 248:46-47); thus, the Government is at least being disingenuous by claiming now that this request is repetitive. Given these facts, the request for this information is obviously not a game or an attempt to embarrass the prosecution: The Defense and this Court are entitled to learn the truth about the Government's brand new theory that it never presented to the jury, especially now that the Court is tasked with re-evaluating the Government's loss model that is based on the CHM press release the Government now admits was issued *prior to the time* it now claims "Stein orchestrated an elaborate scheme." (GX 69; DE 479-1:106).)

Further, the Government's assertion that the Eleventh Circuit "rejected" Stein's arguments concerning the prosecution's duty to search, agency cooperation and specific discovery requests is misguided. (DE 511:1.) The Eleventh Circuit opinion does not rule on the merits of these issues but, rather, finds them to have been insufficiently briefed. *United States v. Stein*, 846 F.3d 1135, 1151, n. 15 (11th Cir. 2017) (finding that Stein made a mere "passing reference" to the matter "in a footnote").[2] Especially in light of the Government's continuing obligations under *Brady*, the opinion plainly does not preclude a new appeal on these issues should they be improperly adjudicated now.

---

[2] This finding is inaccurate because the issues were extensively discussed throughout the body of Stein's opening brief. *See Stein*, 2015 WL 3442393, at 43 (Appellant's Initial Brief) (11th Cir. No. 14-15621) (May 27, 2015) (discussing Rule 16 and prosecution team); *id.*, at 45 (discussing failure to evaluate or order production of the evidence needed for post-trial and sentencing litigation); *id.*, at 34-36 (citing authorities about duty to search files held by cooperating agency). The Government merely reasoned in its respondent's brief that these claims were "illogical" because "it was not within the DOJ's authority to grant access to a database it did not possess or control" (DE 479-1:120), though Stein's claims concerned the DOJ's duty to search and produce from and not "grant access" to the universe of documents. These claims by Stein remained unrebutted. But even presuming that Stein had only made a passing reference about these issues in a footnote of his opening brief, the Government would not, as a consequence, be forever absolved from its discovery obligations as set forth herein and certainly not in connection with a resentencing proceeding that has not yet happened.

The specific requests made newly relevant on appeal (such as new government theories about Tribou having to do with Signalife's now alleged inability to timely ship the product to Tribou) and by the Eleventh Circuit's remand order (such as naked short selling of Signalife stock) could become part of new appellate proceedings. And in any event, these claims are not deemed waived but can properly be re-argued now and in subsequent appeals. *See, e.g., Newman v. Ormond*, 456 Fed.Appx. 866, 867 (11th Cir. 2012) (law-of-the-case doctrine bars consideration only of legal issues actually decided); *Morrow v. Dillard*, 580 F.2d 1284, 1290 (5th Cir. 1978) ("the doctrine of 'law of the case' [does not apply] to questions which might have been decided but were not"); *see also*, *Pepper v. United States*, 562 U.S. 476, 506–07 (2011) (law-of-the-case doctrine does not apply where prior decision "is clearly erroneous and would work a manifest injustice"); *United States v. Esperance*, 165 Fed.Appx. 814, 818 (11th Cir. 2006) (stating exceptions to the law-of-the-case doctrine, including alleged failure to raise issue in first appeal).

Therefore, the Government's claim now that prior dispositions in this case forever relieved it of its continuing *Brady* obligations as set forth herein, including its obligations at a resentencing that has yet to occur, is unsupported by any authority. For all these reasons, the safest practice would be for the Court to enter an order directing the Government to search for and produce records responsive to Stein's requests from the universe of documents it admitted to having already having accessed, and in accordance with *Brady* and its progeny.

## II.     The Government's Claims That It Complied With Its Discovery Obligations

The Government next asserts that it has not violated its discovery obligations. For example, it maintains that it complied with its discovery obligations responsive to Stein's specific requests, in 2012, for naked-short selling information by way of producing "bluesheet ... trading data." (DE511:12.) As the Government is aware, bluesheet data does not clearly identify naked short

