UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA, | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § Case No 11-80205-CR-MARRA |
| | § |
| MITCHELL J. STEIN, | § |
| | § |
| Defendant. | § |

### UNITED STATES' OPPOSITION TO THE DEFENDANT'S SUPPLEMENTAL MEMORANDUM (D.E. 529)

In May 2013, the Defendant was convicted by a unanimous jury of wire fraud, mail fraud, securities fraud, and money laundering for his role in a scheme to defraud investors and loot from Signalife.  The Defendant's convictions were affirmed on appeal.  *United States v. Stein*, 846 F.3d 1135 (11th Cir. 2017).  In his recent filing, the Defendant has once again attempted to relitigate issues already decided by this Court, the jury, and the Eleventh Circuit, arguing that "newly discovered" testimony of Thomas Tribou regarding a $50,000 check somehow suggests that the government was not candid with the Court about a conversation with Mr. Tribou on May 16, 2013. (D.E. 529, hereafter "Supplemental Memorandum").  The government flatly rejects any suggestion or argument that the call with Mr. Tribou did not take place as represented to the Court during the trial.  Moreover, and as set forth below, the government respectfully submits that the Defendant's requested relief in his Supplemental Memorandum should be denied because the filing is time-barred, and, in any event, nothing the Defendant raises constitutes evidence that is either "material" or "newly discovered" under the governing legal standard.

1

## BACKGROUND

Thomas Tribou was a consultant who worked with Signalife. *Stein*, 846 F.3d at 1141. Mr. Tribou was deposed by the Securities and Exchange Commission ("SEC") in January 2010, and he was interviewed by the government in August 2012. The transcript of Mr. Tribou's deposition and the memorandum memorializing his interview were provided to the Defendant in discovery well in advance of trial.

On May 20, 2013, a jury unanimously convicted the Defendant on all counts (D.E. 212). On December 4, 2014, this Court sentenced the Defendant to 204 months of imprisonment (D.E. 407). The Defendant noticed his appeal on December 17, 2014 (D.E. 416). In January 2017, the Court of Appeals affirmed the Defendant's convictions and remanded the case for the limited purpose of recalculating loss and resentencing. *Stein*, 846 F.3d at 1140.

On appeal, the Defendant raised several arguments regarding Mr. Tribou. As recounted in the Eleventh Circuit's opinion, on May 16, 2013, near the end of trial, the Defendant sought to admit into evidence a check displaying Mr. Tribou's name, along with that of his wife, and an email "from Signalife's CEO's administrative assistant, Ms. Jones, to Signalife's certified public accountant, Norma Provencio, which was forwarded to Signalife's corporate counsel, Mr. Woodbury. The subject line of the email said, '[Fwd: Emailing: Tribou Payment],' and in the body, Ms. Provencio noted, 'Attached is the $50K deposit on the 9-14 purchase order.'" *Id.* at 1148. The check that accompanied the exhibit the Defendant sought to admit "displayed the [Cardiac Hospital Management ("CHM")] purchase order number on the memo line, along with the words 'Tribou & Assoc.'" *Id.* The Eleventh Circuit explained:

> Mr. Stein sought to use this exhibit to support the inference that the September 14, 2007 CHM purchase order, which called for a $50,000 deposit, was legitimate. The government objected on the ground that the email's contents were hearsay. The district court sustained the objection and noted that Mr. Stein failed to authenticate

2

>   the document.  The court ultimately brokered the following stipulation: "On or about September 27th, 2007, an individual named Thomas Tribou paid Signalife $50,000 for goods he expected to receive."  Mr. Stein, through counsel, accepted this stipulation, which was presented to the jury.

*Id.*  Neither the Defendant nor the government called Mr. Tribou as a witness.

