UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-80205-CR-MARRA

**UNITED STATES OF AMERICA**,

vs.

**MITCHELL J. STEIN,**
                **Defendant.**

**REPLY TO OPPOSITION TO SUPPLEMENTAL MEMORANDUM**

**I.      Preliminary Statement**

Faced with credible testimonial evidence establishing conclusively that its prosecutor made at least six false statements to this Court during the trial, the Government responds by presenting no evidence of any kind (*viz*, refusing to submit an affidavit from the prosecutor) to deny that the prosecutor affirmatively misled the Court in order to convict the Defendant.  Instead, the Government claims the prosecutor's false representations to the Court were about unimportant things and further claims that, for procedural reasons, the government does not wish to confront such material misrepresentations at this critical stage of the case.  Indeed, after its Solicitor General told the United States Supreme Court in December 2017 that this Court would have an opportunity to adjudicate the false evidence issues on any new record presented by the Defendant on remand -- thus justifying a Government-advocated delay in the Supreme Court's certiorari review -- the Government is now arguing the opposite to this Court in pushing for a ruling that there is no opportunity for this Court to address the record impropriety in this case after all.

To be sure, the law allows prosecutors latitude in obtaining convictions and then defending them on appeal.  But, as the foregoing conduct reveals, the current situation goes well beyond the

1

pale. And as set forth below, the Government has effectively waived its right to an evidentiary hearing on this matter. The only germane question is whether the indictment should be dismissed or whether, in the alternative, other lesser relief, such as a new trial or production of grand jury materials should be ordered.

## ARGUMENT

### II. The Government's Failure To Submit Evidence Is Dispositive

#### A. The Government Was Obliged To Present Evidence

The law in cases of prosecutorial misconduct proceeds on well-established premises pursuant to the recognized burden of proof and burden of producing evidence. Here, the Government had every opportunity, if, as it says, the prosecutor did not out-and-out lie to the Court during trial, to submit a signed affidavit – or at a minimum a signed statement of some kind – from the prosecutor saying just that. By not even attempting to submit evidence contrary to Mr. Tribou's unequivocal testimony, the facts set forth in Mr. Tribou's declaration are due to be treated as established as uncontradicted and unimpeached. There is no authority in any jurisdiction, state or federal, permitting the Government to rebut credible testimony of prosecutorial misconduct by presenting no evidence of any kind in opposition to that testimony. Rather, the hallmark of our adversarial justice system is that litigants confronted with adverse evidence need to proceed by producing competent *evidence* in response to legitimate and supported claims of wrongdoing. The law does not provide the Government with a special exemption in false evidence cases: indeed, in such cases the burden of production is amplified. *See, e.g., United States v. Burroughs*, 905 F. Supp.2d 297, 306 (D.C.D.C. 2012) (once the defendant "first make[s] a 'substantial showing'" of a false evidence violation, "the Government has [the] obligation to produce evidence on [the] issue"); *see also, c.f., United States v. Price*, 566 F.3d 900, 910 (9th Cir. 2009) (in analogous *Brady*

context, holding that "[o]nce the defendant produces such evidence, the burden shifts to the government to demonstrate that the prosecutor satisfied his duty").[1]

### B. Charting Prosecutor's False Statements

The Defendant has now proven that the prosecutor made at least six false statements to this Court during the trial. The following chart chronicles what has now been established for purposes of this case.

**Established Prosecutor False Statements To Court**

| No. | Prosecutor's False Statements | The Truth |
|---|---|---|
| 1. | The prosecutor's false statement that he actually placed a telephone call to Mr. Tribou between approximately 10:40 a.m. to 10:54 a.m. on May 16, 2013. | The call was never made. Despite Mr. Tribou's recollection that the calls he received in May, 2013 were from a female representative about travel arrangements, the Government has submitted no evidence even tending to prove that its prosecutor (who is male) made this one telephone call as he represented. (Tribou Decl., at ¶¶ 4, 6.) |
| 2. | The prosecutor's false statement that, in the alleged telephone call, Mr. Tribou "was to put it mildly, skeptical about the authenticity of the $50,000 check." | Mr. Tribou was not "skeptical" about anything regarding the authenticity of the check. Indeed, the check was authentic, was drawn by his wife Delores, and was cashed by Signalife. (Tribou Decl, at ¶¶ 2, 5.) |
| 3. | The prosecutor's false statement that, in the alleged telephone call, Mr. Tribou claimed he did not recognize the handwriting on the $50,000 check as his own handwriting. | As the Court apparently recognized when the prosecutor made this disingenuous misstatement during the trial, Mr. Tribou never made such a comment. The check was drawn by Delores Tribou. In other words, there was never an issue about Mr. Tribou's "handwriting" in the first place. (Tribou Decl., at ¶¶ 2, 5.) |

