| | |
|---|---|
| **From:** | John Woodbury [john@jmw-law.com] |
| **Sent:** | Saturday, May 3, 2008 2:40 PM |
| **To:** | 'Rowland' |
| **Subject:** | RE: Letter to the Board of Directors of Signalife, Inc. |
| **Attachments:** | image001.jpg |
| **Categories:** | Signalife Mail |

Rowland –

For the past several years, including the most recent filing of the YA Global SEDA SB-2 in January 2008 to which McMahan is apparently referring, SGN has reported ARC holding a total of 22,605,800 shares, broken down between shares held outright by ARC and those transferred to its blind revocable trusts. I have reviewed the disclosures, including Signalife's stock transfer records, and find no reason to doubt that this has remained the case with respect to the SB-2 cited, as well as afterwards. In other words, McMahon has no basis in asserting that ARC inaccurately reported that the total of shares held by ARC or transferred to blind revocable trusts did not total 22,605,800 shares.

I also note that someone contacted Amy Merrill of Standard Transfer &Trust Co. apparently several days earlier this week claiming or masquerading as being a "part" of ARC for the purpose of getting information relative to ARC's holdings. Amy informed me that she gave some information to the person, but required them to get further approval of Tracy Jones in order to get the further detail requested. A person then called Amy back claiming to be ARC's attorney, and demanded the further information, which Amy apparently did not provide. I have asked Amy to provide me with the details of her conversations with these people. I have also instructed Amy that she may only talk about stockholdings either to me or senior SGN officers of whom she has personal knowledge by way of voice, and that she should check with me first if in doubt as to their identity.

I have also discussed this event with both Mitch and Tracey Stein and they each stated that they were not aware of these contacts nor have they authorized anyone to contact the transfer agent . Based upon McMahon's explicit statement that he and his associates have "reviewed" ARC's holdings and explicit admission that they have "obtained information from the company's stock transfer agent", it appears that McMahon and associates were the ones calling Amy. While I have not yet investigated this matter in depth, it appears that there may be various violations of civil and potentially criminal privacy laws relating to ARC by both McMahon and his associates in making such inquiries. I refer you to the case of Hewlett Packard last year when investigators for that company falsely claimed to be a director under investigation when calling the phone company to get his telephone records. I would ordinarily suggest that the board send a letter to McMahon stating that it has reviewed the matter of SGN's disclosure and found that ARC did indeed directly or indirectly held the 22,605,800 shares between itself and its blind revocable trusts as of the date of the disclosure referenced. As to the breach of ARC's privacy, this matter should be further investigated and appropriate action taken, although I would let ARC first determine which action it would like to take before SGN goes ahead with any action (including letting McMahon know about the conversations with Amy) given the fact that the injured party is ARC.

---

**From:** Rowland [mailto:rowlandperk@earthlink.net]
**Sent:** Friday, May 02, 2008 8:20 PM
**To:** John Woodbury
**Subject:** Letter to the Board of Directors of Signalife, Inc.
**Importance:** High

**Dear John,**

**I am particularly interested about his statement in paragraphs fifteen (15) and sixteen )(16) where he refers to the ARC stock holdings and his speaking, or having someone speak, to the stock Transfer Agent regarding a misstatement of the number of shares held by ARC.**

**What do you advise as the proper response from the 'Board' to this letter?**

**Rowland**

---

**From:** Ron McMahan [mailto:rmcmahan@mainstfs.com]
**Sent:** Friday, May 02, 2008 9:41 AM
**To:** lowell@harmison.org; jennifer@jenniferblackassociates.com; charrison@bouldercityhospital.org; windom@comcast.net; jjohnson@worlddoc.com; rowlandperk@earthlink.net
**Cc:** 'Stephen Blevit'; stuart@riverlp.com
**Subject:** Letter to the Board of Directors of Signalife, Inc.
**Importance:** Low

                     **William R. Mc Mahan**

                     **Seal Beach, Ca.**

The Board of Directors of Signalife Inc.
Dr. Lowell T. Harmison
Chairman and CEO
Signalife, Inc.
10900 Wilshire Blvd. Suite 500
Los Angeles, Ca., 90024

Dear Lowell,

I trust this correspondence finds you in better health and spirits than when we spoke last week. I am writing to you and the Board of Directors (the "Board") in response to the Draft Complaint and attached letter from Signalife, Inc. ("the Company') I received April 29, 2008.

I have also attached for ease and accuracy of reference various examples of communication between the Company, its employees and representatives, and myself. These include correspondence I received dated April 23, 2008 from the Company's Counsel Luan K. Phan, (this letter has attached a copy of the original correspondence I sent to the Company dated April 21, 2008 and the results of a nationwide litigation search for the name William R. Mc Mahan), e-mail correspondence I received from Mitchell J. Stein representing himself as Outside Counsel for the Company dated April 23, 2008, and e-mail correspondence sent by Mr. Stein to Ryan Rauch on behalf of you and of the Company dated April 10, 2008.

These documents provide background for my informal response to the Draft Complaint previously referenced, as well as to provide you and your colleagues on the Board with a sense of the unprofessional, aggressive, and unnecessarily confrontational nature of the correspondence between certain representatives of your Company and me. Further, should you or other Board members so desire, I can and will provide you with significant quantities of correspondence of a similar nature.

To summarize my position, I regret my interaction with you, the Board of Directors of Signalife, and Mr. Stein has deteriorated to the point whereby you have collectively felt compelled to not only threaten me on numerous occasions with litigation and financial ruin, but to also pass false and misleading documentation to third parties concerning litigation associated with individuals of my same name, as well as to make false and demeaning statements to numerous third parties regarding my personal and professional background (both in writing and in conversation). These lurid allegations, and well as the false and demeaning statements made by of representatives of Signalife regarding me, are well-documented by myself, numerous third parties, and my legal counsel.

