```
 1                  UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
 2
                      Case No. 11-80205-CR-KAM
 3
    UNITED STATES OF AMERICA,    )
 4                               )
         GOVERNMENT,             )
 5                               )
         -v-                     )
 6                               )
    MITCHELL J. STEIN,           )
 7                               )
         DEFENDANT.              )   West Palm Beach, Florida
 8                               )   August 29, 2018
    _____ )
 9

10              VOLUME 3 - PAGES 1 - 51

11         TRANSCRIPT OF RESENTENCING PROCEEDINGS

12        BEFORE THE HONORABLE KENNETH A. MARRA

13             UNITED STATES DISTRICT JUDGE

14

15   Appearances:

16   (On Page 2.)

17

18   Reporter               Stephen W. Franklin, RMR, CRR, CPE
     (561)514-3768          Official Court Reporter
19                          701 Clematis Street
                            West Palm Beach, Florida  33401
20                          E-mail:  SFranklinUSDC@aol.com

21

22

23

24

25
```

```
 1   Appearances:

 2   FOR THE GOVERNMENT          Michelle Pascucci, ESQ.
                                 Securities and Financial Fraud
 3                               Unit, Fraud Section
                                 Criminal Division
 4                               U.S. Department of Justice
                                 1400 New York Avenue, Northwest
 5                               Washington, DC 20530
     -and-
 6                               Caitlin R. Cottingham, ESQ.
                                 Securities and Financial Fraud
 7                               Unit, Fraud Section
                                 Criminal Division
 8                               U.S. Department of Justice
                                 1400 New York Avenue, Northwest
 9                               Washington, DC 20530

10   FOR THE DEFENDANT           Benjamin Gruenstein, ESQ.
                                 Cravath, Swaine & Moore, LLP
11                               Worldwide Plaza
                                 825 Eighth Avenue
12                               New York, NY 10019
     -and-
13                               Alex Delnido, ESQ.
                                 Cravath, Swaine & Moore, LLP
14                               Worldwide Plaza
                                 825 Eighth Avenue
15                               New York, NY 10019
     -and-
16                               Richard C. Klugh, Jr., ESQ.
                                 25 Southeast 2nd Avenue
17                               Suite 1100
                                 Miami, FL 33131
18   -and-
                                 David S. Harris, ESQ.
19                               6431 Southwest 39th Street
                                 Miami, FL 33155
20
                                     *  *  *  *  *
21

22

23

24

25
```

```
1           (Call to the order of the Court.)

2           THE COURT:  Good morning, everyone.  Please be

3    seated.

4           Okay.  We are back on the record in the United

5    States versus Mitchell Stein, Case Number 11-80205-CR-MARRA.

6           May I have counsel state their appearances.

7           MS. PASCUCCI:  Good morning, Your Honor.  Michelle

8    Pascucci and Caitlin Cottingham for the United States.

9           THE COURT:  Good morning.

10           MR. GRUENSTEIN:  Good morning, Your Honor.  Benjamin

11   Gruenstein and Alexander Delnido from Cravath, Swaine & Moore

12   for Mr. Stein.

13           MR. KLUGH:  Good morning, Your Honor, Richard Klugh

14   also for Mr. Stein.

15           THE COURT:  Good morning.

16           MR. HARRIS:  Good morning, Your Honor, David Harris

17   for Mr. Stein.

18           THE COURT:  All right.  We are here to complete the

19   sentencing.  I issued rulings yesterday on I think all of the

20   outstanding matters, particularly the loss figure, the number

21   of victims, which were issues that I needed to consider on

22   remand.  I think we now have a guideline calculation, but I --

23   I may have made a statement in the order yesterday that I want

24   to clarify where I said I was -- all the other guideline

25   enhancements that were previously entered on the original
```

1   sentencing I would reaffirm, other than the ones that I

2   specifically addressed.  And just for clarification purposes,

3   I believe at the original sentencing, since we're using a

4   different guideline manual, there was a six-level increase for

5   the victims, and now that's changed.  So we're down to a

6   two-level increase.  So I just want to make sure everyone's

7   clear that it's a two-level increase for the number of

8   victims, not six.

9          Does everyone agree with that?

10         MS. PASCUCCI:  Yes, Your Honor.

11         MR. GRUENSTEIN:  Yes, Your Honor.

12         THE COURT:  Okay.  So based upon my rulings, I

13  believe we're at a offense level of 37, Criminal History

14  Category 1.

15         And so, again, I understand that there are probably

16  objections to my rulings which you'll be able to preserve

17  after.  But based upon my rulings, is everyone in agreement

18  that our advisory guideline range is an offense level 37,

19  Criminal History Category 1, 210 to 262 months?

20         MS. PASCUCCI:  Yes, Your Honor.

21         MR. GRUENSTEIN:  Yes, Your Honor.

22         THE COURT:  Okay.  The other thing I wanted to

23  articulate, which I probably should have included in my order

24  yesterday but didn't, but just for the record, to the extent

25  that I was relying upon Dr. Becker's event study for the basis

1    of -- the primary basis of the guideline, the loss to

2    investors, I want to clarify that I believe Dr. Becker's event

3    study properly accounted for reliance by investors and also

4    properly accounted for intervening events that may have

5    contributed to the investor losses.  So I didn't specify that

6    in my order, but I believe that to the extent that the court

7    of appeals mandated that I consider those factors in

8    determining the investor losses, I believe Dr. Becker's event

9    study did properly and adequately account for those factors.

10          All right.  So is there anything else anybody wants

11   to discuss about the guidelines before we get to 3553 factors

12   and other issues?

13          Yes, Mr. Klugh.

14          MR. KLUGH:  Your Honor, just the Court mentioned its

15   order denying the motion to dismiss.  In the order, the Court

16   made reference to the original motion and the initial filing

17   supplementing it.  There was a second supplement filed at

18   docket 529 that's not expressly referenced in the order.  It's

19   my assumption and understanding that the Court includes that

20   as part of its consideration in denial, but I just wanted to

21   make sure for the record the Court was also denying the

22   supplement filed at docket entry 529.

23          THE COURT:  I assumed the supplement was a

24   supplement to a previously filed motion; was not a new motion.

25   Am I correct?

 1          MR. KLUGH:  I think that is a fair understanding,

 2   Your Honor.

 3          Thank you.

 4          THE COURT:  So that's why I didn't specifically list

 5   it as a separate motion.

 6          But, yes, you're correct that any of the

 7   supplemental filings that you were -- that the defendant made

 8   in connection with motions to dismiss, motions for new trial,

 9   I denied all of those.

10          MR. KLUGH:  Thank you, Your Honor.

11          MS. PASCUCCI:  And, Your Honor, the Government has a

12   brief -- would you prefer that I speak from here or from the

13   podium?

14          THE COURT:  Wherever you're more comfortable, as

15   long as we can hear you.

16          MS. PASCUCCI:  Okay.  Thank you, Your Honor.

17          Just very briefly as a preliminary matter, the

18   Government understands that the order has found loss of

19   1.029 million.  The Government would ask that whatever

20   sentence is found today, there is an alternative finding that

21   it is supported by a gain of 5.378 million.

22          As noted at the sentencing, this gain is supported

23   by trial evidence, evidence of coconspirators Martin Carter,

24   Ajay Anand; the tracing analysis at the trial from the case

25   agent, George Clark; and at the most recent sentencing Peter

1  Melley went over this evidence and additional evidence,

2  including the Luxembourg accounts and the C. Roberto and D.

3  Clemens Trust.

4         The Government also notes that the Eleventh Circuit

5  did suggest in its opinion that gain would be a proper

6  alternative measure here.  Again, the Court under -- the

7  Government understands any sentence will be based on loss, but

8  simply that there is an alternative finding based on gain.

9         THE COURT:  All right.

10         MR. GRUENSTEIN:  Your Honor, if I may, these are

11  issues that I addressed previously at the hearing as to why

12  gain was not substantiated by the record, why alternative

13  findings would have to be made because the findings on gain

14  had not yet been made.  But I think the key point here is that

15  you look to gain when loss cannot be reasonably estimated.

16  Your Honor has found loss.  Your Honor has reasonably

17  estimated loss based on your findings.  So under the

18  guidelines, there is no basis to look to gain.

19         THE COURT:  I agree with the defense.  I think the

20  Eleventh Circuit was telling me if I don't believe I can come

21  to a loss amount, that I could alternatively look to gain.

22  But since I believe that there's sufficient evidence in the

23  record to support the loss amount that I arrived at, I think

24  there's no basis to go to a gain analysis.

25         I'll deny your request.

1          MS. PASCUCCI:  Thank you, Your Honor.

2          And I just have one additional preliminary

3    housekeeping matter to raise before we delve into the

4    sentencing, and that's simply that very recently the defense

5    filed a notice, I believe it's docket entry 560, which

6    contains names of victims, quotes from victim impact

7    statements and summaries of victim impact statements.  The

8    Government has asked that the defense redact the names of the

9    victims in this filing under the Crime Victims' Rights Act.

10         THE COURT:  Is there any objection to that?  Have

11   they objected to doing that?

12         MR. GRUENSTEIN:  Your Honor, this has been the

13   subject of some back and forth e-mails between the Government

14   and Mr. Harris.  Mr. Harris has just been requesting the basis

15   for that.  The cases that we've been getting relate to sex

16   offenders.  I do think that if we could have, at some point

17   today, five minutes to talk to the Government, I think this

18   can all be resolved.

19         THE COURT:  All right.  Is there any reason why the

20   victims' names need to be publicly disseminated?

21         MR. GRUENSTEIN:  Your Honor, there are arguments

22   that we made about certain victims and whether they were --

23   filed victim impact statements and comparing them to the

24   losses.  I think what we need to work out, and I'll propose to

25   the Government, is that the unredacted versions are filed

1    under seal so that there is a record of it.

2           THE COURT:  I have no objection to that, and that

3    seems to me to make sense.

4           MR. GRUENSTEIN:  And then to the extent there's ever

5    any dispute as to who's who in the court of appeals, then I

6    think for purpose of the court of appeals, that would have to

7    then be unsealed.  But I think we can deal with that at that

8    time.

9           THE COURT:  That's -- it seems to me that's

10   reasonable that they should be redacted, and the original can

11   be put under seal and with the names there and for appellate

12   purposes.

13          Can you work that out?

14          MS. PASCUCCI:  Yes, Your Honor.  Thank you.

15          And the Government would have no objection to that

16   arrangement.

17          THE COURT:  Okay.  All right.  So, again, you'll be

18   able to preserve your objections to my rulings at the end of

19   the sentencing.

20          So anything else on guideline issues or motions

21   before we get into 3553 issues?

22          MS. PASCUCCI:  No, Your Honor.

23          MR. GRUENSTEIN:  No, Your Honor.

24          THE COURT:  Okay.  All right.  So I know the

25   Government has already indicated they want me to reimpose the

1   204-month sentence.  Did you want to add anything else at this

2   point, or do you want to wait until you've heard from the

3   defense?

4         MS. PASCUCCI:  Your Honor, we do have our arguments

5   under 3553(a) prepared.  We would be happy to go first if the

6   Government (sic) would prefer.  Or if the defense would prefer

7   to go first.

8         MR. GRUENSTEIN:  That's fine, Your Honor.

9         THE COURT:  Okay.

10        MS. PASCUCCI:  Turning to the 3553(a) arguments, the

11  first thing that the Court is directed to consider is the

12  nature and circumstances of the offense, as well as the

13  seriousness of the offense.  And as the Court well knows,

14  there has much argument related to the loss number in this

15  case, but one thing that has not changed since the first

16  sentencing, even if the loss number has, is the egregiousness

17  of the conduct that underlied the 14 counts underlying the

18  defendant's convictions, and that conduct included the

19  dissemination of false press releases to the investing public

20  that falsely touted millions of dollars in sales that were

21  completely unsupported by fact.  And it would have been bad

22  enough to mislead investors, but that simply wasn't all.  In

23  addition to disseminating these press releases, the defendant

24  orchestrated a scheme creating false documents, false

25  companies and false people supporting these press releases and

1    the purchase orders thereunder, and he directed his

2    coconspirators, Ajay Anand, Martin Carter, both of whom

3    testified at trial, to create false documents to support these

4    press releases.  In fact, Martin Carter testified at trial

5    that he was sent to Japan, where Cardiac Hospital Management,

6    one of these fake companies, was having products sent, to send

7    back a letter using gloves so as not to leave fingerprints.

8            In short, this was a highly elaborate scheme to

9    disseminate false information to the market.

10           And in addition to deceiving investors, the

11   defendant deceived SignaLife, as well.  And he did this as he

12   held a position of trust there as an attorney.

13           And people not only trusted him, they feared him.

14   And the Court may recall the testimony of Tracy Jones from

15   trial, where she recalled that when certain employees left the

16   company, the defendant had told her that he would sue them to

17   ensure they used every penny of their savings fighting his

18   lawsuits.

19           While holding this position of trust, he essentially

20   used SignaLife as an ATM.  He arranged for false consulting

21   agreements with his coconspirators, and when he needed money,

22   he had SignaLife issue shares to these individuals and then by

23   and large had those shares go back to him.  And these shares

24   went to him via blind trust, which he in fact controlled,

25   despite information from these trusts indicating that that was

1    not the case.

2            And, again, the scheme did not end there.  It

3    included the defendant testifying falsely multiple times

4    before the SEC and encouraging his coconspirator, Martin

5    Carter, to do the same.  And Martin Carter testified how the

6    defendant had written notes to him on a napkin telling him

7    what to say before the SEC during sworn testimony, and sat

8    beside him as an attorney during that testimony as he knew

9    that Martin Carter lied.

10           3553(a) asks to look at providing just punishment

11   for the offense, and really this dovetails why 204 months

12   remains the appropriate sentence here.  Not only the facts

13   that the Government has just reviewed, but the fact that this

14   serious conduct -- if we don't even look at loss, if we just

15   simply look at the other enhancements under the guidelines, we

16   get to 16 points looking at use of a special skill, abuse of

17   trust, obstruction, endangering the solvency of a publicly-

18   traded company, acting as a leader or organizer, sophisticated

19   means, and the victim number.  And with these enhancements and

20   with the additional loss, we get to a guidelines range of 210

21   to 262 months.  Again, 204 months still falls below the

22   recommended guidelines on this case, even with a lesser loss

23   amount.

24           And the -- at this point the Government also reminds

25   the Court that it's not just fraud counts in this case.

1    Certainly there were 14 counts consisting of wire fraud, mail

2    fraud, securities fraud.  There were also counts for money

3    laundering and obstruction.  In short, this was an elaborate

4    scheme.

5            One of the next factors under 3553(a) is the need to

6    promote respect for the law and to afford adequate deterrence.

7    And this is exactly the type of case where a sentence, a

8    serious sentence, is warranted under these factors.

9            In short, the defendant has adamantly refused to

10   accept responsibility for any of his conduct in this case, and

11   that those actions should instruct in favor of a more serious

12   sentence.

13           Throughout this very sentencing hearing, the

14   defendant has had the gall to question whether investors or

15   anyone was harmed at all, and despite the circuit court of

16   appeals remanding for the very limited purposes of restitution

17   and loss, the defendant has continued to raise baseless claims

18   regarding prosecutorial misconduct that were both denied by

19   this Court previously and denied by the Eleventh Circuit Court

20   of Appeals.