5

sellers. *See, e.g*., Exhibit A (attached) (available at https://www.sec.gov/news/press-release/2014-20) (SEC article explaining that exposing naked short selling is a multi-step process involving "cross-referencing" other findings *against* "blue sheet data"). The Government essentially concedes that it does not intend to even begin to investigate the third-party criminals responsible for the loss it will again ask the Court to hold Stein accountable for. The production of bluesheet data is simply not responsive to a specific request for, e.g., "[a]ll information regarding the naked short selling of Signalife stock" (DE 41-1:14) or "[a]ll evidence regarding attempts by alleged victims to engage in the naked short selling of Signalife stock" (DE 41-1:18) or "[a]ll information regarding the fails-to-deliver data available on the SEC's website at https://www.sec.gov/help/foiadocsfailsdatahtm. html and listed at DE423-1:16-25 (then available at http://www.sec.gov/foia/docs/failsdata-archive.htm)" (DE 510:8), nor are the foregoing requests "broad and unspecified requests [that] provide no guidance as to what that additional information is." (DE 511:12.) This Court should make a comparison of the propriety of each party's conduct by considering that the Defense requested the naked-short selling information in 2012 (through Michael Pasano), the Government never produced the information and the Eleventh Circuit reversed the sentence in part because of the naked-short selling issue.

The Government also inaccurately states that the September 26, 2012 discovery order "makes no reference to short-selling." (DE 511:9.) This is incorrect, for, as the Government concedes, the order refers to and orders production regarding Stein's requested "categories of material" (*id*., citing DE 63), *several of which* specifically referenced naked-short selling. (DE 41-1:14-18.) As to these categories, the Court "GRANTED [the motion] within the scope of Rule 16 and *Brady*." (DE 62:2.)

6

The Government next argues that the order granting Stein's discovery motion does not mean that "the United States was in violation of its discovery obligations." (DE 511:10.) Yet not once has the Government denied – by way of submitting an affidavit or statement in a pleading – that it never searched for and produced any of the requested categories nor made any demonstrable effort to comply with this Court's September 26, 2012 order. The fact is that the Government never did search for and produce these categories in an effort to comply with the Court's September 26, 2012 order.

### III.     Stein's Requests Are Well-Founded And the Requested Information Is Critical To Resentencing

Stein's requests are far from "ill-founded" or the type of "blanket demand[s] [for material, the search for which would] resemble[] a fishing expedition," as the Government asserts. DE 511:10, 11, 13 (citing *United States v. Malone,* No. 8:04-CR-348-T-24TGW, 2005 WL 8148595, at *1 (M.D. Fla. June 2, 2005)).

The Government fails to explain, for example, how a request for information concerning its new theory about Tribou is "ill-founded" when its own mid-trial admissions revealed, regarding the very Tribou check it produced a copy of before trial (DE 322-1:7), that the prosecutors purportedly "[did not] know … whether [Tribou] wrote that purchase order number on [the check] or who wrote that purchase order number on there." (DE 247:42.) After the Government adopted a brand-new theory about the first purchase order (GX 64) for the first time on appeal, accepting that the Tribou check was indeed authentic and indeed that it was only after "Signalife could not ship any product to Tribou, [that] Stein orchestrated an elaborate scheme," the Government should now be compelled to produce any information concerning this brand new theory.

7

Stein's remaining requests are specifically tailored to address the issues outlined by the Eleventh Circuit's remand order. In that regard, it should be noted that the Government misleadingly asserts in footnote 2 of its opposition that the Eleventh Circuit "acknowled[ged] the government's assertion that using either of [its alternative] methods instead of the 'buyers-only' methodology would have resulted in the same Guideline range." (DE 511:6.) The Eleventh Circuit did far more than "acknowledg[e]" the Government's assertion but specifically "reject[ed]" it. *Stein*, 846 F.3d at 1154 n. 17 ("[t]he government raises a harmless error argument, which we reject"). As Stein argued on appeal, the Court could not have reasonably made accurate and detailed findings as to the Government's alternative theories after the probation officer specifically recommended that the Government introduce "additional" and "further" testimony on these issues (*see* Second Addendum to PSR, at pp. 6-8), which the Government failed to do. *See*, *Stein*, 2016 WL 1295327, at 53-54 (Appellant's Reply Brief) (11th Cir. No. 14-15621) (Jan. 4, 2016). Thus, based on the current record, any findings in favor of the Government as to its alternative theories could again be found to be "thin" and "speculat[ive]" (*Stein*, 846 F.3d at 1154) and principles of fairness and judicial economy merit the correct ruling on these matters now so that Stein does not have to appeal yet another sentencing order founded upon an unreasonably condensed record.

Despite the foregoing, the Government announced that it "will request that this Court make [specific] findings" on these issues. The information Stein seeks would aid the parties and Court in establishing a more solid record than one that could result in a second remand.