On appeal, the Defendant asserted that the government had misrepresented facts surrounding the $50,000 check to this Court and the jury.  The Eleventh Circuit explicitly rejected the Defendant's arguments regarding Mr. Tribou, the $50,000 check, and the government's statements related thereto, concluding:

>   First, the government represented that, based on interviews Mr. Tribou previously had given to SEC investigators, if Mr. Tribou were called to testify he would say that although he paid $50,000 to Signalife, he never received any product and was not a Signalife reseller.  Mr. Stein argues that this representation is inconsistent with statements Mr. Tribou made to SEC investigators admitting that he signed the CHM purchase order.
>
>   We reject this argument.  Mr. Tribou's statement to SEC investigators that he signed the CHM purchase order in no way indicates he would have testified that he actually received Signalife products.  Nor does it show that Mr. Tribou considered himself a Signalife reseller.  And, in any case, Mr. Tribou's SEC testimony was, as Mr. Stein himself characterized it, "extremely inconsistent."  On this record, we cannot conclude that the prosecutor spoke falsely when he told the district court how he believed Mr. Tribou would testify at trial.
>
>   Second, on the district court's request, the government privately telephoned Mr. Tribou and then relayed to the court and the defense the contents of that telephone call, which, according to Mr. Stein, included a false statement.  The government told the court that during the call Mr. Tribou never denied giving Signalife a $50,000 check, but he said that he was unfamiliar with Tribou & Associates and that he doubted he wrote the purchase order number on the check.  Mr. Tribou previously had told an SEC investigator that Tribou & Associates was his name "for consulting and everything on [his] personal taxes."  Thus, Mr. Stein argues, the government knew or should have known that Mr. Tribou was lying about his unfamiliarity with Tribou & Associates and yet relayed the lie to the court nonetheless.
>
>   We reject Mr. Stein's argument about the second representation for two reasons.  First, Mr. Stein contends not that the prosecutor misrepresented what Mr. Tribou told him on the call, but rather that the prosecutor should have flagged for the court the inconsistency between what Mr. Tribou said on the call and what he had said to SEC investigators in the past.  But it is well-established that "a prior statement that

3

>is merely inconsistent with a government witness's testimony is insufficient to establish prosecutorial misconduct."
>
>Second, even if false, the government's representation regarding Mr. Tribou was immaterial. A material misrepresentation occurs when there is any reasonable likelihood that the false testimony could have affected the judgment. Mr. Stein argues that the representation influenced the court's decision to sustain the government's objection on hearsay grounds to the admission of the check and the email. We disagree. The court sustained the objection before the government made the representations about Mr. Tribou. Moreover, the court based its ruling on hearsay grounds and Mr. Stein's failure to authenticate the documents rather than anything Mr. Tribou might say if called to testify. Mr. Stein fails to explain how the government's statements had any bearing on this evidentiary decision, which Mr. Stein expressly does not challenge on appeal.
>
>The third allegedly false statement occurred during the government's closing argument. The prosecutor told the jury that the CHM purchase order was "all made up" and "fake," statements Mr. Stein argues constituted misrepresentations because Mr. Tribou signed the purchase order and paid Signalife $50,000. But the prosecutor's statement and these facts are not mutually exclusive. The fact that Mr. Stein obtained Mr. Tribou's signature and check does not rule out the possibility that he also fabricated the purchase order. Indeed, the government made this argument in its rebuttal, stating that regardless of any signatures Mr. Stein obtained, the purchase orders were fake. Moreover, the record contained overwhelming evidence that Mr. Stein fabricated supporting documentation for the purchase orders and used arbitrary names for companies and individuals supposedly purchasing Signalife products. On this record, we cannot conclude that the government violated *Giglio* with its characterization of evidence about the CHM purchase order.
>
>In sum, Mr. Tribou's previous inconsistent statements to SEC investigators and the ambiguity regarding his role in signing the CHM purchase order and paying $50,000 to Signalife provide an insufficient basis for us to conclude that the government knowingly relied on materially false testimony.

*Id.* at 1148-50 (footnotes and internal citations omitted).