---

[1] The Government's open refusal to search the universe of documents is particularly egregious given the presence of Mr. Tribou's declaration. The Defendant's *Brady* motion should be granted. *See*, DE510, at 9 (requesting the Government to search the universe of documents responsive to, among other things, Stein's requests for information supporting the Government's post-conviction theory about the purported scheme and theories conflicting with new evidence).

3

| 4. | The prosecutor's false statement that, in the alleged telephone call, Mr. Tribou "indicated on the phone that he did not know how" his wife could have written the CHM purchase order legend on the check since Mr. Tribou claimed his wife "wasn't aware of a purchase order." | Mr. Tribou never indicated that he did not know about his wife Delores' preparation of the $50,000 check; indeed, Delores wrote the CHM purchase order legend on the check when she drew the check. Mrs. Tribou was indeed "aware of" the CHM purchase order before cutting the $50,000 check in compliance with that purchase order. (Tribou Decl., at ¶ 5.) |
|---|---|---|
| 5. | The false statement that the Tribous were not provided a copy of the CHM purchase order before cutting the $50,000 check. | Mr. Tribou obviously never made such a statement. The Tribous received the fully-filled-out CHM purchase order before cutting the check to Signalife for that purchase order. (Tribou Decl, at ¶¶ 2, 5.) |
| 6. | The false statement that Mr. Tribou told the prosecutor on the telephone that Mr. Tribou was "not familiar" with the name "Tribou & Associates" as listed on the notation portion of the check. | Mr. Tribou never made such a statement; indeed "Tribou & Associates" was a business name he used at the time. (Tribou Decl, at ¶ 6.) |

C.  The Government's Non-Evidentiary Excuses Are Insufficient

While the Government's decision not to present any statement by the prosecutor in the face of this record is understandable, it does not present any meaningful basis for denial of relief.[2] There is no reported decision in this or any other Circuit where a prosecutor's numerous false statements to the trial court have been established, but the Court nevertheless decides to follow the government's refusal to conduct the harmless error review mandated by controlling caselaw of the Supreme Court. As the government itself has "concede[d]" in the past, the standard in false evidence cases requires the government to prove that the false statements were "harmless beyond a reasonable doubt." *United States v. Bagley*, 473 U.S. 667, 680 n. 9 (1985) (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)); *Ford v. Hall*, 546 F.3d 1326, 1332 (11th Cir. 2008). In determining the proper disposition of this harmless error standard of review in this case, the Court

---

[2] The Government's failure to even attempt to rebut Tribou's affidavit may reflect its recognition of Tribou's substantial, well-regarded industry reputation. *See*, Exhibits A and B hereto.

4

should begin its analysis by asking what would have transpired at trial if the Court had learned that each and every statement made to it by the prosecutor about the alleged Tribou telephone call was false. The Court's sound insistence on candor belies any conclusion that it would have accepted serial misrepresentations by the prosecutor. Given this reality, the Government cannot believe now that the jury would have reacted any differently than would this Court in response to these revelations.

Given its legally and factually precarious position and inability to meet the Tribou declaration head-on with a counter-affidavit, the Government resorts to misplaced factual and procedural arguments that are demonstrably ill-considered and inapposite. For example, the Government repeatedly claims that "nothing about Mr. Tribou's declaration … impacts the admissibility of the $50,000 check." (DE530, at 7; *see also id*. ("nothing in the Defendant's 'Supplemental Memorandum' is material to the question of the admissibility of the Tribou check ..."). This claim is frivolous, because it can no longer be denied that the check was both authentic and was delivered as down-payment for the CHM purchase order, then successfully cashed by Signalife. (*See also* Stein's first Supplement to the pending Motion to Dismiss Indictment, DE490, and DE490-1 (Government counsel arguing before the Eleventh Circuit that only because it "didn't recall the check at all [during trial], ... it didn't agree to its admission [into evidence].").)