As confirmed in my original letter (via e-mail) to Mr. Stein dated April 21, 2008, I am a shareholder of the Company. I have certain concerns regarding various issues at the Company. These concerns are clearly delineated in this letter and are shared by a large number of Company shareholders.

When this letter was delivered to Mr. Stein I anticipated he would review this letter with you and other members of the Board and that ultimately I and my associates would be provided the opportunity to speak to the Board of Directors regarding our proposal. What ensued was quite different from what I anticipated, and quite different from any interaction I or any of my associates have ever experienced during our professional careers.

Upon receipt of my correspondence, Mr. Stein immediately engaged me in a series of extremely confrontational and aggressive correspondence via e-mail, examples of which are attached (previously referenced). I was further surprised when I was informed by third parties on April 22nd that Mr. Stein was circulating the results of a nationwide litigation search he conducted in my name, and attributing to me over 100 individual examples of litigation across the United States without any verification or confirmation.

Upon being informed of this, I spoke that same day to John Woodbury regarding this document, and informed him of the inaccuracy of this list and that I am in fact currently involved in one lawsuit (regarding a dispute over pre-paid rents with a former tenant). Further, that evening you and I spoke for approximately two hours. Our conversation was cordial, productive, and highly informative regarding certain matters concerning the Company.

Given the nature of our conversion and based on my statement to Mr. Woodbury, I was thus extremely surprised to receive the following day (April 23rd) a threatening and professionally demeaning letter from Luan K. Phan with the litigation search results again attached. However, my surprise turned to concern when despite no further contact with anyone from the Company (since April 23rd) I received your Draft Complaint on April 29th.

As you know, the Company's allegations against me have elevated from apparent concern regarding litigation associated with someone sharing my name and my professional qualifications, to allegations of short selling of the Company's securities, defamatory statements regarding you, insider trading, etc.

**To be perfectly clear, each and every allegation contained in your Draft Complaint regarding me is false and has no basis in fact.**

It is obvious to me that this document is an attempt to intimidate me and to harm my personal and professional reputation, rather than deal with the corporate issues I outlined in my letter on April 21st. Further, my refusal to disclose to Mr. Stein the names of shareholders to whom I have spoken during this process appears to have particularly infuriated Mr. Stein, you, and the other Board members.

You obviously realize I am under no legal obligation to disclose this information, or the number of shares I own as long as I am in compliance with relevant SEC regulations. However, you, Mr. Stein and the other Board members are prohibited from making blatantly false allegations regarding me, whether or not pursuant to a contemplated lawsuit, and whether or not you collectively believe yourselves to be protected pursuant to various confidentiality laws.

Lowell, I believe before proceeding with this lawsuit you and the other Board members of Signalife should carefully consider your purported course of action and thoroughly review the entire history of interaction and correspondence between the Company and me. The contemplation of suing a shareholder of a public company for sending a letter to the Board of Directors, or basing a lawsuit (funded by shareholder capital) on spurious and obviously false allegations designed only to intimidate and silence shareholder concerns is a serious step with potentially significant financial and professional ramifications for the Officers and Directors of any public company.

Last, I would like to address the actions of Mr. Stein regarding Signalife and the nature of his interactions with me and other shareholders of the Company. To clarify, I understand he is not a shareholder, but purports to represent his wife's shareholdings held by ARC Financial Group, LLC, ("ARC"). I also understand he from time to time serves as Outside Legal Counsel for Signalife. In my opinion, Mr. Stein's continued malicious and abusive behavior towards employees, (as evidenced by the attached e-mail correspondence he sent to Ryan Rauch), coupled with his complete disdain for the rights or concerns of the Signalife shareholders (there are voluminous examples of this), places you and your fellow Directors at serious risk and has significantly impacted the current value of Signalife.

Further, my associates and I have undertaken a thorough review of Company's SEC filings relating to the shareholdings of ARC. Information we have obtained from the Company's Transfer Agent would suggest there are significant discrepancies between the Company's historical and most current SEC filings and the Transfer Agent Register for ARC. These discrepancies include the amount of shares currently owned by ARC. As I am sure you are aware, the Board has a duty to ensure its SEC filings are accurate. Failure to do so could result in substantial personal liability for all Officers and Directors of the Company.

These matters are identified here not to suggest intentional misrepresentation of ARC's shareholding by the Company or Mr. Stein, but to shed light on the complex nature of SEC reporting, and, should the Board so desire, to provide further clarity to the Board and shareholders of the Company concerning ARC's shareholdings and significant historical share transactions.

Lowell, it is my sincere hope that this correspondence initiates a rational process whereby the Board of Directors can address any concerns they may have regarding my (and my associate's) intentions, professional backgrounds and qualifications, activities regarding Signalife, and any other legitimate concerns or questions you or they may have.  Furthermore, I believe this process should include an opportunity for me and other shareholders of the Company to directly address our concerns to the Board of Directors (regarding various operational and strategic matters of the Company).  Last, I want to reiterate that the allegations contained within your Draft Complaint are false, and most importantly, that I have taken no actions detrimental to the shareholders of Signalife.

It is important to amicably resolve our differences, or this dispute will rapidly involve far more parties than simply me, you, and the Board of Directors of Signalife.  Remember there are hundreds if not thousands of shareholders in the Company and each and every one of them have the same rights as the largest shareholder, and should thus be treated with commensurate respect.

I look forward to speaking to you and the other Board members in the near future.

Yours Truly,

Ron Mc Mahan
(800)750-5363 Ex. 140
(562)446-4345 Fax
www.mainstfs.com