21           In short, his conduct makes clear that he does not

22   accept the severity of his actions and leads one to question

23   whether, upon his release, he would engage in exactly this

24   type of conduct again.

25           And this leads to one of the final factors that the

1    Government will point out to the Court is the need to protect

2    the public from the crimes of the defendant.  And not only has

3    the defendant's failure to accept responsibility suggested

4    that this is a very important factor and also militates in

5    favor of a serious sentence, but one really need look no

6    further than the PSR, which outlines the fact that this is not

7    the only fraud that's ever been perpetrated by the defendant.

8    There is an attorney -- there was an action against the

9    defendant by the Attorney General in California for preying on

10   homeowners facing foreclosure.  In addition to the perjury

11   that he was accused of in this case before the Court, he also

12   had Martin Carter file a declaration in the parallel civil

13   class action.

14          There has been rampant misconduct in this case, and

15   the Government would argue that all of these factors support a

16   serious sentence, one of 204 months.  This is the sentence

17   that the Court found adequate based on the same conduct during

18   the first sentencing, and it is a sentence that is no greater

19   than necessary to punish the crimes of the defendant.

20          Thank you, Your Honor.

21          THE COURT:  Thank you.

22          MR. GRUENSTEIN:  Thank you, Your Honor.

23          And I do want to, of course, thank the Court for its

24   consideration of the arguments we've made to date, for holding

25   an extensive hearing.  It's very clear to all of us that the

 1   Court has spent a significant amount of time on the issue that

 2   has been the subject of the remand, which is the loss amount.

 3        I'm going to start where my colleague from the

 4   Government table ended, which is on the line in 3553 that the

 5   sentence be sufficient but not greater than necessary, and

 6   focus on a few points there.

 7        Mr. Stein has already served a very significant

 8   sentence.  He began serving his sentence after his remand in

 9   May 2013 and has served 63 months to date.  As I'll discuss in

10   a few minutes, that is already longer than 90 percent of fraud

11   sentences in this district in the last year.

12        To the extent that the Court believes that Mr. Stein

13   needs additional time to reflect the factors in Section 3553,

14   as I will argue in a few minutes, it is our belief that that

15   can be met through an imposition of additional -- additional

16   year of supervised release and additional conditions that will

17   give the Court comfort to respond to the Government's concerns

18   that if Mr. Stein is released, that he will engage in

19   additional criminal conduct.  Being under the nose of the

20   probation office and this Court in this district will negate

21   that risk.

22        Mr. Stein, unlike previously, he is now married.

23   His spouse, Ms. Reichardt, who is in court today and has been

24   in court throughout, is truly his partner; not only a personal

25   and emotional partner and his wife, but very much a

1    professional partner in that she has been working with him

2    tirelessly throughout this case.

3              Supervised release and getting Mr. Stein back out at

4    the age of 60, where he is now, will allow him to work, to

5    earn money and to repay the victims that the Court has already

6    identified.

7              The Government, in its presentation this morning,

8    spent all of its time on the nature -- or most of its time on

9    the nature of the conduct that Mr. Stein engaged in.  That's

10   not a point that I'm going to address, because the Court was

11   aware of his conduct last sentencing, and that has not changed

12   at all.  But in considering the nature and circumstances of

13   the offense under 3553(a)(1), as well as it's also described

14   in 3553(a)(2)(A) as the seriousness of the offense, it is not

15   sufficient to only look at the conduct, which has not changed

16   between the two sentences, but on the effect that the conduct

17   had on victims.

18             The Government presented this case originally as a

19   multi-million-dollar fraud scheme with thousands of victims.

20   At the first sentencing the Court found, after being presented

21   with a range of possible losses between 13 and $80 million

22   that the Government argued for, the Court found a $13 million

23   loss with 2400-some victims.  The Court has now, after the

24   remand, has now found roughly a $1 million loss with 616

25   victims.  While the conduct has not changed, and we will not

1    argue that the conduct is any less serious than it was at the

2    first sentencing, the impact is significantly less serious and

3    must be taken into account.

4            I will also, towards the end of my remarks, mention

5    some of the good work that Mr. Stein has done.  Again, it has

6    not changed.  This is all information that was provided to you

7    earlier at the last sentencing.  And what it shows is that

8    Mr. Stein, whatever the Government says, whatever was proven

9    at trial, has the capacity for good work, and if he is

10   released has the capacity to do good and to repay these

11   victims.

12           The Government, their principal argument is that 17

13   years is still just under the guidelines and therefore is the

14   appropriate sentence, but in my view, Your Honor, that does a

15   disservice to 3553, as well as to the guidelines.

16           Under 3553, as I mentioned, the Court must look to

17   the seriousness of the offense, including not just the

18   conduct, but the impact.  And to say that this offense is just

19   as serious now, when there were 616 victims, as it was when

20   there were 2400 victims, or just as serious now, when the loss

21   amount is 1 million, as it was when it was 13 million, that

22   entirely ignores the requirement of 3553 to look at the

23   seriousness.

24           Also, it's not true to the guidelines.  The

25   guidelines makes clear that the principal determining factor

1    in a guideline sentence is what is the actual or intended loss

2    amount.  Previously, we were at a plus 20 when the -- when we

3    were between 7 and $20 million.  Now, under the 2016

4    guidelines, that would be 9.5 and $20 million.  We are --

5    there is a level below that of 3.5 to 9.5, there's a level

6    below that of 1.5 to 3.5, and there's a level below that of

7    550,000 to 1.5 million.  That is where we are now.  We are six

8    levels down on the offense level; another two levels down on

9    the number of victims.

10           What the guideline says, in that situation there is

11   a significant swing in the sentence.  We've gone from life,

12   which is in the guidelines calculations over 30 years, over

13   360 months, even probably over 400 months, which I think is

14   the highest month level in the guidelines, down to a level of

15   between 210 to 262.  So while the Government refers repeatedly

16   to the guidelines, the guidelines recognizes that there should

17   be a significant difference when there is a significant change

18   in loss amount.

19           Let me talk a little bit about how the seriousness

20   of the offense should be viewed differently than it has been

21   previously.  As we discussed, originally the Government argued

22   for 78 million; the Court found 13 million.  Over the last few

23   months the number has gone down.  The Government has argued

24   for 2.3, plus theft to the company to $8 million.  The Court

25   has now found $1 million.

1          At the 2014 sentencing, the Government alleged that

2     Mr. Stein's crimes victimized, quote, thousands of people, and

3     the Court found that thousands of people were victimized.

4     Now, the Court has found that 616 people were victimized.

5          The Government said in its sentencing memo that it

6     intended to offer, quote, testimony from investors who relied

7     on fraudulent statements.  They've now -- at the last hearing

8     they offered testimony of one investor.

9          We've also learned a little bit more about the

10    nature of the company and its financial state.  Mr. Taylor,

11    who was that one investor, testified that this was a stock

12    that he would not have recommended to widows and orphans.

13    This was a penny stock; it was speculative.

14         And Dr. O'Neal testified that the company had always

15    suffered losses.  It had never posted a positive return.  This

16    is a company that had never done well.  By the time the fraud

17    was disclosed, as Dr. O'Neal testified -- Dr. O'Neal is in

18    court today -- the 10-Q disclosed that there was negative

19    shareholders' equity, meaning the company was worth less than

20    zero, and that the company had suffered massive losses for the

21    10th quarter in a row.  And this is all important, because the

22    Government has now conceded that the loss to shareholders was

23    only 18 percent of their holdings; only the inflationary

24    amount.

25         We've discussed ad nauseam why we disagree with

1    that, but there's an implicit concession that 82 percent, the

2    other 82 percent of losses that people suffered, was a result

3    of other factors relating to the stock, the market, anything

4    else, the Government has not proven why.

5           So where we are is that people lost money, a

6    significant number of people lost money, but it is not the

7    loss that we previously thought.  We've gone back to look at

8    the Government's chart; 616 people lost money.  And we

9    recognize that any loss is unacceptable.  Any loss that is the

10   result of Mr. Stein's fraud is unacceptable.

11          And I do want to just drop a footnote here to what

12   the Government said about that Mr. Stein lacks remorse.

13   Mr. Stein has full remorse that the company did not pay back

14   its investors and that its investors lost money.  What

15   Mr. Stein has been fighting is precisely what the Eleventh

16   Circuit said he should be fighting, which is was the fraud a

17   result of the offense.  And what the Court's ruling is,

18   essentially, is that a much smaller part of the loss is a

19   result of Mr. Stein's fraud than previously thought.  Of the

20   616 victims that the Court found, 303 -- roughly half -- lost

21   less than $500; an additional 279 lost between $500 and $5000;

22   34 lost more than $5000; and of those 34, only four out of the

23   616 lost more than $15,000.

24          Again, no loss is acceptable.  We recognize that

25   different amounts of money mean different things to different

1    people.  But the findings of this Court is that these were

2    losses that were not as great as previously thought, and

3    significantly less.

4            And the reason this is important is that there is a

5    real difference between losses that victims suffer on a penny

6    stock, which is speculative, and losses that people suffer

7    when they lose their entire pensions, for example.

8    Mr. Stein -- the SignaLife stock was not traded -- was not

9    owned by institutional pension holders.  People did not

10   lose -- people who were invested in major pension funds did

11   not lose their pension because of this stock.  People lost

12   money, but not their entire pension.

13           The reason this is significant is because what I'm

14   getting to is there was a case that was decided in my home

15   district, in the Eastern District of New York, in 2008, called

16   United States versus Paris.  And I want to talk just for a few

17   minutes about that case, and if Your Honor would indulge me, I

18   can hand up a copy of the case.

19           THE COURT:  Sure.

20           Do you have a copy for counsel?

21           MR. GRUENSTEIN:  Yes.

22           THE COURT:  Thank you.

23           MR. GRUENSTEIN:  In this case, the facts are

24   actually very similar to our case, but, of course I recognize

25   that different courts have different sentencing practices, and

1    every case can be distinguished.  And the reason I'm bringing

2    this case to Your Honor's attention is not because of the

3    result, but because of the reasoning.

4         In that case, the defendant -- the defendants were

5    two brothers, and they did something very similar to what

6    Mr. Stein has been convicted for.  They did -- they issued

7    press releases misrepresenting the business prospects of their

8    company.  It led the stock price to go up from 18 cents to 32

9    cents.  And then it went down, and people lost their money.

10   They issued millions of shares to investors.  Investors bought

11   those shares for almost $5 million and then lost roughly

12   $3 million.

13        And the Court considered the very similar things

14   that this Court is considering and found a guidelines level of

15   42, which had a guidelines range of 360 months to life.  And

16   what troubled Judge Block in that case is he felt that there

17   was something different between a penny stock fraud and the

18   Enrons and the WorldComs of the world, even though the

19   guidelines were very similar.

20        So on page 746, the Court said -- noted that this

21   crime is simply not of the same character and magnitude as the

22   securities fraud prosecutions of those who have been

23   responsible for wreaking unimaginable losses on major

24   corporations, and in particular on their companies' employees

25   and stockholders, many of whom lost their pensions and were

1    financially ruined.  Yet the sentences entailed in those

2    cases, such as Enron, WorldCom and Computer Associates were

3    each less, and in some cases markedly less, than the lowest

4    end of the guidelines range in this case.

5            The Court ultimately did sentence these two

6    defendants to five years.  I should note that as in this case,

7    where there's an obstruction charge, in that case there was a

8    witness tampering charge.  The facts are remarkably parallel.

9            What the Judge did in that case -- and this was

10   after extensive discussion with the Government, and received

11   data from the Government about other cases recognizing that

12   under 3553(a)(2)(6), one of the requirements under the statute

13   is the need to avoid unwarranted sentence disparities among

14   defendants with similar records who have been found guilty of

15   similar conduct.

16           And what the Court did, if I could point Your Honor

17   to page 753, is he looked at all of the securities fraud cases

18   that were provided to him by the Government, and what he found

19   is that for cases that the loss amount was over a hundred

20   million dollars, that typically the loss -- the sentence would

21   be over 10 years, double -- for a hundred million dollars or

22   more, double-digit sentences.  What the Court then found was

23   for -- on the single-digit side, when he found -- when there

24   were sentences of less than 10 years, those were typically

25   where the loss amounts were under a hundred million dollars,

1    and he lined them up, and we see that from 753 to 754.  And

2    the Court, at Appendix A, which starts on 756, had the full

3    list of cases that the Court was looking at.

4           One thing that's important to note is this was only

5    2008.  Many of these cases, if not almost all of them, were

6    pre-Booker, so the guidelines were the driving force.  But

7    this is what he found:  Over a hundred million dollars, more

8    than 10 years; under a hundred million dollars, less than 10

9    years.

10          What he also did was he relied on the statistics

11   from the Sentencing Commission.  This is on the last page, and

12   this is from 2008, and it's for the Second Circuit.  And what

13   he did was he show -- what he looked at the line in the middle

14   that says fraud, and he looked at the fact that the mean fraud

15   sentence nationally and in the Second Circuit was 26 months,

16   and that was probative to him and helpful to him in ultimately

17   coming to a sentence.

18          We have not gone back to pull all of the cases from

19   the last few years to try to redo what the Court in that case

20   did.  We expect that if we did, the results would be similar.

21   Now that Booker is the case and the guidelines are no longer

22   definitive, sentences have gone down nationally, and we expect

23   that the similar results would hold.

24          But what we did do was we went to the Sentencing

25   Commission statistics, just as Judge Block did, and what we

 1    found was, according to the Sentencing Commission in 2017 --
 2    and this is all on their website -- in the Southern District
 3    of Florida, as well as in the Eleventh Circuit and nationwide,
 4    there was some consistency for fraud -- looking at fraud
 5    sentences, the number of fraud sentences between five and 10
 6    years was roughly seven to eight percent of all sentences.
 7    The number of fraud sentences above 10 years was only two
 8    to three percent.  So when I said earlier that the sentence --
 9    that the time that Mr. Stein has already served is in the top
10    90th percentile, it's based on these statistics.  Between five
11    and 10 years is the top seven to eight percent.  Only two to
12    three percent of sentences for fraud crimes is above 10 years.
13         And also what the Sentencing Commission shows is
14    that a sentence of 60 months in the Eleventh Circuit and in
15    the Southern District of Florida is roughly twice the average
16    sentence for fraud.  The median sentence in 2017 in the
17    Southern District of Florida for all fraud crimes was 28
18    months; the mean was 36 months.
19         I do want to turn briefly to the characteristics of
20    the defendant, which again, as I discussed, those have not
21    changed since the last sentencing, and the Court has already
22    taken that into account, but I do want to give my personal
23    perspective on that.
24         I have been involved in the case for one year.  I
25    actually filed my motion for pro hac vice one year ago today.

1  Throughout the time that I have worked with Mr. Stein and with

2  Rasika, his wife, on this case, he has been consistent that he

3  wanted me to advocate for the right sentence.  And when he

4  said, the right sentence, what he meant was to have the -- to

5  argue a clear analysis of the Eleventh Circuit law and to

6  apply that Eleventh Circuit law to the facts of this case.

7  Not the facts as he believed them, but the evidence that came

8  in, the findings of the jury.  At no point did he ask me to

9  challenge the findings, to spin the findings, or to shade the

10 findings.  It was always to take the findings as they were.