Any misconceptions the Government may have about its discovery obligations, such as that the production of Signalife bluesheet data adequately complied with Stein's specific requests for

8

information concerning naked short selling of Signalife stock, or that an order entered prior to the Government's admissions about the extent of the SEC's cooperation absolved it from its continuing discovery obligations as to material held by cooperating agencies, could be resolved by the appropriate court order. Because the Government interprets the Court's September 26, 2012 discovery order to mean that "the Court simply ordered that the United States continue to comply with its discovery obligations" (DE 511:10), it is unclear how a more specific order outlining exactly the scope of those obligations could possibly be erroneous or prejudice the Government to its disadvantage.

## IV.     Evidentiary Hearing

The Government fails to explain how an evidentiary hearing "merely would provide a forum for the defendant to air [Stein's allegedly] unfounded … claims" (DE 511:16), when it is the Government – not Stein – which would be questioned about its own admissions and its own databases. The Government's fears are unfounded, because the very purpose of an evidentiary hearing is to present evidence to resolve a disputed claim. The Government's contention that an evidentiary hearing would not allow the Court a full opportunity to weed out any unfounded claims is entirely meritless.

Further, Stein's requests are not based on "mere speculation" (DE 511:16), but are based, in large part, on several government admissions and defense discoveries that occurred after the Court's disposition of Stein's first discovery motion. *See, e.g.*, DE 146:41; DE 305-1:4; DE 355-1. Notably, the court in Stein's related FOIA action, styled *Stein v. Securities and Exchange Commission*, D.C. Case No. 1:15-cv-01560-JDB, recently directed the SEC to conduct a search of the large dataset which the court identified as "RenewData materials," comprising two terabytes

9

of undisclosed data and several boxes of material which the Government never searched. See Exhibit B (attached) (D.C. Docket Entry 23); *Stein v. U.S. Sec. & Exch. Comm'n*, No. 1:15-cv-01560-JDB, 2017 WL 3141903, at *5-6 (D.D.C. July 24, 2017).).[3]

Nevertheless, Stein also submits that more than sufficient evidence exists in the current record for the Court to enter an order directing the Government to search the universe of documents held by the prosecution team and produce from that universe of documents the requested information to the Defense.

## **CONCLUSION**

Wherefore, Stein respectfully requests that the Court enter an order directing the Government to search the universe of unprivileged documents and produce to the Defense the requested information.

Dated:  September 4, 2017                               Respectfully Submitted,

                                                        RICHARD C. KLUGH
                                                       Richard C. Klugh, P.A.
                                                       25 SE 2nd Avenue, Suite 1100
                                                       Miami, FL 33131-1674
                                                       Phone: 305-536-1191
                                                       Fax: 305-536-2170
                                                       Email: rklugh@klughlaw.com

                                                       By: _____/s/_____
                                                           Richard C. Klugh, Esq.
                                                           Florida Bar No. 305294

---

[3] The Court is respectfully requested to judicially notice the proceedings in District of Columbia District Court No. 1:15-cv-01560-JDB. The "RenewData materials" are different from and substantially larger than the much smaller RenewData database that Stein had access to in this case. DE 264-2; DE 264-14.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 4, 2017, I electronically filed the foregoing documents with the Clerk of the Court and all counsel of record using CM/ECF.

By: _____/s/_____
Richard C. Klugh, Esq.

# EXHIBIT A

Press Release

# SEC Charges Two College Professors in Naked Short Selling Scheme

## Data Analysis by SEC Staff Breaks Case

**FOR IMMEDIATE RELEASE**
**2014-20**

*Washington D.C., Jan. 31, 2014* — The Securities and Exchange Commission today charged a pair of college professors in Tallahassee, Fla., with perpetrating a complex naked short selling scheme for more than $400,000 in illicit profits.

Abusive naked short selling occurs when shares are sold without having the shares to deliver, and then intentionally failing to deliver the securities within the standard three-day settlement period.  An SEC investigation found that Gonul Colak and Milen Kostov repeatedly engaged in a series of sham transactions designed to perpetuate a naked short position as part of an elaborate options trading strategy.  Colak and Kostov were required to deliver the securities underlying their short positions within the standard three days.  Instead, their sham reset transactions created the illusion that they had delivered the underlying securities when in fact they had taken no steps to do so.  They maintained the uncovered naked short positions and profited.