On May 20, 2016, while his appeal was pending, the Defendant filed a "Motion to Dismiss the Indictment or, Alternatively, Motion for New Trial and, Motion for Disclosure of Grand Jury Materials" (D.E. 479), in which he asserted a series of unsupported claims and allegations, many of which had already been rejected by this Court during trial and post-trial proceedings. Among his various arguments, the Defendant claimed that the government had changed its position on

4

appeal regarding whether the CHM purchase order was fraudulent. This "change in position," the Defendant asserted, constituted "new evidence" for purposes of Rule 33. On October 5, 2016, the Defendant filed a "Supplement" to his earlier Motion (D.E. 490), in which he claimed to have additional "new evidence" that the $50,000 check had been in the government's possession and that this somehow undercut the government's statements that the CHM purchase order was fraudulent. The government timely opposed both the Motion and the Supplement. The Defendant has now filed yet another "Supplemental Memorandum" (D.E. 529), again claiming that he has discovered "new evidence" relating to Mr. Tribou. Attached to this "Supplemental Memorandum" is an affidavit, purportedly signed by Mr. Tribou (D.E. 529-1).

## ARGUMENT

The Defendant's "Supplemental Memorandum" largely reiterates his earlier arguments regarding Mr. Tribou, which were explicitly rejected by the Court of Appeals, *Stein*, 846 F.3d at 1148-50, and which the government opposed in filings at D.E. 483, 491. As set forth below, nothing about the declaration filed with the Defendant's "Supplemental Memorandum" alters the analysis by the Eleventh Circuit, impacts the admissibility of the $50,000 check, or is otherwise material to issues before this Court. As this Court and the Eleventh Circuit have concluded, the Defendant's multiple attempts to re-litigate the same issues in his "Supplemental Memorandum" are without merit.

### I.  Legal Standard

Because "motions for a new trial are highly disfavored," the Eleventh Circuit has instructed courts to "use 'great caution' in granting a new trial motion based on newly discovered evidence." *United States v. Jernigan*, 341 F.3d 1273, 1287 (11th Cir. 2003). To succeed on a motion for new trial based on newly discovered evidence under Rule 33, the Defendant must establish that:

5

> (1) the evidence was discovered after trial, (2) the failure of the defendant to discover the evidence was not due to a lack of due diligence, (3) the evidence is not merely cumulative or impeaching, (4) the evidence is material to issues before the court, and (5) the evidence is such that a new trial would probably produce a different result.

*Id.* (internal quotation marks omitted). Put differently, a defendant must show that newly discovered evidence would "be likely to produce an acquittal on retrial." *United States v. Scrushy*, 721 F.3d 1288, 1308 (11th Cir. 2013). "Failure to meet any one of these elements will defeat a motion for a new trial." *United States v. Starrett*, 55 F.3d 1525, 1554 (11th Cir. 1995).

**II.     The Defendant's instant filing is improper and time-barred.**

As an initial matter, the Defendant's "Supplemental Memorandum," which does nothing more than re-hash arguments already rejected by this Court and the Eleventh Circuit, is time-barred and thus improper under Rule 33. Rule 33 provides, in relevant part, that "[a]ny motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty." Fed. R. Crim. P. 33(b). The Defendant filed his "Supplemental Memorandum" on May 16, 2018, nearly five years after the jury's verdict (D.E. 212), and nearly two years after the three-year time limit under Rule 33(b) had expired. As the Eleventh Circuit has held, "a defendant may not add new arguments in support of a motion for new trial by including them in an amendment filed after the time under Rule 33 has expired." *United States v. Angulo*, 132 F. App'x 240, 241 (11th Cir. 2005) (quoting *United States v. Custodio,* 141 F.3d 965 (10th Cir. 1998)); *see also United States v. Bagcho*, 227 F. Supp. 3d 28, 32 (D.D.C. 2017) ("[D]efendants may not avoid the time limits in Rule 33 by presenting new evidence in the guise of an amendment or a motion for reconsideration."); *United States v. Holt*, 170 F.3d 698, 703 (7th Cir. 1999) (rejecting defendant's efforts to amend or supplement Rule 33 motion because to do so would "defeat the express language of the rule, and would create a back door through which defendants could raise additional grounds for a new trial long after" the time limits in Rule 33 had expired).

Thus, the Defendant's "Supplemental Memorandum" is untimely and impermissible, and should not be considered by this Court.