Even giving the Government every benefit of the doubt, the "admissibility" of Tribou's $50,000 check could not legitimately still be called into question. The Government's claim otherwise is simply baseless. Indeed, this Court commented during the trial that if the check were actually authentic it would opt to admit it and "let Mr. Stein establish what he wants to establish." DE247, at 52. *See Williams v. United States*, 458 U.S. 279, 284–86, 102 S.Ct. 3088 (1982) (a check

is not hearsay because it is "not a 'statement' at all"); *United States v. Davis*, 596 F.3d 852, 857 (D.C. Cir. 2010) ("checks … are not hearsay").

The Government devotes about half of its opposition to quoting verbatim a lengthy excerpt from the Eleventh Circuit decision, but it is that very excerpt which underscores the Defendant's right to relief now. The Eleventh Circuit made it clear that it only rejected the *Napue*[3] claims based on the record before it (*United States v. Stein*, 846 F.3d 1135, 1149, 1150 (11th Cir.) ("on this record")), and indeed the United States Solicitor General asked the Supreme Court to defer its certiorari consideration of this case until any *new* record could be evaluated by this Court on remand. *Stein v. United States of America*, 2017 WL 5158038 (Brief for the United States in Opposition) (November 6, 2017) (hereafter "Solicitor General Brief"), at 24. Given the Solicitor General's plea, the Government's attempt now to block this Court from considering the new record presented by the Defendant on remand is both unjustified and telling.

Likewise, the Eleventh Circuit accepted on the prior record the Government's false narrative about there still being a "possibility that [the Defendant] ... fabricated the [CHM] purchase order" (*Stein*, 846 F.3d at 1149-50), however, as the Eleventh Circuit and Solicitor General recognized, that ruling was premised expressly on the status of the record presented to the court at the time. The Eleventh Circuit's acceptance of the "possibility" that Defendant fabricated the CHM purchase order derived from the Government's actions following the conviction. Indeed, those machinations even convinced the Eleventh Circuit that the CHM purchase order was not a "legitimate" document. *Id*. at 1141, 1150. The record now demonstrates that the "possibility" outlined by the Eleventh Circuit has now turned into an *impossibility*. The Tribou declaration conclusively proves that this was an authentic, binding and legitimate purchase order, signed by

---

[3] *Napue v. Illinois*, 360 U.S. 264, 271, 79 S.Ct. 1173, (1959).

Mr. Tribou and funded by his wife after receipt of the fully filled-out purchase order form shortly after Tribou's execution of it. That the Government continues even now to argue that the Defendant "might have fabricated the purchase order" despite Mr. Tribou's confirmation of its *bona fides* is exactly the kind of continuing misconduct meriting not only order for a new trial but even dismissal of the case and other sanctions. *See, e.g., United States v. O'Keefe*, 825 F.2d 314, 318 (11th Cir. 1987) ("It is well established that federal courts have the inherent power to dismiss an indictment if a sufficiently egregious case of [prosecutorial] misconduct is shown."); *United States v. Holloway*, 778 F.2d 653, 655 (11th Cir. 1985) (same); *see also*, DE479 (Stein's pending Motion to Dismiss Indictment).

### D. The Government's Procedural Arguments Lack Merit

The Government's procedural arguments fare no better. For example, the Government cites general caselaw holding that new arguments cannot be added to a Rule 33 proceeding after expiration of three years. But the Government neither rebuts nor even discusses the caselaw cited by Defendant approving of evidentiary submissions that merely identify another instance of misconduct presented in a pending, timely Rule 33 filing. *See*, e.g., Supplement, DE529 at 2-3; DE490, at 1-2 (Stein's first Supplement to pending Motion to Dismiss Indictment).

More importantly, the Government completely ignores the well-established exceptions to the mandate rule directing in the circumstances of this case that the existing Eleventh Circuit decision and this Court's prior rulings no longer bind this Court given the new evidence presented in the Supplement. *See, e.g., United States v. Ormond*, 456 Fed. Appx. 866 (11th Cir. 2012) (holding that prior appellate decision not binding on district court given the presence of new evidence).