11     He understood that the issue for remand was the

12 loss, and at no time did he ask me to, for example, challenge

13 the other enhancements which the Court has reissued today.  At

14 no point did he ask me to seek a downward departure that was

15 not previously called for.  He has been laser focused on the

16 loss issue.  His -- when -- and he has been committed to doing

17 it the right way.  When I came in, I told him I would need

18 time to get up to speed.  He consented to me asking for more

19 time, which the Government agreed to.

20     When the new Government prosecutors came in, they

21 asked for more time, and he, without a question, consented to

22 that to give them more time.

23     Since the remand in this case, which was January of

24 2017, Mr. Stein has been sitting in jail unsentenced, and he

25 has given both sides more time so as to get this right.  He is

```
 1   committed to getting this right under the Eleventh Circuit law

 2   and the facts as found by the jury.

 3              As I said earlier, Mr. Stein does have the capacity

 4   for good.  The Court heard the testimony of Tralisha Finch

 5   (phonetic) last time, and I'll just remind the Court of that

 6   and not restate it all.  Ms. Finch's father was an employee

 7   and good friend of Mr. Stein's.  Her father was tragically

 8   murdered in 1996 when she was 10 years old.  Unknown to her --

 9   and the fact that it was unknown to her is one of the greatest

10   acts of charity, that it was anonymous -- Mr. Stein supported

11   her for 10 years, and she did not find out about the support

12   until very soon before she testified.

13              In 2007, when Mr. Stein started a charity, which

14   Your Honor has also heard about, the VIPS charity, VIPS,

15   Victims of Injustice, Pain and Suffering, where he was a -- it

16   was a charity where he and others supported victims, and it

17   was a charity that was written up in the Pittsburgh Post

18   Gazette in 2002 about a fundraiser that he had held for that

19   organization.

20              Again, I'm not saying any of this to outweigh the

21   conduct for which he's being sentenced for.  What I am saying

22   is that he does have the capacity for good.

23              And what that gets to is another factor under 3553,

24   number 7, which is the need to provide restitution to any

25   victims of the offense.
```

```
 1           The loss amount now is roughly $1 million.  If
 2    Mr. Stein gets out and commits himself, he can begin paying
 3    that money back.  And it is our view that an additional year
 4    of supervised release, up to the maximum, which is three
 5    years, can provide the Court comfort that he will get to work
 6    immediately to provide that restitution and to pay back the
 7    victims.  It would allow the Government to monitor his
 8    actions, his travel, and to the extent they have a concern,
 9    the probation office will monitor him so that he does not
10    reoffend.
11           As I mentioned, he is now married to Ms. Reichardt,
12    who the court has seen at these proceedings.  She lives in
13    southern Florida, and she has been a tremendous source of
14    support for him.
15           And what it would do, to the extent the Court is
16    considering any additional time beyond what he has already
17    served, having those three years of supervised release, that
18    if he could serve that now in his early sixties, will give him
19    a significant opportunity to pay back his victims, the victims
20    of his crime.  As I mentioned earlier, half the victims lost
21    under $500.  Those are amounts that he can realistically pay
22    back if he can get back to work.
23           If I could just have a minute, Your Honor, because
24    I'm about to wrap up.  I want to make sure there's nothing
25    else.
```

```
 1              THE COURT:  Sure.
 2              MR. GRUENSTEIN:  Your Honor, my colleague corrected
 3    me that the -- I had said that the charity, the VIPS charity
 4    was founded in 2007.  It was actually founded in 1997, around
 5    the same time that Mr. Stein helped Ms. Finch.
 6              I do want to come back to where I started, which is,
 7    as we view it, there's one significant factor that has
 8    changed, and that is the loss amount.  And this is -- this has
 9    gone from a $13 million fraud to a $1 million fraud.  It is a
10    fundamentally different crime.  The conduct is not different;
11    we're not challenging the conduct.  But it is the -- the
12    seriousness of the offense is fundamentally different.
13              As I mentioned, Section 3553(a) requires that that
14    difference be taken into account by a fundamentally different
15    sentence.
16              As I mentioned, the guidelines require it.  The
17    guidelines recognize that there are six levels between what
18    the crime was, what the offense was, and where we are today.
19    The guidelines requires that that be taken into account.
20              And, finally, fundamental fairness requires it.  As
21    I said earlier, Mr. Stein has wanted to do it the right way.
22    He challenged the previous sentence in the Eleventh Circuit.
23    They gave the Court additional guidance on how to calculate
24    loss.  He has now argued for the loss.  The Court has agreed
25    that the loss is significantly lower than where it had been.
```

```
 1    In fact, it's over 90 percent lower than where it was, and the
 2    number of victims is significantly lower.
 3              Again, I want to be clear.  We're not challenging
 4    the conduct, but it would be fundamentally unfair to
 5    Mr. Stein, after having gone through the system, having done
 6    it correctly, having done it correctly in the Eleventh
 7    Circuit, having done it correctly here, by hiring a witness as
 8    sophisticated and as acceptable to the Government, he's also a
 9    government witness, Eddie O'Neal, to opine, it would be
10    fundamentally unfair not to take that significant discrepancy
11    in the loss amount into account.
12              And, finally, as I've said, now that the loss amount
13    is significantly lower, and the number of victims is lower,
14    and the per-victim amount is significantly lower, he
15    realistically can repay these victims, but he can only do that
16    if he is not in jail.
17              Accordingly, we respectfully request that the Court
18    impose a sentence of 63 months to reflect the time that he has
19    been in, to impose an additional time of three years of
20    supervised release with whatever conditions the Court and the
21    probation office think appropriate so as to ensure that
22    Mr. Stein can get back to work and start repaying back these
23    victims.
24              Thank you, Your Honor.
25              THE COURT:  Thank you.
```

1          Anything else?

2          MS. PASCUCCI:  The Government has a short rebuttal,

3    Your Honor.

4          THE COURT:  Okay; sure.

5          MS. PASCUCCI:  Thank you, Your Honor.

6          The Government will keep this brief as a rebuttal,

7    but very briefly, the case pointed out by the defense, this is

8    a decade-old case, and we simply have no idea how the losses

9    were calculated in any of the cases that were listed therein.

10   The Government would argue that the guideline calculation here

11   is very conservative.  That's not including the $6 million of

12   loss that SignaLife suffered that was adduced at sentencing.

13         The second part of this is that loss is simply not

14   the only harm in this case.  As I mentioned earlier, there are

15   16 points of enhancements here that are based on factors other

16   than loss, and that makes this rather an extraordinary case in

17   and of itself.

18         The defense noted, well, SignaLife was a penny

19   stock; that the company had posted losses before.  That cuts

20   against the defendant.  Simply put, these press releases were

21   a big deal, because the company had previously posted losses.

22   Suddenly it has millions of dollars in sales.  It looks like

23   it's taking a turn for the better, and investors are getting

24   in early.  That is why these press releases were so

25   misleading, and the reason he could manipulate this company as

1  he did is because it was a penny stock.

2          And just turning to, again, comments about the

3  victims in this case, that they lost penny change.  One need

4  only look at the testimony of Bryan Harris and Mark Taylor and

5  I believe the victim impact statement from Jamie Carpenter in

6  court.  They lost more than that.

7          And Bryan Harris testified about how he lost his

8  retirement.  He suffered greatly at the hands of the

9  defendant's fraud.

10          Mark Taylor, he is a broker.  He recommended this

11  company to clients.  And in addition to the losses he suffered

12  financially, he suffered a blow in his credibility in

13  recommending the company that was -- ended up being a total

14  fraud.

15          And Jamie Carpenter spoke here about how she was

16  never able to invest in the market again because she simply

17  lost faith in public filings.

18          Simply put, there is great harm that was done as a

19  result of the defendant's conduct in this case.  One million

20  is not an unsubstantial amount.  The defendant has said what

21  do the guidelines require in this case.  The guidelines

22  recognize that 1 million is a severe amount, and they call for

23  a sentence of 210 to 262 months, and this sentence is above

24  what the Government is recommending of 204 months.

25          Thank you, Your Honor.

```
 1                THE COURT:  Thank you.

 2                Mr. Stein, did you want to say anything before I

 3     impose sentence?

 4                THE DEFENDANT:  No, Your Honor.  Thank you.

 5                THE COURT:  Thank you.

 6                All right.  The Court has considered the statements

 7     of the parties, the presentence report, which contains the

 8     advisory guidelines, as well as the statutory factors set

 9     forth in 18 U.S.C., Section 3553(a)(1) through (7).

10                The Court finds the defendant is not able to pay a

11     fine as well as restitution.

12                Now, when I sentenced Mr. Stein originally, we had a

13     different guideline calculation, which I found to be

14     completely unreasonable, which called for a life sentence, and

15     I deviated significantly from those guidelines because I

16     thought the guidelines were way out of proportion.  If my

17     memory serves me correctly, I think even the Government

18     recognized that those guidelines were out of line because --

19     again, I may be incorrect, but I believe at the first

20     sentencing the Government had recommended a 25-year sentence.

21     And I may be wrong, but I think that's my recollection.  So I

22     think even the Government recognized that those guidelines

23     were way out of proportion to the harm, considering I used an

24     incorrect loss amount at that time, so . . . and I deviated

25     from the guidelines for the reason that I thought those
```

1    guidelines were unreasonable, recognizing the seriousness of

2    the conduct and all the other statutory factors.

3          Now, we are here with a new guideline calculation,

4    and the loss amount is significantly lower, and I believe that

5    is a significant factor that I have to consider in

6    reevaluating an appropriate sentence.

7          I'm not sure that I can simply look to what was done

8    in other cases based upon loss amounts.  For example, in this

9    Paris decision that the defense has provided me, Judge Block

10   in that case, you know, looked at various sentences and just

11   looked at the loss amount.  And I agree with the Government,

12   you just can't look at the loss amount and look at the

13   sentence and decide, well, you're comparing apples to apples,

14   because you don't know what the other enhancements were in any

15   of those cases.  You don't know if there were breaches of

16   trust.  You don't know if there was obstruction.  You don't

17   know what the other factors, or lack of factors, were in those

18   cases that caused the sentences to come out the way they were.

19         You also can't just look at guidelines, fraud

20   sentences in a entire district, because you're comparing

21   securities fraud to identity theft, which is considered a

22   fraud offense, where people, you know, steal a couple of

23   thousand dollars on credit cards.  So when you -- if you just

24   look at a broad category of offenses without narrowing it down

25   and trying to compare apples to apples, you can get misled.

 1    So I'm not sure that those statistics are helpful to me in

 2    deciding what to do here.

 3            But I do agree with the defense that because the

 4    loss amount is significantly lower, that I have to consider

 5    that in my analysis, and I think it does call for me to

 6    deviate from my prior sentence and vary below the guideline

 7    range even further, because the numbers are important in the

 8    analysis.

 9            So I am going to find that in view of the

10    significant difference in the loss amount from where I

11    sentenced Mr. Stein originally, that a sentence below the 204

12    months that I imposed, or the first sentence, is warranted and

13    justifies a further variance below the guideline range.  So I

14    am going to find that a sentence below the guideline range is

15    sufficient but not greater than necessary to comply with the

16    requirements of 3553, and it will adequately reflect the

17    seriousness of the offense and provide just punishment, taking

18    into consideration not only the loss amount, but all of the

19    other factors that are present here, or all the other

20    enhancements.

21            So, again, loss is important, loss is a significant

22    factor to consider, but it's not the only factor.  And when I

23    weigh the reduction in loss as compared to all the other

24    factors and the facts of this case, again, I think the

25    sentence I will impose will be sufficient but not greater than

1    necessary to comply with all of those requirements, yet

2    account for the differences from the first sentence to where

3    we are today with the guideline calculations.

4            So having said all of that, it is the finding of the

5    Court that the defendant, Michael -- Mitchell J. Stein, is

6    hereby committed to the custody of the Bureau of Prisons to be

7    imprisoned for a term of 150 months.  This term consists of

8    150 months as to each of counts 1 through 10, 120 months as to

9    counts 11 through 13, and 60 months as to count 14, all to run

10   concurrently.

11           It's further ordered the defendant shall pay

12   restitution in the amount of $1,029,570.

13           During the period of incarceration, payment shall be

14   made as follows:

15           One, if the defendant earns wages in a Federal

16   Industries Unicore job, then the defendant must pay 50 percent

17   of the wages earned towards the financial obligations imposed

18   by this judgment in a criminal case.

19           Two, if the defendant does not work in a Unicore

20   job, then the defendant must pay a minimum of $25 per quarter

21   towards the financial obligations imposed in this order.

22           Upon release from imprisonment, the defendant shall

23   pay restitution at the rate of 10 percent of his monthly gross

24   earnings until such time as the Court may alter that payment

25   schedule in the interests of justice.

```
 1              The United States Bureau of Prisons, United States

 2    Probation Office and the United States Attorney's Office shall

 3    monitor the payment of restitution and report to the Court any

 4    material change in the defendant's ability to pay.

 5              These payments do not preclude the Government from

 6    using any other anticipated or unexpected financial gains,

 7    assets or income of the defendant to satisfy the restitution

 8    obligations.

 9              The restitution shall be made payable to the Clerk

10    of the United States Courts and forwarded to the United States

11    Clerk's Office, Attention Financial Section, 400 North Miami

12    Avenue, Room 8N09, Miami, Florida, 33128.  The restitution

13    will be forwarded by the Clerk of the Court to the victims

14    that have been identified of record in this case.

15              Upon release from imprisonment, the defendant shall

16    be placed on supervised release for a term of three years.

17    This term consists of three years as to each of counts 1

18    through 14, all terms to run concurrently.

19              Within 72 hours of his release, the defendant shall

20    report in person to the probation office in the district where

21    he is released.

22              While on supervised release, the defendant shall not

23    commit any crimes, he shall be prohibited from possessing a

24    firearm or other dangerous devices, and he shall not possess a

25    controlled substance.
```

```
 1              He shall cooperate in the collection of DNA, shall
 2    comply with the standard conditions of supervised release that
 3    have been adopted by this Court, as well as the following
 4    special conditions:  Association restriction, treatment for
 5    gambling, substance abuse treatment, financial disclosure
 6    requirement, related concern restriction and permissible
 7    search, as noted in Part G of the presentence report.
 8              The defendant shall also immediately pay to the
 9    United States a special assessment of $100 as to each of the
10    counts of conviction, for a total of $1400 in special
11    assessments.
12              The total sentence is 150 months' imprisonment,
13    $1,029,570 restitution, three years' supervised release and a
14    $1400 special assessment.
15              And the Court also orders defendant's right, title
16    and interest in property be forfeited, and I presume has a
17    forfeiture order already been entered in this case?
18              MS. PASCUCCI:  Yes, forfeiture was previously
19    entered of 5.378 million, Your Honor.
20              Thank you.
21              THE COURT:  Now that sentence has been imposed, does
22    the Defendant or his counsel object to the Court's findings of
23    fact or the manner in which sentence was pronounced?
24              MR. GRUENSTEIN:  Yes, Your Honor.  Just one moment.
25              Your Honor, just briefly, two things on the
```

1  conditions.

2          My understanding is that previously Your Honor

3  recommended a residential drug program, as well as that

4  Mr. Stein be housed in south Miami, and we would ask that you

5  renew those recommendations.