Colak and Kostov agreed to settle the SEC's charges by paying more than $670,000.

Colak and Kostov used multiple brokerage accounts to disguise the spurious nature of the sham transactions, moving a short position from one brokerage firm to another every few days in order to spread the failures to deliver across multiple firms in an effort to avoid detection.  SEC investigators uncovered the complicated scheme while looking into unusual trading in one of the companies whose options were being traded by Colak and Kostov.  An SEC examiner separately noted Kostov's large volume options trading in a different company.  By cross referencing their findings and crunching blue sheet data, it became clear that Colak and Kostov were likely trading with one another.  SEC investigators pieced together the complex trading strategy – which involved literally thousands of trades – by tracing one of the trading sequences from start to finish.

"Colak and Kostov engaged in trickery and deceit to avoid their delivery obligations and conceal their short selling scheme," said Daniel M. Hawke, chief of the SEC Enforcement Division's Market Abuse Unit.  "No matter how complex the trading scheme, we are committed to exposing and halting abusive naked short selling and holding wrongdoers like Colak and Kostov accountable for their misconduct."

According to the SEC's order instituting settled administrative proceedings, Colak and Kostov set their scheme in motion in early 2010 and went on to sell more than $800 million worth of call options in more than 20 companies.  Their trading strategy involved purchasing and writing two pairs of options for the same underlying stock, and targeting options in hard-to-borrow securities in which the price of the put options was higher than the price of the call options.  Colak and Kostov profited by avoiding the cost of instituting and maintaining the short positions caused by their paired options trading.

The SEC's order finds that Colak and Kostov violated Section 17(a) of the Securities Act of 1933, Section 10(b) of the Securities Exchange Act of 1934, and Rules 10b-5 and 10b-21 thereunder.  Colak agreed to pay $285,600 in

Exhibit A

disgorgement, $21,957 in prejudgment interest, and a $150,000 penalty.  Kostov agreed to pay $134,400 in disgorgement, $10,340 in prejudgment interest, and a penalty of $70,000.  Without admitting or denying the findings, Colak and Kostov agreed to cease and desist from committing or causing such violations.

The SEC's investigation was conducted by Jason Breeding and Diana Tani of the Market Abuse Unit in the Los Angeles Regional Office with assistance from the unit's securities operations specialist Patrick McCluskey.  The investigation was supervised by Daniel M. Hawke and Joseph G. Sansone.  The SEC appreciates the assistance of the Financial Industry Regulatory Authority (FINRA).

###

## Related Materials

- SEC order

Exhibit A

# EXHIBIT B

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MITCHELL J. STEIN**<br><br>　　Plaintiff,<br><br>　　v.<br>**U.S. SECURITIES AND EXCHANGE COMMISSION,**<br><br>　　Defendant. | Civil Action No. 15-1560 (JDB) |

### ORDER

Upon consideration of [10] and [11] the cross-motions for summary judgment and the entire record herein, and for the reasons stated in the memorandum opinion issued on this date, it is hereby

**ORDERED** that [10] the SEC's motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**; it is further

**ORDERED** that [11] plaintiff's motion for summary judgment is **DENIED**; and it is further

**ORDERED** as follows:

1.  The SEC shall conduct a search of the RenewData materials for documents responsive to Stein's second category of requests, and shall produce any relevant documents to Stein or justify any withholding decisions. If the SEC concludes that the RenewData materials on the whole are not reasonably likely to contain responsive documents, the SEC shall submit an affidavit explaining why.

2.  The SEC shall submit a new affidavit or <u>Vaughn</u> index describing in more detail

Exhibit B

Document Nos. 5–11, 66, 201, 209, 265, 266, 268, and 269 on the <u>Vaughn</u> index, as well as the privileged notes and emails. The new affidavit should specify which Exemption 5 privilege the agency is asserting with respect to each document or category, and should provide the Court with information sufficient to satisfy the standards of each asserted privilege.

3. The SEC shall confirm in an affidavit that it has provided to plaintiff all unredacted portions of Document Nos. 34, 36, 112, 124, 156, 175, 222, 243, and 244.

4. The parties shall confer and submit a proposed schedule for the proceedings described above, including a schedule for any briefing required on renewed motions for summary judgment, by not later than August 4, 2017.

**SO ORDERED**.

/s/
JOHN D. BATES
United States District Judge

Dated: July 24, 2017

Exhibit B