### III. The Eleventh Circuit has already held that neither the government's statements about Mr. Tribou during the trial nor the circumstances surrounding Mr. Tribou's alleged purchase order were material.

Even if not time-barred, nothing in the Defendant's recent "Supplemental Memorandum" or the declaration constitutes newly discovered evidence that is "material" under Rule 33. Again, as a preliminary matter the government stands by its representations to this Court regarding contact with Mr. Tribou on May 16, 2013. And to the extent the declaration raises inconsistencies in Mr. Tribou's recollection and version of events relating to the CHM purchase order or his conversation with prosecutors on May 16, 2013, none of this evidence is "material" such that "a new trial would probably produce a different result," nor is it "newly discovered" under Rule 33.

First, nothing in the Defendant's "Supplemental Memorandum" is material to the question of the admissibility of the Tribou check or the accompanying email. The Eleventh Circuit explicitly rejected the Defendant's argument on this point, concluding that the government's statements regarding Mr. Stein's prior testimony did not amount to a false statement, and, in any event, "even if false, the government's representation regarding Mr. Tribou was immaterial" because this Court based its admissibility ruling "on hearsay grounds and Mr. Stein's failure to authenticate the documents rather than anything Mr. Tribou might say if called to testify. *Stein*, 846 F.3d at 1149. Nothing about Mr. Tribou's declaration changes this analysis or, in any way, impacts the admissibility of the $50,000 check.

More broadly, despite the Defendant's continued assertions that the CHM purchase order was "legitimate," the Defendant has not identified any evidence to support that proposition. Simply put, as the Eleventh Circuit squarely held, whether Tribou (or his wife or any business affiliate) wrote a check in the amount of $50,000 to Signalife has no bearing on whether the

7

purchase order for $1.98 million in Signalife products was, in fact, valid. Nothing in the record (or even in the Defendant's many motions on this topic) suggests that this purchase order was real. Thus, even if Tribou or an affiliate wrote a check with the intent to purchase products, that merely establishes that they *expected* to receive goods, not that the purchase order was legitimate. As the Eleventh Circuit explained, "the prosecutor's statement" regarding the falsity of the CHM purchase order and the fact that Mr. Tribou "signed the purchase order and paid Signalife $50,000" were not "mutually exclusive." *Id.* at 1149. Indeed, "[t]he fact that Mr. Stein obtained Mr. Tribou's signature and check does not rule out the possibility that he also fabricated the purchase order. Indeed, the government made this argument in its rebuttal, stating that regardless of any signatures Mr. Stein obtained, the purchase orders were fake." *Id.* at 1149-50.

Of course, the Defendant's argument ignores that substantial evidence supported the jury's conclusion that the Defendant engaged in a massive scheme to defraud investors, including the Defendant's efforts to bolster the fraudulent CHM purchase order with additional fraudulent documents. As the Eleventh Circuit observed, "[t]he record contained overwhelming evidence that Mr. Stein fabricated supporting documentation for the purchase orders and used arbitrary names for companies and individuals supposedly purchasing Signalife products." *Id.* at 1150. For example, as Martin Carter testified, the Defendant directed Carter to create and transmit fake documents to Signalife purporting to be from CHM. *See* Trial Tr. VI (D.E. 243) at 41-43, 111-15. The Defendant has wholly failed to establish how Mr. Tribou's declaration, even if taken as true, has any impact on the Eleventh Circuit's analysis which concluded that the $50,000 check was not material. Because the Defendant has failed to meet his burden under Rule 33, his motion must be denied. *See Starrett*, 55 F.3d at 1554 (denying Rule 33 motion where "ample evidence" aside from alleged "newly discovered" impeachment evidence supported defendant's convictions).