And lastly, the Government makes much ado about the limitations of utilizing newly discovered evidence; however, newly discovered evidence is neither the standard on remand where

the mandate rule is inapplicable nor is the newly discovered evidence standard even applicable in this Circuit to cases involving claims of false evidence. *See*, *e.g.*, Supplement, DE529 at 12 (citing *United States v. Rivera Pedin,* 861 F.2d 1522, 1526 (11th Cir. 1988) (newly-discovered evidence standard "is not applicable, however, where the Government's case included false testimony and the prosecution knew or should have known of the falsehood") (citation and quotation marks omitted).).

In sum, the Government's attempt to persuade this Court to forego consideration of the new record in adjudicating Defendant's false evidence claim is directly contrary not only to controlling caselaw in this Circuit, but also, and more importantly, to its Solicitor General's recent plea to the Supreme Court that the district court ---this Court---should be next to consider the matter, before any further appellate review is undertaken.

E.  The Motion Should Be Granted For Additional Reasons

As Stein argues in his pending Motion to Dismiss Indictment, to which this second Supplement and Stein's first Supplement relate (DE479; DE490), the indictment should be dismissed because the new evidence as well as the Government's theories and admissions made on appeal in the Eleventh Circuit suggest that the grand jury either issued the indictment against Stein based on false evidence or that Stein was tried on a theory that was never submitted to or approved by the grand jury. Substantial error in grand jury proceedings is deemed "fatal" where the defendant is "convicted on a charge the grand jury never made against him." *Stirone v. United States*, 361 U.S. 212, 219, 80 S. Ct. 270, 274 (1960) (dismissing indictment). In other words, if the prosecution did not fail to "recall" having Tribou's check in its possession and presented to the grand jury its alternative theory that the scheme began much later and for different reasons – "when Signalife could not ship any product to Tribou" – dismissal of the indictment is warranted (DE479, at 9-10).

Alternatively, the indictment should be dismissed in the only possible alternative situation in which the prosecution presented to the grand jury the false evidence that the CHM purchase order "never happened." That theory entirely conflicts not only with the Government's recent claims that "Signalife could not ship" the product to Mr. Tribou, but also with Mr. Tribou's now unrebutted statements that he had the purchase order in his possession when he relayed the purchase order number to his wife to prepare the down-payment check for the CHM purchase order (DE529-1, at 1 (paragraphs 2, 5), and at 3, 7). The name "Cardiac Hospital Management" next to the signature does not somehow render the purchase order fraudulent and it did not cause Mr. Tribou to be confused or hesitant about making the down payment. In the alternative, where the prosecution falsely represented to the grand jury that the purchase order "never happened" and was entirely "made up," the indictment is subject to dismissal. *See, e.g.*, *United States v. DiBernardo*, 775 F.2d 1470, 1475 (11th Cir. 1985) (dismissal of indictment warranted if "prosecutor intentionally placed false testimony before the grand jury").

Stein respectfully submits that, based on the new, uncontroverted record before the Court, one of the foregoing two errors necessarily occurred in the grand jury proceedings, both of which would be fatal to the indictment. Any remaining doubts would be resolved by disclosure of the grand jury material in lieu of the Court's proceeding to dismiss the indictment at this time.

## CONCLUSION

For the foregoing reasons and the reasons set forth in Stein's pending pleadings, the indictment should be dismissed or a new trial should be ordered. Alternatively, the grand jury materials should be disclosed, Stein's pending *Brady* motion should be granted, and an evidentiary hearing should be held.

Dated: June 6, 2018                           Respectfully Submitted,

RICHARD C. KLUGH
Richard C. Klugh, P.A.
25 SE 2nd Avenue, Suite 1100
Miami, FL 33131-1674
Phone: 305-536-1191
Fax: 305-536-2170
Email: rklugh@klughlaw.com

By:                /s/
   Richard C. Klugh, Esq.
   Florida Bar No. 305294

DAVID S. HARRIS
Law Office of David S. Harris
6431 SW 39th Street
Miami, Florida 33155
Telephone: 786-577-0434
Facsimile: 786-577-0425
E-mail: davidsharris.law@gmail.com

By:                /s/
   David S. Harris, Esq.
   Florida Bar No. 112739

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 6, 2018, I electronically filed the foregoing documents with the Clerk of the Court and all counsel of record using CM/ECF.

By: /s/
David S. Harris, Esq.