6          THE COURT:  Sure; I'll make those recommendations

7  again.

8          MR. GRUENSTEIN:  Your Honor, I do understand -- I'm

9  not so familiar with the circuit's rules, but my understanding

10  is I do need to state my objection.

11          THE COURT:  Yes, that's why I'm asking if you --

12          MR. GRUENSTEIN:  I appreciate that, Your Honor, and

13  I'll do it as quickly as I can.

14          The defendant does object to the Court's finding

15  that the amount of loss is $1,029,570.  The defendant renews

16  his objections to the loss calculations for the reasons set

17  forth in his prior submissions, including his sentencing

18  memoranda and submissions made post-hearing, Docket 555 and

19  559, and others.

20          Defendant objects specifically to the Court's

21  findings concerning Dr. Becker's testimony, including that the

22  testimony concerning the method of calculating investors'

23  loss, that the testimony set forth a competent and reliable

24  method for calculating investors' loss in that it was not

25  necessary to test for or establish an efficient market to rely

1    on her event study.

2         Defendant objects to the loss calculation because it

3    incorporates losses of investors who the Government did not

4    prove relied on the specific misrepresents attributed to

5    Mr. Stein.

6         Defendant objects to the loss calculation because it

7    incorporates losses that were not caused by Mr. Stein's

8    conduct, including, as argued previously, the financial

9    performance of SignaLife, the financial performance of the

10   market, as well as naked short selling in SignaLife stock.

11        Defendant objects to the Court's finding that there

12   were 616 investor victims on the ground that the Government

13   did not prove that all 616 relied on the alleged fraud, and

14   that all 616 did not suffer losses caused by Mr. Stein's

15   conduct.

16        Defendant renews these same objections to the

17   Court's finding that $1,029,000 is the appropriate restitution

18   amount.

19        With respect to the 35 -- that is on the guidelines

20   calculation.  With respect to the 3553 factors, the defendant

21   objects to a further downward -- that there was no further

22   downward variance from the advisory guidelines range.

23   Specifically, defendant objects to the failure to adequately

24   consider the dramatically lower loss amount beyond the extent

25   to which the Court already did consider it, the evidence of

 1  defendant's character and good history and his lack of

 2  criminal history.

 3          As a general matter, the defendant objects that the

 4  sentence is unlawful under 3553(a) because it is greater than

 5  necessary and thus exceeds the Court's statutory authority,

 6  and that the Court's statement of findings as to the specific

 7  sentence imposed, was inadequate to warrant the sentence,

 8  failed to comply with Rule 32's requirement for an explanation

 9  of the selection of the sentence.

10          And also for the reasons stated in our motion

11  papers, we object to the Court's denial of our motions

12  yesterday.

13          THE COURT:  Yes, sir?

14          MR. KLUGH:  Your Honor, one other matter, because

15  the Court has quite graciously imposed a lower sentence.  He

16  is now eligible to be placed in a camp, and we would ask the

17  Court, if possible, to recommend that he go perhaps to the

18  Miami camp, if the Court could possibly include that in the

19  judgment.

20          THE COURT:  I have no objection to recommending that

21  the Bureau of Prisons place him whatever the lowest facility

22  that they believe is adequate for security purposes.

23          MR. KLUGH:  And the reason, the Miami camp has the

24  drug program, and that's why I mentioned it.

25          Thank you, Your Honor.

```
 1                 THE COURT:  That's fine.  I have no objection to
 2    that.
 3                 MR. KLUGH:  Thank you very much.
 4                 THE COURT:  Any objection from the Government?
 5                 MS. PASCUCCI:  No, Your Honor.  Thank you.
 6                 THE COURT:  Okay.  Mr. Stein, you have the right to
 7    appeal the sentence that's been imposed.  If you wish to file
 8    an appeal, as well as the denial of all the various motions
 9    that were filed, if you wish to file an appeal, you must file
10    your notice of appeal within 14 days from the date judgment's
11    entered in this case, and if you're unable to pay for the cost
12    of an appeal, you may seek leave to file the appeal in forma
13    pauperis.
14                 Good luck, sir.
15                 THE DEFENDANT:  I'd like to thank the Court for its
16    time.
17                 THE COURT:  Thank you.
18                 Thank you all.
19                 VOICES:  Thank you, Your Honor.
20           (Proceedings concluded.)
21                               *  *  *  *  *
22
23
24
25
```

```
1                        * * * * *

2                        I N D E X

3    Court's Imposition of Sentence                36

4                        * * * * *

5                     E X H I B I T S

6    (None.)

7                        * * * * *

8                      CERTIFICATE

9        I, Stephen W. Franklin, Registered Merit Reporter, and

10   Certified Realtime Reporter, certify that the foregoing is a

11   correct transcript from the record of proceedings in the

12   above-entitled matter.

13       Dated this 11th day of OCTOBER, 2018.

14

15       /s/Stephen W. Franklin
         _____
16       Stephen W. Franklin, RMR, CRR

17

18

19

20

21

22

23

24

25
```

MR. GRUENSTEIN:
[16]  3/9 4/10 4/20 7/9
8/11 8/20 9/3 9/22 10/7
14/21 21/20 21/22 29/1
38/23 39/7 39/11
MR. HARRIS: [1]  3/15
MR. KLUGH: [7]  3/12
5/13 5/25 6/9 41/13
41/22 42/2
MS. PASCUCCI: [14]
3/6 4/9 4/19 6/10 6/15
7/25 9/13 9/21 10/3 10/9
31/1 31/4 38/17 42/4
THE COURT: [35]  3/1
3/8 3/14 3/17 4/11 4/21
5/22 6/3 6/13 7/8 7/18
8/9 8/18 9/1 9/8 9/16
9/23 10/8 14/20 21/18
21/21 28/25 30/24 31/3
32/25 33/4 38/20 39/5
39/10 41/12 41/19 41/25
42/3 42/5 42/16
THE DEFENDANT:
[2]  33/3 42/14
VOICES: [1]  42/18

$

$1 [4]  16/24 18/25 28/1
29/9
$1 million [4]  16/24
18/25 28/1 29/9
$1,029,000 [1]  40/17
$1,029,570 [3]  36/12
38/13 39/15
$100 [1]  38/9
$13 [2]  16/22 29/9
$13 million [2]  16/22
29/9
$1400 [2]  38/10 38/14
$15,000 [1]  20/23
$20 [2]  18/3 18/4
$20 million [2]  18/3 18/4
$25 [1]  36/20
$3 [1]  22/12
$3 million [1]  22/12
$5 [1]  22/11
$5 million [1]  22/11
$500 [3]  20/21 20/21
28/21
$5000 [2]  20/21 20/22
$6 [1]  31/11
$6 million [1]  31/11
$8 [1]  18/24
$8 million [1]  18/24
$80 [1]  16/21
$80 million [1]  16/21

-

-and [4]  2/5 2/12 2/15
2/18
-v [1]  1/5

/

/s/Stephen [1]  43/15

1

1 million [2]  17/21 32/22
1.029 million [1]  6/19
1.5 [1]  18/6
1.5 million [1]  18/7
10 [11]  23/21 23/24 24/8
24/8 25/5 25/7 25/11
25/12 27/8 27/11 36/8
10 percent [1]  36/23
10-Q [1]  19/18
10019 [2]  2/12 2/15
10th [1]  19/21
11 [1]  36/9
11-80205-CR-KAM [1]
1/2
1100 [1]  2/17
11th [1]  43/13
120 [1]  36/8
13 [2]  16/21 36/9
13 million [2]  17/21
18/22
14 [5]  10/17 13/1 36/9
37/18 42/10
1400 [2]  2/4 2/8
150 [3]  36/7 36/8 38/12
16 [2]  12/16 31/15
17 [1]  17/12
18 [2]  22/8 33/9
18 percent [1]  19/23
1996 [1]  27/8
1997 [1]  29/4

2

2.3 [1]  18/24
20 [1]  18/2
2002 [1]  27/18
2007 [2]  27/13 29/4
2008 [3]  21/15 24/5
24/12
2013 [1]  15/9
2014 [1]  19/1
2016 [1]  18/3
2017 [3]  25/1 25/16
26/24
2018 [2]  1/8 43/13
204 [5]  12/11 12/21
14/16 32/24 35/11
204-month [1]  10/1
20530 [2]  2/5 2/9
210 [4]  4/19 12/20 18/15
32/23
2400 [1]  17/20
2400-some [1]  16/23
25 [1]  2/16
25-year [1]  33/20
26 [1]  24/15
262 [4]  4/19 12/21 18/15
32/23
279 [1]  20/21
28 [1]  25/17
29 [1]  1/8
2nd [1]  2/16

3

3.5 [2]  18/5 18/6
30 [1]  18/12

303 [1]  20/20
32 [1]  22/8
32's [1]  41/8
33128 [1]  37/12
33131 [1]  2/17
33155 [1]  2/19
33401 [1]  1/19
34 [2]  20/22 20/22
35 [1]  40/19
3553 [20]  5/11 9/21 10/5
10/10 12/10 13/5 15/4
15/13 16/13 16/14 17/15
17/16 17/22 23/12 27/23
29/13 33/9 35/16 40/20
41/4
36 [2]  25/18 43/3
360 [2]  18/13 22/15
37 [2]  4/13 4/18
3768 [1]  1/18
39th [1]  2/19

4

400 [2]  18/13 37/11
42 [1]  22/15

5

5.378 million [2]  6/21
38/19
50 percent [1]  36/16
51 [1]  1/10
514-3768 [1]  1/18
529 [2]  5/18 5/22
550,000 [1]  18/7
555 [1]  39/18
559 [1]  39/19
560 [1]  8/5
561 [1]  1/18

6

60 [3]  16/4 25/14 36/9
616 [9]  16/24 17/19 19/4
20/8 20/20 20/23 40/12
40/13 40/14
63 [2]  15/9 30/18
6431 [1]  2/19

7

701 [1]  1/19
72 [1]  37/19
746 [1]  22/20
753 [2]  23/17 24/1
754 [1]  24/1
756 [1]  24/2
78 million [1]  18/22

8

82 percent [2]  20/1 20/2
825 [2]  2/11 2/14
8N09 [1]  37/12

9

9.5 [2]  18/4 18/5
90 percent [2]  15/10
30/1
90th [1]  25/10

A

ability [1]  37/4
able [4]  4/16 9/18 32/16
33/10
above [4]  25/7 25/12
32/23 43/12
above-entitled [1]  43/12
abuse [2]  12/16 38/5
accept [3]  13/10 13/22
14/3
acceptable [2]  20/24
30/8
according [1]  25/1
Accordingly [1]  30/17
account [7]  5/9 17/3
25/22 29/14 29/19 30/1
36/2
accounted [2]  5/3 5/4
accounts [1]  7/2
accused [1]  14/11
Act [1]  8/9
acting [1]  12/18
action [2]  14/8 14/13
actions [3]  13/11 13/22
28/8
acts [1]  27/10
actual [1]  18/2
actually [3]  21/24 25/25
29/4
ad [1]  19/25
adamantly [1]  13/9
add [1]  10/23 11/10
addition [4]  10/23 11/10
14/10 32/11
additional [13]  7/1 8/2
12/20 15/13 15/15 15/15
15/16 15/19 20/21 28/3
28/16 29/23 30/19
address [1]  16/10
addressed [2]  4/2 7/11
adduced [1]  31/12
adequate [3]  13/6 14/17
41/22
adequately [3]  5/9 35/16
40/23
adopted [1]  38/3
advisory [3]  4/18 33/8
40/22
advocate [1]  26/3
afford [1]  13/6
after [6]  4/17 15/8 16/20
16/23 23/10 30/5
again [17]  4/15 7/6 9/17
12/2 12/21 13/24 17/5
20/24 25/20 27/20 30/3
32/2 32/16 33/19 35/21
35/24 39/7
against [2]  14/8 31/20
age [1]  16/4
agent [1]  6/25
ago [1]  35/3
agree [4]  4/9 7/19 34/11
35/3
agreed [2]  26/19 29/24
agreement [1]  4/17
agreements [1]  11/21

Ajay [2]  6/24 11/2
Alex [1]  2/13
Alexander [1]  3/11
alleged [2]  19/1 40/13
allow [2]  16/4 28/7
almost [2]  22/11 24/5
already [9]  9/25 15/7
15/10 16/5 25/9 25/21
28/16 38/17 40/25
also [20]  3/14 5/3 5/21
7/4 12/24 13/2 14/4
14/11 16/13 17/4 17/24
19/9 24/10 25/13 27/14
30/8 34/19 38/8 38/15
41/10
alter [1]  36/24
alternative [4]  6/20 7/6
7/8 7/12
alternatively [1]  7/21
always [2]  19/14 26/10
am [4]  5/25 27/21 35/9
35/14
AMERICA [1]  1/3
among [1]  23/13
amount [28]  7/21 7/23
12/23 15/1 15/2 17/21
18/2 18/18 19/24 23/19
28/1 29/8 30/11 30/12
30/14 32/20 32/22 33/24
34/4 34/11 34/12 35/4
35/10 35/18 36/12 39/15
40/18 40/24
amounts [2]  20/25 23/25
28/21 34/8
analysis [5]  6/24 7/24
26/5 35/5 35/8
Anand [2]  6/24 11/2
anonymous [1]  27/10
another [2]  18/8 27/23
anticipated [1]  37/6
any [18]  6/6 7/7 8/10
8/19 9/5 13/10 17/1 20/9
20/9 27/20 27/24 28/16
31/9 34/14 37/3 37/6
37/23 42/4
anybody [1]  5/10
anyone [1]  13/15
anything [6]  5/10 9/20
10/1 20/3 31/1 33/2
aol.com [1]  1/20
appeal [2]  42/7 42/8
42/9 42/10 42/12 42/12
appeals [5]  5/7 9/5 9/6
13/16 13/20
appearances [3]  1/15
2/1 3/6
appellate [1]  9/11
Appendix [1]  24/2
apples [4]  34/13 34/13
34/25 34/25
apply [1]  26/6
appreciate [1]  39/12
appropriate [5]  12/12
17/14 30/21 34/6 40/17
argue [5]  14/15 15/14
17/1 26/5 31/10

**A**

argued [5]  16/22 18/21
18/23 29/24 40/8
argument [2]  10/14
17/12
arguments [4]  8/21 10/4
10/10 14/24
around [1]  29/4
arranged [1]  11/20
arrangement [1]  9/16
arrived [1]  7/23
articulate [1]  4/23
ask [6]  6/19 26/8 26/12
26/14 39/4 41/16
asked [2]  8/8 26/21
asking [2]  26/18 39/11
asks [1]  12/10
assessment [2]  38/9
38/14
assessments [1]  38/11
assets [1]  37/7
Associates [1]  23/2
Association [1]  38/4
assumed [1]  5/23
assumption [1]  5/19
ATM [1]  11/20
attention [2]  22/2 37/11
attorney [4]  11/12 12/8
14/8 14/9
Attorney's [1]  37/2
attributed [1]  40/4
August [1]  1/8
authority [1]  41/5
Avenue [6]  2/4 2/8 2/11
2/14 2/16 37/12
average [1]  25/15
avoid [1]  23/13
aware [1]  16/11