### IV. The Defendant has not identified any "newly discovered evidence" or exercised reasonable diligence.

In addition, the Defendant has not offered any "newly discovered" evidence that would entitle him to relief under Rule 33, or explained how his failure to "discover" this "evidence" for five years was the result of anything other than his lack of diligence. *See Jernigan*, 341 F.3d at 1287. As numerous Circuits have explained, "where a party fails to call a witness who was available during trial, the testimony of that witness cannot be considered newly discovered evidence." *See, e.g., United States v. Beasley*, 582 F.2d 337, 339 (5th Cir. 1978); *see also United States v. Taylor*, 702 F. App'x 836, 837 (11th Cir. 2017) ("[A] defendant cannot demonstrate due diligence if he was aware both of the existence of the person having newly discovered evidence and that the person had some possible connection to the investigation or commission of the crimes charged, yet failed to interview that person.").

Here, Mr. Tribou and his prior testimony was well-known to the Defendant months, if not years, before trial. As the Defendant has acknowledged, he received a memorandum memorializing an interview and Mr. Tribou's deposition testimony before the SEC in discovery. Mr. Tribou was included on the government's witness list, which was filed with the Court before trial (D.E. 184, 179). On the last day of trial, after extended discussions, the parties agreed to a stipulation that "On or about September 27th, 2007, an individual named Thomas Tribou paid Signalife $50,000 for goods he expected to receive." *See* Trial Tr. IX (D.E. 247) at 71. Thereafter, the Defendant elected not to call any additional witnesses to testify about the $50,000 payment, including Mr. Tribou.

In short, Mr. Tribou's statements are not "newly discovered evidence" under the law of this Circuit. Notably, the Defendant fails to explain how a declaration of an individual known to the Defendant before trial was "newly discovered" nearly five years after the jury's verdict, or how

9

the five-year delay was due to anything other than the Defendant's lack of diligence. The Defendant received an interview memorandum and Mr. Tribou's deposition testimony in September 2012, and was familiar enough with Mr. Tribou's prior statements to describe them to the Court as "extremely inconsistent." *Id.* at 55. Since his conviction in 2013, the Defendant has filed numerous motions relating to the $50,000 payment and Mr. Tribou, yet has failed to make any showing as to why, with diligence, he could not have discovered this "evidence" in the five years since trial. Thus, the Defendant's lack of diligence also forecloses his requested relief.

## CONCLUSION

The Defendant elected not to call Mr. Tribou at trial — likely because any testimony from Mr. Tribou would not have supported the Defendant's claim that the CHM purchase order was legitimate. Since trial, the Defendant has repeatedly mischaracterized Mr. Tribou's role and now seeks to offer what can only be described as misleading and one-sided "testimony" through a "declaration" allegedly obtained from Mr. Tribou five years after trial. The Defendant has repeatedly failed to demonstrate that any of his newly discovered "evidence" or "testimony" is remotely relevant, much less that it would result in his acquittal. Finally, because the issues in the Defendant's "Supplemental Memorandum" have already been resolved, there is no need for an evidentiary hearing. *See United States v. Muzio*, 663 F. App'x 845, 849 (11th Cir. 2016) (quoting *Scrushy*, 721 F.3d at 1305 n.30) ("An evidentiary hearing on a Rule 33 motion is not required where 'the record contained all the evidence needed to dispose of each of the grounds asserted as a basis for a new trial.'"). And, as the government has previously explained, D.E. 483, 491, the Defendant has not identified any basis for the alternative relief he seeks, including disclosure of

grand jury materials or dismissal of the indictment five years after his conviction. For all of these reasons, this Court should deny the Defendant's "Supplemental Memorandum."

Respectfully submitted,

SANDRA L. MOSER
Acting Chief, Fraud Section

BY:  _____/s/_____
MICHELLE PASCUCCI

Henry Van Dyck
Assistant Chief

Caitlin Cottingham
Michelle Pascucci
Trial Attorneys

Criminal Division, Fraud Section
United States Department of Justice
1400 New York Avenue, NW
Washington, DC 20005
Tel: (202) 307-2208 (Pascucci)
Fax: (202) 514-0152
Michelle.Pascucci@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 30, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will send notification to counsel of record.

                              Respectfully submitted,

                              SANDRA L. MOSER
                              Acting Chief, Fraud Section

BY:         /s/
                              MICHELLE PASCUCCI
                              Trial Attorney
                              Criminal Division, Fraud Section
                              United States Department of Justice