**B**

back [16]  3/4 8/13 11/7
11/23 16/3 20/7 20/13
24/18 28/3 28/6 28/19
28/22 28/22 29/6 30/22
30/22
bad [1]  10/21
based [9]  4/12 4/17 7/7
7/8 7/17 14/17 25/10
31/15 34/8
baseless [1]  13/17
basis [5]  4/25 5/1 7/18
7/24 8/14
Beach [2]  1/7 1/19
because [21]  7/13 16/10
19/21 21/11 21/13 22/2
22/3 28/23 31/21 32/1
32/16 33/15 33/18 34/14
34/20 35/3 35/7 40/2
40/6 41/4 41/14
Becker's [4]  4/25 5/2 5/8
39/21
before [10]  1/12 5/11
8/3 9/21 12/4 12/7 14/11
27/12 31/19 33/2
began [1]  15/8
begin [1]  28/2

**being [4]**  15/19 16/20
27/21 32/13
belief [1]  15/14
believe [12]  4/3 4/13 5/2
5/6 5/8 7/20 7/22 8/5
32/5 33/19 34/4 41/22
believed [1]  26/7
believes [1]  15/12
below [8]  12/21 18/5
18/6 18/6 35/6 35/11
35/13 35/14
Benjamin [2]  2/10 3/10
beside [1]  12/8
better [1]  31/23
between [11]  8/13 16/16
16/21 18/3 18/15 20/21
21/5 22/17 25/5 25/10
29/17
beyond [2]  28/16 40/24
big [1]  31/21
bit [2]  18/19 19/9
blind [1]  11/24
Block [3]  22/16 24/25
34/9
blow [1]  32/12
Booker [2]  24/6 24/21
both [3]  11/2 13/18
26/25
bought [1]  22/10
breaches [1]  34/15
brief [2]  6/12 31/6
briefly [4]  6/17 25/19
31/7 38/25
bringing [1]  22/1
broad [1]  34/24
broker [1]  32/10
brothers [1]  22/5
Bryan [2]  32/4 32/7
Bureau [3]  36/6 37/1
41/21
business [1]  22/7

**C**

Caitlin [2]  2/6 3/8
calculate [1]  29/23
calculated [1]  31/9
calculating [2]  39/22
39/24
calculation [7]  3/22
31/10 33/13 34/3 40/2
40/6 40/20
calculations [3]  18/12
36/3 39/16
California [1]  14/9
called [3]  21/15 26/15
33/14
came [3]  26/7 26/17
26/20
camp [3]  41/16 41/18
41/23
can't [2]  34/12 34/19
cannot [1]  7/15
capacity [4]  17/9 17/10
27/3 27/22
Cardiac [1]  11/5
cards [1]  34/23

**Carpenter [2]**  32/5
32/15
Carter [7]  6/23 11/2
11/4 12/5 12/5 12/9
14/12
case [45]
cases [13]  8/15 23/2 23/3
23/11 23/17 23/19 24/3
24/5 24/18 31/9 34/8
34/15 34/18
category [3]  4/14 4/19
34/24
caused [3]  34/18 40/7
40/14
cents [2]  22/8 22/9
certain [2]  8/22 11/15
Certainly [1]  13/1
CERTIFICATE [1]
43/8
Certified [1]  43/10
certify [1]  43/10
challenge [2]  26/9 26/12
challenged [1]  29/22
challenging [2]  29/11
30/3
change [3]  18/17 32/3
37/4
changed [8]  4/5 10/15
16/11 16/15 16/25 17/6
25/21 29/8
character [2]  22/21 41/1
characteristics [1]  25/19
charge [2]  23/7 23/8
charity [7]  27/10 27/13
27/14 27/16 27/17 29/3
29/3
chart [1]  20/8
circuit [14]  7/4 7/20
13/15 13/19 20/6 24/12
24/15 25/3 25/14 26/5
26/6 27/1 29/22 30/7
circuit's [1]  39/9
circumstances [2]  10/12
16/12
civil [1]  14/12
claims [1]  13/17
clarification [1]  4/2
clarify [1]  3/24 5/2
Clark [1]  6/25
class [1]  14/13
clear [6]  4/7 13/21 14/25
17/25 26/5 30/3
Clematis [1]  1/19
Clemens [1]  7/3
Clerk [2]  37/9 37/13
Clerk's [1]  37/11
clients [1]  32/11
coconspirator [1]  12/4
coconspirators [3]  6/23
11/2 11/21
colleague [2]  15/3 29/2
collection [1]  38/1
comfort [2]  15/17 28/5
comfortable [1]  6/14
coming [1]  24/17
comments [1]  32/2

**Commission [4]**  24/11
24/25 25/1 25/13
commit [1]  37/23
commits [1]  28/2
committed [3]  26/16
27/1 36/6
companies [2]  10/25
11/6
companies' [1]  22/24
company [15]  11/16
12/18 18/24 19/10 19/14
19/16 19/19 19/20 22/3
22/8 31/19 31/21 31/25
32/11 32/13
compare [1]  34/25
compared [1]  35/23
comparing [2]  8/23
34/13 34/20
competent [1]  39/23
complete [1]  3/18
completely [2]  10/21
33/14
comply [4]  35/15 36/1
38/2 41/8
Computer [1]  23/2
conceded [1]  19/22
concern [2]  28/8 38/6
concerning [2]  39/21
39/22
concerns [1]  15/17
concession [1]  20/1
concluded [1]  42/20
concurrently [2]  36/10
37/18
conditions [5]  15/16
30/20 38/22 38/4 39/1
conduct [24]  10/17
10/18 12/14 13/10 13/21
13/24 14/17 15/19 16/9
16/11 16/15 16/16 16/25
17/1 17/18 23/15 27/21
29/10 29/11 30/4 32/19
34/2 40/8 40/15
connection [1]  6/8
consented [2]  26/18
26/21
conservative [1]  31/11
consider [8]  3/21 5/7
10/11 34/5 35/4 35/22
40/24 40/25
consideration [3]  5/20
14/24 35/18
considered [3]  22/13
33/6 34/21
considering [4]  16/12
22/14 28/16 33/23
consistency [1]  25/4
consistent [1]  26/2
consisting [1]  13/1
consists [2]  36/7 37/17
consulting [1]  11/20
contains [2]  8/6 33/7
continued [1]  13/17
contributed [1]  5/5
controlled [2]  11/24
37/25

**convicted [1]**  22/6
conviction [1]  38/10
convictions [1]  10/18
cooperate [1]  38/1
copy [2]  21/18 21/20
corporations [1]  22/24
correct [3]  5/25 6/6
43/11
corrected [1]  29/2
correctly [4]  30/6 30/6
30/7 33/17
cost [1]  42/11
Cottingham [2]  2/6 3/8
counsel [3]  3/6 21/20
38/22
count [1]  36/9
count 14 [1]  36/9
counts [8]  10/17 12/25
13/1 13/2 36/8 36/9
37/17 38/10
counts 1 [2]  36/8 37/17
counts 11 [1]  36/9
couple [1]  34/22
course [2]  14/23 21/24
court [75]
Court's [10]  20/17 38/22
39/14 39/20 40/11 40/17
41/5 41/6 41/11 43/3
courts [2]  21/25 37/10
CPE [1]  1/18
CR [2]  1/2 3/5
Cravath [3]  2/10 2/13
3/11
create [1]  11/3
creating [1]  10/24
credibility [1]  32/12
credit [1]  34/23
crime [5]  8/9 22/21
28/20 29/10 29/18
crimes [6]  14/2 14/19
19/2 25/12 25/17 37/23
criminal [7]  2/3 2/7 4/13
4/19 15/19 36/18 41/2
CRR [2]  1/18 43/16
custody [1]  36/6
cuts [1]  31/19

**D**

dangerous [1]  37/24
data [1]  23/11
date [3]  14/24 15/9
42/10
Dated [1]  43/13
David [2]  2/18 3/16
days [1]  42/10
DC [2]  2/5 2/9
deal [2]  9/7 31/21
decade [1]  31/8
decade-old [1]  31/8
deceived [1]  11/11
deceiving [1]  11/10
decide [1]  34/13
decided [1]  21/14
deciding [1]  35/2
decision [1]  34/9
declaration [1]  14/12

**D**

**defendant [43]** 1/7 2/10 6/7 10/23 11/11 11/16 12/3 12/6 13/9 13/14 13/17 14/2 14/7 14/9 14/19 22/4 25/20 31/20 32/20 33/10 36/5 36/11 36/15 36/16 36/19 36/20 36/22 37/7 37/15 37/19 37/22 38/8 38/22 39/14 39/15 39/20 40/2 40/6 40/11 40/16 40/20 40/23 41/3

**defendant's [7]** 10/18 14/3 32/9 32/19 37/4 38/15 41/1

**defendants [3]** 22/4 23/6 23/14

**defense [9]** 7/19 8/4 8/8 10/3 10/6 31/7 31/18 34/9 35/3

**definitive [1]** 24/22

**Delnido [2]** 2/13 3/11

**delve [1]** 8/3

**denial [3]** 5/20 41/11 42/8

**denied [3]** 6/9 13/18 13/19

**deny [1]** 7/25

**denying [2]** 5/15 5/21

**Department [2]** 2/4 2/8

**departure [1]** 26/14

**described [1]** 16/13

**despite [2]** 11/25 13/15

**determining [2]** 5/8 17/25

**deterrence [1]** 13/6

**deviate [1]** 35/6

**deviated [2]** 33/15 33/24

**devices [1]** 37/24

**didn't [3]** 4/24 5/5 6/4

**difference [4]** 18/17 21/5 29/14 35/10

**differences [1]** 36/2

**different [12]** 4/4 20/25 20/25 20/25 21/25 21/25 22/17 29/10 29/10 29/12 29/14 33/13

**differently [1]** 18/20

**digit [2]** 23/22 23/23

**directed [2]** 10/11 11/1

**disagree [1]** 19/25

**disclosed [2]** 19/17 19/18

**disclosure [1]** 38/5

**discrepancy [1]** 19/10

**discuss [2]** 5/11 15/9

**discussed [3]** 18/21 19/25 25/20

**discussion [1]** 23/10

**dismiss [2]** 5/15 6/8

**disparities [1]** 23/13

**dispute [1]** 9/5

**disseminate [1]** 11/9

**disseminated [1]** 8/20

**disseminating [1]** 10/23

**dissemination [1]** 10/19

**disservice [1]** 17/15

**distinguished [1]** 22/1

**district [12]** 1/1 1/1 1/13 15/11 15/20 21/15 21/15 25/2 25/15 25/17 34/20 37/20

**Division [2]** 2/3 2/7

**DNA [1]** 38/1

**docket [4]** 5/18 5/22 8/5 39/18

**documents [2]** 10/24 11/3

**does [10]** 4/9 13/21 17/14 27/3 27/22 28/9 35/5 36/19 38/21 39/14

**doing [2]** 8/11 26/16

**dollar [1]** 16/19

**dollars [8]** 10/20 23/20 23/21 23/25 24/7 24/8 31/22 34/23

**don't [6]** 7/20 12/14 34/14 34/15 34/16 34/16

**done [7]** 17/5 19/16 30/5 30/6 30/7 32/18 34/7

**double [2]** 23/21 23/22

**double-digit [1]** 23/22

**dovetails [1]** 12/11

**down [8]** 4/5 18/8 18/8 18/14 18/23 22/9 24/22 34/24

**downward [3]** 26/14 40/21 40/22

**Dr. [7]** 4/25 5/2 5/8 19/14 19/17 19/17 39/21

**Dr. Becker's [4]** 4/25 5/2 5/8 39/21

**Dr. O'Neal [3]** 19/14 19/17 19/17

**dramatically [1]** 40/24

**driving [1]** 24/6

**drop [1]** 20/11

**drug [2]** 39/3 41/24

**during [4]** 12/7 12/8 14/17 36/13

**E**

**E-mail [1]** 1/20

**e-mails [1]** 8/13

**each [4]** 23/3 36/8 37/17 38/9

**earlier [6]** 17/7 25/8 27/3 28/20 29/21 31/14

**early [2]** 28/18 31/24

**earn [1]** 16/5

**earned [1]** 36/17

**earnings [1]** 36/24

**earns [1]** 36/15

**Eastern [1]** 21/15

**Eddie [1]** 30/9

**effect [1]** 16/16

**efficient [1]** 39/25

**egregiousness [1]** 10/16

**eight [2]** 25/6 25/11

**eight percent [1]** 25/6 25/11

**Eighth [2]** 2/11 2/14

**elaborate [2]** 11/8 13/3

**Eleventh [7]** 7/4 7/20 13/19 20/15 25/3 25/14 26/5 26/6 27/1 29/22 30/6

**eligible [1]** 41/16

**else [6]** 5/10 9/20 10/1 20/4 28/25 31/1

**emotional [1]** 15/25

**employee [1]** 27/6

**employees [2]** 11/15 22/24

**encouraging [1]** 12/4

**end [4]** 9/18 12/2 17/14 23/4

**endangering [1]** 12/17

**ended [2]** 15/4 32/13

**engage [2]** 13/23 15/18

**engaged [1]** 16/9

**enhancements [7]** 3/25 12/15 12/19 26/13 31/15 34/14 35/20

**enough [1]** 10/22

**Enron [1]** 23/2

**Enrons [1]** 22/18

**ensure [2]** 11/17 30/21

**entailed [1]** 23/1

**entered [4]** 3/25 38/17 38/19 42/11

**entire [3]** 21/7 21/12 34/20

**entirely [1]** 17/22

**entitled [1]** 43/12

**entry [2]** 5/22 8/5

**equity [1]** 19/19

**ESQ [6]** 2/2 2/6 2/10 2/13 2/16 2/18

**essentially [2]** 11/19 20/18

**establish [1]** 39/25

**estimated [2]** 7/15 7/17

**even [8]** 10/16 12/14 12/22 18/13 22/18 33/17 33/22 35/7

**event [4]** 4/25 5/2 5/8 40/1

**events [1]** 5/4

**ever [2]** 9/4 14/7

**every [2]** 11/17 22/1

**everyone [3]** 3/2 4/9 4/17

**everyone's [1]** 4/6

**evidence [7]** 6/23 6/23 7/1 7/1 7/22 26/7 40/25

**exactly [2]** 13/7 13/23

**example [3]** 21/7 26/12 34/8

**exceeds [1]** 41/5

**expect [2]** 24/20 24/22

**explanation [1]** 41/8

**expressly [1]** 5/18

**extensive [2]** 14/25 23/10

**extent [7]** 4/24 5/6 9/4 15/12 28/8 28/15 40/24

**Eighth** [continued in column]

**extraordinary [1]** 31/16

**F**

**facility [1]** 41/21

**facing [1]** 14/10

**fact [9]** 10/21 11/4 11/24 12/13 14/6 24/14 27/9 30/1 38/23

**factor [7]** 14/4 17/25 27/23 29/7 34/5 35/22 35/22

**factors [17]** 5/7 5/9 5/11 13/5 13/8 13/25 14/15 15/13 20/3 31/15 33/8 34/2 34/17 34/17 35/19 35/24 40/20

**facts [7]** 12/12 21/23 23/8 26/6 26/7 27/2 35/24

**failed [1]** 41/8

**failure [2]** 14/3 40/23

**fair [1]** 6/1

**fairness [1]** 29/20

**faith [2]** 3/7

**fake [1]** 11/6

**falls [1]** 12/21

**false [7]** 10/19 10/24 10/24 10/25 11/3 11/9 11/20

**falsely [2]** 10/20 12/3

**familiar [1]** 39/9

**father [2]** 27/6 27/7

**favor [2]** 13/11 14/5

**feared [1]** 11/13

**Federal [1]** 36/15

**felt [1]** 22/16

**few [6]** 15/6 15/10 15/14 18/22 21/16 24/19

**fighting [3]** 11/17 20/15 20/16

**figure [1]** 3/20

**file [5]** 14/12 42/7 42/9 42/9 42/12

**filed [8]** 5/17 5/22 5/24 8/5 8/23 8/25 25/25 42/9

**filing [2]** 5/16 8/9

**filings [2]** 6/7 32/17

**final [1]** 13/25

**finally [2]** 29/20 30/12

**financial [10]** 2/2 2/6 19/10 36/17 36/21 37/6 37/11 38/5 40/8 40/9

**financially [2]** 23/1 32/12

**Finch [2]** 27/4 29/5

**Finch's [1]** 27/6

**finding [6]** 6/20 7/8 36/4 39/14 40/11 40/17

**findings [12]** 7/13 7/13 7/17 21/1 26/8 26/9 26/9 26/10 26/10 38/22 39/21 41/6

**finds [1]** 33/10

**fine [3]** 10/8 33/11 42/1

**fingerprints [1]** 11/7

**firearm [1]** 37/24

**first [10]** 10/5 10/7 10/11 10/15 14/18 16/20 16/22 33/19 35/12 36/2

**five [4]** 8/17 23/6 25/5 25/10

**FL [2]** 2/17 2/19

**FLORIDA [8]** 1/1 1/7 1/19 25/3 25/15 25/17 28/13 37/12

**focus [1]** 15/6

**focused [1]** 26/15

**following [1]** 38/3

**follows [1]** 36/14

**footnote [1]** 20/11

**force [1]** 24/6

**foreclosure [1]** 14/10

**foregoing [1]** 43/10

**forfeited [1]** 38/16

**forfeiture [2]** 38/17 38/18

**forma [1]** 42/12

**forth [4]** 8/13 33/9 39/17 39/23

**forwarded [2]** 37/10 37/13

**found [21]** 6/18 6/20 7/16 14/17 16/20 16/22 16/24 18/22 18/25 19/3 19/4 20/20 22/14 23/14 23/18 23/22 23/23 24/7 25/1 27/2 33/13

**founded [2]** 29/4 29/4

**four [1]** 20/22

**Franklin [4]** 1/18 43/9 43/15 43/16

**fraud [35]** 2/2 2/3 2/6 2/7 12/25 13/1 13/2 13/2 14/7 15/10 16/19 19/16 20/10 20/16 20/19 22/17 22/22 23/17 24/14 24/14 25/4 25/4 25/5 25/7 25/12 25/16 25/17 29/9 29/9 32/9 32/14 34/19 34/21 34/22 40/13

**fraudulent [1]** 19/7

**friend [1]** 27/7

**full [2]** 20/13 24/2

**fundamental [1]** 29/20

**fundamentally [5]** 29/10 29/12 29/14 30/4 30/10

**fundraiser [1]** 27/18

**funds [1]** 21/10

**further [6]** 14/6 35/7 35/13 36/11 40/21 40/21

**G**

**gain [10]** 6/21 6/22 7/5 7/8 7/12 7/13 7/15 7/18 7/21 7/24

**gains [1]** 37/6

**gall [1]** 13/14

**gambling [1]** 38/5

**gave [1]** 29/23

**Gazette [1]** 27/18

**general [2]** 14/9 41/3

**George [1]** 6/25

**G**

gets [2]  27/23 28/2
getting [5]  8/15 16/3
21/14 27/1 31/23
give [4]  15/17 25/22
26/22 28/18
given [1]  26/25
gloves [1]  11/7
going [4]  15/3 16/10
35/9 35/14
gone [7]  18/11 18/23
20/7 24/18 24/22 29/9
30/5
good [15]  3/2 3/7 3/9
3/10 3/13 3/15 3/16 17/5
17/9 17/10 27/4 27/7
27/22 41/1 42/14
government [52]
Government's [2]  15/17
20/8
graciously [1]  41/15
great [2]  21/2 32/18
greater [5]  14/18 15/5
35/15 35/25 41/4
greatest [1]  27/9
greatly [1]  32/8
gross [1]  36/23
ground [1]  40/12
Gruenstein [2]  2/10
3/11
guidance [1]  29/23
guideline [15]  3/22 3/24
4/4 4/18 5/1 9/20 18/1
18/10 31/10 33/13 34/3
35/6 35/13 35/14 36/3
guidelines [35]  5/11
7/18 12/15 12/20 12/22
17/13 17/15 17/24 17/25
18/4 18/12 18/14 18/16
18/16 22/14 22/15 22/19
23/4 24/6 24/21 29/16
29/17 29/19 32/21 32/21
33/8 33/15 33/16 33/18
33/22 33/25 34/1 34/19
40/19 40/22
guilty [1]  23/14

**H**

hac [1]  25/25
half [2]  20/20 28/20
hand [1]  21/18
hands [1]  32/8
happy [1]  10/5
harm [3]  31/14 32/18
33/23
harmed [1]  13/15
Harris [6]  2/18 3/16
8/14 8/14 32/4 32/7
having [7]  11/6 28/17
30/5 30/5 30/6 30/7 36/4
he's [2]  27/21 30/8
hear [1]  6/15
heard [3]  10/2 27/4
27/14
hearing [5]  7/11 13/13
14/25 19/7 39/18

held [2]  11/12 27/18
helped [1]  29/5
helpful [2]  24/16 35/1
here [13]  3/18 6/12 7/6
7/14 12/12 20/11 30/7
31/10 31/15 32/15 34/3
35/2 35/19
hereby [1]  36/6
highest [1]  18/14
highly [1]  11/8
himself [1]  28/2
hiring [1]  30/7
history [4]  4/13 4/19
41/1 41/2
hold [1]  24/23
holders [1]  21/9
holding [2]  11/19 14/24
holdings [1]  19/23
home [1]  21/14
homeowners [1]  14/10
Honor [47]
Honor's [1]  22/2
HONORABLE [1]  1/12
Hospital [1]  11/5
hours [1]  37/19
housed [1]  39/4
housekeeping [1]  8/3
hundred [5]  23/19 23/21
23/25 24/7 24/8

**I**

I'd [1]  42/15
I'll [6]  7/25 8/24 15/9
27/5 39/6 39/13
I'm [10]  15/3 16/10
21/13 22/1 27/20 28/24
34/7 35/1 39/8 39/11
I've [1]  30/12
idea [1]  31/8
identified [2]  16/6 37/14
identity [1]  34/21
ignores [1]  17/22
immediately [2]  28/6
38/8
impact [6]  8/6 8/7 8/23
17/2 17/18 32/5
implicit [1]  20/1
important [6]  14/4
19/21 21/4 24/4 35/7
35/21
impose [2]  30/18 30/19
33/3 35/25
imposed [7]  35/12 36/17
36/21 38/21 41/7 41/15
42/7
imposition [2]  15/15
43/3
imprisoned [1]  36/7
imprisonment [3]  36/22
37/15 38/12
inadequate [1]  41/7
incarceration [1]  36/13
include [1]  41/18
included [3]  4/23 10/18
12/3
includes [1]  5/19

including [6]  7/2 17/17
31/11 39/17 39/21 40/8
income [1]  37/7
incorporates [2]  40/3
40/7
incorrect [2]  33/19
33/24
increase [3]  4/4 4/6 4/7
indicated [1]  9/25
indicating [1]  11/22
individuals [1]  11/22
indulge [1]  21/17
Industries [1]  36/16
inflationary [1]  19/23
information [3]  11/9
11/25 17/6
initial [1]  5/16
Injustice [1]  27/15
institutional [1]  21/9
instruct [1]  13/11
intended [2]  18/1 19/6
interest [1]  38/16
interests [1]  36/25
intervening [1]  5/4
invest [1]  32/16
invested [1]  21/10
investing [1]  10/19
investor [5]  5/5 5/8 19/8
19/11 40/12
investors [12]  5/2 5/3
10/22 11/10 13/14 19/6
20/14 20/14 22/10 22/10
31/23 40/3
investors' [2]  39/22
39/24
involved [1]  15/24
issue [4]  12/2 15/1
26/11 26/16
issued [3]  3/19 22/6
22/10
issues [5]  3/21 5/12 7/11
9/20 9/21
it's [13]  4/7 5/18 8/5
12/25 14/25 16/13 17/24
24/12 25/10 30/1 31/23
35/22 36/11
itself [1]  31/17

**J**

jail [2]  26/24 30/16
Jamie [2]  32/5 32/15
January [1]  26/23
Japan [1]  11/5
job [2]  36/16 36/20
Jones [2]  11/14
Jr [1]  2/16
JUDGE [5]  1/13 22/16
23/9 24/25 34/9
judgment [2]  36/18
41/19
judgment's [1]  42/10
jury [2]  26/8 27/2
just [29]  4/2 4/6 4/24
5/14 5/20 6/17 8/2 8/14
12/10 12/13 12/14 12/25
17/13 17/17 17/18 17/20

20/11 21/16 24/25 27/5
28/23 32/2 34/10 34/12
34/22 34/23 35/17 38/24
38/25
justice [3]  2/4 2/8 36/25
justifies [1]  35/13

**K**

KAM [1]  1/2
keep [1]  31/6
KENNETH [1]  1/12
key [1]  7/14
Klugh [3]  2/16 3/13 5/13
knew [1]  12/8
know [7]  9/24 34/10
34/14 34/15 34/16 34/17
34/22
knows [1]  10/13

**L**

lack [2]  34/17 41/1
lacks [1]  20/12
large [1]  11/23
laser [1]  26/15
last [9]  15/11 16/11 17/7
18/22 19/7 24/11 24/19
25/21 27/5
laundering [1]  13/3
law [4]  13/6 26/5 26/6
27/1
lawsuits [1]  11/18
leader [1]  12/18
leads [2]  13/22 13/25
learned [1]  19/9
leave [2]  11/7 42/12
led [1]  22/8
left [1]  11/15
less [9]  17/1 17/2 19/19
20/21 21/3 23/3 23/3
23/24 24/8
lesser [1]  12/22
Let [1]  18/19
letter [1]  11/7
level [12]  4/4 4/6 4/7
4/13 4/18 18/5 18/6
18/8 18/14 18/14 22/14
levels [3]  18/8 18/8
29/17
lied [1]  12/9
life [3]  18/11 22/15
33/14
limited [1]  13/16
line [3]  15/4 24/13 33/18
lined [1]  24/1
list [2]  6/4 24/3
listed [1]  31/9
little [2]  18/19 19/9
lives [1]  28/17
LLP [2]  2/10 2/13
long [1]  6/15
longer [2]  15/10 24/21
looked [5]  23/17 24/13
24/14 34/10 34/11
looking [3]  12/16 24/3
25/4
looks [1]  31/22
lose [3]  21/7 21/10 21/11

20/11 21/16 24/25 27/5

loss [60]
losses [18]  5/5 5/8 8/24
16/21 19/15 19/20 20/2
21/2 21/5 21/6 22/23
31/8 31/19 31/21 32/11
40/3 40/7 40/14
lost [17]  20/5 20/6 20/8
20/14 20/20 20/21 20/22
20/23 21/11 22/9 22/11
22/25 28/20 32/3 32/6
32/7 32/17
lower [10]  29/25 30/1
30/2 30/13 30/13 30/14
34/4 35/4 40/24 41/15
lowest [2]  23/3 41/21
luck [1]  42/14
Luxembourg [1]  7/2

**M**

magnitude [1]  22/21
mail [2]  1/20 13/1
mails [1]  8/13
major [2]  21/10 22/23
makes [3]  13/21 17/25
31/16
Management [1]  11/5
mandated [1]  5/7
manipulate [1]  31/25
manner [1]  38/17
manual [1]  4/4
Mark [2]  32/4 32/10
markedly [1]  23/3
market [5]  11/9 20/3
32/16 39/25 40/10
MARRA [1]  1/12 3/5
married [2]  15/22 28/11
Martin [7]  6/23 11/2
11/4 12/4 12/5 12/9
14/12
massive [1]  19/20
material [1]  37/4
matter [5]  6/17 8/3 41/3
41/14 43/12
matters [1]  3/20
maximum [1]  28/4
May 2013 [1]  15/9
me [16]  7/20 9/3 9/9
9/25 18/19 21/17 26/3
26/8 26/12 26/14 26/18
29/3 33/17 34/9 35/1
35/5
mean [3]  20/25 24/14
25/18
meaning [1]  19/19
means [1]  12/19
meant [1]  26/4
measure [1]  7/6
median [1]  25/16
Melley [1]  7/1
memo [1]  19/5
memoranda [1]  39/18
memory [1]  33/17
mention [1]  17/4
mentioned [8]  5/14
17/16 28/11 28/20 29/13
29/16 31/14 41/24

**M**

Merit [1] 43/9
met [1] 15/15
method [2] 39/22 39/24
Miami [7] 2/17 2/19
37/11 37/12 39/4 41/18
41/23
Michael [1] 36/5
Michelle [2] 2/2 3/7
middle [1] 24/13
militates [1] 14/4
million [29] 6/19 6/21
16/19 16/21 16/22 16/24
17/21 17/21 18/3 18/4
18/7 18/22 18/22 18/24
18/25 22/11 22/12 23/20
23/21 23/25 24/7 24/8
28/1 29/9 29/9 31/11
32/19 32/22 38/19
millions [3] 10/20 22/10
31/22
minimum [1] 36/20
minute [1] 28/23
minutes [4] 8/17 15/10
15/14 21/17
misconduct [2] 13/18
14/14
mislead [1] 10/22
misleading [1] 31/25
misled [1] 34/25
misrepresenting [1]
22/7
misrepresents [1] 40/4
MITCHELL [3] 1/6 3/5
36/5
moment [1] 38/24
money [11] 11/21 13/2
16/5 20/5 20/6 20/8
20/14 20/25 21/12 22/9
28/3
monitor [3] 28/7 28/9
37/3
month [2] 10/1 18/14
monthly [1] 36/23
months [22] 4/19 12/11
12/21 12/21 14/16 15/9
18/13 18/13 18/23 22/15
24/15 25/14 25/18 25/18
30/18 32/23 32/24 35/12
36/7 36/8 36/8 36/9
months' [1] 38/12
Moore [3] 2/10 2/13
3/11
morning [8] 3/2 3/7 3/9
3/10 3/13 3/15 3/16 16/7
most [2] 6/12 16/8
motion [7] 5/15 5/16
5/24 5/24 6/5 25/25
41/10
motions [5] 6/8 6/8 9/20
41/11 42/8
Mr. [43] 3/12 3/14 3/17
5/13 8/14 8/14 15/7
15/12 15/18 15/22 16/3
16/9 17/5 17/8 19/2
19/10 20/10 20/12 20/13

20/15 20/19 21/8 22/6
25/9 26/1 26/24 27/3
27/7 27/10 27/13 28/2
29/5 29/21 30/5 30/22
33/2 33/12 35/11 39/4
40/5 40/7 40/14 42/6
Mr. Harris [2] 8/14
8/14
Mr. Klugh [1] 5/13
Mr. Stein [33] 3/12 3/14
3/17 15/7 15/12 15/18
15/22 16/3 16/9 17/5
17/8 20/12 20/13 20/15
21/8 22/6 25/9 26/1
26/24 27/3 27/10 27/13
28/2 29/5 29/21 30/5
30/22 33/2 33/12 35/11
39/4 40/5 42/6
Mr. Stein's [6] 19/2
20/10 20/19 27/7 40/7
40/14
Mr. Taylor [1] 19/10
Ms. [4] 15/23 27/6 28/11
29/5
Ms. Finch [1] 29/5
Ms. Finch's [1] 27/6
Ms. Reichardt [2] 15/23
28/11
much [4] 10/14 15/25
20/18 42/3
multi [1] 16/19
multi-million-dollar [1]
16/19
multiple [1] 12/3
murdered [1] 27/8
must [5] 17/3 17/16
36/16 36/20 42/9

**N**

naked [1] 40/10
names [4] 8/6 8/8 8/20
9/11
napkin [1] 12/6
narrowing [1] 34/24
nationally [2] 24/15
24/22
nationwide [1] 25/3
nature [5] 10/12 16/8
16/9 16/12 19/10
nauseam [1] 19/25
necessary [6] 14/19 15/5
35/15 36/1 39/25 41/5
need [10] 8/20 8/24 13/5
14/1 14/5 23/13 26/17
27/24 32/3 39/10
needed [2] 3/21 11/21
needs [1] 15/13
negate [1] 15/20
negative [1] 19/18
never [3] 19/15 19/16
32/16
new [9] 2/4 2/8 2/12
2/15 5/24 6/8 21/15
26/20 34/3
next [1] 13/5
no [20] 1/2 7/18 7/24 9/2

9/15 9/22 9/23 14/5
14/18 20/24 24/21 26/8
26/12 26/14 31/8 33/4
40/21 41/20 42/1 42/5
None [1] 43/6
North [1] 37/11
Northwest [2] 2/4 2/8
nose [1] 15/19
note [2] 23/6 24/4
noted [4] 6/22 22/20
31/18 38/7
notes [2] 7/4 12/6
nothing [1] 28/24
notice [2] 8/5 42/10
number [14] 3/5 3/20
4/7 10/14 10/16 12/19
18/9 18/23 20/6 25/5
25/7 27/24 30/2 30/13
**Number**
**11-80205-CR-MARRA**
[1] 3/5
number 7 [1] 27/24
numbers [1] 35/7
NY [2] 2/12 2/15

**O**

O'Neal [4] 19/14 19/17
19/17 30/9
object [3] 38/22 39/14
41/11
objected [1] 8/11
objection [7] 8/10 9/2
9/15 39/10 41/20 42/1
42/4
objections [4] 4/16 9/18
39/16 40/16
objects [7] 39/20 40/2
40/6 40/11 40/21 40/23
41/3
obligations [3] 36/17
36/21 37/8
obstruction [4] 12/17
13/3 23/7 34/16
OCTOBER [1] 43/13
offenders [1] 8/16
offense [17] 4/13 4/18
10/12 10/13 12/11 16/13
16/14 17/17 17/18 18/8
18/20 20/17 27/25 29/12
29/18 34/22 35/17
offenses [1] 34/24
offer [1] 19/6
offered [1] 19/8
office [7] 15/20 28/9
30/21 37/2 37/2 37/11
37/20
Official [1] 1/18
Okay [9] 3/4 4/12 4/22
6/16 9/17 9/24 10/9 31/4
42/6
old [2] 27/8 31/8
one [21] 8/2 10/15 11/6
13/5 13/22 13/25 14/5
14/16 19/8 19/11 23/12
24/4 25/24 25/25 27/9
29/7 32/3 32/19 36/15

38/24 41/14
One million [1] 32/19
ones [1] 4/1
only [17] 11/13 12/12
14/2 14/7 15/24 16/15
19/23 19/23 20/22 24/4
25/7 25/11 30/15 31/14
32/4 35/18 35/22
only two [1] 25/7
opine [1] 30/9
opinion [1] 7/5
opportunity [1] 28/19
orchestrated [1] 10/24
order [10] 3/1 3/23 4/23
5/6 5/15 5/15 5/18 6/18
36/21 38/17
ordered [1] 36/11
orders [2] 11/1 38/15
organization [1] 27/19
organizer [1] 12/18
original [4] 3/25 4/3
5/16 9/10
originally [4] 16/18
18/21 33/12 35/15
orphans [1] 19/12
others [2] 27/16 39/19
our [7] 4/18 10/4 15/14
21/24 28/3 41/10 41/11
outlines [1] 14/6
outstanding [1] 3/20
outweigh [1] 27/20
over [9] 7/1 18/12 18/12
18/13 18/22 23/19 23/21
24/7 30/1
owned [1] 21/9

**P**

page [4] 1/16 22/20
23/17 24/11
page 746 [1] 22/20
page 753 [1] 23/17
PAGES [1] 1/10
Pain [2] 27/15
Palm [2] 1/7 1/19
papers [1] 41/11
parallel [2] 14/12 23/8
Paris [2] 21/16 34/9
particular [1] 22/24
particularly [1] 3/20
parties [1] 33/7
partner [5] 15/24 15/25
16/1
Pascucci [2] 2/2 3/8
pauperis [1] 42/13
pay [12] 20/13 28/6
28/19 28/21 33/10 36/11
36/16 36/20 36/23 37/4
38/8 42/11
payable [1] 37/9
paying [1] 28/2
payment [3] 36/13 36/24
37/3
payments [1] 37/5
penny [7] 11/17 19/13
21/5 22/17 31/18 32/1
32/3

pension [4] 21/9 21/10
21/11 21/12
pensions [2] 21/7 22/25
people [16] 10/25 11/13
19/2 19/3 19/4 20/2 20/5
20/6 20/8 21/1 21/6 21/9
21/10 21/11 22/9 34/22
per [2] 30/14 36/20
per-victim [1] 30/14
percent [11] 15/10 19/23
20/1 20/2 25/6 25/8
25/11 25/12 30/1 36/16
36/23
percentile [1] 25/10
performance [2] 40/9
40/9
perhaps [1] 41/17
period [1] 36/13
perjury [1] 14/10
permissible [1] 38/6
perpetrated [1] 14/7
person [1] 37/20
personal [2] 15/24 25/22
perspective [1] 25/23
Peter [1] 6/25
phonetic [1] 27/5
Pittsburgh [1] 27/17
place [1] 41/21
placed [2] 37/16 41/16
Plaza [2] 2/11 2/14
Please [1] 3/2
plus [2] 18/2 18/24
podium [1] 6/13
point [9] 7/14 8/16 10/2
12/24 14/1 16/10 23/16
26/8 26/14
pointed [1] 31/7
points [3] 12/16 15/6
31/15
position [2] 11/12 11/19
positive [1] 19/15
possess [1] 37/24
possessing [1] 37/23
possible [2] 16/21 41/17
possibly [1] 41/18
post [2] 27/17 39/18
post-hearing [1] 39/18
posted [3] 19/15 31/19
31/21
practices [1] 21/25
pre [1] 24/6
pre-Booker [1] 24/6
precisely [1] 20/15
preclude [1] 37/5
prefer [3] 6/12 10/6 10/6
preliminary [2] 6/17 8/2
prepared [1] 10/5
present [1] 35/19
presentation [1] 16/7
presented [2] 16/18
16/20
presentence [2] 33/7
38/7
preserve [2] 4/16 9/18
press [7] 10/19 10/23
10/25 11/4 22/7 31/20

**P**

press... [1] 31/24
presume [1] 38/16
previous [1] 29/22
previously [15] 3/25
5/24 7/11 13/19 15/22
18/2 18/21 20/7 20/19
21/2 26/15 31/21 38/18
39/2 40/8
preying [1] 14/9
price [1] 22/8
primary [1] 5/1
principal [2] 17/12
17/25
prior [2] 35/6 39/17
Prisons [3] 36/6 37/1
41/21
pro [1] 25/25
probably [3] 4/15 4/23
18/13
probation [5] 15/20 28/9
30/21 37/2 37/20
probative [1] 24/16
proceedings [4] 1/11
28/12 42/20 43/11
products [1] 11/6
professional [1] 16/1
program [2] 39/3 41/24
prohibited [1] 37/23
promote [1] 13/6
pronounced [1] 38/23
proper [1] 7/5
properly [3] 5/3 5/4 5/9
property [1] 38/16
proportion [2] 33/16
33/23
propose [1] 8/24
prosecutions [1] 22/22
prosecutorial [1] 13/18
prosecutors [1] 26/20
prospects [1] 22/7
protect [1] 14/1
prove [2] 40/4 40/13
proven [2] 17/8 20/4
provide [4] 27/24 28/5
28/6 35/17
provided [3] 17/6 23/18
34/9
providing [1] 12/10
PSR [1] 14/6
public [3] 10/19 14/2
32/17
publicly [2] 8/20 12/17
pull [1] 24/18
punish [1] 14/19
punishment [2] 12/10
35/17
purchase [1] 11/1
purpose [1] 9/6
purposes [4] 4/2 9/12
13/16 41/22
put [1] 9/11 31/20 32/18

**Q**

quarter [2] 19/21 36/20
question [3] 13/14 13/22

26/21
quickly [1] 39/13
quite [1] 41/15
quote [2] 19/2 19/6
quotes [1] 8/6

**R**

raise [2] 8/3 13/11
rampant [1] 14/14
range [9] 4/18 12/20
16/21 22/15 23/4 35/7
35/13 35/14 40/22
Rasika [1] 26/2
rate [1] 36/23
rather [1] 31/16
reaffirm [1] 4/1
real [1] 21/5
realistically [2] 28/21
30/15
really [2] 12/11 14/5
Realtime [1] 43/10
reason [7] 8/19 21/4
21/13 22/1 31/25 33/25
41/23
reasonable [1] 9/10
reasonably [2] 7/15 7/16
reasoning [1] 22/1
reasons [2] 39/16 41/10
rebuttal [2] 31/2 31/6
recall [1] 11/14
recalled [1] 11/15
received [1] 23/10
recent [1] 6/25
recently [1] 8/4
recognize [5] 20/9 20/24
21/24 29/17 32/22
recognized [2] 33/18
33/22
recognizes [1] 18/16
recognizing [2] 23/11
34/1
recollection [1] 33/21
recommend [1] 41/17
recommendations [2]
39/5 39/6
recommended [5] 12/22
19/12 32/10 33/20 39/3
recommending [3]
32/13 32/24 41/20
record [8] 3/4 4/24 5/21
7/12 7/23 9/1 37/14
43/11
records [1] 23/14
redact [1] 8/8
redacted [1] 9/10
redo [1] 24/19
reduction [1] 35/23
reevaluating [1] 34/6
reference [1] 5/16
referenced [1] 5/18
refers [1] 18/15
reflect [3] 15/13 30/18
35/16
refused [1] 13/9
regarding [1] 13/18
Registered [1] 43/9

Reichardt [2] 15/23
28/11
reimpose [1] 9/25
reissued [1] 26/13
relate [1] 8/15
related [2] 10/14 38/6
relating [1] 20/13
release [13] 13/23 15/16
16/3 28/4 28/17 30/20
36/22 37/15 37/16 37/19
37/22 38/2 38/13
released [3] 15/18 17/10
37/21
releases [7] 10/19 10/23
10/25 11/4 22/7 31/20
31/24
reliable [1] 39/23
reliance [1] 5/3
relied [4] 19/6 24/10
40/4 40/13
rely [1] 39/25
relying [1] 4/25
remains [1] 12/12
remand [6] 3/22 15/2
15/8 16/24 26/11 26/23
remanding [1] 13/16
remarkably [1] 23/8
remarks [1] 17/4
remind [1] 27/5
reminds [1] 12/24
remorse [2] 20/12 20/13
renew [1] 39/5
renews [2] 39/15 40/16
reoffend [1] 28/10
repay [3] 16/5 17/10
30/15
repaying [1] 30/22
repeatedly [1] 18/15
report [4] 33/7 37/3
37/20 38/7
Reporter [4] 1/18 1/18
43/9 43/10
request [2] 7/25 30/17
requesting [1] 8/14
require [2] 29/16 32/21
requirement [3] 17/22
38/6 41/8
requirements [3] 23/12
35/16 36/1
requires [3] 29/13 29/19
29/20
RESENTENCING [1]
1/11
residential [1] 39/3
resolved [1] 8/18
respect [3] 13/6 40/19
40/20
respectfully [1] 30/17
respond [1] 15/17
responsibility [2] 13/10
14/3
responsible [1] 22/23
restate [1] 27/6
restitution [12] 13/16
27/24 28/6 33/11 36/12
36/23 37/3 37/7 37/9

37/12 38/13 40/17
restriction [2] 38/4 38/6
result [6] 20/2 20/10
20/17 20/19 22/3 32/19
results [2] 24/20 24/23
retirement [1] 32/8
return [1] 19/15
reviewed [1] 12/13
Richard [2] 2/16 3/13
right [15] 3/18 5/10 7/9
8/19 9/17 9/24 26/3 26/4
26/17 26/25 27/1 29/21
33/6 38/15 42/6
Rights [1] 8/9
risk [1] 15/21
RMR [1] 1/18 43/16
Roberto [1] 7/2
Room [1] 37/12
roughly [6] 16/24 20/20
22/11 25/6 25/15 28/1
row [1] 19/21
ruined [1] 23/1
Rule [1] 41/8
rules [1] 39/9
ruling [1] 20/17
rulings [5] 3/19 4/12
4/16 4/17 9/18
run [2] 36/9 37/18

**S**

sales [2] 10/20 31/22
same [5] 12/5 14/17
22/21 29/5 40/16
sat [1] 12/7
satisfy [1] 37/7
savings [1] 11/17
say [3] 12/7 17/18 33/2
saying [2] 27/20 27/21
says [3] 17/8 18/10
24/14
schedule [1] 36/25
scheme [5] 10/24 11/8
12/2 13/4 16/19
seal [2] 9/1 9/11
search [1] 38/7
seated [1] 3/3
SEC [2] 12/4 12/7
second [4] 5/17 24/12
24/15 31/13
Section [2] 2/3 2/7 15/13
29/13 33/9 37/11
Section 3553 [1] 15/13
securities [6] 2/2 2/6
13/2 22/22 23/17 34/21
security [1] 41/22
seek [2] 26/14 42/12
seems [2] 9/3 9/9
seen [1] 28/12
selection [1] 41/9
selling [1] 40/10
send [1] 11/6
sense [1] 9/3
sent [2] 11/5 11/6
sentence [54]
sentenced [3] 27/21
33/12 35/11

sentences [14] 15/11
16/16 23/1 23/22 23/24
24/22 25/5 25/5 25/6
25/7 25/12 34/10 34/18
34/21
sentencing [25] 3/19 4/1
4/3 6/22 6/25 8/4 9/19
10/16 13/13 14/18 16/11
16/20 17/2 17/7 19/1
19/5 21/25 24/11 24/24
25/1 25/13 25/21 31/12
33/20 39/17
separate [1] 6/5
serious [9] 12/14 13/8
13/11 14/5 14/16 17/1
17/2 17/19 17/20
seriousness [8] 10/13
16/14 17/17 17/23 18/19
29/12 34/1 35/17
serve [1] 28/18
served [4] 15/7 15/9
25/9 28/17
serves [1] 33/17
serving [1] 15/8
set [3] 33/8 39/16 39/23
seven [2] 25/6 25/11
severe [1] 32/22
severity [1] 13/22
sex [1] 8/15
SFranklinUSDC [1]
1/20
shade [1] 26/9
shall [13] 36/11 36/13
36/22 37/2 37/9 37/15
37/19 37/22 37/23 37/24
38/1 38/1 38/8
shareholders [1] 19/22
shareholders' [1] 19/19
shares [5] 11/22 11/23
11/23 22/10 22/11
short [6] 11/8 13/3 13/9
13/21 31/2 40/10
should [7] 4/23 9/10
13/11 18/16 18/20 20/16
23/6
show [1] 24/13
shows [2] 17/7 25/13
sic [1] 10/6
side [1] 23/23
sides [1] 26/25
SignaLife [8] 11/11
11/20 11/22 21/8 31/12
31/18 40/9 40/10
significant [13] 15/1
15/7 18/11 18/17 18/17
20/6 21/13 28/19 29/7
30/10 34/5 35/10 35/21
significantly [9] 17/2
21/3 29/25 30/2 30/13
30/14 33/15 34/4 35/4
similar [8] 21/24 22/5
22/13 22/19 23/14 23/15
24/20 24/23
simply [11] 7/8 8/4
10/22 12/15 22/21 31/8
31/13 31/20 32/16 32/18

**S**

**simply...** [1] 34/7
**since** [5] 4/3 7/22 10/15 25/21 26/23
**single** [1] 23/23
**single-digit** [1] 23/23
**sir** [2] 41/13 42/14
**sitting** [1] 26/24
**situation** [1] 18/10
**six** [4] 4/4 4/8 18/7 29/17
**six-level** [1] 4/4
**sixties** [1] 28/18
**skill** [1] 12/16
**smaller** [1] 20/18
**solvency** [1] 12/17
**something** [2] 22/5 22/17
**soon** [1] 27/12
**sophisticated** [2] 12/18 30/8
**source** [1] 28/13
**south** [1] 39/4
**Southeast** [1] 2/16
**southern** [5] 1/1 25/2 25/15 25/17 28/13
**Southwest** [1] 2/19
**speak** [1] 6/12
**special** [5] 12/16 38/4 38/9 38/10 38/14
**specific** [2] 40/4 41/6
**specifically** [4] 4/2 6/4 39/20 40/23
**specify** [1] 5/5
**speculative** [2] 19/13 21/6
**speed** [1] 26/18
**spent** [2] 15/1 16/8
**spin** [1] 26/9
**spoke** [1] 32/15
**spouse** [1] 15/23
**standard** [1] 38/2
**start** [2] 15/3 30/22
**started** [2] 27/13 29/6
**starts** [1] 24/2
**state** [3] 3/6 19/10 39/10
**stated** [1] 41/10
**statement** [3] 3/23 32/5 41/6
**statements** [5] 8/7 8/7 8/23 19/7 33/6
**STATES** [12] 1/1 1/3 1/13 3/5 3/8 21/16 37/1 37/1 37/2 37/10 37/10 38/9
**statistics** [4] 24/10 24/25 25/10 35/1
**statute** [1] 23/12
**statutory** [3] 33/8 34/2 41/5
**steal** [1] 34/22
**STEIN** [36] 1/6 3/5 3/12 3/14 3/17 15/7 15/12 15/18 15/22 16/3 16/9 17/5 17/8 20/12 20/13 20/15 21/8 22/6 25/9 26/1 26/24 27/3 27/10

27/13 28/2 29/5 29/21 30/5 30/22 33/2 33/12 35/11 36/5 39/4 40/5 42/6
**Stein's** [5] 19/2 20/10 20/19 27/7 40/7 40/14
**Stephen** [4] 1/18 43/9 43/15 43/16
**still** [2] 12/21 17/13
**stock** [11] 19/11 19/13 20/3 21/6 21/8 21/11 22/8 22/17 31/19 32/1 40/10
**stockholders** [1] 22/25
**Street** [2] 1/19 2/19
**study** [4] 4/25 5/3 5/9 40/1
**subject** [2] 8/13 15/2
**submissions** [2] 39/17 39/18
**substance** [2] 37/25 38/5
**substantiated** [1] 7/12
**such** [2] 23/2 36/24
**Suddenly** [1] 31/22
**sue** [1] 11/16
**suffer** [3] 21/5 21/6 40/14
**suffered** [7] 19/15 19/20 20/2 31/12 32/8 32/11 32/12
**Suffering** [1] 27/15
**sufficient** [5] 7/22 15/5 16/15 35/15 35/25
**suggest** [1] 7/5
**suggested** [1] 14/3
**Suite** [1] 2/17
**summaries** [1] 8/7
**supervised** [9] 15/16 16/3 28/4 28/17 30/20 37/16 37/22 38/2 38/13
**supplement** [4] 5/17 5/22 5/23 5/24
**supplemental** [1] 6/7
**supplementing** [1] 5/17
**support** [5] 7/23 11/3 14/15 27/11 28/14
**supported** [4] 6/21 6/22 27/10 27/16
**supporting** [1] 10/25
**sure** [9] 4/6 5/21 21/19 28/24 29/1 31/4 34/7 35/1 39/6
**Swaine** [3] 2/10 2/13 3/11
**swing** [1] 18/11
**sworn** [1] 12/7
**system** [1] 30/5

**T**

**table** [1] 15/4
**take** [2] 26/10 30/10
**taken** [4] 17/3 25/22 29/14 29/19
**taking** [2] 31/23 35/17
**talk** [8] 8/17 18/19 21/16
**Taylor** [3] 19/10 32/4 32/10
**telling** [2] 7/20 12/6
**term** [4] 36/7 36/7 37/16 37/17
**terms** [1] 37/18
**test** [1] 39/25
**testified** [8] 11/3 11/4 12/5 19/11 19/14 19/17 21/12 32/7
**testifying** [1] 12/3
**testimony** [10] 11/14 12/7 12/8 19/6 19/8 27/4 32/4 39/21 39/22 39/23
**thank** [25] 6/3 6/10 6/16 8/1 9/14 12/20 14/21 14/22 14/23 21/22 30/24 30/25 31/5 32/25 33/1 33/4 33/5 38/20 41/25 42/3 42/5 42/15 42/17 42/18 42/19
**that's** [16] 4/5 5/18 6/4 8/4 9/9 9/9 10/8 14/7 16/9 24/4 31/11 33/21 39/11 41/24 42/1 42/7
**theft** [2] 18/24 34/21
**there's** [9] 7/22 7/24 9/4 18/5 18/6 20/1 23/7 28/24 29/7
**therefore** [1] 17/13
**therein** [1] 31/9
**thereunder** [1] 11/1
**They've** [1] 19/7
**thing** [4] 4/22 10/11 10/15 24/4
**things** [3] 20/25 22/13 38/25
**think** [18] 3/19 3/22 6/1 7/14 7/19 7/23 8/16 8/17 8/24 9/6 9/7 18/13 30/21 33/17 33/21 33/22 35/5 35/24
**those** [23] 5/7 5/9 6/9 11/23 13/11 20/22 22/11 22/22 23/1 23/24 25/20 28/17 28/21 33/15 33/18 33/22 33/25 34/15 34/17 35/1 36/1 39/5 39/6
**though** [1] 22/18
**thought** [5] 20/7 20/19 21/2 33/16 33/25
**thousand** [1] 34/23
**thousands** [3] 16/19 19/2 19/3
**three** [8] 25/8 25/12 28/4 28/17 30/19 37/16 37/17 38/13
**three percent** [1] 25/12
**through** [6] 15/15 30/5 33/9 36/8 36/9 37/18
**throughout** [2] 13/13 15/24 16/2 26/1
**thus** [1] 41/5
**times** [1] 12/3
**tirelessly** [1] 16/2
**title** [1] 38/15

**to three percent** [1] 25/8
**today** [8] 6/20 8/17 15/23 19/18 25/25 26/13 29/18 36/3
**told** [2] 11/16 26/17
**top** [2] 25/9 25/11
**total** [3] 32/13 38/10 38/12
**touted** [1] 10/20
**towards** [3] 17/4 36/17 36/21
**tracing** [1] 6/24
**Tracy** [1] 11/14
**traded** [2] 12/18 21/8
**tragically** [1] 27/7
**Tralisha** [1] 27/9
**transcript** [2] 1/11 43/11
**travel** [1] 28/8
**treatment** [2] 38/4 38/5
**tremendous** [1] 28/13
**trial** [7] 6/8 6/23 6/24 11/3 11/4 11/15 17/9
**troubled** [1] 22/16
**true** [1] 17/24
**truly** [1] 15/24
**trust** [6] 7/3 11/12 11/19 11/24 12/17 34/16
**trusted** [1] 11/13
**trusts** [1] 11/25
**try** [1] 24/19
**trying** [1] 34/25
**turn** [2] 25/19 31/23
**turning** [2] 10/10 32/2
**twice** [1] 25/15
**two** [10] 4/6 4/7 16/16 18/8 22/5 23/5 25/7 25/11 36/19 38/25
**two-level** [2] 4/6 4/7
**type** [2] 13/7 13/24
**typically** [2] 23/20 23/24

**U**

**U.S** [2] 2/4 2/8
**U.S.C** [1] 33/9
**ultimately** [2] 23/5 24/16
**unable** [1] 42/11
**unacceptable** [2] 20/9 20/10
**under** [22] 7/6 7/17 8/9 9/1 9/11 10/5 12/15 13/5 13/8 15/19 16/13 17/13 17/16 18/3 23/12 23/12 23/25 24/8 27/1 27/23 28/21 41/4
**underlied** [1] 10/17
**underlying** [1] 10/17
**understand** [2] 4/15 39/8
**understanding** [4] 5/19 6/1 39/22 39/9
**understands** [2] 6/18 7/7
**understood** [1] 26/11

**unexpected** [1] 37/6
**unfair** [2] 30/4 30/10
**Unicore** [2] 36/16 36/19
**unimaginable** [1] 22/23
**Unit** [2] 2/3 2/7
**UNITED** [12] 1/1 1/3 1/13 3/4 3/8 21/16 37/1 37/1 37/2 37/10 37/10 38/9
**unknown** [2] 27/8 27/9
**unlawful** [1] 41/4
**unlike** [1] 15/22
**unreasonable** [2] 33/14 34/1
**unredacted** [1] 8/25
**unsealed** [1] 9/7
**unsentenced** [1] 26/24
**unsubstantial** [1] 32/20
**unsupported** [1] 10/21
**until** [3] 10/2 27/12 36/24
**unwarranted** [1] 23/13
**upon** [7] 4/12 4/17 4/25 13/23 34/8 36/22 37/15
**us** [1] 14/25
**used** [3] 11/17 11/20 33/23
**using** [3] 4/3 11/7 37/6

**V**

**variance** [2] 35/13 40/22
**various** [2] 34/10 42/8
**vary** [1] 35/6
**versions** [1] 8/25
**versus** [2] 3/5 21/16
**very** [16] 6/17 8/4 13/13 13/16 14/4 14/25 15/7 15/25 21/24 22/5 22/13 22/19 27/12 31/7 31/11 42/3
**via** [1] 11/24
**vice** [1] 25/25
**victim** [6] 8/6 8/7 8/23 12/19 30/14 32/5
**victimized** [3] 19/2 19/3 19/4
**victims** [31] 3/21 4/5 4/8 8/6 8/9 8/22 16/5 16/17 16/19 16/23 16/25 17/11 17/19 17/20 18/9 20/20 21/5 21/15 27/16 27/25 28/7 28/19 28/19 28/20 30/2 30/13 30/15 30/23 32/3 37/13 40/12
**victims'** [2] 8/9 8/20
**view** [4] 17/14 28/3 29/7 35/9
**viewed** [1] 18/2
**VIPS** [3] 27/14 27/14 29/3
**VOLUME** [1] 1/10

**W**

**wages** [2] 36/15 36/17
**wait** [1] 10/2
**want** [15] 3/23 4/6 5/2 9/25 10/1 10/2 14/23

## W

**want... [8]** 20/11 21/16 25/19 25/22 28/24 29/6 30/3 33/2
**wanted [4]** 4/22 5/20 26/3 29/21
**wants [1]** 5/10
**warrant [1]** 41/7
**warranted [2]** 13/8 35/12
**Washington [2]** 2/5 2/9
**wasn't [1]** 10/22
**we're [5]** 4/3 4/5 4/13 29/11 30/3
**we've [6]** 8/15 14/24 18/11 19/9 19/25 20/7
**website [1]** 25/2
**weigh [1]** 35/23
**well [15]** 10/12 10/13 11/11 16/13 17/15 19/16 25/3 31/18 33/8 33/11 34/13 38/3 39/3 40/10 42/8
**went [4]** 7/1 11/24 22/9 24/24
**West [2]** 1/7 1/19
**whatever [5]** 6/19 17/8 17/8 30/20 41/21
**where [20]** 3/24 11/5 11/15 13/7 15/3 16/4 18/7 20/5 23/7 23/25 27/15 27/16 29/6 29/18 29/25 30/1 34/22 35/10 36/2 37/20
**Wherever [1]** 6/14
**whether [3]** 8/22 13/14 13/23
**while [4]** 11/19 16/25 18/15 37/22
**who's [1]** 9/5
**whom [2]** 11/2 22/25
**why [10]** 6/4 7/11 7/12 8/19 12/11 19/25 20/4 31/24 39/11 41/24
**widows [1]** 19/12
**wife [2]** 15/25 26/2
**wire [1]** 13/1
**wish [2]** 42/7 42/9
**within [2]** 37/19 42/10
**without [2]** 26/21 34/24
**witness [3]** 23/8 30/7 30/9
**work [9]** 8/24 9/13 16/4 17/5 17/9 28/5 28/22 30/22 36/19
**worked [1]** 26/1
**working [1]** 16/1
**world [1]** 22/18
**WorldCom [1]** 23/2
**WorldComs [1]** 22/18
**Worldwide [2]** 2/11 2/14
**worth [1]** 19/19
**wrap [1]** 28/24
**wreaking [1]** 22/23
**written [2]** 12/6 27/17
**wrong [1]** 33/21

## Y

**year [6]** 15/11 15/16 25/24 25/25 28/3 33/20
**years [19]** 17/13 18/12 23/6 23/21 23/24 24/8 24/9 24/19 25/6 25/7 25/11 25/12 27/8 27/11 28/5 28/17 30/19 37/16 37/17
**years' [1]** 38/13
**yes [12]** 4/10 4/11 4/20 4/21 5/13 6/6 9/14 21/21 38/18 38/24 39/11 41/13
**yesterday [4]** 3/19 3/23 4/24 41/12
**yet [3]** 7/14 23/1 36/1
**York [5]** 2/4 2/8 2/12 2/15 21/15
**you'll [2]** 4/16 9/17
**you're [5]** 6/6 6/14 34/13 34/20 42/11
**you've [1]** 10/2

## Z

**zero [1]** 19/20